# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AGSPRING MISSISSIPPI REGION, LLC,<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-11238 (CTG) |
| In re:<br><br>AGSPRING MS 1, LLC,<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-11239 (CTG) |
| In re:<br><br>AGSPRING MS, LLC,<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-11240 (CTG) |
| In re:<br><br>LAKE PROVIDENCE GRAIN AND RICE LLC,<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-11241 (CTG) |
| In re:<br><br>BAYOU GRAIN & CHEMICAL CORPORATION,<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-11242 (CTG) |

**DEBTORS' MOTION FOR ORDER DIRECTING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES FOR PROCEDURAL PURPOSES ONLY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (the "Motion") the Court for the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), authorizing and directing the joint administration of the Debtors' related chapter 11 cases for procedural purposes only. In support of this Motion, the Debtors file the Declaration of Kyle Sturgeon concurrently herewith, and state as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Bankruptcy Rule 1015(b), and Local Rule 1015-1.

**Background**

4. The Debtors, Agspring Mississippi Region, LLC ("AMR"), Agspring MS 1, LLC ("Agspring MS 1"), Agspring MS, LLC ("Agspring MS"), Lake Providence Grain and Rice LLC

("LPGR"), and Bayou Grain & Chemical Corporation ("BGCC"), are a family of companies commonly referred to for marketing and management purposes as "Big River Rice and Grain" ("Big River").

5.  On the date hereof (the "Petition Date"), the Debtors each commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the chapter 11 cases.

### A.   The Debtors' Corporate Structure

6.  AMR, a Delaware limited liability company, is the sole managing member of and wholly owns Agspring MS 1, a Delaware limited liability company, which, in turn, is the sole managing member of and wholly owns Agspring MS, a Delaware limited liability company, which in turn is the sole managing member of and wholly owns LPGR, a Delaware limited liability company, which, in turn, wholly owns BGCC, an Arkansas corporation.

7.  The Debtors are indirect subsidiaries of non-debtor Agspring Holdco, LLC ("Holdco") and Agspring, LLC ("Agspring").

### B.   The Debtors' Operations

8.  As subsidiaries of Agspring, the Debtors are part of a larger agribusiness and logistics company formed in August 2012 with the express aim of acquiring, consolidating, and operating midstream agricultural commodity firms.

9.  Between 2012 to 2015, Agspring's former founders and equity sponsor created

four agribusiness units: three business units focused on commodity purchasing and one providing logistics broker services.

10.     In August 2013, Agspring spent over $100 million to combine three companies operating in the Big River region (Tubbs Rice Dryers, Raley Brothers, and Bayou Grain and Chemical) to form one of these business units: the Debtors' businesses.  The Debtors were headquartered in Pioneer, Louisiana, with facilities in Delhi, Mer Rouge, Monticello, Lake Providence, and Crowville, Louisiana, as well as Eudora and Parkdale, Arkansas.

11.     From their inception in 2012 through 2019, the Debtors provided origination, grain drying, storage and handling, logistics, marketing and distribution, and risk management for the region's crops of soybeans, corn, rice, wheat and milo.  In 2018, the Debtors handled over 42 million bushels of grain and had commercial relationships with major companies including ADM, Cargill, Foster Farms, and Tyson.  The eight locations comprising the Debtors' operations have the capacity to store over 26 million bushels of grain, and include a barge terminal and loader capable of handling eight barges per day, and a location serviced by Kansas City Southern Railway capable of loading 25 railcar units of grain daily.

C.      **Events Precipitating Chapter 11**

12.     The Debtors had some early success, including (i) improved operations at the Big River barge loading facility in Lake Providence, resulting in greater delivery efficiencies for producers and improved environmental impact, and (ii) upgrading of platform scales to improve the rate at which grain could be dumped. However, the Debtors' historically high profit margins from 2012 were not sustainable. As operators of elevators and silos, the Debtors were

4

increasingly subject to competition from operators with ties to exporters and decreasing profit margins.

13. In 2015, the Debtors' former founders and equity sponsor sold the Debtors and affiliated nondebtors to American Infrastructure MLP Funds for $272 million (the "2015 Sale"). In relation thereto, Agspring incurred $80 million in loans (the "Term Loan"), which was guaranteed by certain Debtors. Agspring suffered significantly lower EBITDA in 2016 than forecasted during the 2015 Sale process, which resulted in Agspring's inability to service the significant debt load taken on to finance the 2015 Sale. Agspring and Holdco are currently pursuing litigation against founders Brad Clark and Randal Linville and former equity owner NGP X US Holdings LP on fraud theories related to the 2015 Sale in Delaware Chancery Court

14. After its 2016 fiscal year, the Debtors' thin profit margins from increased market competition, combined with their level of debt obligations, made the continued successful operation of the Debtors unsustainable, and the lenders declared the Term Loan in default.

15. In addition to the issues raised above, during this same timeframe the Debtors experienced additional financial stress as participants in the agribusiness sector in general and grain sector in particular, which faced continued decline in demand and margins for the Debtors' products. Additionally, the larger Agspring family of companies had anticipated opportunities to exploit certain synergies that ultimately failed to materialize.

**D.    Transition of Operations to CGB**

16. To address the foregoing issues, in 2018, the Debtors entered into an agreement with Consolidated Grain and Barge Co. ("CGB"), a wholly owned subsidiary of CGB

Enterprises, Inc., to allow CGB to provide managerial and marketing services to the Debtors.

17. Subsequently, in June 2019, CGB and Big River entered into (a) a purchase agreement whereby Big River sold the operational aspects of the business, including the contracts and inventory, to CGB (the "Purchase Agreement"), (b) two separate five-year leases of land, grain storage facilities, and other real and personal property to CGB (the "Leases"), and (c) a number of agreements ancillary to the Purchase Agreement and the Leases (the "CGB Ancillaries," and together with the Purchase Agreement and the Leases, the "CGB Transaction"). Pursuant to the CGB Transaction, CGB took over all operations formerly conducted by the Debtors, and, consequently, the Debtors currently have no employees or operations.

18. CGB continues to lease and use the facilities and assets for grain and other crop storage, processing, handling, shipment and related operations. Pursuant to the Leases, CGB pays the Debtors $750,000 per year in rent. The Leases each have a five-year term, with an early termination option after two years in the event of a sale of a leased property, subject to a right of first refusal in favor of CGB.

**E.     Sale and Chapter 11 Filing**

19. In late 2019, Larry G. Tubbs and certain entities in which he held stock and/or membership interests (Tubbs Rice Dryers, Inc., Big River Grain, LLC, and Chief Ventures, LLC, and together with Tubbs, the "Tubbs Plaintiffs") filed suit against AMR and certain nondebtors. The Tubbs Plaintiffs had sold certain properties (the "Tubbs Properties") that became part of the Big River assets in 2013 and received a promissory note in return. The litigation with the Tubbs Plaintiffs is ongoing.

20.     In early 2021, Agspring engaged Piper Sandler ("Piper") as their investment banker to market all the assets of the Agspring family of companies, including the Debtors' assets.  Piper vigorously marketed the assets, and as a result of their efforts, the Debtors entered into substantive negotiations with an investor in the industry, which ultimately resulted in an offer for a significant percentage of the Debtors' assets (not including the Tubbs Property) for $30.5 million.

21.     On September 8, 2021, the Debtors appointed Kyle Sturgeon as the Chief Restructuring Officer to assist the Debtors in the sale of their assets, to forecast and manage their liquidity, and to provide advice and recommendations regarding their restructuring.

22.     The Debtors' ultimate goal is to preserve the going-concern value of the Debtors' businesses, their stakeholders, and parties in interest, and to effectuate an orderly sale process and liquidation.

### **Relief Requested**

23.     By this Motion, the Debtors seek entry of an order directing the joint administration of their chapter 11 cases and the consolidation thereof for procedural purposes only. The Debtors also request that the caption of their chapter 11 cases be modified to reflect their joint administration as follows:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGSPRING MISSISSIPPI REGION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11238 (CTG)<br><br>(Jointly Administered) |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

24. In addition, the Debtors request that the Court direct the Clerk of this Court (the "Clerk") to make a notation substantially similar to the following on the docket of each Debtor:

> An order (the "Joint Administration Order") has been entered in this case directing the joint administration of the chapter 11 cases listed below for procedural purposes only. The docket in Case No. 21-11238 (CTG) should be consulted for all matters affecting this case. The following chapter 11 cases are jointly administered pursuant to the Joint Administration Order: Agspring Mississippi Region, LLC, 21-11238 (CTG); Agspring MS 1, LLC, 21-11239 (CTG); Agspring MS, LLC, 21-11240 (CTG); Lake Providence Grain and Rice LLC, 21-11241 (CTG); Bayou Grain & Chemical Corporation, 21-11242 (CTG).

25. Finally, the Debtors request that the Court permit use of a combined service list and correspondingly combined notices.

26. Bankruptcy Rule 1015(b) provides, in relevant part, that "[i]f . . . two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b). The Debtors are "affiliates" of each other as that term is defined in section 101(2) of the Bankruptcy Code, as AMR directly or indirectly owns 100% of the stock or membership interests in, or otherwise

controls, the other Debtors. 11 U.S.C. § 101(2). Further, the Debtors comprise a single integrated business, expressly combined in 2013 and continuing to operate on an integrated basis in the industry as Big River. Moreover, since 2019, CGB has further integrated the Debtors' operations pursuant to the CGB Transaction. Thus, joint administration for procedural purposes is proper.

27.  Local Rule 1015-1 provides additional authority for the Court to order joint administration of these chapter 11 cases:

> An order of joint administration may be entered, without notice and an opportunity for hearing, upon the filing of a motion for joint administration pursuant to Fed. R. Bankr. P. 1015, supported by an affidavit, declaration or verification, which establishes that the joint administration of two or more cases pending in the Court under title 11 is warranted and will ease the administrative burden for the Court and the parties. An order of joint administration entered in accordance with this Local Rule may be reconsidered upon motion of any party in interest at any time. An order of joint administration under this Local Rule is for procedural purposes only and shall not cause a "substantive" consolidation of the respective debtors' estates.

Del. Bankr. L.R. 1015-1.

28.  Joint administration of the Debtors' cases is warranted because it will ease the administrative burden on the Court and all parties in interest. Joint administration of the Debtors' cases will eliminate the need for duplicate pleadings, notices, and orders on each of the respective dockets and will save the Court, the Debtors, and other parties in interest substantial time and expense when preparing and filing such documents. Further, joint administration will protect parties in interest by ensuring that they will be apprised of the various motions filed with the Court with respect to each of the Debtors' cases. Therefore, joint administration of the Debtors' cases is appropriate under Bankruptcy Rule 1015(b) and Local Rule 1015-1.

29. Joint administration will not adversely affect the Debtors' respective constituencies because this Motion seeks only administrative, not substantive consolidation of the Debtors' estates. Parties in interest will not be harmed by the relief requested; instead, parties in interest will benefit from the cost reductions associated with the joint administration of these chapter 11 cases. Accordingly, the Debtors submit that the joint administration of these chapter 11 cases is in the best interests of their estates, their creditors, and all other parties in interest.

30. Finally, the Debtors submit that use of the simplified caption, without reference to the Debtors' full tax identification numbers, addresses, and previous names will eliminate cumbersome and confusing procedures and ensure uniformity of pleading identification. Other case-specific information will be listed in the petitions for the respective Debtors, and such petitions are publicly available and will be provided by the Debtors upon request. Therefore, the Debtors submit the policies behind the requirements of section 342(c)(1) of the Bankruptcy Code and Bankruptcy Rules 1005 and 2002(n) have been fully satisfied.

## No Previous Request

31. No previous motion or application for the relief sought herein has been made to this or any other court.

## Notice

32. Notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel to the Debtors' prepetition and post-petition secured lenders; and (c) the Debtors' twenty largest unsecured creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors

will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing the joint administration of the Debtors' cases for procedural purposes only, (b) directing the Clerk to make the docket entries set forth herein, and (c) granting such other and further relief as is proper.

Dated: September 10, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel (*Pro Hac Vice* Pending)
Tania M. Moyron (*Pro Hac Vice* Pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email:  samuel.maizel@dentons.com
            tania.moyron@dentons.com

-and-


**DENTONS US LLP**

David F. Cook (Bar Number 006352)
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Email: david.f.cook@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*