**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGSPRING MISSISSIPPI REGION, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11238 (CTG)<br>(Jointly Administered) |

Objection Deadline: October 8, 2021 at 4:00 p.m. (ET)
Hearing Date:  October 15, 2021 at 1:00 p.m. (ET)

**DEBTORS' MOTION TO RETAIN AND EMPLOY MERU, LLC
TO PROVIDE A CHIEF RESTRUCTURING OFFICER AND
ADDITIONAL PERSONNEL AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this motion (the "Motion") for entry of an order (the "Order") substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to (a) retain and employ MERU, LLC ("MERU") to provide the Debtors with a Chief Restructuring Officer ("CRO"), and certain additional MERU personnel (the "Additional Staff"), effective as of the Petition Date (defined below), on the terms set forth in that certain engagement letter, dated as of September 8, 2021 and annexed as **Exhibit 1** to **Exhibit A** attached hereto (the "Engagement Letter"), and (b) designate Kyle Sturgeon as the Debtors' CRO effective as of the Petition Date, and (ii) granting related relief.  In support of this Motion, the Debtors submit the *Declaration of Kyle Sturgeon* (the "Sturgeon Declaration") attached hereto as **Exhibit B**, and respectfully state as follows:

**Jurisdiction**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), as well as Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2016-1 and 2016-2.

## Background

4. On September 10, 2021 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

5. The Debtors historically were a leading grain and oilseed handler in Louisiana and Arkansas, and are a family of companies commonly referred to for marketing and management purposes as "Big River Rice and Grain."

6. The Debtors are part of a larger agribusiness and logistics company formed in August 2012 with the express aim of acquiring, consolidating, and operating midstream agricultural commodity firms.

7. Additional background regarding the Debtors' businesses and operations and the events leading to the commencement of the Chapter 11 Cases can be found in the *Declaration of*

*Kyle Sturgeon*, which was filed on September 15, 2021 [Docket No. 19] and is incorporated herein by reference.

### Relief Requested and Qualifications of MERU and Mr. Sturgeon

8.    The Debtors have determined that the ongoing services of MERU, Mr. Sturgeon, and the Additional Staff will substantially enhance their attempts to maximize the value of their estates. MERU, Mr. Sturgeon, and the Additional Staff are well-qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings. As such, the Debtors request authorization to utilize MERU, Mr. Sturgeon, and the Additional Staff as appropriate, and specifically, have Mr. Sturgeon appointed to the position of CRO.

9.    MERU is well-qualified to represent the Debtors in connection with the types of services requested herein. MERU is an advisory firm that specializes in financial and operational corporate restructuring, operational turnaround advisory, operational and commercial due diligence, and computations involved in-and-out of court proceedings. MERU has a wealth of experience in providing chief restructuring and financial advisory services and enjoys an excellent reputation for services it has rendered in complex chapter 11 cases on behalf of debtors and creditors.

10.    MERU has extensive experience in assisting distressed businesses. The experience of its personnel spans a multitude of bankruptcy cases, including: *In re SD-Charlotte, LLC*, No. 20-30149 (LTB) (Bankr. W.D.N.C. Feb. 7, 2020); *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. Apr. 15, 2019); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del. Feb. 9, 2017); *In re Appvion Paper, Inc.*, No. 17-12082 (KJC) (Bankr. D. Del. Oct. 1, 2017); *In re Verso Corporation*, No. 16-10163 (KG) (Bankr. D. Del. Jan. 26, 2016); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 8, 2014); *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. W.D. Ark. Oct. 28, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-

36495 (KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL) (Bankr. S.D.N.Y. Mar. 19, 2012); *In re AMR Corporation, et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011); *In re Maronda Homes, Inc.*, No. 11-22418 (JKF) (Bankr. W.D. Pa. Apr. 18, 2011); *In re Vitro America, LLC*, No. 10-47473 (ML) (Bankr. N.D. Tex. Nov. 17, 2010); *In re Qimonda North America Corp., et al.*, No. 09-10589 (MFW) (Bankr. D. Del. Feb. 20, 2009); and *In re Mercedes Homes, Inc.*, No. 09-11191 (PGH) (Bankr. S.D. Fla. Jan. 26, 2009).

11. MERU has been engaged by Agspring Holdco LLC ("Holdco"), an affiliate of the Debtors, since November 2020. MERU has spent hundreds of hours meeting with the Debtors' management team, reviewing the Debtors' business operations, balance sheet and liabilities, material agreements, financial projections, appraisals, and other relevant information that helped it form a view as to the viability of the Debtors as a going concern absent a significant restructuring. As a result, MERU has acquired significant knowledge of the Debtors and their businesses and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. Mr. Sturgeon has served as the Debtors' CRO since September 8, 2021. In providing prepetition services to the Debtors, MERU has worked closely with the Debtors' board of directors, management, and their other advisors and counsel. Accordingly, MERU has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.

12. The Debtors also propose to designate Mr. Sturgeon as their CRO in these chapter 11 cases, effective as of the Petition Date. Mr. Sturgeon is a co-founder and Managing Partner of MERU and is based in Atlanta, Georgia. Mr. Sturgeon is a certified insolvency and restructuring advisor. Mr. Sturgeon has extensive experience as a financial restructuring advisor and has provided advisory services to management for companies across multiple industries with typical annualized revenues between $50 million and $4 billion. He has had great success optimizing

stakeholder value by providing advisory services to management, owners, boards of directors, senior secured lenders, bondholders, and private equity firms across a broad spectrum of industries. Prior to co-founding MERU, he was a Senior Vice President in the Recovery & Transformation Services group at McKinsey & Company from 2013 to 2017. Prior to that, he was a Director in the North American Corporate Restructuring Practice at Alvarez & Marsal from 2006 to 2013.

13. The Debtors believe that MERU is able to advise them in a cost-effective, efficient, and timely manner. The Debtors submit that the retention of MERU and the designation of Mr. Sturgeon as CRO on the terms and conditions set forth herein are necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

**Services to be Provided**

14. The Debtors seek to retain MERU to provide the Debtors with a CRO and Additional Staff as necessary on the terms and conditions set forth in the Engagement Letter[1] and any order granting the relief requested herein.

15. MERU will provide CRO services to the Debtors as directed by the Debtors' Board of Directors (the "Board") and will report to the Board. Generally, the CRO shall perform activities and services customarily performed by a chief restructuring officer, including having control over: (a) the financial and operational functions of the Debtors; (b) the development of any cost reduction programs or asset conservation measures with respect to the Debtors and any

---

[1] The summaries of the Engagement Letter (and indemnification provisions set forth therein) contained in this Motion are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

underlying analysis thereof; and (c) all elements of the restructuring process with respect to the Debtors. These services may include, but are not limited to:

a) Leading the Debtors' assessment of restructuring options and strategic alternatives and providing advice and recommendations to the Board in its evaluation and decision regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various businesses and assets;

b) Working with the Debtors' investment banker to manage and oversee the sales and marketing process of the Company and providing ongoing advice and strategic recommendations to the Board based on the progress, market information and feedback, and other relevant data gathered throughout the sales and marketing process;

c) Assisting the Debtors in assembling due diligence materials and preparing for a sale process, as requested;

d) Working with the Debtors' counsel to identify and evaluate the risk and any mitigation associated with potential restructuring plans and strategic alternatives and providing advice and recommendations to the Board regarding the same;

e) Advising and assisting in the strategic plans and development of retention plans for key employees through the sale or restructuring process, as requested;

f) Assisting the Company's Chief Financial Officer with augmented forecasting and liquidity management, if required, pursuant to the bankruptcy process;

g) Developing a thorough understanding of the Company's business plan, the key drivers of business performance for each business units, and the Debtors' 2021 financial forecast;

    h)    Assessing the reasonability of this forecast, including any related key drivers, and assist the Company with revising if necessary;

    i)    Assisting the Company's counsel in assembling due diligence materials and preparing necessary court filings;

    j)    As appropriate, serving as declarants for factual information to which the Engagement Staff can adequately testify;

    k)    Advising, assisting, and/or managing, as appropriate, communications and/or negotiations with outside stakeholders, including lenders (and their advisors), customers, regulatory agencies, suppliers and employees; and

    l)    Providing other services as requested or directed by the Board or other Company personnel as authorized by the Board and agreed to by MERU.

16.    These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their chapter 11 cases.

## No Duplication of Services

17.    The services provided by MERU will complement, and not duplicate, the services to be rendered by other professionals retained in the chapter 11 cases.

## MERU's Disinterestedness

18.    To the best of the Debtors' knowledge, information, and belief, no fact or situation exists that would represent a conflict of interest for MERU with regard to the Debtors.

19.    Although the Debtors believe that neither MERU nor the Additional Staff is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code, the Sturgeon Declaration discloses certain connections with parties in interest in these chapter 11 cases. As disclosed above, MERU has been engaged by Holdco, a non-Debtor affiliate of the Debtors, since November 2020. MERU continues to perform work for Holdco and affiliated non-

Debtors under separate engagement agreements on matters unrelated to these chapter 11 cases. Additionally, in a matter unrelated to these chapter 11 cases, MERU is advising a creditor in the bankruptcy of Pipeline Foods, LLC ("Pipeline"), and Pipeline's primary equity holder is also a lender to a non-Debtor affiliate of the Debtors.

20. To the best of the Debtors' knowledge, information, and belief, other than as set forth above and in the Sturgeon Declaration, MERU: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee, this Court, or any person employed in this Court; and (b) does not hold any interest adverse to the Debtors' estates. As set forth in the Sturgeon Declaration, if any new material facts or relationships are discovered or arise, MERU will provide the Court with a supplemental declaration disclosing, among other things, any new material facts and relationships between the Debtors, the Additional Staff, or other significant parties in interest.

## Terms of Retention

21. As set forth in the Engagement Letter, the Debtors have agreed to, among other things: (a) compensate and reimburse MERU for services provided and expenses incurred by the CRO and Additional Staff; and (b) indemnify MERU and its personnel, including the CRO, in accordance with the terms of the Engagement Letter as modified by the form of Order attached hereto.

**A.    Compensation and Expenses**

22. MERU's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for out-of-pocket expenses it incurs in accordance with its customary billing practices (the "Fee and Expense Structure").

23. The Debtors propose to compensate MERU on an hourly basis, plus reimbursement of actual, necessary expenses and other charges. The current standard hourly rates of MERU's professionals are:

| **Partners/Managing Partners** | $600-$750 |
| **Senior Directors/Principals** | $475-600 |
| **Vice Presidents/Directors** | $350-$475 |
| **Analysts/Associates** | $200-$350 |
| **Senior Advisors** | $400-$750 |

24. For this engagement, Mr. Sturgeon's hourly rate will begin at $650.

25. The hourly rates set forth above are set at a level designed to fairly compensate MERU, to cover fixed and routine overhead expenses, and are subject to periodic adjustments[2] necessitated by market and other conditions.

26. Beyond the rates listed above, the Debtors shall reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger, and telephone charges.

27. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by MERU and other comparable firms that render similar services under similar circumstances. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate MERU fairly for its work and to cover fixed and routine overhead expenses.

**B. Indemnification**

28. As a material part of the consideration for which MERU has agreed to provide the services described herein, and pursuant to the Engagement Letter, including the indemnification provisions attached thereto and incorporated by reference therein (the "Indemnification

---

[2] The Engagement Letter provides that these "rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally."

Provisions"), the Debtors have agreed to indemnify and hold harmless MERU (including its affiliates and its and their partners, director, officers, employees, and agents) and the CRO, (collectively, the "Indemnified Parties") under certain circumstances;[3] *provided, however*, that MERU, which in the Engagement Letter "acknowledge[d] that, during the pendency of any Bankruptcy Court approved retention, [the Indemnification Provisions] are subject to modification as may be stated within the Bankruptcy Court's retention order," and which also excepted indemnification " in the event of MERU's gross negligence, willful misconduct or bad faith," and the other Indemnified Parties shall not be entitled to indemnification of any costs, fees, expenses, damages, and liabilities for any claim which arises out of gross negligence, bad faith or willful misconduct, as finally adjudicated by a finder of fact; *and, provided further*, that such indemnification shall be permitted only in accordance with the Court's order approving MERU's retention in this matter.[4]

## Fees and Reporting

29. Upon Court approval of the relief requested herein, MERU will be retained to provide the Debtors with the CRO and Additional Staff as necessary, pursuant to section 363 of the Bankruptcy Code. Because MERU is not being employed as a professional under section 327 of the Bankruptcy Code, MERU will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

30. Instead, MERU will file with the Court and serve copies on (i) the Debtors, (ii) proposed counsel for the Debtors, (iii) counsel for the Debtors' secured lenders; (iv) counsel to

---

[3] In summary, the Debtors agreed to indemnify MERU from liability incurred by MERU in connection with MERU's engagement pursuant to the Engagement Letter, including paying damages and reasonable expenses.

[4] The form of proposed order attached hereto would permit the Debtors to indemnify those persons serving as executive officers (including the CRO) on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director and officer liability insurance policies; but not permit any other indemnification.

10

any official committee of unsecured creditors or other official committee, (v) any fee examiner appointed in these cases, and (vi) the U.S. Trustee (collectively, the "<u>Notice Parties</u>"), a monthly report (the "<u>Monthly Staffing Report</u>") by the 20th of each month, which report will include the names of and hours worked by the CRO, and all full- and part-time Additional Staff involved in these chapter 11 cases for the previous calendar month, and a summary of reimbursable expenses incurred for the relevant period.  The Monthly Staffing Report will further summarize hours worked by activity category (e.g., financial management, operational management, hearings, etc.) and reimbursable expenses by expense category.  The time records shall (i) be appended to the Monthly Staffing Reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category (but may be redacted to protect any attorney-client privilege or other applicable privilege).  The CRO and Additional Staff will maintain time entry records summarizing major activities and issues that they addressed, and the time entries shall identify the time spent completing each task in quarter-hour increments.  The Notice Parties shall have 14 days after the date each Monthly Report is served on the Notice Parties to object to such Monthly Staffing Report.  In the event an objection is raised and not consensually resolved between the Debtors and the objecting party, the objected-to portion of the Monthly Staffing Report shall be subject to review of the Court.  MERU will file its first Monthly Staffing Report by October 20, 2021 for the period covering the Petition Date through September 30, 2021.

31. Subject to the Notice Parties' rights to object as set forth above, the Debtors seek authority to pay, in the ordinary course of business, all amounts invoiced by MERU for fees and expenses incurred in connection with MERU's retention.  The Debtors do not, at this time, seek pre-approval of any success fees, transaction fees, or other back-end fees in connection with MERU's retention; however, they reserve the right to seek approval of payments of that nature by the Court at the conclusion of the cases on a reasonable standard basis.

32.     As set forth in the Engagement Letter, MERU received $115,000 as a retainer from the Debtors (the "<u>Retainer</u>").[5]  The purpose of the Retainer was to secure the payment of professional fees to MERU.  MERU has applied the Retainer to the applicable prepetition invoices for bankruptcy representation.  MERU has agreed to waive any claim for additional prepetition amounts (if any) to the extent such amounts exceed the Retainer.  In the 90 days prior to the Petition Date, other than the Retainer, MERU received no other payments from the Debtors.  The Debtors are not aware of any asserted or threatened disputes against MERU or the Additional Staff on account of their services provided before the Petition Date.

33.     Given the numerous issues which the Additional Staff may be required to address in the performance of their services, MERU's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services in an in-court and out-of-court context, the Debtors submit that the fee arrangements set forth in this Motion and in the Engagement Letter are reasonable.

## Basis for Relief

34.     The Debtors seek to employ and retain MERU, and designate Mr. Sturgeon as CRO pursuant to section 363 of the Bankruptcy Code, effective as of the Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

---

[5] As disclosed below, MERU has been engaged by non-Debtor affiliates and is continuing to work for those entities on matters unrelated to the Cases pursuant to separate engagement agreements.

35. Under applicable case law in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

36. The relief requested herein is appropriate and warranted under each of the above standards. The decision to retain MERU, designate Mr. Sturgeon as CRO, and utilize the Additional Staff should be authorized because it is based on a sound exercise of the Debtors' business judgment. First, as described above, Mr. Sturgeon has extensive experience as a chief restructuring officer and financial advisor for many troubled companies. The Debtors believe that Mr. Sturgeon and the Additional Staff will provide services that substantially benefit the Debtors' estates and creditors. MERU has extensive experience in providing turnaround and crisis management services in chapter 11 proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

37. Second, Mr. Sturgeon and the Additional Staff, working in conjunction with the Board and senior management, have already proven to be of invaluable assistance to the Debtors in analyzing their businesses, negotiating debtor in possession financing, developing debtor in

possession financing budgets, developing cash flow projections, assisting in short-term cash management activities, evaluating strategic alternatives, developing due diligence materials, interfacing with the multiple secured lenders and their advisors, and preparing the Debtors for their chapter 11 cases.

38.     Finally, through negotiations, the Debtors have been able to retain MERU and secure the services of Mr. Sturgeon and the Additional Staff during these chapter 11 cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates.  Moreover, the compensation arrangement provided for in this Motion and the Engagement Letter is consistent with and typical of arrangements entered into by MERU and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

39.     Courts in this district have approved relief similar to the relief requested in this Motion.  *See, e.g.*, *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021) (Docket No. 221); *In re 24 Hour Fitness Worldwide, Inc.*, Case No. 20-11558 (KBO) (Bankr. D. Del. July 13, 2020) (Docket No. 546); *In re TZEW Holdco LLC, et al.,* Case No. 20-10910 (CSS) (Bankr. D. Del. May 7, 2020) (Docket No. 200); *In re AH Liquidation, Inc.*, Case No. 21-10883 (CTG) (Docket No. 145).[6]

40.     The retention of MERU and the employment of Mr. Sturgeon and the Additional Staff is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases.  The Debtors additionally believe that MERU is well-qualified and able to represent the Debtors in a cost effective, efficient, and timely manner.  MERU has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.  The retention of MERU and the designation of Mr.

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Sturgeon as CRO, on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interests of the Debtors' estates, creditors, and other parties in interest, and should be granted in these chapter 11 cases.

### Request for Approval of Retention Effective as of the Petition Date

41. The Debtors request that MERU's retention be made effective as of the Petition Date in order to allow MERU to be compensated for the work performed for the Debtors prior to the Court's consideration and approval of this Motion. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if MERU is not immediately retained, retroactive approval to the Petition Date is warranted.[7] *See e.g., FIS Airlease II, Inc. v. Simon (In re FIS Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); *In re Garden Ridge Corp.*, 326 B.R. 278, 281 (Bankr. D. Del. 2005); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

42. Notice of this Motion shall be given to the following parties: (a) the Office of the U.S. Trustee; (b) counsel to the Debtors' prepetition and post-petition secured lenders; (c) the Debtors' largest unsecured creditors on a consolidated basis; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

43. No prior request for the relief sought in this Motion has been made to this Court or any other court.

---

[7] Local Rule 2014-1(b) provides, in relevant part: "If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise."

15

US_Active\118993362\V-5

WHEREFORE, the Debtors respectfully request the entry of an Order in the form annexed hereto as **Exhibit A**, (i) granting this Motion, (ii) authorizing the Debtors to engage Mr. Sturgeon to act as the Debtors' CRO, and MERU and the Additional Staff to support Mr. Sturgeon during the pendency of these chapter 11 cases upon the terms and conditions contained in the Engagement Letter effective as of the Petition Date, and (iii) granting such other and further relief as may be just and proper.

Dated: September 24, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

-and –

**DENTONS US LLP**

Samuel R. Maizel (Admitted *Pro Hac Vice*)
Tania M. Moyron (Admitted *Pro Hac Vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: samuel.maizel@dentons.com
tania.moyron@dentons.com

-and-

David F. Cook (Bar Number 006352)
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Email: david.f.cook@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

16