# Exhibit B

US_Active\118993362\V-5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGSPRING MISSISSIPPI REGION, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11238 (CTG)<br>(Jointly Administered) |

**DECLARATION OF KYLE STURGEON IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN MERU, LLC TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL STAFF AND (B) DESIGNATE KYLE STURGEON AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, IN EACH CASE EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

I, Kyle Sturgeon, declare under penalty of perjury as follows:

1. I am a managing partner at MERU, LLC ("MERU").

2. I am duly authorized to submit this declaration (the "Declaration") on behalf of MERU in support of the above-captioned debtors' (the "Debtors") *Motion for Entry of an Order (I) Authorizing the Debtors to (A) Retain MERU, LLC to Provide the Debtors with a Chief Restructuring Officer and Additional Staff and (B) Designate Kyle Sturgeon as Chief Restructuring Officer for the Debtors, in Each Case Effective as of the Petition Date, and (II) Granting Related Relief* (the "Motion").[1]  Certain of the information set forth herein is derived from my review of the Debtors' books and records.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

**MERU'S Qualifications**

3. MERU is well-qualified to represent the Debtors in connection with the types of services requested in the Motion and set forth herein.  MERU is an advisory firm that specializes in financial and operational corporate restructuring, operational turnaround advisory, operational

---
[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

3

and commercial due diligence, and computations involved in-and-out of court proceedings. MERU has a wealth of experience in providing chief restructuring and financial advisory services and enjoys an excellent reputation for services it has rendered in complex chapter 11 cases on behalf of debtors and creditors.

    4.    MERU has extensive experience in assisting distressed businesses. The experience of its personnel spans a multitude of bankruptcy cases, including: *In re SD-Charlotte, LLC*, No. 20-30149 (LTB) (Bankr. W.D.N.C. Feb. 7, 2020); *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. Apr. 15, 2019); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del. Feb. 9, 2017); *In re Appvion Paper, Inc.*, No. 17-12082 (KJC) (Bankr. D. Del. Oct. 1, 2017); *In re Verso Corporation*, No. 16-10163 (KG) (Bankr. D. Del. Jan. 26, 2016); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 8, 2014); *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. W.D. Ark. Oct. 28, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076 (SHL) (Bankr. S.D.N.Y. Mar. 19, 2012); *In re AMR Corporation, et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011); *In re Maronda Homes, Inc.*, No. 11-22418 (JKF) (Bankr. W.D. Pa. Apr. 18, 2011); *In re Vitro America, LLC*, No. 10-47473 (ML) (Bankr. N.D. Tex. Nov. 17, 2010); *In re Qimonda North America Corp., et al.*, No. 09-10589 (MFW) (Bankr. D. Del. Feb. 20, 2009); and *In re Mercedes Homes, Inc.*, No. 09-11191 (PGH) (Bankr. S.D. Fla. Jan. 26, 2009).

    5.    MERU has been engaged by Agspring Holdco LLC ("Holdco"), an affiliate of the Debtors, since November 2020. MERU has spent hundreds of hours meeting with the Debtors' management team, reviewing the Debtors' business operations, balance sheet and liabilities, material agreements, financial projections, appraisals, and other relevant information that helped it form a view as to the viability of the Debtors as a going concern absent a significant restructuring. As a result, MERU has acquired significant knowledge of the Debtors and their

businesses and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. In providing prepetition services to the Debtors, MERU has worked closely with the Debtors' board of directors, management, and their other advisors and counsel. Accordingly, MERU has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.

6. In addition, on September 8, 2021, the Debtors appointed me to act as their CRO to assist them in the sale of their assets, to forecast and manage their liquidity, and to provide advice and recommendations regarding their restructuring. I am well-positioned to continue serving them in such role in their chapter 11 cases, and to help them achieve their ultimate goal of preserving the going-concern value of the Debtors' businesses, their stakeholders, and parties in interest, and to effectuate an orderly sale process and liquidation. In addition to being a Managing Partner of MERU, I am also its co-founder, based in Atlanta, Georgia. I am a certified insolvency and restructuring advisor. I have extensive experience as a financial restructuring advisor and have provided advisory services to management for companies across multiple industries with typical annualized revenues between $50 million and $4 billion. I have had great success optimizing stakeholder value by providing advisory services to management, owners, boards of directors, senior secured lenders, bondholders, and private equity firms across a broad spectrum of industries. Prior to co-founding MERU, I was a Senior Vice President in the Recovery & Transformation Services group at McKinsey & Company from 2013 to 2017. Prior to that, I was a Director in the North American Corporate Restructuring Practice at Alvarez & Marsal from 2006 to 2013.

7. MERU is able to advise the Debtors in a cost-effective, efficient, and timely manner.

**Services to Be Rendered**

8. MERU intends to provide the Debtors with a CRO and Additional Staff as necessary on the terms and conditions set forth in the Engagement Letter and any order granting the relief requested in the Motion. MERU will provide CRO services to the Debtors as directed by the Debtors' Board of Directors (the "Board") and will report to the Board.

9. Generally, I will perform activities and services customarily performed by a chief restructuring officer, including having control over: (a) the financial and operational functions of the Debtors; (b) the development of any cost reduction programs or asset conservation measures with respect to the Debtors and any underlying analysis thereof; and (c) all elements of the restructuring process with respect to the Debtors. These services may include, but are not limited to:

   a) Leading the Debtors' assessment of restructuring options and strategic alternatives and provide advice and recommendations to the Board in its evaluation and decision regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various businesses and assets;

   b) Working with the Debtors' investment banker to manage and oversee the sales and marketing process of the Company and provide ongoing advice and strategic recommendations to the Board based on the progress, market information and feedback, and other relevant data gathered throughout the sales and marketing process;

   c) Assisting the Debtors in assembling due diligence materials and preparing for a sale process, as requested;

d) Working with the Debtors' counsel to identify and evaluate the risk and any mitigation associated with potential restructuring plans and strategic alternatives and providing advice and recommendations to the Board regarding the same;

e) Advising and assisting in the strategic plans and development of retention plans for key employees through the sale or restructuring process, as requested;

f) Assisting the Company's Chief Financial Officer with augmented forecasting and liquidity management, if required, pursuant to the bankruptcy process;

g) Developing a thorough understanding of the Company's business plan, the key drivers of business performance for each business units, and the Debtors' 2021 financial forecast;

h) Assessing the reasonability of this forecast, including any related key drivers, and assist the Company with revising if necessary;

i) Assisting the Company's counsel in assembling due diligence materials and preparing necessary court filings;

j) As appropriate, serving as declarants for factual information to which the Engagement Staff can adequately testify;

k) Advising, assisting, and/or managing, as appropriate, communications and/or negotiations with outside stakeholders, including lenders (and their advisors), customers, regulatory agencies, suppliers and employees; and

l) Providing other services as requested or directed by the Board or other Company personnel as authorized by the Board and agreed to by MERU.

10. I believe these services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their chapter 11 cases.

**Terms of Retention**

11.     MERU's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter and the Motion.

12.     The current standard hourly rates of MERU's professionals are:

| **Partners/Managing Partners** | $600-$750 |
|---|---|
| **Senior Directors/Principals** | $475-600 |
| **Vice Presidents/Directors** | $350-$475 |
| **Analysts/Associates** | $200-$350 |
| **Senior Advisors** | $400-$750 |

13.     For this engagement, my hourly rate will begin at $650.

14.     The hourly rates set forth above are set at a level designed to fairly compensate MERU, to cover fixed and routine overhead expenses, and are subject to periodic adjustments necessitated by market and other conditions. As set forth in the Engagement Letter, these "rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally."

15.     Beyond the rates listed above, the Debtors will reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger, and telephone charges.

**Indemnification**

16.     As a material part of the consideration for which MERU has agreed to provide the services described herein, and pursuant to the Engagement Letter, including the indemnification provisions attached thereto and incorporated by reference therein (the "Indemnification Provisions"), the Debtors have agreed to indemnify and hold harmless MERU (including its affiliates and its and their partners, director, officers, employees, and agents) and me as CRO, (collectively, the "Indemnified Parties") under certain circumstances, in connection with MERU's

8

engagement pursuant to the Engagement Letter, including paying damages and reasonable expenses; *provided, however*, that MERU acknowledges that, during the pendency of any retention approved by this Court, the Indemnification Provisions are subject to modification as may be stated within the Court's retention order, that indemnification does not apply in the event of MERU's gross negligence, willful misconduct, or bad faith, and that the other Indemnified Parties shall not be entitled to indemnification of any costs, fees, expenses, damages, and liabilities for any claim which arises out of gross negligence, bad faith or willful misconduct, as finally adjudicated by a finder of fact; *and, provided further*, that such indemnification shall be permitted only in accordance with the Court's order approving MERU's retention in this matter.

## Fees and Reporting

17.  Upon Court approval of the relief requested in the Motion, MERU will not be employed as a professional under section 327 of the Bankruptcy Code, and MERU will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, MERU will file with the Court and serve copies on the Notice Parties a monthly report (the "Monthly Staffing Report") by the 20th of each month, which report will include the names of and hours worked by the CRO, and all full- and part-time Additional Staff involved in these chapter 11 cases for the previous calendar month, and a summary of reimbursable expenses incurred for the relevant period. The Monthly Staffing Report will further summarize hours worked by activity category (e.g., financial management, operational management, hearings, etc.) and reimbursable expenses by expense category. The time records shall (i) be appended to the Monthly Staffing Reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category (but may be redacted to protect any attorney-client privilege or other applicable privilege). The CRO and Additional Staff will maintain time entry records summarizing major activities and issues that they addressed, and the time entries shall identify

9

the time spent completing each task in quarter-hour increments. The Notice Parties shall have 14 days after the date each Monthly Report is served on the Notice Parties to object to such Monthly Staffing Report. In the event an objection is raised and not consensually resolved between the Debtors and the objecting party, the objected-to portion of the Monthly Staffing Report shall be subject to review of the Court. MERU will file its first Monthly Staffing Report by October 20, 2021 for the period covering the Petition Date through September 30, 2021.

18. As set forth in the Engagement Letter, MERU received $115,000 as a retainer from the Debtors (the "Retainer").[2] (As disclosed below, MERU has been engaged by non-Debtor affiliates and is continuing to work for those entities on matters unrelated to the Cases pursuant to separate engagement agreements.) The purpose of the Retainer was to secure the payment of professional fees to MERU. MERU has applied the Retainer to the applicable prepetition invoices for bankruptcy representation. MERU has agreed to waive any claim for additional prepetition amounts (if any) to the extent such amounts exceed the Retainer. In the 90 days prior to the Petition Date, other than the Retainer, MERU received no other payments from the Debtors.

19. I am not aware of any asserted or threatened disputes against MERU or its personnel on account of any services provided to the Debtors before the Petition Date.

20. I believe that the compensation structure described above and set forth in the Engagement Letter and the Motion is consistent with and typical of compensation arrangements entered into by MERU and other comparable firms that render similar services under similar circumstances. I further believe that the compensation structure is reasonable, market-based, and designed to compensate MERU fairly for its work and to cover fixed and routine overhead expenses.

---

[2] MERU has been engaged by non-Debtor affiliates and is continuing to work for those entities on matters unrelated to the Cases pursuant to separate engagement agreements.

### No Duplication of Services

21. I believe that MERU's services will complement, and not duplicate, the services rendered by other professionals retained in these chapter 11 cases.

### MERU's Disinterestedness

22. In the ordinary course of its business, MERU maintains a database for purposes of performing "conflicts checks." The database contains information regarding its present and past representations and transactions.

23. In the process of preparing for these chapter 11 cases, I obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in herein (the "Potential Parties in Interest").

24. Based on my review, MERU represents that, to the best of its knowledge, MERU knows no fact or situation that would represent a conflict of interest for MERU with regard to the Debtors.

25. As disclosed above, MERU has been engaged by Holdco, a non-Debtor affiliate of the Debtors, since November 2020. MERU continues to perform work for Holdco and affiliated non-Debtors under separate engagement agreements on matters unrelated to these chapter 11 cases.

26. Additionally, in a matter unrelated to these chapter 11 cases, MERU is advising a creditor in the bankruptcy of Pipeline Foods, LLC ("Pipeline"), and Pipeline's primary equity holder is also a lender to a non-Debtor affiliate of the Debtors.

27. Other than as disclosed above, MERU has no current or past relationships with any Potential Parties in Interest. However, it is possible that MERU personnel have worked with Potential Parties in Interest. It is also possible that certain of MERU's employees, partners, equity

11

holders, or an affiliate of any of the foregoing may have financial accounts or insurance relationships with Potential Parties in Interest.

28. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, and except as set forth herein, neither I nor any MERU personnel: (a) have any connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee, the U.S. Bankruptcy Court for the District of Delaware, or any person employed in the Bankruptcy Court; and (b) does not hold any interest adverse to the Debtors' estates.

29. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, except as set forth herein, MERU is not currently engaged to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases. MERU will continue to provide professional services to entities that may be creditors or equity security holders of the Debtors or other parties in interest in these chapter 11 cases, including the Debtors' non-Debtor affiliates, provided that such services do not relate to, or have any direct connection with, the chapter 11 cases of the Debtors.

30. In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor MERU have entered into any agreements, express or implied, with any other party in interest, including any Debtor, any creditor, or any attorney for such party in interest in these chapter 11 cases (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estate in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for

12

payment of compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code.

31.     If MERU discovers any additional information that requires disclosure, MERU will provide the Court with a supplemental declaration disclosing, among other things, any new material facts and relationships between the Debtors, the Additional Staff, or other significant parties in interest.  MERU reserves the right to supplement this Declaration in the event MERU discovers any facts bearing on matters described in this Declaration regarding MERU's employment by the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 24, 2021                         */s/ Kyle Sturgeon*

                                                                    Kyle Sturgeon
                                                                    Managing Partner, MERU, LLC