IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AGSPRING MISSISSIPPI REGION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11238 (CTG)<br><br>(Jointly Administered)<br><br>Re: D.I. Nos. 81, 136 & 138 |

**OMNIBUS REPLY OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC TO (I) DEBTORS' OPPOSITION TO MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY AND (II) OBJECTION OF LVS II SPE XVIII LLC AND HVS V LLC TO MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY**

Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (collectively, the "Tubbs Parties"), by and through undersigned counsel, hereby submit this omnibus reply (the "Reply")[2] in support of the Tubbs' Parties Motion for Limited Relief from the Automatic Stay (the "Stay Relief Motion") [D.I. 81] to in reply to (i) Debtors' Opposition to Motion of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, LLC and Big River Grain, LLC for Limited Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code (the "Debtors' Objection") [D.I. 136] and (ii) the Objection of LVS II SPE XVIII LLC and HVS V LLC to Motion of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC for Limited Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code (the "LVS/HVS Objection") [D.I. 138]. The Stay Relief Motion seeks relief

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

[2] The arguments of the Debtors and of LVS/HVS are nearly identical, thus the Tubbs Parties submit this reply to both of the objections.

1

only to pursue a portion of the Motion for Partial Summary Judgment filed by the Tubbs Parties in Louisiana. ("MSJ").  Importantly, both the Debtors and LVS/HVS mistakenly suggest that the Tubbs parties are attempting to do more than have the Louisiana court determine the amount due on the note owed to them.  The Tubbs Parties reiterate that they are not seeking to pursue any claims derivative of the Debtors in any other court or to collect any portion of the debt from the Debtors outside of this Court.  They do intend to proceed with direct claims against the non-Debtor defendants, including claims derivative of Agspring LLC's right as there is no co-debtor stay and AMR is not a necessary party.[3]

1. To be clear, the Tubbs Parties do not seek to enforce or collect the debt from bankruptcy estate property outside of the bankruptcy process.[4]  The Debtors and LVS/HVS misconstrued the Tubbs' Parties use of the term "liquidate."  In civilian law, to "liquidate" means to determine whether "the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards." *ITT Residential Cap. Corp. v. Cheuk, 94-744* (La. App. 5 Cir. 5/30/95), 656 So.2d 747, 751, *writ denied*, 95-1634 (La. 10/6/95), 661 So.2d 465 (citing *Oriol v. Ducasse Ins. Agency, Inc.*, 626 So.2d 3, 5–6 (La. App. 5 Cir.1993)).  The Tubbs Parties Motion does not seek to create extra-bankruptcy collection rights against AMR; they simply seek to "liquidate" it or fix the amount due under the note to a sum certain.  Further, the Tubbs Parties do not seek to lift the stay to have their collateral recognized by the Louisiana courts nor do they

---

[3] Under Louisiana law, AMR is not a necessary party to the claims by the Tubbs Parties against Agspring, LLC to collect the amount due under its guarantee of the note. "A creditor may sue the surety, alone, without joining the principal obligor." *First Bank & Tr. v. Sharp*, 2017-0284 (La. App. 1 Cir. 2/20/18), 243 So.3d 16, 21 citing La. Civ. Code art. 3045, Revision Comment (c); *Katz v. Innovator of America, Inc*., 552 So.2d 724, 726 (La. App. 1 Cir. 1989).

[4] Should the collateral securing the debt owed to Movants be insufficient to pay the note fully, the Movants reserve their rights to move to modify the stay to allow them to proceed with foreclosure.  Movants have requested from the Debtors' counsel the right to appraise their collateral but, as of the filing of this reply, have not had the courtesy of a reply.

2

intend, by this motion, to foreclose on bankruptcy estate property or pursue any other claim against a Debtor herein other than a determination of the amount due under the note.

2. The dispute at the center of the dispute between the Tubbs Parties, the Debtors and their affiliates, and their insiders is not just $7 million in seller financing. It includes additional loans of cash totaling $22 million dollars made to Agspring Mississippi Region, LLC ("AMR") at its request and for which AMR signed supplements and amendments to the first promissory note. [D.I.# 81-3, 47-48].

3. Under Louisiana law, AMR is not a necessary party to the claims by the Tubbs Parties against Agspring, LLC to collect the amount due under its guarantee of the note. "A creditor may sue the surety, alone, without joining the principal obligor." *First Bank & Tr. v. Sharp*, 2017-0284 (La. App. 1 Cir. 2/20/18), 243 So.3d 16, 21 citing La. Civ. Code art. 3045, Revision Comment (c) and *Katz v. Innovator of America, Inc.*, 552 So.2d 724, 726 (La. App. 1 Cir. 1989). Because the Tubbs Parties are entitled to pursue collection against non-debtor Agspring, LLC independently of this bankruptcy case, there is a significant risk and there will be two contradictory judgments on the amount due on the note.

4. Significantly, the Tubbs Parties' recharacterization claim is to properly characterize the debt owed *by Agspring, LLC*, not any Debtor. This claim is not stayed nor does it require an adjudication of the rights and priorities over estate property. Whether a non-debtor obligor, Agspring, LLC owes any debt in the first place is not a core proceeding and respectfully, is not stayed under 11 U.S.C. § 362. Unlike the debt held by LVS and HVS, Agspring, LLC is merely a guarantor of this debt. And no claims against Agspring LLC are stayed.

5. The claims against the non-debtor Defendants in the Louisiana litigation will likely be severed. The Tubbs Parties respectfully suggest that removal of their claims against the non-

debtors requires abstention under 28 U.S. § 1334(c) because (1) there is no independent basis for federal jurisdiction against the non-debtors other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. As to the non-debtor parties, all of these factors exist.

6. The determination of the amount due on the note owed to the Tubbs Parties is, however, foundational to all of their claims against all parties. Should the U.S. District Court for the Western District of Louisiana remand or refused to transfer the state claims against the non-Debtors, for numerous reasons including that the notes were negotiated by both parties through Louisiana counsel), there is a significant risk that the court sitting in Louisiana could rule differently than this Honorable Court, which could result in the Tubbs Parties holding a judgment on account of the note but not being able to obtain all of the proceeds of its collateral which is held only by AMR. This would be extremely prejudicial to the Tubbs Parties.

7. In their Objections, the Debtors and LVS/HVS have set forth the three general factors that this Court often uses to determine whether to allow prepetition litigation to continue in another forum. But they fail to recognize that these three factors are not contained within the Section 362(d)(1) and alone are not determinative of the outcome. "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) citing *Baldino v. Wilson* (*In re Wilson*), 116 F.3d 87, 90 (3d Cir.1997); *In re Laguna Assocs. Ltd.*, 30 F.3d 734, 737 (7th Cir.1994); *American Airlines, Inc. v. Continental Airlines, Inc.* (*In re Continental Airlines, Inc.*), 152 B.R. 420, 424 (D.Del.1993). Because the analysis of whether cause exists is a fact intensive test done on a case-by-case basis

involving numerous factors and policy considerations, that the cases cited by the Tubbs Parties are distinguishable in some way that is not determinative of this Motion.

8. Indeed, the legislative history to section 362(d)(1) instructs that "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re SCO Grp., Inc.*, 395 B.R. at 856–57 citing H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297.

9. Further compounding their error, the Debtors and LVS/HVS rely on facts or arguments that are either legally irrelevant or simply untrue. For example, the Debtors and LVS/HVS wrongly state that the Tubbs Parties "have not produced any evidence to support their Lift Stay Motion." [D.I.# 136; 4; D.I. # 138, 12]. In fact, the Tubbs Parties produced 278 pages containing a true and correct copy of the MSJ and evidence supporting their claim on the amount due on the note filed in February 2021. [D.I. #81-3]. Additionally, the Tubbs Parties attach hereto a true and correct copy of the reply filed in the state court proceeding refuting the same arguments made here as Exhibit A.

10. No additional evidence or testimony can be submitted by the Tubbs Parties or defendants at the hearing on the MSJ. La. C.C.P. art 963. All of the facts upon which the Tubbs Parties rely to obtain a judgment on the amount due on the note and all of the law supporting their *prima facie* case on the amount due under the note are contained within D.I. #81-3.

11. Under Louisiana law, proof that the debtor has signed the note is *prima facie* proof of the debt. AMR has admitted the signatures on the instruments being sued upon.[5] AMR also

---

[5] "Clark, on behalf of Agspring Mississippi, executed a $7,000,000 Note payable to Plaintiffs." [D.I.#. 136-2, 3]. "Clark executed each of these amended notes on behalf of Agspring Mississippi." *Id.*

5

does not deny that it received the monies and pledged collateral for the loans. Nor do they deny that the note is in default. Thus, the Tubbs Parties' have indeed met their initial burden and are entitled to recover unless AMR establishes a defense by a preponderance of the evidence. *Am. Bank v. Saxena*, 553 So. 2d 836, 842 (La. 1989) ("Saxena has not denied his signatures on the instruments being sued upon and they are thus admitted. Saxena also does not deny that he made the loans, received the monies, or pledged collateral. Nor does he deny that the notes are in default. Thus, the bank has met its initial burden by producing the signed instruments and is entitled to recover unless Saxena establishes a defense by a preponderance of the evidence.") Thus, the Tubbs Parties have met their burden of proof of success on the merits.

12. AMR also wrongly claims that "before the Movants' claims can be liquidated, the Louisiana State Court would have to address AMR's …counterclaims." [D.I.# 136, 12]. AMR has no basis for this argument; it made no counterclaims against the Tubbs Parties in their Answer and Affirmative Defenses. [D.I.# 136-3]. Even if it had asserted counterclaims, Louisiana law does not authorize a court to impose setoff in this case.

> Louisiana statutory law and jurisprudence recognize three kinds of setoff, or compensation: legal, which is effected by operation of law; contractual, which is effected by the will of the parties; and judicial, which is effected by the courts. *Richard v. Vidrine Automotive Services, Inc.*, 98–1020, pp. 7–8 (La.App. 1 Cir. 4/1/99), 729 So.2d 1174, 1178. See also *Tolbird v. Cooper*, 243 La. 306, 315, 143 So.2d 80, 84 (La.1962). Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due. LSA–C.C. art. 1893; *Buck's Run Enterprises, Inc. v. Mapp Const., Inc.,* 99–3054, p. 5 (La.App. 1 Cir. 2/16/01), 808 So .2d 428, 431. In such a case, compensation extinguishes both obligations to the extent of the lesser amount. LSA–C.C. art. 1893. … Judicial compensation takes place when a court decides two parties are mutually indebted to each other and adjusts the amounts owed in fixing the judgment. LSA–C.C. art.1902; *Buck's Run*, 99–3054 at p. 5, 808 So.2d at 432. The most usual case in which judicial compensation arises is one where the conditions for legal compensation do not exist and the party who is sued on a debt files a reconventional demand. In these cases, the trial court finds

6

for each party and renders judgment for the difference between the amounts found to be owed. *Standard Roofing Co., Inc. v. Ragusa Bros., Inc.*, 338 So.2d 119, 122 (La.App. 1 Cir.1976).

13. If AMR had asserted a counterclaim, there is a further limitation on judicial setoff. A court can only declare a setoff "as to that part of the obligation that is susceptible of prompt and easy liquidation." La. C.C. art. 1902. Since AMR has asserted no counterclaims, non-existent claims are certainly not susceptible of prompt and easy liquidation.

14. The Debtors and LVS/HVS also wrongly assert that the MSJ was prematurely filed. Louisiana procedural rules allow a plaintiff to file a motion for summary judgment "[a]fter an *opportunity* for adequate discovery, [which] shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." (Emphasis added). La. C.C.P art. 966(A)(3). The suit on the note was filed on September 30, 2019. AMR conducted no discovery whatsoever until May 4, 2021, after the MSJ was filed. AMR had more than enough opportunity to conduct discovery prior to the MSJ being filed. Any delay in AMR obtaining discovery was caused by AMR. Further argument on this point, see Exhibit A which arguments are incorporated herein as though copied *in extenso*.

15. LVS, HVS and AMR mistakenly suggest that AMR has viable legal defenses to owing the full amount of the note: fraudulent inducement and failure to mitigate damages. Each will be addressed below.

16. With respect to the defense of duty to mitigate a suit on a note by accepting collateral or whatever amount a third-party offers for that collateral, no such duty exists under Louisiana law. As a matter of Louisiana law, the $22 million note owed by AMR is a loan for consumption defined by La. C.C. art. 2904 as "a contract by which one person, the lender, delivers consumable things to another, the borrower, who binds himself to return to the lender an equal

amount of things of the same kind or quality." As a matter of law, once AMR took the cash from the Tubbs Parties, AMR owned the cash and bore the risk of loss. La. C.C. art. 2905.[6] "When the loan is of money, the borrower, AMR, is bound to repay the same numerical amount in legal tender of the country whose money was lent regardless of the fluctuation in the value of the currency.…"[7] La. C.C. art. 2907. Given that the $22 million dollars in money was lent, as a matter to positive law specific to loans, the Tubbs Parties are entitled to demand money to satisfy the loan. They do not have to accept the property that secures the debt. Nor do they have to accept any price offered for the property that secures the debt.

17. Louisiana law offers no legal support whatsoever for AMR's entitlement to have interest on the entire debt cease because Plaintiffs refused to "approve third-party offers to purchase or otherwise transfer the Mer Rouge Elevator from Agspring to Plaintiffs for $5,750,000." [D.I. # 136-2, 11]. For further argument on this point, see the Reply to Opposition attached hereto as Exhibit A which arguments are incorporated herein as though copied *in extenso*.

18. LVS, HVS and AMR's heavy reliance on the alleged bad acts of Brad Clark, Randal Linville and NGP has no legal significance whatsoever. LVS/HVS and the Debtors' parent companies did not include the Tubbs Parties in the October 2019 fraud suit against the sellers from whom they purchased Agspring, LLC and its subsidiaries. Instead, they relied on the Tubbs Parties' note as evidence of their damages.

19. Indisputably, as of January 1, 2015, Larry Tubbs retired from AMR. The Debtors and LVS/HVS have no factual basis that Mr. Tubbs played any role or participated in negotiating

---

[6] "The borrower in a loan for consumption becomes the owner of the thing lent and bears the risk of loss of the thing."

[7] Interest is a separate contractual obligation due under the express terms of the Second Amended and Restated Promissory Note.

with them for the sale of Agspring LLC membership interests by NGP. They should be in possession of any communications made to them by the Tubbs Parties, but have produced nothing because nothing exists. The acts of Brad Clark and Randall Linville in connection with that sale have no bearing on any defenses to the MSJ. For further argument on this point, see Exhibit A which arguments are incorporated herein as though copied *in extenso.*

20. The alleged bad acts of third parties for whom Mr. Tubbs had ceased working for nearly a year before the sale between NGP and LVS/HVS are simply a red herring to the issues before this Court. AMR never filed a counterclaim against the Tubbs Parties in the state court litigation, has not alleged that the Tubbs Parties participated in any way for that alleged fraud perpetrated by NGP, Clark or Linville, and presented no evidence of any fraud by the Tubbs Parties at all.

21. In the same vein, the Debtors and LVS/HVS suggest that AMR needs more discovery on communications between Tubbs, Clark, and Linville. Specifically, they suggest that they have not had access to text messages that may or may not exist between Larry Tubbs and Clark or Linville which are crucial to defending how much is owed on the note. That these text messages, if any, are crucial to defending the suit on the note is belied by the fact that AMR waited 19 months to ask for the information and months after they were aware that the MSJ was filed.

22. They also infer that because Larry Tubbs was the CEO of AMR at the time of the additional lending that something fraudulent occurred. The notes were not signed by Larry Tubbs. Indeed, they were approved by AMR's parent, Agspring LLC. Most importantly, AMR has always been in possession of email correspondence between Clark, Linville, and Larry Tubbs because it is the custodian and is possession of all emails sent by the Tubbs Parties from the time that Larry Tubbs began working for AMR in 2014 until after the sale of Agspring by NGP. Yet, AMR has

produced nothing suggesting that the Tubbs Parties participated in or were aware of any fraud. [D.I.# 138-3, 35]. For further argument on this point, see Exhibit A which arguments are incorporated herein as though copied *in extenso.*

23. LVS and HVS also brazenly and erroneously suggest to this Court that "[u]pon information and belief, Clark and Linville negotiated the Tubbs Assets Purchase on behalf of AMR and ultimately agreed with the Movant for AMR to purchase the Grain Facilities for $29.5 million—notwithstanding then-recent third-party valuation of the Grain Facilities for approximately $20.5 million." [D.I. # 168, 5]. This statement implies that AMR paid $29.5 million for two pieces of real estate and that is all. In support of this statement, they misconstrue the Debtor, AMR's representation that Clark, Linville, and Tubbs agreed on a purchase price of $29.5 million for the assets even though a recent valuation of the Pioneer Facility was at just under $9 million and the Mer Rouge facility was $11.5 million.

24. This implication could not be farther from the truth. The Tubbs Parties sold much more than two facilities to AMR. In addition to the Pioneer and Mer Rouge facilities, the Tubbs Parties sold to AMR (i) a December 12, 2012 lease between Lake Providence Port Commission and Big River Grain, L.L.C. on a piece of property; (ii) millions in cash, inventory, and deposit and commodities trading accounts; (iii) all tangible personal property owned by these entities including numerous vehicles, inventory, and accounts receivables, (iv) all debts or claims owned by Tubbs Rice Dryers, Inc., (v) the trade names "Tubbs Rice and Grain" and "Tubbs Rice Dryers," and (vi) on-farm storage agreements, cash forward contracts and all grain bin dealership agreements. This was not simply a transfer of two pieces of real estate.

25. AMR argues that it will be distracted from its obligations in this proceeding by having to prepare for trial if the stay is lifted. Because the Tubbs Parties are not seeking relief to conduct a trial, but to hold a hearing only, this argument has no merit.

26. Even if they suggest that having to prepare for the hearing will be a great distraction, this argument should be rejected for the same reasons that the *In re SCO Grp.* Court rejected this same argument. AMR has separate litigation counsel retained by Order dated October 25, 2021, who had already completed its preparation for the MSJ prior to the petition date. [D.I.# 129]. Thus, the hearing preparation will not be burdensome to the Debtors since this bankruptcy case was filed on the eve of the hearing and both parties have already spent all of the necessary time and resources to prepare. The longer the hearing is delayed, the more burdensome it is to both parties to ready themselves again. *In re SCO Grp*., Inc., 395 B.R. at 858.

27. While the facts of *In re SCO Grp.* are not identical to the instant case, many of the arguments made by the Debtors and LVS/HVS and the *In re SCO Grp.* Debtors are the same and should be rejected for the same reasons articulated by that Court.

28. Importantly, like the relief granted in *In re SCO Grp., Inc,* the Tubb Parties' request does not extend to allowing any determination of the value, ranking or enforcement of their claim against the property of the estate. It will only set the amount owed under the note by AMR and Agspring, LLC. The limitation against deciding issued related to property of the estate was an important factor that the *SCO Grp.* Court decided that the inconvenience to the Debtors was insufficient to prevent lifting the stay. *Id.* The Tubbs Parties suggest that the same reasoning applies here. There is no *real* prejudice to the Debtors' estates from this limited lifting of the stay.

29. Moreover, allowing a hearing on the MSJ to proceed actually aids the Debtors' estates as no plan can be proposed until the Debtors know how much is owed to the Tubbs Parties.

This aids the Debtors, not harms them. *See In re SCO Grp., Inc.*, 395 B.R. at 859. ("As Novell has pointed out in its papers, the Debtors simply cannot file a confirmable plan of reorganization until they know what liability they have to Novell. The resolution of the issues remaining in the District Court litigation will assist the Debtors, not burden them.").

30. Delaware bankruptcy courts have considered other policies beyond the three relied upon by the objectors including the interests of judicial economy and the expeditious and economical resolution of litigation, whether the parties are ready for trial in the other proceeding, and the impact of the stay on the parties and the balance of the harms. *Id.*; *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007). These factors weigh significantly in favor of lifting the stay.

31. The following factors reflect that the harm to the Tubbs Parties and the benefit to judicial economy and the bankruptcy estate are more significant than the minimal inconvenience to the Debtors: (i) risk to the Tubbs Parties of conflicting judgments on the amount due on the debt, (iii) the duplicate expenses to the Debtors and the Tubbs Parties to address this same issue again in two different forums, (iv) the judicial efficiency gained by having only one Court decide the amount due on the debt, (v) and the overriding theme in determining whether to grant relief from the stay to permit litigation against Debtor in another forum is that the effect of such litigation on the administration of the estate.

32. Each of these factors significantly outweigh the Debtors' need to delay determination of the amount of debt so they can (1) obtain discovery of text messages to pursue unfiled counterclaims against the Tubbs Parties, or to support their claims against third parties in a suit which the Tubbs Parties are not involved, (2) delay the determination of the extent of the Tubbs' Parties credit bidding rights, secured or under secured creditor rights, and treatment under

any plan, (3) delay formulating a plan, and (4) use the bankruptcy process to attempt to protect the rights of their non-debtor parents. Because the Tubbs Parties are not seeking to lift the stay to pursue outside of the bankruptcy claims process enforcement or collection of any claim against any Debtors, there is no prejudice to the Debtors by lifting the stay. They still have their breathing room.

33. Conversely, by requiring the Tubbs Parties to duplicate legal efforts and risk inconsistent judgments, not to mention the judicial economy benefits to this Court and the bankruptcy process, the hardship to the Tubbs Parties outweighs the negligible cost of having Debtors' counsel appear in Louisiana and argue whether their legal defenses to the amount owed on the note hold water.

34. Allowing the state court to hear oral argument and render judgment on how much is owed to the Tubbs Parties by AMR will cost an insignificant amount of the Debtor's assets as there will be no witness testimony or evidence taken at the hearing compared to the costs of relitigating this same issue again before this Court. "The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. Code Civ. Proc. art. 966(D)(2).

35. The Tubbs Parties suggest that their request for limited relief will give them no advantage or preference in their claims against AMR. It will define, as a matter of law, what exactly their rights are, for example, to seek to lift the stay to foreclose or whether they are over- or under-secured. The Debtors will not need to focus on a trial. Should the MSJ be denied, the stay remains in place since the Motion seeks only to allow a decision on the MSJ, not for a full trial on the matter. Thus, the Debtors' reliance on *In re Nw. Airlines Corp.*,[8] is misplaced.

---

[8] 2006 WL 694727, (Bankr. S.D.N.Y. Mar. 13, 2006)

> The relief requested will have no effect on the Debtors' value and does not impair the Court's jurisdiction. Indeed, although the Debtors are correct that the facts of In Re Danzig are not identical to the instant facts, that Court's logic and reasoning apply equally to both. Movant has established that its claim could be liquidated more expeditiously or economically in the New York Action. Relief from the stay will advance, rather than frustrate the administration of this case. The mechanism for a speedy adjudication of the merits of Movant's claim, overall judicial economy and the interests of the parties, therefore, favor relief from stay.

*In re Danzik*, 549 B.R. 804, 811 (Bankr. D. Wyo. 2016)

36. Respectfully, LVS and HVS arguments do not support denying the Tubbs Parties Motion to aid with a quick determination of the legal viability of the defenses raised by AMR from state court Judge very familiar with Louisiana law and efforts of the parties to bring this issue to resolution.

WHEREFORE, for the foregoing reasons, the Tubbs Parties request that the Court grant the Motion, and for such other and further relief as is just.

Dated: November 1, 2021    CROSS & SIMON, LLC

 */s/ Michael L. Vild*
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com
mvild@crosslaw.com

- and -

J. E. Cullens, Jr., Esquire
Andrée M. Cullens, Esquire
WALTERS, PAPILLION, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. 1
Baton Rouge, LA 70810
Telephone: (225) 236-3636
Facsimile: (225) 236-3650

cullens@lawbr.net
acullens@lawbr.net

- and -

Paul M. Sterbcow, Esquire
LEWIS, KULLMAN, STERBCOW &
ABRAMSON, LLC
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504)588-1500
sterbcow@lksalaw.com

*Counsel for Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC*