# Exhibit A

| | |
|---|---|
| LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC | : SUIT NO.: 19-198 DIVISION: B |
| VERSUS | : SIXTH JUDICIAL DISTRICT COURT |
| AGSPRING MISSISSIPPI REGION, LLC, AGSPRING, LLC, AGSPRING HOLDCO, LLC, GREG KENNEDY, MARK BEEMER, PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC, BARINGS LLC, BRUCE CHAPIN, ABC INSURANCE COMPANY, and XYZ INSURANCE COMPANY | : PARISH OF MADISON : STATE OF LOUISIANA |

## REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW INTO COURT,** through undersigned counsel, comes plaintiffs, Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC ("Plaintiffs"), who reply to the Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opposition") filed by Agspring Mississippi and Agspring, LLC ("Agspring") to highlight the errors in Agspring's legal and factual arguments and to object to documents produced in opposition to the Motion. Plaintiffs' Motion focuses only on Agspring's liability arising out of the undisputed fact that Agspring has not paid the debt that it owes to Plaintiffs. Agspring has admitted all facts supporting Plaintiffs' *prima facie* case and the only legal issues for this Honorable Court to decide is whether the defenses that Agspring raised are legally viable, supported defenses. In other words, the question raised by Agspring's opposition is whether failure to mitigate damages and fraud, under the undisputed facts, preclude judgment in Plaintiffs' favor. As a matter of law, the undisputed facts show that Agspring is liable to Plaintiffs on the $22 Million loan.

## OBJECTIONS TO EVIDENCE

Agspring attached several documents to their opposition to which Plaintiffs object pursuant to La. C.C.P. art. 966(D)(2) as follows:

1. Exhibit 1 to Agspring's affidavit contains an irrelevant hearsay letter. The January 28, 2020 letter is purportedly one from Kennedy Rice Dryers, LLC offered to show that this entity was interested in purchasing one of many properties owned by Agspring LLC if it was "sold free and clear of all liens and encumbrances, including leasehold interests." This document is inadmissible hearsay pursuant to La. C.E. arts. 801 and 802 because it is offered to support the truth of the matter stated: that there was an offer[1] to buy the Mer Rouge elevator. Moreover, as argued *infra*, Plaintiffs have no obligation to accept anything less than full payment of its debt to

---

[1] In the alternative, and without waiving this objection, Plaintiffs argue *infra* that the letter is not an offer, but an indication of conditional interest in purchasing Mer Rouge on terms with which Agspring could not comply.

release its mortgage, nor do they have an obligation to take any property back in lieu of foreclosure. Additionally, the affidavit submitted in connection with the Affidavit of Bruce Chapin is not in proper form to trigger the hearsay exception in La. C.E. art. 803(6). There is no representation that these are the records made and kept in the course of the regularly conducted business activity or that Mr. Chapin is the custodian of these records. *Cole Oil & Tire Co. v. Davis*, 567 So. 2d 122, 128–29 (La. App. 2 Cir. 1990).

> To exclude business records from the hearsay rule and render them admissible, Article 803(6) requires the court to determine from testimony of either the "records custodian or other qualified witness" that:
> 1. The record of an event must have been made at or near the time of the event;
> 2. The record of an event must have been made either by, or from information transmitted by, a person with knowledge;
> 3. It must be made and kept in the course of a regularly conducted business activity;
> 4. It was the regular practice of that business activity to make and keep such records;
> 5. The recorded information must have been furnished to the business either (a) by a person who was routinely acting for the business in reporting the information; or (b) in circumstances under which the statement would not be excluded by the hearsay rule; and
> 6. Neither sources of information nor the method or circumstances of preparation must indicate a lack of trustworthiness.
> Each of these requirements pose threshold questions for the trial judge. See also C.E. Art. 104(A).

For these reasons, Plaintiffs object to the admission of Exhibit 1.

2. Exhibits 1, 7, and 8 are also objected to as immaterial to the question of whether Agspring owes the debt and on the grounds that it is inadmissible expert testimony. The appraisals are the opinions on the value of these properties of appraisers, for whom we do not know if they possess sufficient training and expertise to opine on these values. In other words, the appraisals are the opinions of an expert offered for the truth of the value stated. In addition to be objectionable on the grounds of relevance, Agspring is required, pursuant to La. C.C.P. art. 967(A), to submit the affidavit of the appraiser reflecting his qualifications as an expert in the field. Because Agspring did not do so, the appraisals must be disregarded.

## PLAINTIFFS HAVE MET THEIR BURDEN OF PROOF ON THE NOTES

Agspring has admitted the signatures on the instruments being sued upon.[2] Agspring also does not deny that it received the monies and pledged collateral for the loans. Nor do they deny that the note is in default. Thus, Plaintiffs met their initial burden by producing the signed instruments and are entitled to recover unless Agspring establishes a defense by a preponderance of the evidence. *Am. Bank v. Saxena*, 553 So. 2d 836, 842 (La. 1989) ("Saxena has not denied his

---

[2] "Clark, on behalf of Agspring Mississippi, executed a $7,000,000 Note payable to Plaintiffs." Opposition, p. 3. "Clark executed each of these amended notes on behalf of Agspring Mississippi." *Id.*

signatures on the instruments being sued upon and they are thus admitted. Saxena also does not deny that he made the loans, received the monies, or pledged collateral. Nor does he deny that the notes are in default. Thus, the bank has met its initial burden by producing the signed instruments and is entitled to recover unless Saxena establishes a defense by a preponderance of the evidence.") In an attempt to meet their burden, Agspring asserts theories to suggest that they do not owe the note: fraudulent inducement and failure to mitigate damages. Each will be addressed below.

Before doing so, it is important to recognize that Plaintiffs lent Agspring Mississippi $22 Million. This is a loan for consumption defined by La. C.C. art. 2904 as "a contract by which one person, the lender, delivers consumable things to another, the borrower, who binds himself to return to the lender an equal amount of things of the same kind or quality." As a matter of law, once Agspring Mississippi took the cash from Plaintiffs, it owned the cash and bore the risk of loss.[3] La. C.C. art. 2905.[4] "When the loan is of money, the borrower is bound to repay the same numerical amount in legal tender of the country whose money was lent regardless of the fluctuation in the value of the currency. ..."[5] La. C.C. art. 2907. Given that the $22 Million dollars in money was lent, as a matter to positive law specific to loans, Plaintiffs are entitled to demand money to satisfy the loan.

### FAILURE TO MITIGATE DAMAGES IS NO DEFENSE

Agspring's reliance on La. C.C. art. 2002 as a defense to its obligation to pay the note is addressed first as it is the easiest to refute. While Agspring suggests that it needs more time to "understand Plaintiffs' alleged damages,"[6] the damages in this case are quite simply a math calculation: the amounts due by Agspring to Plaintiffs on the Second Amended and Restated Note as of the date they pay in full. Agspring asserts, with no legal support whatsoever, that they are entitled to have interest on the entire debt cease because Plaintiffs refused to "approve third-party offers to purchase or otherwise transfer the Mer Rouge Elevator from Agspring to Plaintiffs for $5,750,000." Opposition, p. 11. This conclusory argument is unsupported by any jurisprudence or positive law. Indeed, the lone case cited by Agspring is distinguishable on its facts and recognizes the well-settled principal that "creditors are not in the business of releasing debtors who

---

[3] Consequently, Agspring's discussion of the suit against NGP, Clark and Linville for alleged fraud in the sale to Agspring Holdco, LLC is immaterial, especially given that Agspring never alleged any claims against Plaintiffs in the suit Agspring filed against them, never filed a cross-claim against Plaintiffs arising out of the same, has not alleged that Plaintiffs participated in anyway for that alleged fraud, and Agspring presents no evidence of any fraud by Plaintiffs at all.
[4] "The borrower in a loan for consumption becomes the owner of the thing lent and bears the risk of loss of the thing."
[5] Interest is a separate contractual obligation due under the express terms of the Second Amended and Restated Promissory Note.
[6] Opposition, p. 1.

3

have not paid." *Ciolino v. First Guar. Bank,* 2012-2079 (La. App. 1 Cir. 10/30/13), 133 So.3d 686, 691.

The court in *Ciolino* was presented with a motion for summary judgment to enforce a lease. The bank was assigned the right to lease property from the Ciolinos, but failed to pay rent due. The Ciolinos moved for summary judgment. The bank defended by arguing that the obligation to pay the rent was novated, that the Ciolinos had no right to or were equitable estopped from enforcing the lease[7] and that the Ciolinos failed to mitigate their damages. The *Ciolino* court rejected the failure to mitigate defense for which the bank provided two arguments in support.

The first argument failed because the bank offered no evidence to support the Ciolinos' failure to attempt to lease the property again. The second argument, that the Ciolinos had not attempted collection against another solidary obligor, the court analyzed by looking to the law on solidary obligors to inform its analysis of the Ciolino's mitigation obligations. That argument was rejected because, "The law of mitigation of damages does not require that an obligee pursue recovery from one particular solidary obligor in preference to another. Rather, the Ciolinos have the right to enforce the lease against all parties liable thereunder. See La. Civ.Code arts. 1795, 1800." *Id.* Plaintiffs respectfully suggest it is similarly appropriate to look at the laws on loan, *dation en paiement,* and mortgages to inform Plaintiffs' obligation to agree to accept the Mer Rouge Elevator from Agspring instead of money.

"Giving in payment is a contract whereby an obligor gives a thing to the obligee, *who accepts it* in payment of a debt." (emphasis added). La. C.C. art. 2655. Put simply, Plaintiffs have the right to refuse to take property instead of money. Comment (a) to this article reflects the intent of the creditor is still of paramount importance because the creditor "has the right to demand exactly what was due by virtue of the obligation." In this case, money was due, not property.

It is also important to note that when Plaintiffs loaned Agspring Mississippi[8] $22 Million, they did not agree to accept only the collateral or its value as payment. Article 2655 does not mandate that Plaintiffs accept the Mer Rouge Elevator instead of money; it recognizes Plaintiffs' right to refuse to take the property instead of money. *Dugas v. Modular Quarters, Inc.,* 561 So.2d 192, 199 (La. App. 3 Cir. 1990)("The giving in payment is an act by which a debtor gives a thing to the creditor, *who is willing to receive it,* in payment of a sum which is due. LSA—C.C. Art. 2655; *Slaton v. King,* 30 So.2d 867 (La. App. 2nd Cir.1947), *reversed on other grounds,* 214 La.

---

[7] Novation, lease enforcement and equitable estoppel are not at issue here.
[8] Agspring's references to Clark, Linville or NGP are irrelevant in the context of their failure to mitigate arguments. Plaintiffs will address Agspring's reliance on alleged acts of Clark, Linville and NGP in the section on fraud.

89, 36 So.2d 648 (1948). See also *Dunaway v. Spain*, 493 So.2d 577, n. 1 579 (La.1986). As a matter of positive law, a creditor has the option—not the obligation—to take property instead of money. Both *Ciolino* and Article 2655 recognize that Plaintiffs, as creditor, have the right to demand what was due under the note—money. They have no obligation to take property. Thus, one can only conclude that Plaintiffs did not fail to mitigate their damages by refusing to take back the Mer Rouge Elevator.

The argument that interest stopped accruing because Plaintiffs failed to "approve third-party offers to purchase or otherwise transfer the Mer Rouge Elevator" fails for similar reasons. The mortgage did not restrict the right to collect the debt to the value of the property. Given that Plaintiffs had not been the owners of the Mer Rouge Elevator since June 2013, they had no obligation or authority to approve or reject a sale. Plaintiffs hold a mortgage which is an *in rem* obligation and which, as a matter of law, gives Plaintiffs the right, at its option, to foreclose to satisfy the debt. Nothing prevents a willing buyer from buying the property and Agspring from transferring the property. The mortgage just follows the property. No Louisiana law mandates that a creditor release its mortgage on its collateral based on any third parties' offer. Agspring's argument on this point is meritless.

Put in other words, Agspring is not entitled to have it obligation to pay interest erased simply because someone might be interested in buying the property. If this were the law, every homeowner could avoid foreclosure by having any person offer any price for their home and requiring the lender to accept that price, whether it was ridiculous or not, or regardless of whether the person and the homeowner agreed to other terms of the sale. Without waiving their objections to the letter from Kennedy Rice Dryers, Plaintiffs point out that Agspring can offer no evidence that it consummated the sale or could consummate the sale given the qualification that the "assets will be sold and transferred free and clear of all liens and encumbrances, *including leasehold interests*." Without evidence before the court as to whether or not the Mer Rouge Elevator was leased or not, Agspring's argument is even more egregious given the offer it relies upon was conditioned upon a free and clear sale. Agspring is in the similar position of the homeowner who rents all of their furniture and has received an offer to buy the home fully furnished. The homeowner could not, without buying all of the furniture first, accept the terms. Under these facts, the defense of failure to mitigate damages is not a viable to defense to a judgment in Plaintiffs' favor on this Motion.

## FRAUD IN THE INDUCEMENT IS AN UNSUPPORTED DEFENSE TO THE NOTE

"[T]here are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Assocs.*, 2001-0587 (La. 10/16/01), 798 So.2d 60, 64. Agspring's argument with respect to fraud in the inducement are not wellfounded, especially considering that the remedy, should they prevail, would require them to repay the $22 Million or return to Plaintiffs the properties sold in 2013.[9]

### A. Fraud in the sale of assets to Agspring Mississippi is no defense to this Motion.

Much of Agspring's recitation of the factual background focuses on the sale of assets from Plaintiffs' to Agspring Mississippi in 2013.[10] Notably, Agspring has made no claim that there was any fraud in connection with that sale. Recall, Clark and Linville acted as Agspring's agents in connection with the sale of assets to Agspring Mississippi. They acted as NGP's agents in the 2015 sale of the membership interests in Agspring LLC from NGP to Agspring Holdco. If, however, that is Agspring's claim, as a matter of law, this is not a defense which is capable of precluding summary judgment on the note.

The note is due and owing and the damages are liquidated (a sum certain). Contrarily, any claim that Plaintiffs' committed fraud in selling the assets to Agspring Mississippi is a contingent, unliquidated claim not subject to set off against the note pursuant to La. C.C. art. 1894. ("Compensation does not take place, however, if one of the obligations is to …return a thing given in deposit or loan for use….). Moreover, La. C.C. art. 1893 precludes any defense based on a claim of fraud in the 2013 asset sale because fraud in connection with that sale has not been, unlike the note, liquidated and presently due.

> A claim is liquidated when the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards. A determination of the liquidity of a claim is an essential prerequisite to deciding whether such a claim is a proper basis for a plea of compensation. Lack of sufficient liquidity and demandability will preclude such a plea.
>
> The claim in this case is for damages for alleged discriminatory practices. The validity of the claim is uncertain and the amount of potential damages is not capable of ascertainment by mere calculation. Therefore, it is clear that this claim is not a liquidated claim which is necessary to allow plaintiff to plead compensation.

---

[9] La. C.C. art. 1958 ("The party against whom rescission is granted because of fraud is liable for damages and attorney fees.").
[10] Negotiations for the sale of these assets were through counsel of record which records were produced by Plaintiffs, including but not limited to Agspring Exhibit 4.

*ITT Residential Cap. Corp. v. Cheuk*, 94-744 (La. App. 5 Cir. 5/30/95), 656 So.2d 747, 751, *writ denied*, 95-1634 (La. 10/6/95), 661 So.2d 465 citing *Oriol v. Ducasse Ins. Agency, Inc.*, 626 So.2d 3, 5–6 (La. App. 5 Cir.1993). Regardless of whether there is or is not evidence of fraud in connection with the sale by Plaintiffs to Agspring Mississippi, fraud in connection with that sale in 2013[11] is not a valid legal defense precluding a judgment that Agspring owes the Note. Defendants' attempt to distract this Honorable Court away from the undeniable fact that they owe Plaintiffs more than $28 Million Dollars by making irrelevant and unsupported assertions of third-party fraud should be dismissed out of hand.

**B.  There is no evidence supporting fraud in connection with the Notes.**

The only fraud that is relevant in opposition to this motion is the affirmative defense of fraud as a means of vitiating the consent of Agspring Mississippi to borrow $22 Million. La. C.C.P. arts. 1005 and 1948. Indisputably, Plaintiffs' performed the only obligation they had under the loans — to give $22 Million to Agspring— thus as a matter of law, Plaintiff performed the promises made. Presumably the cause for Agspring making the loans was to have access to $22 Million. It is hard to imagine how Plaintiffs committed fraud by living up to their promise to give Agspring $22 Million.

Fraud cannot be predicated on statements that are promissory in nature or relating to future events, except fraud based on promises made without any intention to perform as promised. *Taylor v. Dowling Gosslee & Assocs., Inc.*, 44,654 (La. App. 2 Cir. 10/7/09), 22 So.3d 246, 255, *writ denied,* 2009-2420 (La. 2/5/10), 27 So.3d 299 citing *Sun Drilling Products Corp. v. Rayborn*, 2000–1884 (La.App. 4th Cir.10/03/01), 798 So.2d 1141, *writ denied,* 2001–2939 (La.1/25/02), 807 So.2d 840. Put simply, Agspring's burden was to produce some evidence that Plaintiffs committed fraud in giving $22 Million to Plaintiffs. As a matter of law, fraud in connection with the note is unsupported. Put simply, it is obvious that Agspring wanted to borrow money, and they did. Plaintiffs were certainly in no position to force Agspring unwillingly to borrow money.

Moreover, Agspring has produced no evidence whatsoever that Plaintiffs misrepresented anything in connection with the loans at issue that gave Plaintiffs an unjust advantage or caused

---

[11] To the extent that Agspring is suggesting that Plaintiffs participated in the alleged fraud claims pending in Deleware in connection with the 2015 sale of Agspring LLC's membership interests (Clark, Linville and NGP) the same arguments apply. No such claim has been raised in Agspring's answer, so Plaintiffs do not understand the Opposition to make this assertion.

inconvenience or damage to Agspring. Evidence of the fluctuations in the value of the collateral[12] between 2011 and 2018 securing the loan is not evidence of fraud, and certainly does not harm Agspring. The harm would be to Plaintiffs because, if accurate, *Plaintiffs* would be under secured.

Attempting to meet their burden, Agspring attached one email string in Exhibit 4[13] between counsel of record for Plaintiffs and Agspring Mississippi's own counsel, Robert Mouton of the Locke Lord firm in New Orleans, reflecting that Plaintiffs did not tie their purchase price of the 2013 asset sale to any EBITDA and that as of February 25, 2013 the terms of the sale were still being negotiated. The only representation made by Plaintiffs' counsel was that Plaintiffs' rejected Agspring's proposal that "only $6.5 million would be paid in cash and the balance would be paid in equity and/or earned over the next three years if and only if certain EBIDTA requirements are met." Exhibit 4, TUBBS_LUFFEY_001415.

This evidence shows that it was Agspring's plan, not Plaintiffs, to purchase the assets on credit. Furthermore, Agspring has produced no evidence of any statements made by Plaintiffs that were untrue or upon which it relied when it, not Plaintiffs, decided to purchase Plaintiffs' business in part through credit sale or borrow additional monies thereafter. This complete lack of evidence occurred despite the fact that Agspring is the custodian of the email system used by Mr. Tubbs at the time that the additional loans were negotiated in September 2013 and February 2014. Exhibit 10, Objection and Response to Request for Production No. 1. ("any responsive data is in Agspring Mississippi Region's custody as any emails would have been sent from its email domain, @bigrivergrain.com, over which Plaintiffs have no custody").

Accordingly, it is undisputed that Plaintiffs are entitled to a partial judgment against Agspring for the balance due on the Second Amended and Restated Promissory Note and the other remedies as prayed for in the Motion for Partial Summary Judgment and set forth in the proposed Judgment attached hereto. As this motion is only a partial summary judgment, Plaintiffs do not now seek a judgment for court costs and attorney's fees but reserves those claims for a later date. Accordingly, Plaintiffs respectfully pray that this Honorable Court enter a partial summary judgment against Agspring as set forth in the proposed Final Judgment attached hereto. Further, Plaintiffs respectfully request that this Honorable Court designate this judgment as final and expressly determine, pursuant to La. C.C.P. art 1915(B)(1), that there is no just reason for delay.

---

[12] Evidence related to value of some collateral which was sold by Plaintiffs in 2013 is insufficient to show that the asset sales price for all assets sold was insufficient. Agspring fails to attach the closing documents to show what assets Plaintiffs sold in 2013, which would be necessary to prove fraud in connection with the terms of the sale.
[13] This was one of many email communications between counsel for Plaintiffs and Agspring produced.

8

Respectfully submitted:

_(signature)_

J. E. Cullens, Jr., T.A., La. Bar #23011
Andrée Matherne Cullens, La. Bar #23212
**WALTERS, PAPILLION,
THOMAS, CULLENS, LLC**
12345 Perkins Road, Bldg One
Baton Rouge, LA 70810
Phone: (225) 236-3636
Facsimile: (225) 236-3650
Email: cullens@lawbr.net

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished via e-mail to all counsel of record as follows:

Charles D. Marshall
Chaffe McCall
1100 Poydras St. Suite 2300
New Orleans, LA 70163

John D. Crigler, Jr.
Post Office Box 97
St. Joseph, LA 71366

Jodie Hermann Lawson
McGuire Woods, LLP
201 North Tryon St., Suite 3000
Charlotte, NC 28202

John Ertman
Ertman Dulis & Helisek, PLLC
112 W. 34th St., 18th Floor
New York, NY 10120

Jacob Bylund
Faegre Drinker Biddle & Reath, LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309

Jeremy M. Suhr
Boulware Law, LLC
1600 Genesse St., Suite 416
Kansas City, MO 64102

Jeffrey K. Coreil
Neuner Pate
1001 West Pinhook Road, Suite 200
Lafayette, LA 70503

Baton Rouge, Louisiana this __3rd__ day of __September__, 2021.

_(signature)_
Andrée Matherne Cullens

9

| | |
|---|---|
| LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC | SUIT NO.: 19-198 DIVISION: B |
| VERSUS | SIXTH JUDICIAL DISTRICT COURT |
| AGSPRING MISSISSIPPI REGION, LLC, AGSPRING, LLC, AGSPRING HOLDCO, LLC, GREG KENNEDY, MARK BEEMER, PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC, BARINGS LLC, BRUCE CHAPIN, ABC INSURANCE COMPANY, | PARISH OF MADISON |
| and XYZ INSURANCE COMPANY | STATE OF LOUISIANA |

## FINAL JUDGMENT

This matter came before this Court on a Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. art. 1915(B)(1) filed by plaintiffs Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC, came for hearing in open court on September 13, 2021, at 1:30 p.m. Present in court for the hearing were:

**J. E. Cullens. Jr. and Andree Matherne Cullens**, attorneys at law representing Larry Tubbs, Tubbs Rice Dryers Inc., Chief Ventures LLC, and Big River Gain LLC;

**Charles D. Marshall III and John Ertman**, attorneys at law representing Pacific Investment Management Company LLC and Greg Kennedy;

**Jeffrey K. Coreil. Frank X. Neuner. Jr.. and Jane E. Maschka**,
Attorneys at law representing ,Agspring LLC, Agspring Mississippi Region LLC, and Lake Providence Grain and Rice LLC; and

**John D. Crieler. Jr. and Jodie II. Lawson,** attorneys at law representing Barings LLC, a party to the litigation.

Considering the pleadings filed by the parties, all exhibits attached to the pleadings which were admitted into evidence, and memoranda filed by the parties, applicable law, and the argument of counsel, for the reasons stated in open court following this hearing and for those reasons set forth in Plaintiff's original memorandum in support and reply memorandum in support of this Motion, which are incorporated by reference:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment is rendered herein in favor of Plaintiffs, LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC and against Defendants, Agspring Mississippi Region, LLC, (E.I.N. 32-0409147) and Agspring, LLC, (E.I.N 46-0857735), solidarily, for the principal amount of twenty-two million and no/100 dollars ($22,000,000.00), $240,794.52 in accrued regular interest on the Note from September 1, 2018 to October 16, 2018, plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum (a per diem rate

of $7,232.88) from October 17, 2018 until April 19, 2021, default interest on the principal balance of the Note at the rate of 12.00% per annum from April 20, 2021 until paid in full, for the costs of obtaining this judgment, and (vi) additional costs and attorney's fees incurred in the future for collection of this debt until paid in full, including but not limited to executing against enforceable encumbrances securing the Second Amended and Restated Promissory Note and executing on or collecting upon this Judgment (the "Indebtedness");

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that the Indebtedness is secured by each of the following first priority, validly perfected security interests:

   a) That certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of June 26, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of West Carroll Parish in Mortgage Book 254, Page 787, Date Reg. No. 245116, as amended by that certain Amendment of Mortgage dated as of June 26, 2013, passed before Donald K. Carroll, Notary Public for the State of Louisiana, and recorded in the mortgage records of West Carroll Parish in Mortgage Book 265, page 551, Date Reg. No, 250833, (the June 26, 2013 Mortgage, Security Agreement and Assignment of Leases and Rents, as amended by the June 26, 2013 Amendment of Mortgage, is hereinafter referred to the " West Carroll Mortgage"), which West Carroll Mortgage affects the immovable property located in West Carroll Parish described therein together with the other property and rights more fully described therein (collectively, the "West Carroll Mortgaged Property"), and secures all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made by Agspring Mississippi not to exceed one hundred million dollars ($100,000,000.00).

   b) That certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of September 6, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of West Carroll Parish in Mortgage Book 256, Page 25, Date Reg. No. 245613, " and recorded in the mortgage records of Morehouse Parish in Mortgage Book 710, Page 172, File No. 238110, as amended by that certain Amendment of Mortgage dated as of September 6, 2013, passed before Donald K. Carroll, Notary Public for the State of Louisiana, recorded in the mortgage records of West Carroll Parish in Mortgage Book 265,

Page 546, Date Reg. No. 250832, " and recorded in the mortgage records of Morehouse Parish in Mortgage Book 736, Page 555, File. 248060, (the September 6, 2013 Mortgage, Security Agreement and Assignment of Leases and Rents, as amended by the September 6, 2013 Amendment of Mortgage, is hereinafter referred to the "West Carroll and Morehouse Mortgage"), which West Carroll and Morehouse Mortgage affects the immovable property located in West Carroll and Morehouse Parishes described therein together with the other property and rights more fully described therein (collectively, the "West Carroll and Morehouse Mortgaged Property"), and secures all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made by Agspring Mississippi not to exceed one hundred million dollars ($100,000,000.00); and

c) That certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of February 1, 2014, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of East Carroll Parish in Mortgage Book 220, Page 192, Reg. No. 89267, as amended by that certain Amendment of Mortgage dated as of February 1, 2014, passed before Donald K. Carroll, Notary Public for the State of Louisiana, and recorded in the mortgage records of East Carroll Parish in Mortgage Book 223, page 229, Reg. No, 90613, (the February 1, 2014 Mortgage, Security Agreement and Assignment of Leases and Rents, as amended by the February 1, 2014 Amendment of Mortgage, is hereinafter referred to the "East Carroll Mortgage"), which East Carroll Mortgage affects the immovable property located in East Carroll Parish described therein together with the other property and rights more fully described therein (collectively, the "East Carroll Mortgaged Property" and, collectively with the West Carroll Mortgaged Property and the West Carroll and Morehouse Mortgaged Property, the "Mortgaged Properties"), and secures all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made by Agspring Mississippi not to exceed one hundred million dollars ($100,000,000.00).

**IT IS FURTHER ORDERED, ADJUDGED, DECREED AND RECOGNIZED** that the security interest granted to LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC in the West Carroll Mortgage, the West Carroll and Morehouse Mortgage and the East Carroll Mortgage (collectively, the "Mortgages") was perfected by the filing of UCC-1 financing statements in the State of Louisiana and was also perfected by the filing of a UCC-1 financing statement in the State of Delaware.

**IT IS FURTHER ORDERED, ADJUDGED, DECREED AND RECOGNIZED** that LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC have the right, at their option, to have the Mortgaged Property seized and sold pursuant to La. C.C. art. 3279, La. C.C.P. art. 3721, *et seq*. and, in the manner provided by law, have the proceeds applied to satisfy the Indebtedness and the reasonable attorney's fees, expenses and costs of any such seizure and sale to be paid in preference and priority over all other persons and inferior encumbrances.

**IT IS FURTHER ORDERED, ADJUDGED, DECREED AND RECOGNIZED** that Plaintiffs have the right and at their option may petition the Court for the appointment of a keeper of the Mortgaged Property pursuant to the provisions of La. R.S. 9:5136 *et seq*. and may request a sequestration of all or any of the Mortgaged Property and incident thereto the appointment of a keeper as provided in the Mortgages.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the parties reserve to themselves any other claims and defenses not addressed herein, it being their intent to resolve with finality only the Action on Promissory Note, on The Guaranties, for Recognition of Mortgages, and Right To Seize and Sell Properties and that all other claims asserted in the captioned matter remain viable and unresolved.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court determines and finds that there no just reason for delay and that this judgment constitutes and is designated as a FINAL partial judgment pursuant to La. C.C.P. art. 1915.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the determination of the reasonable attorney's fees to which Plaintiffs are entitled in connection with the above-captioned matter and in enforcing and collecting upon this Judgment shall not prevent or delay the immediate execution of this Judgment, and that such attorney's fees may be subsequently

4

determined by stipulation of the parties or, failing such stipulation, by summary proceedings or otherwise to determine the reasonableness of such attorney's fees.

**THUS DONE AND SIGNED** this ____ day of _____, 2021, at Tallulah, Louisiana.

---

               **Hon. Jimmie C. Peters**
        6th **Judicial District Court Judge (*Ad Hoc*)**
              **Case: 19-198, Div. B**

Respectfully submitted:

---

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone: 225-236-3636
Fax: 225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW**
**& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com