# Exhibit C

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING MISSISSIPPI REGION, LLC, *et al.*[1], | Case No. 21-11238 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: November 3, 2021 at 10:00 a.m.**<br>**Obj. Deadline: October 27, 2021 at 4:00 p.m.** |

## NOTICE OF MOTION OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE

PLEASE TAKE NOTICE that Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (collectively, the "Movants") have filed the *Motion of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC for Limited Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code* (the "Motion").

A HEARING ON THE MOTION WILL BE HELD ON **NOVEMBER 3, 2021 AT 10:00 A.M. (ET)** AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, WILMINGTON, DE 19801, 3RD FLOOR, COURTROOM 7.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

At the same time you must also serve a copy of the response upon Movants' attorneys:

J. E. Cullens, Jr., Esquire
Andrée M. Cullens, Esquire
WALTERS, PAPILLION, THOMAS,
CULLENS, LLC
12345 Perkins Road, Bldg. 1
Baton Rouge, LA 70810
Telephone: (225) 236-3636
cullens@lawbr.net
acullens@lawbr.net

Paul M. Sterbcow, Esquire
LEWIS, KULLMAN, STERBCOW &
ABRAMSON, LLC
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504)588-1500
sterbcow@lksalaw.com

Christopher P. Simon, Esquire
Michael L. Vild, Esquire
CROSS & SIMON, LLC
1105 N. Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

**ANY RESPONSE MUST BE FILED AND SERVED TOGETHER WITH A CERTIFICATE OF SERVICE ON OR BEFORE OCTOBER 27, 2021 AT 4:00 P.M. (ET). FAILURE TO TIMELY FILE AND SERVE A RESPONSE WILL RESULT IN AN ORDER GRANTING THE RELIEF REQUESTED IN THE MOTION.**

The hearing date specified above may be a preliminary hearing or may be consolidated with the final hearing, as determined by the Court.

The attorneys for the parties shall confer with respect to the issues raised by the Motion in advance for the purpose of determining whether a consent judgment may be entered and/or for the purpose of stipulating to relevant facts such as value of the property, and the extent and validity of any security instrument.

Dated: October 8, 2021                     CROSS & SIMON, LLC

                                           */s/ Michael L. Vild*
                                           Christopher P. Simon (No. 3697)
                                           Michael L. Vild (No. 3042)
                                           1105 N. Market Street, Suite 901
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 777-4200
                                           Facsimile: (302) 777-4224
                                           csimon@crosslaw.com
                                           mvild@crosslaw.com

                                           - and -

                                           J. E. Cullens, Jr., Esquire
                                           Andrée M. Cullens, Esquire
                                           WALTERS, PAPILLION, THOMAS,
                                           CULLENS, LLC
                                           12345 Perkins Road, Bldg. 1
                                           Baton Rouge, LA 70810
                                           Telephone: (225) 236-3636
                                           Facsimile: (225) 236-3650
                                           cullens@lawbr.net
                                           acullens@lawbr.net

                                           - and -

                                           Paul M. Sterbcow, Esquire
                                           LEWIS, KULLMAN, STERBCOW &
                                           ABRAMSON, LLC
                                           601 Poydras Street, Suite 2615
                                           New Orleans, LA 70130
                                           Telephone: (504)588-1500
                                           sterbcow@lksalaw.com

                                           *Co-Counsel for Larry Tubbs, Tubbs Rice Dryers,
                                           Inc., Chief Ventures, L.L.C. and Big River Grain,
                                           LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING MISSISSIPPI REGION, LLC, *et al.*[1], | Case No. 21-11238 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: November 3, 2021 at 10:00 a.m.**<br>**Obj. Deadline: October 27, 2021 at 4:00 p.m.** |

## MOTION OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE

Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (collectively, the "Movants"), by and through undersigned counsel, hereby move this Honorable Court (the "Motion"), pursuant to section 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 4001, and Local Rule 4001-1 for an order modifying the automatic stay imposed by section 362(a) of the Bankruptcy Code for the limited purpose of permitting oral argument and entry of a decision and judgment on Movants' pending Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. art. 1915 ("Foreclosure Motion"). The Foreclosure Motion was set for hearing on September 13, 2021 in the civil action captioned, *Larry Tubbs, et al v. Agspring Mississippi Region, LLC, et al,* pending in Louisiana and stayed by the filing of these proceedings. The purpose of the instant motion is to allow Movants to reduce their debt claims to judgment and to proceed with collection against the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

non-debtor defendants.[2]  In support of this Motion, the Movants respectfully show the Court as follows:

## BACKGROUND

1.      On September 10, 2021, (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").  The Debtors are debtors-in-possession.

2.      The Movants are all either Louisiana residents or entities organized under the laws of the State of Louisiana.

3.      On September 30, 2019, the Movants filed suit, in the Sixth Judicial District Court, Parish of Madison, State of Louisiana, case number 19-198, against debtors Agspring Mississippi Region, LLC ("AMR") and Lake Providence Grain and Rice, LLC, as well as non-debtors Greg Kennedy, Bruce Chapin, Mark Chapin, Agspring, LLC, Pacific Investment Management Company, LLC ("PIMCO"), Barings, LLC, several American Infrastructure Management ("AIM") funds, and two as-yet-unidentified insurance companies (the "Louisiana Litigation"). The Louisiana Litigation was stayed by the commencement of the Debtors' chapter 11 cases. Copies of the Petition and Amended Petition that initiated the Louisiana Litigation are collectively attached hereto as Exhibit A.

4.      The Louisiana Litigation is based on unpaid debt owed by AMR, and guaranteed by non-debtor Agspring, LLC.

5.      Larry Tubbs, a resident of Madison Parish, Louisiana, has been, individually and through a group of family-owned companies – Chief Ventures, L.L.C., Tubbs Rice Dryers, Inc.,

---

[2] The Defendants in the Louisiana Litigation removed it to federal court on the same date that these proceedings commenced.  Movants have filed contemporaneously a Motion to Abstain and Remand the state litigation pursuant to 11 U.S.C. § 1334(c).

and Big River Grain, LLC – an integral part of the farming and grain industry in the Louisiana region for over 50 years. In late 2012, a representative of AMR walked into Mr. Tubbs's office in Pioneer, Louisiana, and asked Larry if he was interested in selling his grain business. Mr. Tubbs, then 70, had not marketed his business for sale and until that point had considered it a legacy for his children to continue. But after several conversations with AMR's representatives and his own family, Larry retained counsel in Louisiana who negotiated with AMR's counsel, located in New Orleans, Louisiana. The negotiations culminated with the sale of the grain business assets to AMR in June 2013.

6. Part of the sale was financed on credit from the Movants, which was memorialized on June 26, 2013 by a promissory note payable to the order of Larry Tubbs, Chief Ventures, L.L.C., Tubbs Rice Dryers, Inc., and Big River Grain, LLC signed by AMR in the principal amount of $7,000,000. AMR proposed during the earlier negotiation that Movants become a minority interest holder in the buyer, but Movants were not interested and ultimately the sale was completed with Movants as secured creditors.

7. By September 2013, AMR requested another loan, increasing the principal amount of the debt to $17,000,000, which was memorialized by a First Amended and Restated Promissory Notes signed by AMR on September 6, 2013. AMR again borrowed additional money from Movants, which was memorialized on February 1, 2014 by a Second Amended and Restated Promissory Note in the original principal amount of $22 Million. This debt was guaranteed by AMR's sole member, non-debtor Agspring, LLC, and was secured by mortgages, assignments of leases and rents, and security interests in personal property in Louisiana. The note required an interest only payment until maturity.

8.      The Louisiana Litigation seeks damages arising from AMR's default on October 1, 2018, and subsequent acceleration of the maturity date for the Second Amended and Restated Promissory Note (the "Debt").

9.      In 2015, the owners of non-debtor Agspring LLC, AMR's parent company, sold their interests to investment funds managed and controlled by PIMCO, Barings, LLC, and AIM. Although AMR was a thriving business, in early 2018, PIMCO and Agspring, LLC, began pressuring Movants to convert some of the debt that AMR owed to equity. Consistent with their previous, pre-sale position, Movants refused. The interest payments had been paid without fail until it became clear to PIMCO that Movants would never concede to forgive any of the Debt or convert any portion of it to equity. When, in October 2018, AMR failed to make its required interest payment, Movants accelerated the Debt, which began accruing default interest on October 17, 2018.

10.     After Movants formally declared the default and accelerated the Debt, in February 2019, they discovered that in late December 2018, AMR transferred four tracts of land to its wholly owned subsidiary, debtor Lake Providence Grain and Rice, LLC, for no consideration. Given this clear badge of fraud, Movants attempted to investigate any further facially fraudulent actions by AMR and non-debtor Agspring, LLC.

11.     Ultimately, Movants prepared and filed an ordinary process foreclosure suit in Madison Parish, Louisiana on September 30, 2019, amended on December 17, 2019, seeking 1) a judgment on the note, guarantee, mortgages, and the right to seize and sell the property; 2) to revoke the fraudulent transfer to Lake Providence Grain and Rice, LLC; 3) return of unlawful distributions from AMR or Agspring LLC, including asserting that the loan established on the day of the sale to the PIMCO, Barings, and AIM funds was not a true loan, but an investment for which

4

any payments were distributions subject to the rules on distributions during insolvency; 4) to revoke fraudulent transfers of any other assets from AMR or Agspring LLC; 5) alter ego claims; and 6) claims against officers and directors of Agspring, LLC and AMR.

12.     In response to the petition and amended petition, all defendants in the Louisiana litigation sought and obtained extensions of time to file responsive pleading and filed exceptions in late February 2020.  Notably, AMR did not file an exception to the claim seeking judgment on the Note, Mortgages and Security Interests, but did raise exceptions to the fraud claims.  Indeed, in response to admission requests, AMR admitted that it signed the note, and both AMR and non-debtor Agspring, LLC admitted that they owed the Debt.

13.     Because the exceptions were filed just as COVID-19 became a nationwide pandemic and to allow the court and parties to address COVID-19 issues, the hearings on the exceptions were not ultimately heard until December 11, 2020.  In the interim, Movants reached an agreement with AIM to dismiss it without prejudice and to withhold hearing on Baring's objections until the outcome of the exceptions filed by AMR, Agspring, LLC, the officers and directors, and PIMCO, which were in fact heard and taken under advisement.

14.     The state court denied all but one of the exceptions on February 2, 2021.

15.     Non-debtor Agspring LLC and AMR filed their answers on February 26, 2021.

16.     Movants filed on April 22, 2021, a Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. art. 1915[3] which would reduce the debt to judgment, recognize that the mortgages secured the judgment, and allow Movants to seize and sell property.  Despite Movants' request for an earlier hearing, after a telephone conference with the state court, the hearing on the Foreclosure Motion

---

[3] A copy of the Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. art. 1915 are attached hereto as Exhibit B.

was set on September 13, 2021 to allow non-debtor Agspring LLC and AMR sufficient time to conduct discovery.

17.     AMR and Agspring, LLC filed their Opposition to the Foreclosure Motion on August 27, 2021 arguing that: 1) they needed more time to understand the complaint and conduct discovery; 2) that the Defendants may have been fraudulently induced to borrow money from Movants (an argument for which they produced no evidence to support); and 3) they were entitle to a reduction in the interest due from the date that Movants refused to release their mortgage on part of its collateral in exchange for an amount that Movants knew to be unfairly low. Movants replied to these arguments on September 3, 2021, showing that, as a matter of law and fact, none of these arguments precluded a judgment in their favor.

18.     Non-debtor Agspring LLC and AMR moved for a continuance of the hearing on September 1, 2021 which Movants opposed.  The state court informed the parties on September 2, 2021 that he would hear the late-filed motion for continuance on September 13, 2021, and the parties should be prepared to also argue the Foreclosure Motion should he deny the continuance.

19.     On September 8, 2021, AMR retained a Chief Restructuring Officer.

20.     AMR filed for bankruptcy on September 10, 2021, the Friday afternoon before the Monday hearing on the Foreclosure Motion.

## STATEMENT OF RELIEF REQUESTED

21.     By this Motion, the Movants seek relief from the automatic stay so that the Louisiana Court may have oral argument and render a decision on the Foreclosure Motion liquidating the debt to allow Movants to pursue the Louisiana Litigation only against the non-debtor defendants to judgment or other resolution and satisfy any judgment or other resolution they may obtain against the non-debtor defendants.

## BASIS FOR THE RELIEF REQUESTED

22.     Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay……for cause……

11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Code, but rather must be determined on a case-by-case basis.  *In re Rexene Prods. Co.,* 141 B.R. 574, 576 (Bankr. D. Del. 1992) (internal citations and quotations omitted). "Cause is a flexible concept and courts often……examin[e] the totality of the circumstances to determine whether sufficient cause exists to lift the stay."  *In re SCO Group, Inc.,* 395 B.R. 852, 856 (Bankr. D. Del. 2007).

23.     Courts often follow the logic of the intent behind §362(d) which is that it is often appropriate to allow litigation to proceed in its initial forum, if no prejudice to the estate, "in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *In re Tribune Co.,* 418 B.R. 116, 126 (Bankr. D. Del. 2009) (quoting legislative history of §362(d) (internal citations omitted).

24.     This Court relies upon a three-pronged balancing test in determining whether "cause" exists for granting relief from the automatic stay to continue litigation: (a) Whether prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (b) Whether the hardship to the non-bankrupt party by maintenance of the stay outweighs the debtor's hardship; and (c) the creditor's probability of success on the merits. *See In re Tribune Co.,* 418 B. R. 116, 126 (Bankr. D. Del. 2009).

25.     Here, the facts weigh heavily in the Movants' favor on each of these three prongs. First, the Debtors will not suffer prejudice should the stay be lifted because all of the briefing is done, and it will only require a few hours of argument to allow the promissory note claim to be

liquidated.  Further, entry of judgment in the Louisiana Litigation will allow the Movants to seek collection from non-debtor entities.  The Debtors have stated that the objective of these chapter 11 case is the orderly liquidation of their assets.  Allowing the Louisiana Litigation to proceed against non-debtors will help to resolve one of the questions necessary for these chapter 11 cases to proceed: are the Movants over or under secured.  Resolution of this question will improve debtors' ability to propose a liquidating plan.  *See In re Danzik*, 549 B.R. 804, 808 (Bankr. D. Wyoming 2016) ("Because this is a Chapter 11 bankruptcy case, creditors' claims must be liquidated. Entry of a final judgment will assist this Court, as opposed to interfere, as it will allow the claim to be properly addressed and handled….").  Moreover,  if the Court were to deny relief, the parties would need to re-start the entire process to determine the validity and/or amount of any claim related to the debt causing duplication, delay, and additional expense which actually prejudices creditors. The steps necessary to finalize these matters in state court are minimal when compared to the resources that this Court and parties would expend re-litigating the underlying fact of the Debt. Indeed, the cost to re-start the process would far exceed any cost to finalize the matters in state court because liquidating the amount owed on the debt has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in this Court.

26.     Second, the Movants will face substantial hardship if the stay is not lifted because they will incur additional attorney's fees to re-litigate issues presently fully before the state court. And allowing the state court to enter a final, partial judgment on the debt will result in little cost to the Debtors.    Maintaining the automatic stay and requiring this Court to address the matter in this Court, would result in substantial financial hardship to both the Debtors and creditors because it could result in inconsistent judgments on the amount owed on the Debt and could potentially seriously reduce the amount that must be satisfied from debtor assets.

27.     By contrast, the Debtors will not suffer any hardship if the Movants' action is allowed to proceed in Louisiana.  The action should not present factual or legal issues which will impact or distract the Debtors from the liquidation process.  Indeed, as argued above, it will actually help the liquidation process.  Moreover, even though the Debtors have filed an objection, those objections are without merit and would not preclude the state court from rendering judgment in Movants' favor.

28.     Lastly, the likelihood of success on the merits prong is satisfied by "even a slight probability of success on the merits may be sufficient to support lifting an automatic stay." *In re Continental Airlines, Inc.,* 152 B.R. 420, 426 (D. Del 1993).  This prong also weighs in Movants' favor.  As described above, there is sufficient evidence to prove Movants' allegations given that the debt is not disputed.  The defendants in the Louisiana Litigation have offered no serious defense in the Louisiana Litigation.  In fact, AMR and non-debtor Agspring, LLC admitted in the Louisiana Litigation that the Debt is owed and due.  Furthermore, AMR presented no evidence at all to support its odd argument that Movants fraudulently induced AMR to borrow money.  Similarly, the law of Louisiana does not recognize a duty to accept property or any sale price offered for collateral securing a debt.  The mortgage did not restrict the right to collect the debt to the value of the property; it gave the Movants the right, at their option, to foreclose to satisfy the debt.  Given that Movants had not been the owners of the Mer Rouge Elevator since June 2013, they had no obligation or authority to approve or reject a sale.  No Louisiana law mandates that a creditor release its mortgage on its collateral based on any third parties' offer.  Put in other words, Agspring is not entitled to have it obligation to pay interest erased simply because someone might be interested in buying the property.  If this were the law, every homeowner could avoid foreclosure by having any person offer any price for their home and requiring the lender to accept that price,

whether it was ridiculous or not, or regardless of whether the person and the homeowner agreed to other terms of the sale.  Movants respectfully suggest that there is a high probability of success on their summary judgment motion in the Louisiana Litigation.  "Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where the decision-making process should be relegated to bodies other than [the bankruptcy] court."  *In re Fonseca v. Philadelphia Housing Authority,* 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990). This prong has been satisfied.

29.    On these facts, cause exists to lift the stay.  *Cf. In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 838 n. 8 (Bankr. S.D.N.Y. 1990) ("cause" utilized to permit litigation in another forum to liquidate personal injury claim).  As noted by the court in *In re Danzik*, "the overriding theme in determining whether to grant relief from the stay to permit litigation against Debtor in another forum is the effect of such litigation on the administration of the estate." *In re Danzik*, 549 B.R. at 810.  Allowing the state court to hear oral argument and render judgment on the amount due on the note will assist administration by setting the amount owed to Movants as secured creditors, aid the liquidation planning process and expeditious plan confirmation, and will allow Movants to move forward against non-debtors to satisfy the same Debt amount from assets not part of these bankruptcy estates.

## CONCLUSION

**WHEREFORE**, the Movants respectfully request the entry of an Order modifying the automatic stay imposed by section 362(a) of the Bankruptcy Code to allow the Movants have oral argument and obtain a decision on the Foreclosure Motion liquidating the debt so that they can prosecute the Louisiana Litigation against the non-debtor defendants.

Dated: October 8, 2021

CROSS & SIMON, LLC

*/s/ Michael L. Vild*
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

- and -

J. E. Cullens, Jr., Esquire
Andrée M. Cullens, Esquire
WALTERS, PAPILLION, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. 1
Baton Rouge, LA 70810
Telephone: (225) 236-3636
cullens@lawbr.net
acullens@lawbr.net

- and -

Paul M. Sterbcow, Esquire
LEWIS, KULLMAN, STERBCOW & ABRAMSON, LLC
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504) 588-1500
sterbcow@lksalaw.com

*Co-Counsel for Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC*

11

# Exhibit A

LARRY TUBBS, TUBBS RICE     :     SUIT NO.: _19-198___ DIVISION: _B___
DRYERS, INC., CHIEF VENTURES,     :
L.L.C., and BIG RIVER GRAIN, LLC     :
    :
VERSUS     :     SIXTH JUDICIAL DISTRICT COURT
    :
AGSPRING MISSISSIPPI REGION, LLC, :
AGSPRING, LLC, AGSPRING HOLDCO, :
LLC, GREG KENNEDY, MARK     :
BEEMER, PACIFIC INVESTMENT      PARISH OF MADISON
MANAGEMENT COMPANY, LLC,     :
BARINGS LLC, ERIC KNIGHT, BRUCE :
CHAPIN, ABC INSURANCE COMPANY, :
And XYZ INSURANCE COMPANY      STATE OF LOUISIANA

## PETITION

**NOW INTO COURT,** through undersigned counsel, comes LARRY TUBBS, an

individual of the full age of majority and resident of Madison Parish, Louisiana, TUBBS RICE

DRYERS, INC., a Louisiana corporation whose registered of business is in Madison Parish,

Louisiana, and CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC, each a Louisiana

limited liability company, whose registered place of business is in Madison Parish, Louisiana, all

of whom are collectively referred to herein as Plaintiffs, who assert as follows:

1.

Made Defendants herein and referred collectively to as "Defendants "are the following:

a.    Greg Kennedy ("Kennedy"), an individual of the full age of majority, and a resident of the state of California, Orange County;

b.    Mark Beemer ("Beemer"), an individual of the full age of majority, a resident of the state of Kansas, Johnson County;

c.    Pacific Investment Management Company, LLC, ("PIMCO") a Delaware corporation which is not licensed to do business in Louisiana;

d.    Barings, LLC, a Delaware limited liability company whose principal business establishment in Louisiana is in East Baton Rouge Parish;

e.    American Infrastructure MLP II IP Feeder LP, a Delaware limited partnership which is not licensed to do business in Louisiana;

f.    American Infrastructure MLP Management II LLC, a Delaware limited liability company which is not licensed to do business in Louisiana;

g.    American Infrastructure MLP PE Management, L.L.C , a Delaware limited liability company which is not licensed to do business in Louisiana;

h.    American Infrastructure MLP Yield Management, L.L.C., a Delaware limited liability company which is not licensed to do business in Louisiana;

i.    American Infrastructure MLP Funds, L.L.C., a Delaware limited liability company which is not licensed to do business in Louisiana;

j.    Agspring Holdco, LLC, a Delaware limited liability company which is not licensed to do business in Louisiana;

k.  Agspring, LLC, a Delaware limited liability company which is not licensed to do business in Louisiana;

l.  Agspring Mississippi Region, LLC, a Delaware limited liability company, whose principal business establishment in Louisiana is in East Baton Rouge Parish;

m.  Bruce Chapin ("Chapin"), an individual of the full age of majority, who, upon information and belief, is a resident of Kansas;

n.  Lake Providence Grain and Rice, LLC, a Delaware limited liability company, whose registered office is Lake Providence, Louisiana (East Carroll Parish);

o.  ABC INSURANCE COMPANY; and

p.  XYZ INSURANCE COMPANY.

2.

Venue is proper pursuant to LSA-C.C.P. arts. 73 and LSA-R.S. 13:3203 because Plaintiffs are domiciled in Madison Parish, Agspring Mississippi, Chapin, Beemer, Kennedy, and Barings, are joint or severally liable with Agspring Mississippi, PIMCO, Lake Providence Grain and Rice, LLC, and the injury occurred in Madison Parish where the debt was to be paid.

## INTRODUCTION

The large national investment firm defendants, the companies that they control, their employees, and representatives, are attempting to make a profit by inducing the debtor-companies controlled by these firms to fail pay debt legitimately owed to the Plaintiffs claiming insolvency as an excuse, when these companies are either not insolvent or the insolvency is artificially created through unlawful distributions to the companies' members, unlawful reimbursements of capital contributions made by PIMCO, transfers of assets for less than reasonably equivalent value to other companies or related-party entities, and, all so that the investment firms make a profit for their equity investors. These acts are unlawful.

## FACTUAL BACKGROUND

3.

Larry Tubbs has for over 50 years been immersed in the agricultural industry.

4.

Mr. Tubbs was the President and a stockholder of Tubbs Rice Dryers, Inc., and a member of Chief Ventures, L.L.C., and Big River Grain, LLC.

5.

Plaintiffs owned and operated a grain elevator business with facilities in Mer Rouge and Pioneer, Louisiana, handling rice, corn, soybeans, soft red winter wheat and sorghum.

6.

Grain elevators purchase grain from farmers and then sell that grain on the export market.

7.

Effective June 26, 2013, Plaintiffs sold the Mer Rouge and Pioneer facilities and other assets, including but not limited to all account receivables and inventory to Agspring Mississippi Region, LLC ("Agspring Mississippi").

8.

Agspring Mississippi did not pay the Plaintiffs the full amount of the purchase price in cash. Instead, on June 26, 2013, Agspring Mississippi executed a note payable to Plaintiffs for $7 million of the purchase price.

9.

The $7 million was to be paid in full in five years, on June 26, 2018, with interest accruing at 5.75 percent per annum.

10.

Thereafter, Agspring Mississippi acquired additional properties in Louisiana from other owners, which it merged with the facilities purchased from Plaintiffs and operated under the name "Big River Rice and Grain."

11.

On or about September 6, 2013, Agspring Mississippi borrowed an additional $10 million from Plaintiffs and signed an amended and restated promissory note changing the interest rate terms and extending the maturity date on which the note must be paid in full to September 6, 2023.

12.

As additional security for the increased debt owed by Agspring Mississippi, on September 6, 2013, Plaintiffs obtained a guarantee from Agspring Mississippi's parent company, Agspring LLC, who unconditionally and *in solido* promised to pay the sums owed by Agspring Mississippi to Plaintiffs.

13.

Larry Tubbs negotiated the above transactions for Plaintiffs. Bradley "Brad" K. Clark, then President of Agspring Mississippi and Agspring, LLC, negotiated the above transactions for these entities.

3

14.

In February 2014, Agspring Mississippi borrowed more money from Plaintiffs, making the total debt that Agspring Mississippi owed to Plaintiffs $22 Million. Agspring Mississippi executed a Second Amended and Restated Promissory Note reflecting the obligation of Agspring Mississippi to repay the $22 Million.

15.

Upon information and belief, the amounts borrowed by Agspring Mississippi from Plaintiffs were used to acquire properties to expand Agspring Mississippi and Agspring LLC's operations by buying additional agricultural businesses in Louisiana and other states.

16.

Larry Tubbs worked for Agspring Mississippi profitably running its Louisiana operations as Chief Executive Officer from June 2013 until 2015, when he retired at 72 years old.

**THE AGSPRING ENTITIES**

17.

Agspring Mississippi is a wholly-owned subsidiary of Agspring, LLC.

18.

Agspring LLC was formed in 2012 with financing provided by NGP Energy Capital Management ("NGP") or its affiliates.

19.

Agspring LLC was formed as an operating company to serve as a platform for acquisitions and consolidation of agribusiness firms into a major company to supply grains, oilseeds and related products globally.

20.

The acquisition of Plaintiffs' businesses, through its subsidiary Agspring Mississippi, was part of Agspring LLC's strategy to become a major global supplier of grains and related products.

21.

By the end of 2014, NGP decided that it would not allocate any additional capital to Agspring LLC, instead desiring to earn its investors a return on their capital and began efforts to sell its interest in Agspring LLC.

4

22.

American Infrastructure MLP II IP Feeder LP, American Infrastructure MLP Management II L.L.C., American Infrastructure MLP PE Management, L.L.C., American Infrastructure MLP Yield Management, L.L.C., American Infrastructure MLP Funds, L.L.C., and American Infrastructure MLP Funds, L.L.C., collectively referred to herein as "AIM", PIMCO and Barings performed extensive due diligence in connection with the sale of NGP's membership interests in Agspring LLC.

23.

Upon information and belief, in 2015, NGP transferred its membership interests in Agspring LLC to Agspring LP, owned by AIM, PIMCO and Barings, through designated affiliates and investor groups.

24.

Upon information and belief, the purchase of the membership interests by Agspring LP was to provide additional capitalization for Agspring LLC and subsidiaries to continue to expand.

25.

Upon information and belief, PIMCO's "capital contribution" to Agspring LP was disguised as a term revolving loan for about $70 million to one or more of Agspring LLC or its subsidiaries to subsidize the expansion and operations of Agspring LLC and its subsidiaries.

26.

Agspring LLC, is or was the sole member and owner of Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, and FO-ND, LLC a Delaware limited liability company, all of which Agspring LLC holds out to the public as its subsidiaries and upon information and belief, are the basis of Agspring, LLC's ability to supply grains, oilseeds and related products globally.

27.

A new company, Agspring Holdco, LLC, was formed in or around September 2017 pursuant to a Restructuring Support Agreement requiring the conversion of Agspring Holdco's predecessor in interest, Agspring, LP, to a limited liability company.

28.

Upon information and belief, since sometime after 2015, Agspring Mississippi has been the wholly-owned subsidiary of Agspring, LLC, which is the wholly-owned subsidiary of initially Agspring LP, then Agspring Holdco, LLC.

29.

Upon information and belief, Mark Beemer, has been the Chief Executive Officer for each of Agspring Idaho, LLC, Agspring Logistics, LLC, Agspring Mississippi, FO-ND, LLC, and Agspring LLC since at least January 2016.

30.

Upon information and belief, Bruce Chapin has been the Chief Financial Officer for each of Agspring Idaho, LLC, Agspring Logistics, LLC, Agspring Mississippi, FO-ND, LLC, and Agspring LLC since at least January 2017.

31.

Upon information and belief, Greg Kennedy has been a member of the Board of Directors for Agspring Mississippi and Agspring, LLC since at least December 2015 and Agspring Holdco, LLC since it was formed.

32.

Upon information and belief, Greg Kennedy also has been an employee of PIMCO both before and after December 2015 while at the same time serving on the boards of Agspring Mississippi, Agspring Holdco, LLC and Agspring LLC.

33.

By August 2017, upon information and belief, PIMCO had obtained a majority interest in the Agspring defendants, by acquiring the majority ownership interests in Agspring Holdco, LLC.

34.

On March 1, 2018, Agspring LLC proposed to Plaintiffs a possible restructuring of the indebtedness of Agspring, LLC and its affiliates, including the debt owed by Agspring Mississippi to Plaintiffs.

35.

Plaintiffs agreed to listen to Agspring LLC's proposal.

36.

On or before March 4, 2018, Larry Tubbs and Mark Beemer met in Louisiana to discuss the debt owed by Agspring Mississippi to Plaintiffs. Beemer represented to Tubbs that Agspring LLC and its affiliates, including Agspring Mississippi, had an untenable capital structure which they were working to address. Beemer represented that the Agspring entities needed additional liquidity and balance sheet adjustments to address these issues. Part of the goal, as set forth in a memo from Beemer to Tubbs dated March 4, 2018 providing Tubbs with an update from their discussions, was to "preserve" the value for "stakeholders." Thus, it was seeking an "out-of-court restructuring."

37.

In April of 2018, Beemer represented to Tubbs that Agspring LLC and its subsidiaries were in a difficult financial position, which if they did not get it worked out, Agspring LLC and its subsidiaries were "headed for bankruptcy."

38.

In response to these communications, Plaintiffs offered to purchase all assets of Agspring Mississippi for $30,000,000, which offer was rejected.

39.

After turning down Plaintiff's offer, during the summer of 2018, George Varughese, a representative of PIMCO, met with Tubbs in Louisiana to again unsuccessfully attempt to convince Plaintiffs to forgive some of the debt owed by Agspring Mississippi.

40.

On or about September 18, 2018, Tubbs, Plaintiffs' accountant Larry Pickett, and their lawyer Donald Carroll, met in Louisiana in person with Kennedy, Beemer and Chapin to hear PIMCO's proposed restructure of Plaintiffs' Second Amended and Restated Promissory Note.

41.

During that September 18, 2018 meeting, Beemer gave a letter to Tubbs proposing that the Plaintiffs voluntarily agree to restructure the debt owed by Agspring Mississippi to Plaintiffs. Beemer propose three different options:

1.    Pay the full amount due of $22 Million over ten years with no interest at all;

7

2. Forgive $12 Million of the debt and be paid the balance of $10 Million over seven years at 4% interest per annum with a security interest in all material assets of Agspring LLC through its subsidiaries; or

3. Conversion of all debt to equity with no management participation rights, but only minority investor rights.

42.

Attached to the September 18, 2018 letter from Beemer were several pages, including a statement that on August 3, 2018, "Barings relinquished its 53.5% equity ownership in Agspring LLC to PIMCO" and that several other "factors combined with long-term debt of $97mm makes the effective value of equity at August 3, 2018 at or near $0."

43.

Additionally, an attachment to the September 18, 2018 letter also stated:

*"The current Tubbs Note collateral consists of the Pioneer, Mer Rouge and Monticello elevator assets in Louisiana. These three assets were appraised at approximately $16.9 million in April 2018. Agspring management recently went through a sales process and found limited to no interest from likely buyers in these assets (nor any interest from buyers in the other Big River interior elevator assets not securing this Note). Accordingly, management believes the current actual salable value of these assets to be $7-$8mm collectively at best under current market conditions ( if a buyer could even be found). The guarantee for the Tubbs Note from Agspring, LLC is unsecured and therefore ranks below all other secured debt in order of priority. Accordingly, given the amount of secured debt the unsecured guarantee is likely worth $0 as no value would be left for unsecured creditors under the current structure."*

44.

Given that Plaintiffs offered $30 Million for all the Agspring Mississippi assets in April of 2018 and that offer was rejected, Plaintiffs did not share management's beliefs, but viewed this as Agspring LLC's continued efforts to have Agspring Mississippi's debts forgiven to improve Agspring LLC, Agspring Holdco, and ultimately PIMCO and other members' equity position.

45.

Additionally, Beemer, Kennedy and Chapin provided Plaintiffs with a document entitled "Restructuring Discussion -L.Tubbs- Sept 5, 2018," showing that PIMCO claimed that it was owed a term loan by Agspring, LLC, and was also the 96.49 percent equity interest holder in Agspring Holdco, LLC, the sole member of Agspring LLC.

46.

At the meeting in Louisiana, Kennedy, Beemer and Chapin stated that since the equity interest holders were losing money on their interest in the Agspring entities, PIMCO demanded

8

that Plaintiff also participate in the losses by voluntarily forgiving a large portion of the Agspring Mississippi debt, so that PIMCO would get more money out of the deal.

47.

Although the September 18, 2018 proposal included a complete conversion of the Agspring debt owed to Plaintiffs to an equity interest in Agspring, LLC, Kennedy, Beemer and Chapin stated that they did not really want the Plaintiffs to select this option. They also indicated at this meeting that if Plaintiffs did not forgive some of the debt, Agspring LLC would file for bankruptcy.

48.

Although Plaintiffs did not find the arguments made by Kennedy, Beemer or Chapin persuasive, they agreed to continue the discussions.

49.

Agspring Mississippi timely paid the installments due on the note owed to Plaintiffs until October 1, 2018.

50.

Kennedy, Beemer, Chapin, Tubbs, Pickett and Carroll again met on or about October 5, 2018, in Louisiana, where immediately Beemer indicated that the note owed to Plaintiffs was in default and that they had no intention of paying it unless the Plaintiffs agreed to forgive some of the debt owed under the note.

51.

Agspring Mississippi has made no payments after October 1, 2018.

52.

Upon information and belief, one or more of the Defendants have received distributions on account of their equity interest in Agspring Mississippi, Agspring, LLC, or Agspring Holdco, LLC at the same time that Agspring Mississippi, LLC owed but did not make payments on its debt to Plaintiffs.

53.

By letter dated October 10, 2018, to Agspring Mississippi, Plaintiffs declared that the note has been accelerated such that the whole principal and interest due at once became due and payable.

54.

By letter dated October 11, 2018, Plaintiffs gave notice to Agspring, LLC that Agspring Mississippi defaulted on the note, that the notice of default was sent, and that the debt has been accelerated.

55.

Because Agspring Mississippi failed to pay the installment payments as they became due under the note, seven days after the October 10, 2018 notice of default, or October 17, 2018, the note began to accrue interest using the default rate of 12% per annum.

56.

By letter dated October 23, 2018, Plaintiffs again demanded from Agspring Mississippi payment in full of all amounts due under the note.

57.

Neither Agspring Mississippi nor Agspring LLC have paid in full the amount due on the note.

58.

Neither Agspring Mississippi nor Agspring LLC paid the debt owed to Plaintiffs when it came due.

59.

Upon information and belief, Agspring Holdco, Agspring LLC, and Agspring Mississippi's assets exceeded their liabilities at all times after December 2015.

60.

In response to the failure to make this payment, Plaintiffs sent notice to Agspring Mississippi on October 10, 2018, that Plaintiffs exercised their rights to accelerate the due date of the note in response to Agspring Mississippi's breach of its obligation to timely pay the note.

### Claim No. 1: INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

### Claims against Kennedy, Beemer and Chapin

61.

Paragraphs 4 through 61 at incorporated herein as though copied *in extenso*.

10

62.

The note and guarantee obligations between Plaintiffs and Agspring Mississippi and Agspring LLC are contracts.

63.

Kennedy, Beemer and Chapin were officers of Agspring Mississippi, and Agspring LLC and knew of the note and guarantee obligations of Agspring Mississippi and Agspring LLC to Plaintiffs.

64.

Kennedy was a director or manager of Agspring LLC and knew of its obligation to pay Plaintiffs if Agspring Mississippi defaulted on that obligation.

65.

Kennedy intentionally induced Agspring Mississippi and Agspring LLC to refuse to pay Plaintiffs as required by the Note to satisfy the interests of his employer, PIMCO, by demanding that Agspring pay PIMCO on the loan allegedly owed to it by Agspring Mississippi or Agspring LLC, which upon information and belief was not debt, but a capital contribution.

66.

Kennedy, Beemer and Chapin expressly intended to cause Agspring Mississippi to breach its obligations to Plaintiff in repaying the note by inducing it to withhold payment on October 1, 2018, among other additional facts which maybe discovered and shown at trial.

67.

Kennedy, Beemer and Chapin expressly intended to cause Agspring LLC to breach its obligations to Plaintiff under the guarantee by inducing it to withhold payment after being notified of Agspring Mississippi's default under the note, among other additional facts which maybe discovered and shown at trial.

68.

Kennedy, Beemer and Chapin intentionally and expressly directed Agspring Mississippi to not pay the interest due on the note, including but not limited to the October 2018 interest installment, unless and until Plaintiffs accepted something less than repayment of the note in full.

69.

Kennedy, Beemer and Chapin expressly and artificially caused or increased the insolvency of Agspring Mississippi and Agspring LLC by transferring assets, and related income streams,

from Agspring Mississippi and other subsidiaries, to related-party entities for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

<div align="center">70.</div>

Kennedy, Beemer and Chapin expressly intended to cause a payment of default on the note and guarantee to force Plaintiffs to forgive a portion of the debt for the unjustifiable purpose of 1) permitting or increasing equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO, Barings and/or AIM as members of Agspring Holdco; or 2) artificially causing or increasing the Agspring entities' insolvency.

<div align="center">71.</div>

Kennedy, Beemer and Chapin expressly controlled the diversion of money from Agspring Mississippi and Agspring LLC to other related-party entities, subsidiaries or affiliated entities to permit or increase equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO and/or Barings as members of Agspring Holdco; or 2) to artificially cause or increase Agspring Mississippi, Agspring LLC, Agspring Holdco's insolvency through the transfer of its assets in an attempt to excuse the default on the note owed to Plaintiffs.

<div align="center">72.</div>

These and other acts caused damages to the Plaintiffs in the form of lost interest and other consequential damages shown at trial.

**CLAIM No. 2:  LOUISIANA UNFAIR TRADE PRACTICES PURSUANT TO LSA-R.S. 51:1401 *et seq.***

**Claims against Greg Kennedy, Bruce Chapin, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM**

<div align="center">73.</div>

Paragraphs 4 through 72 at incorporated herein as though copied *in extenso*.

<div align="center">74.</div>

Upon information and belief, PIMCO, through its employee Greg Kennedy, AIM and Barings, through Agspring Holdco, completely controlled the actions of Agspring, LLC and Agspring Mississippi.

<div align="center">12</div>

75.

Upon information and belief, PIMCO, AIM and Barings, through Greg Kennedy, Mark Beemer, Bruce Chapin, and others, completely dominated Agspring Mississippi, Agspring LLC, Agspring Holdco by instructed their officers on how to perform the operation of these companies, including but not limited to directing whether to pay debts, whether to make distributions to members, and how to account for intercompany transfers.

76.

PIMCO, specifically, demanded that Agspring Mississippi refuse on October 1, 2018 to pay the installment due on the debt to Plaintiffs and to default on its obligations thereafter, so that PIMCO would receive distributions on account of its ownership interests in Agspring Holdco.

77.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM, conspired with and directed Beemer and Chapin to cause Agspring Mississippi to breach intentionally its obligation to Plaintiffs by inducing it to withhold payment on October 1, 2018, among other additional facts which maybe discovered and shown at trial.

78.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with and directed Beemer and Chapin, to direct Agspring Mississippi to not pay the interest due on the note, including but not limited to the October 2018 interest installment, unless and until Plaintiffs accepted something less than repayment of the note in full.

79.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with Beemer and Chapin to artificially cause or increase the insolvency of Agspring Mississippi and Agspring LLC by transferring assets, and related income streams, from Agspring Mississippi and other subsidiaries of Agspring LLC, and/or Agspring LLC to related-party entities without obtaining reasonably equivalent value in return or for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

80.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with Beemer and Chapin, intentionally to cause a payment of default on the note to force Plaintiffs' to

forgive a portion of the debt for the unjustifiable purpose of 1) permitting or increasing equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO, Barings, and/or AIM as members of Agspring Holdco at a time when to do so would cause or increase Agspring Mississippi and/or Agspring LLC's insolvency; or 2) artificially causing or increasing Agspring Mississippi and Agspring LLC's insolvency for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

<center>81.</center>

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with and directed Beemer and Chapin to divert money from Agspring Mississippi and Agspring LLC to other related-parties or affiliated entities to 1) permit or increase equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO and/or Barings as members of Agspring Holdco and thereby causing or increasing Agspring Mississippi and/or Agspring LLC's insolvency; or 2) artificially cause or increase Agspring Mississippi and Agspring LLC's insolvency by transferring assets for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

<center>82.</center>

These and other acts caused damages to the Plaintiffs in the form of lost interest, loss profits, attorney's fees, and other consequential damages shown at trial.

**CLAIM No. 3: NEGLIGENT BREACH OF GOOD FAITH DUTY TO PAY THE DEBT TO PLAINTIFFS PURSUANT TO LSA-C.C. ARTS. 1983, AND 1994 *et seq.*, OR ALTERNATIVELY, BAD FAITH BREACH PURSUANT TO LSA-C.C. ART. 1997**

**Claims against Agspring Mississippi and Agspring LLC**

<center>83.</center>

Paragraphs 4 through 82 are incorporated herein as if copied *in extenso*.
<center>84.</center>

Agspring Mississippi and Agspring LLC have a good faith duty to Plaintiffs to ensure that the assets of these companies are used to pay the debt owed Plaintiffs.

<center>85.</center>

At all times that Agspring Mississippi and Agspring LLC owed a duty to Plaintiffs to perform their obligations under the note in good faith to pursuant to LSA-C.C. art. 1983.

<center>14</center>

86.

The assets owned by a company constitute a trust in favor of its creditors for the payment of its debts.

87.

Agspring Mississippi and/or Agspring LLC owed a duty to use the assets of Agspring Mississippi and Agspring LLC's to pay Plaintiffs under the note and guarantee, including but not limited to paying the note in full upon acceleration and demand.

88.

Agspring Mississippi and/or Agspring LLC breached their duties by honoring PIMCO's demand, as the controlling member of Agspring Holdco, LLC, and consequently Agspring LLC and Agspring Mississippi, that they default on payment of the note and guarantee simply because they were not getting any concessions from Plaintiffs on forgiveness of some of the debt.

89.

Agspring Mississippi and/or Agspring LLC breached their duties to Plaintiffs by artificially creating or increasing Agspring Mississippi or Agspring LLC's insolvency as set forth below.

90.

Agspring Mississippi and Agspring LLC negligently, or alternatively in bad faith, breached their duty to Plaintiffs when preferring the interests of PIMCO by demanding that Agspring pay PIMCO on the loan allegedly owed to it by Agspring Mississippi or Agspring LLC, which upon information and belief was not debt, but a capital contribution to Agspring Holdco, when one or more of these companies were insolvent.

91.

These and other acts caused damages to the Plaintiffs in the form of foreseeable damages, including lost interest, loss of use of profits, and other compensable damages shown at trial, or alternatively all damages, foreseeable or not, that are a direct consequence of Agspring Mississippi and Agspring LLC's failures to perform.

### Claim No. 4: REVOCATORY AND/OR OBLIQUE ACTIONS

**Claims against Agspring Mississippi and Lake Providence Grain & Rice, LLC, Agspring LLC, Agspring Holdco, PIMCO, Barings, and AIM**

92.

Paragraphs 4 through 91 at incorporated herein as though copied *in extenso.*

15

93.

A limited liability company shall not make a distribution to a member if at the time of and after giving effect to the distribution, the fair value of the assets of the limited liability company exceeds all liabilities of the limited liability company, other than liabilities to members on account of their limited liability company interests and liabilities for which the recourse of creditors is limited to specified property of the limited liability company. Del. Code Ann. tit. 6, § 18-607.

94.

Officers and Directors of a company owe that company a fiduciary duty to exercise their business judgment in the best interests of the company.

95.

Agspring Mississippi and Agspring LLC have the right to sue a member who receives a distribution in violation of subsection Del. Code Ann. tit. 6, § 18-607(a) for the amount of the distribution and to sue officers and directors who breach their fiduciary duty by making distributions that are prohibited by law or applicable Limited Liability Company Agreements. Id.

96.

Upon information and belief, each of Agspring Mississippi, Agspring LLC and Agspring Holdco's Limited Liability Company Agreements contain a provision permitting a distribution to members only from excess cash after taking into account all debts, liabilities and obligations of the Company and any subsidiaries, and any reserves for any expenditures, working capital needs or other capital requirements (including capital expenditures) or contingencies.

97.

Kennedy, Beemer, Chapin and any other member or manager of Agspring Mississippi, Agspring or Agspring Holdco, willfully or negligently authorized the transfers of the corporate assets to Agspring, LLC, Agspring Holdco, PIMCO, Barings and/or AIM on account of their ownership interest from the assets of Agspring Mississippi, Agspring LLC, or Agspring Holdco while one or more of these entities were insolvent.

98.

Kennedy, Beemer, Chapin, Agspring, LLC, Agspring Holdco, PIMCO, Barings and/or AIM knew at the time they made or received the distributions that these distributions violated Del. Code Ann. tit. 6, § 18-607 and/or the applicable Limited Liability Company agreements.

99.

Kennedy, Beemer, Chapin, PIMCO, Barings and/or AIM and any other member of Agspring Mississippi, Agspring or Agspring Holdco who administered or received transfers of corporate assets to Agspring, LLC, Agspring Holdco, PIMCO, Barings and/or AIM, are liable, *in solido*, for the return of the amount of the transfers that caused or increased any of these companies' insolvency at the time the transfers were made.

100.

Plaintiffs assert, for themselves through LSA-C.C. art. 2036, and on behalf of Agspring Mississippi and Agspring, LLC through LSA-C.C. art. 2044, claims against Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM for return of the amounts that each received as a distribution from these companies to the extent that it caused or increased the insolvency of any of Agspring Mississippi or Agspring LLC.

101.

Plaintiffs assert, on behalf of Agspring Mississippi and Agspring, LLC through LSA-C.C. art. 2044, claims against Kennedy, and PIMCO as his employer, and Chapin, for damages to Agspring LLC or Agspring Mississippi and attorney's fees arising from their breach of fiduciary duties in administering distributions to Agspring Holdco, PIMCO, Barings and/or AIM which were prohibited under the applicable Limited Liability Company Agreements.

102.

On January 1, 2019, Agspring Mississippi Region, LLC recorded a deed purportedly donating to Lake Providence Grain and Rice, LLC, a Delaware limited liability company, all of its rights, title and interest in and to two immovable property tracts in Richland Parish as shown in Exhibit A attached hereto.

103.

On January 4, 2019, Agspring Mississippi Region, LLC recorded a Deed purportedly donating to Lake Providence Grain and Rice, LLC, all of its rights, title and interest in and to two immovable property tracts in Franklin as shown in the document attached hereto as Exhibit B.

104.

The four tracts identified at paragraphs 102 and 103 above are collectively referred to herein as the "Lake Providence Property."

17

105.

Upon information and belief, Lake Providence Rice and Grain, LLC, is a single-purpose enterprise formed only to hold immovable property.

106.

Upon information and belief, Lake Providence Rice and Grain, LLC, has no assets other than the Lake Providence Property.

107.

Upon information and belief, Lake Providence Rice and Grain, LLC is owned or controlled by Agspring Mississippi, Agspring LLC, Agspring Holdco, other related-party entities, or those entities controlled by some or all the board of directors of Agspring Holdco, Inc.

108.

Upon information and belief, the Lake Providence Property was transferred gratuitously, or alternatively, for less than reasonably equivalent value, thus causing or increasing the insolvency of Agspring Mississippi.

109.

Upon information and belief, Agspring Mississippi's total liabilities as of the date of, or immediately after, the transfer of the Lake Providence Property from Agspring Mississippi to Lake Providence Rice and Grain, LLC exceeded all of the fairly appraised value of the assets of Agspring Mississippi.

110.

Upon information and belief, Lake Providence Rice and Grain, LLC knew or should have known that the transfer of the Lake Providence Property would cause or increase Agspring Mississippi's insolvency.

111.

Because this transfer occurred after Agspring Mississippi's obligation to pay $22 Million to Plaintiffs arose, Plaintiffs request a judgment annulling the distributions to members of Agspring LLC, Agspring Holdco, LLC, PIMCO, Barings and/or AIM and the transfer of the Lake Providence Property to Lake Providence Rice and Grain, LLC and ordering these returned to the patrimony of Agspring Mississippi, Agspring LLC, and/or Agspring Holdco, LLC pursuant to LSA-C.C. art. 2036, *et seq.*

18

## Claim No. 5: ALTER EGO CLAIMS

### Claims against Agspring Mississippi, Agspring LLC, Agspring Holdco, PIMCO, Barings and AIM

112.

Paragraphs 4 through 111 are incorporated herein as though copied *in extenso*.

113.

Agspring, LLC, Agspring Mississippi and Agspring Holdco are the alter egos of PIMCO, Barings, and/or AIM.

114.

Since the 2015 acquisition, none of Agspring Mississippi, Agspring LLC, and Agspring Holdco have been inadequately capitalized.

115.

Since 2015, upon information and belief, Agspring Mississippi and Agspring Holdco have no funds of their own; instead Agspring LLC commingles any funds generated by Agspring Mississippi to fund its operations, the operations of its other subsidiaries, or to fund distributions from Agspring Holdco, which passed the funds to PIMCO, Barings, and AIM in the form of distributions.

116.

Upon information and belief, at all times described herein, the directors of each of Agspring, LLC, Agspring Mississippi and Agspring Holdco were substantially the same.

117.

Plaintiffs therefore request that the separate nature of these corporate entities be disregarded and treated as the alter egos of each other, and of PIMCO, Barings, and/or AIM.

118.

Upon information and belief, ABC Insurance Company and XYZ Insurance company provides coverage under insurance policies for some or all of the negligent acts asserted herein, who are liable *in solido* with one or more of the defendants. Plaintiffs assert claims against ABC Insurance Company and XYZ Insurance company preserve its claims for payment under these polices for the negligent acts asserted herein. Plaintiffs reserve their right to amend these pleadings to substitute the insurance companies providing this insurance coverage.

**WHEREFORE**,  after due proceedings are had, Plaintiffs request that a judgment be rendered in their favor, revoking the transfers that caused or increased Agspring LLC and/or Agspring Mississippi's insolvency, and awarding to Plaintiffs damages, attorney's fees and costs, plus all other legal and equitable relief due under the premises.

Respectfully submitted:

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone:  225-236-3636
Fax:  225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW**
**& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com

**PLEASE HOLD SERVICE**

Stacie Williamson
Richland Parish Clerk of Court

# 0380168

Recorded On: 01/04/2019  10:56 AM
Number of Pages: 10

STATE OF LOUISIANA

PARISH OF RICHLAND

## DEED

BE IT KNOWN, that before me, the undersigned Notary Public, duly commissioned and qualified in and for Richland Parish, Louisiana, and in the presence of the undersigned competent witnesses, on the date hereinafter set forth, personally came and appeared:

AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, acting pursuant by the authority granted to them by the resolution described in Exhibit A; with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211;

(hereinafter collectively referred to as "Vendor")

who declared that Vendor does by these presents grant, bargain, sell, convey, transfer, assign, set over and deliver, with full guarantee of title and with full substitution and subrogation in and to any and all rights and actions of warranty which Vendor has or may have against all preceding owners and vendors, unto;

Lake Providence Grain & Rice, LLC, a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211 ("Vendee"),

the following described property, to-wit:

All of Vendor's right, title and interest in and to the real property described on Exhibit B (the "Property").

TO HAVE AND TO HOLD the Property unto Vendee, Vendee's successors, heirs and assigns forever.

This conveyance is made as a capital contribution to Vendee, the receipt and sufficiency of which is hereby acknowledged.

US.121242605.02                                        1



PLAINTIFF'S
EXHIBIT

A

This sale is made subject to any servitudes, rights-of-ways, or mineral servitudes and leases established by law or of record in the records of Richland Parish, Louisiana, affecting the Property hereby conveyed by Vendor to Vendee. Vendee agrees to accept the Property and all improvements situated thereon in the condition same are now in and in their respective "as is", "where is", and "with all faults" condition, and Vendor makes no representations and/or warranties, express or implied, to Vendee concerning the condition of the Property.

Taxes for the current year have been prorated between Vendor and Vendee as of the date hereof.

**The parties hereto acknowledge that no title examination of said property has been performed by any undersigned Notary and, accordingly, title is not warranted in any way by any undersigned Notary.**

The parties hereto waive the production of mortgage and conveyance certificates and relieve and release the undersigned Notary from all liability by reason thereof.

[Signature Page Follows]

2

**IN WITNESS WHEREOF,** Vendor has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

Timothy Hafman

WITNESS:

Walen Graber

VENDOR:

AGSPRING MISSISSIPPI REGION, LLC

By:

Name: Bruce R. Chapin
Title: Chief Financial Officer

NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Agspring Mississippi Region, LLC, a Delaware limited liability company, on behalf of the company.

(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3/1/2019

(Signature of notarial officer)
Title (and Rank) Dep. Office Manager
My appointment expires: 3/1/2019

**IN WITNESS WHEREOF,** Vendee has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

Timothy A. Efman

WITNESS:

Kaleb Graber

VENDEE:

Lake Providence Grain & Rice, LLC

By:

Name: Bruce R. Chapin

Title: Chief Financial Officer

## NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Lake Providence Grain & Rice, LLC, a Delaware limited liability company, on behalf of the company.

(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3|1|2019

(Signature of notarial officer)

Title (and Rank) C.U.D. Office Manager

My appointment expires: 3|1|2019

<u>EXHIBIT A TO DEED</u>

RESOLUTION

AGSPRING MISSISSIPPI REGION, LLC

OFFICER'S
CERTIFICATE

December 31, 2018

This Officer's Certificate is delivered by AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company ("<u>Big River</u>")

RECITALS

WHEREAS, Agspring Holdco, LLC, a Delaware limited liability company (the "<u>Company</u>"), is the sole member of Agspring, LLC, a Delaware limited liability Company ("<u>Agspring</u>").

WHEREAS, Agspring is the sole member of Agspring Mississippi Region, LLC, a Delaware limited liability Company ("<u>Big River</u>").

CERTIFICATIONS

I, Mark Beemer, solely in my official capacity as Chief Executive Officer of Big River, and not in my individual capacity, hereby certify on behalf of Big River, as of the date hereof, that:

1.  On December 18, 2018, all of the members of the Board of Managers of the Company, held a duly called and held meeting of the Board of Managers at which the following resolutions (the "<u>Resolutions</u>") (in relevant part) were authorized:

    RESOLVED, that each of the Company, Agspring, Big River, and each direct and indirect subsidiary be, and hereby is, authorized to structure, negotiate, and approve the LakeProv Grain Restructuring substantially as presented to and reviewed by the Board, and to consummate and perform the LakeProv Grain Restructuring

    RESOLVED, FURTHER, that Mark Beemer, as Chief Executive Officer, and Bruce Chapin, as Chief Financial Officer (each, an "<u>Authorized Officer</u>" and collectively, the "<u>Authorized Officers</u>") be, and each of them hereby is, authorized to make, execute, enter into and deliver on behalf of and in the name of the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, all instruments, agreements, approvals, notes, consents and documents necessary for the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, to enter into

A-1

the LakeProv Grain Restructuring and to perform the LakeProv Grain Restructuring and to perform its obligations under or otherwise required to consummate the LakeProv Grain Restructuring and that when any such instrument or document is made, executed, entered into or delivered, or such action is taken by any such Authorized Officer, it shall be deemed to be duly authorized by the Company and Agspring.

**RESOLVED, FURTHER,** that any instrument or document authorized by the foregoing resolutions may embody such changes in any of the terms, conditions or provisions thereof as may be approved by an Authorized Officer, the execution thereof by such Authorized Officer to be conclusive evidence of such approval.

2. Big River, as "Contributor", and Lake Providence Grain and Rice LLC, a Delaware limited liability company ("Lake Providence") are parties to that certain Capital Contribution Agreement, dated as of December 31, 2018 ("Capital Contribution Agreement"), providing the terms and conditions by which Big River shall contribute, transfer, convey and deliver to Lake Providence certain assets held in connection with Big River's business operations.

3. Pursuant to the Capital Contribution Agreement, Big River agrees to convey to Lake Providence all of Big River's right, title, and interest in the real property and improvements located at 11 Hwy 609, City of Delhi, Parish of Richland, Louisiana, as more particularly described in the Capital Contribution Agreement (such conveyance, the "Deed").

4. The below-named persons are duly elected, qualified and acting officers of Big River as of the date hereof, holding the offices set forth opposite their names, and are authorized to execute and deliver the Deed and Contribution Agreement by and on behalf of Big River, and the signatures set forth opposite the names and offices of the below-named persons are true and correct specimens of their genuine signatures:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Mark Beemer | Chief Executive Officer | |
| Bruce Chapin | Chief Financial Officer | |

5. Pursuant to the Resolutions, I, as an Authorized Officer, have considered the business, financial, and market conditions of the Company, Agspring, Big River and their respective direct and indirect subsidiaries, and believes that it is in the best interest of the Company, Agspring and Big River to approve the Capital Contribution Agreement and the Deed.

6. Further pursuant to the Resolutions, I, as an Authorized Officer, approve on behalf of Agspring and Big River, the Contribution Agreement and the Deed, and approve the execution of such documents for or on behalf of the Company, Agspring and Big River, respectively, as may be necessary or appropriate to evidence the Contribution Agreement and the Deed.

7. Further pursuant to the Resolutions, my actions, as an Authorized Officer, whether heretofore or hereafter taken or done, which are in conformity with the purposes and intent of the foregoing resolutions shall be, and the same hereby are, in all respects ratified, confirmed, authorized, and approved.

8. The undersigned, solely in his capacity as an Authorized Officer of Big River, certifies as of the date hereof that the above is true and correct.

[Signature Page Follows]

A-3

**IN WITNESS WHEREOF**, the undersigned has executed this Officer's Certificate as of the date first set forth above.

*On behalf of:*

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____
Name: Bruce R. Chapin
Title: Chief Financial Officer

EXHIBIT B TO DEED

Exhibit B to DEED, executed as of December 31, 2018, by AGSPRING MISSISSIPPI REGION, LLC, as "Vendor", and Lake Providence Grain & Rice, LLC, as "Vendee".

Legal Description of the Property

FEE SIMPLE INTEREST

2.704 ACRE TRACT
SITUATED IN
SECTION 17, T 17 N, R 9 E
RICHLAND PARISH, LOUISIANA

Commencing from the S.W. corner of the N.W. ¼ of the N.W. ¼ of Section 17, Township 17 North, Range 9 East in Richland Parish, Louisiana; thence, North 01°02'52" West along the common Section line of Section 17 and Section 18, a distance of 200.00' to a point; thence, North 88°07'50" East, a distance of 217.80' to a 5/8" rebar with plastic cap; thence, North 01°02'52" West, a distance of 202.00' to a 5/8" rebar with plastic cap; thence, South 88°07'50" West, a distance of 237.53' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 609; thence, North 02°22'35" East along the said right of way, a distance of 117.95' to a 5/8" rebar; thence, South 89°20'39" East, a distance of 360.24' to a 5/8" rebar and being the POINT OF BEGINNING; thence, South 89°20'39" East, a distance of 260.96' to a 5/8" rebar; thence, North 00°41'03" West, a distance of 119.40' to a 5/8" rebar; thence, South 85°43'32" East, a distance of 810.49' to a 5/8" rebar; thence, South 84°22'07" East, a distance of 105.46' to a 5/8" rebar; thence, South 02°14'30" East, a distance of 121.84' to a found 1 ½" steel post; thence, North 89°20'39" West, a distance of 977.49' to a 5/8" rebar; thence, North 00°36'00" West, a distance of 50.01' back to a 5/8" rebar and the POINT OF BEGINNING and containing 2.704 acres more or less.

As per the survey dated April 29, 2014 by Denmon Engineering Co., Inc., recertified November 5, 2016 and last revised, December 3, 2015.

Being the same property acquired by Act of Cash Sale with Predial Servitude by Crowville Grain & Elevator Co., Inc. and Pro-Boll Chemical and Fertilizer Co., Inc., in favor Agspring Mississippi Region, LLC, effective May 2, 2014 and recorded May 14, 2014 as COB 305, folio 260, File No. 364083 in the Conveyance Records of the Parish of Richland, State of Louisiana.

FEE SIMPLE INTEREST

### 3.164 ACRE TRACT
### SITUATED IN
### SECTION 17, T 17 N, R 9 E
### RICHLAND PARISH, LOUISIANA

Commencing from the S.W. corner of the N.W. ¼ of the N.W. ¼ of Section 17, Township 17 North, Range 9 East in Richland Parish, Louisiana; thence, North 01°02'52" West along the common Section line of Section 17 and Section 18, a distance of 200.00' to a point; thence, North 89°07'50" East, a distance of 217.60' to a 5/8" rebar with plastic cap; thence, North 01°02'52" West, a distance of 202.00' to a 5/8" rebar with plastic cap; thence, South 89°07'50" West, a distance of 237.53' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 609; thence, North 02° 22' 35" East along the said right of way, a distance of 117.85' to a 5/8" rebar with plastic cap; thence, South 89°20'38" East, a distance of 621.12' to a 5/8" rebar with plastic cap; thence, North 00°41'03" West, a distance of 119.40' to a 5/8" rebar with plastic cap; thence, South 85°43'32" East, a distance of 246.60' to a point; thence, North 04°46'23" East, a distance of 401.53' to a 5/8" rebar with plastic cap on South right of way of Kansas City Southern Railroad; thence, South 85°13'43" East along the said railroad right of way, a distance of 347.89' to a 5/8" rebar with plastic cap; thence, South 05°17'23" West, a distance of 50.00' to a 5/8" rebar with plastic cap and being the POINT OF BEGINNING; thence, South 85°13'43" East, a distance of 551.77' to a 5/8" rebar with plastic cap; thence, South 02°04'16" West, a distance of 245.31' to a 5/8" rebar with plastic cap; thence, North 85°13'43" West, a distance of 551.77' to a 5/8" rebar with plastic cap; thence, North 02° 04' 16" East, a distance of 245.31' back to a 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 3.104 acres more or less.

As per the survey dated April 29, 2014 by Denmon Engineering Co., Inc., recertified November 5, 2015 and last revised, December 3, 2015.

Being the same property acquired by Act of Cash Sale and Option to Purchase by Crowville Grain & Elevator Co., Inc., in favor Agspring Mississippi Region, LLC, effective June 26, 2013 and recorded June 28, 2013 as COB 500, folio 354, File' No. 360932 in the Conveyance Records of the Parish of Richland, State of Louisiana.

### Street Address of Property

11 Highway 608, Delhi, LA 71232

B-2



Ann Johnson, Clerk of Court
Recorded 1/4/2019 at 11:09 AM
Book 448 Page 488 - 10 Pages
372394-CO

STATE OF LOUISIANA

PARISH OF FRANKLIN

## DEED

BE IT KNOWN, that before me, the undersigned Notary Public, duly commissioned and qualified in and for Franklin Parish, Louisiana, and in the presence of the undersigned competent witnesses, on the date hereinafter set forth, personally came and appeared:

**AGSPRING MISSISSIPPI REGION, LLC,** a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, acting pursuant to the authority granted to them by the resolution described in Exhibit A, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211;

(hereinafter collectively referred to as "Vendor")

who declared that Vendor does by these presents grant, bargain, sell, convey, transfer, assign, set over and deliver, with full guarantee of title and with full substitution and subrogation in and to any and all rights and actions of warranty which Vendor has or may have against all preceding owners and vendors, unto:

**Lake Providence Grain & Rice, LLC,** a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211 ("Vendee"),

the following described property, to-wit:

All of Vendor's right, title and interest in and to the real property described on Exhibit B (the "Property").

**TO HAVE AND TO HOLD** the Property unto Vendee, Vendee's successors, heirs and assigns forever.

US.121121833.04



PLAINTIFF'S
EXHIBIT
B

This conveyance is made as a capital contribution to Vendee, the receipt and sufficiency of which is hereby acknowledged.

This sale is made subject to any servitudes, rights-of-ways, or mineral servitudes and leases established by law or of record in the records of Franklin Parish, Louisiana, affecting the Property hereby conveyed by Vendor to Vendee. Vendee agrees to accept the Property and all improvements situated thereon in the condition same are now in and in their respective "as is", "where is", and "with all faults" condition, and Vendor makes no representations and/or warranties, express or implied, to Vendee concerning the condition of the Property.

Taxes for the current year have been prorated between Vendor and Vendee as of the date hereof.

**The parties hereto acknowledge that no title examination of said property has been performed by any undersigned Notary and, accordingly, title is not warranted in any way by any undersigned Notary.**

The parties hereto waive the production of mortgage and conveyance certificates and relieve and release the undersigned Notary from all liability by reason thereof.

[Signature Page Follows]

**IN WITNESS WHEREOF,** Vendor has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

Timothy Kofman

WITNESS:

Aaron Graber

VENDOR:

AGSPRING MISSISSIPPI REGION, LLC

By:
Name: Bruce R. Chapin
Title: Chief Financial Officer

### NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Agspring Mississippi Region, LLC, a Delaware limited liability company, on behalf of the company.
(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3/1/2019

(Signature of notarial officer)
Title (and Rank) V.P, Office Manager
My appointment expires: 3/1/2019

**IN WITNESS WHEREOF**, Vendee has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:                                    **VENDEE:**

Timothy Hofman                              Lake Providence Grain & Rice, LLC

WITNESS:                                    By:

Kaleb Graber                               Name: Bruce R. Chapin
                                           Title: Chief Financial Officer

## NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Lake Providence Grain & Rice, LLC, a Delaware limited liability company on behalf of the company.

(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3 1 2019

(Signature of notarial officer)

Title (and Rank) CEO Office Manager

My appointment expires: 3 1 2019

EXHIBIT A TO DEED

RESOLUTION

**AGSPRING MISSISSIPPI REGION, LLC**

**OFFICER'S
CERTIFICATE**

December 31, 2018

This Officer's Certificate is delivered by AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company ("Big River")

**RECITALS**

WHEREAS, Agspring Holdco, LLC, a Delaware limited liability company (the "Company"), is the sole member of Agspring, LLC, a Delaware limited liability Company ("Agspring").

WHEREAS, Agspring is the sole member of Agspring Mississippi Region, LLC, a Delaware limited liability Company ("Big River").

**CERTIFICATIONS**

I, Mark Beemer, solely in my official capacity as Chief Executive Officer of Big River, and not in my individual capacity, hereby certify on behalf of Big River, as of the date hereof, that:

1. On December 18, 2018, all of the members of the Board of Managers of the Company, held a duly called and held meeting of the Board of Managers at which the following resolutions (the "Resolutions") (in relevant part) were authorized:

   RESOLVED, that each of the Company, Agspring, Big River, and each direct and indirect subsidiary be, and hereby is, authorized to structure, negotiate, and approve the LakeProv Grain Restructuring substantially as presented to and reviewed by the Board, and to consummate and perform the LakeProv Grain Restructuring

   RESOLVED, FURTHER, that Mark Beemer, as Chief Executive Officer, and Bruce Chapin, as Chief Financial Officer (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, authorized to make, execute, enter into and deliver on behalf of and in the name of the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, all instruments, agreements, approvals, notes, consents and documents necessary for the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, to enter into

A-1

the LakeProv Grain Restructuring and to perform its obligations under or otherwise required to consummate the LakeProv Grain Restructuring and that when any such instrument or document is made, executed, entered into or delivered, or such action is taken by any such Authorized Officer, it shall be deemed to be duly authorized by the Company and Agspring

RESOLVED, FURTHER, that any instrument or document authorized by the foregoing resolutions may embody such changes in any of the terms, conditions or provisions thereof as may be approved by an Authorized Officer, the execution thereof by such Authorized Officer to be conclusive evidence of such approval

1.  Big River, as "Contributor", and Lake Providence Grain and Rice LLC, a Delaware limited liability company ("Lake Providence") are parties to that certain Capital Contribution Agreement, dated as of December 31, 2018 ("Capital Contribution Agreement"), providing the terms and conditions by which Big River shall contribute, transfer, convey and deliver to Lake Providence certain assets held in connection with Big River's business operations.

2.  Pursuant to the Capital Contribution Agreement, Big River agrees to convey to Lake Providence all of Big River's right, title, and interest in the real property and improvements located at 5125 Highway 17, Winnsboro, LA 71295 and 311 Highway 578, Winnsboro, LA 71295 as more particularly described in the Capital Contribution Agreement (such conveyance, the "Deed").

3.  The below-named persons are duly elected, qualified and acting officers of Big River as of the date hereof, holding the offices set forth opposite their names, and are authorized to execute and deliver the Deed and Contribution Agreement by and on behalf of Big River, and the signatures set forth opposite the names and offices of the below-named persons are true and correct specimens of their genuine signatures:

| Name | Office Held | Signature |
|---|---|---|
| Mark Beemer | Chief Executive Officer | |
| Bruce Chapin | Chief Financial Officer | |

4.  Pursuant to the Resolutions, I, as an Authorized Officer, have considered the business, financial, and market conditions of the Company, Agspring, Big River and their respective direct and indirect subsidiaries, and believes that it is in the best interest of the Company, Agspring and Big River to approve the Capital Contribution Agreement and the Deed.

5.  Further pursuant to the Resolutions, I, as an Authorized Officer, approve on behalf of Agspring and Big River, the Contribution Agreement and the Deed, and approve the execution of such documents for or on behalf of the Company, Agspring and Big River, respectively, as may be necessary or appropriate to evidence the Contribution Agreement and the Deed.

7. Further pursuant to the Resolutions, my actions, as an Authorized Officer, whether heretofore or hereafter taken or done, which are in conformity with the purposes and intent of the foregoing resolutions shall be, and the same hereby are, in all respects ratified, confirmed, authorized, and approved.

8. The undersigned, solely in his capacity as an Authorized Officer of Big River, certifies as of the date hereof that the above is true and correct.

[Signature Page Follows]

A-3

IN WITNESS WHEREOF, the undersigned has executed this Officer's Certificate as of the date first set forth above.

*On behalf of:*

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____
Name: Bruce R. Chapin
Title: Chief Financial Officer

## EXHIBIT B TO DEED

Exhibit B to DEED, executed as of December 31, 2018, by AGSPRING MISSISSIPPI REGION, LLC, as "Vendor", and Lake Providence Grain & Rice, LLC, as "Vendee".

### Legal Description of the Property

FEE SIMPLE INTEREST

1.470 ACRE TRACT
SITUATED IN
SECTION 31, T 15 N, R 9 E
FRANKLIN PARISH, LOUISIANA

Commencing from the N.E. corner of Section 31, Township 15 North, Range 9 East in Franklin Parish, Louisiana; thence, South 89°55'00" West along the said Section line, a distance of 1940.00' to a point; thence, South 01°39'00" West, a distance of 848.67' to a point on the centerline of Louisiana Highway 577; thence, North 01°39'00" East, a distance of 40.32' to a set 5/8" rebar with plastic cap on the North right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, North 01°14'28" East, a distance of 240.00' to a set 5/8" rebar with plastic cap; thence, North 84°28'44" East, a distance of 266.88' to a set 5/8" rebar with plastic cap; thence, South 01°14'13" West, a distance of 240.00' to a found 1/2" iron pipe (bent) on the North right of way of Louisiana Highway 577; thence, South 84°28'44" West along the said right of way, a distance of 266.89' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 1.470 acres more or less.

B-1

FEE SIMPLE INTEREST

<div align="center">

43.22 ACRE TRACT
SITUATED
SECTION 31, T 15 N, R 9 E
FRANKLIN PARISH, LOUISIANA

</div>

A certain tract or parcel of land situated in Section 31, Township 15 North, Range 9 East, Land District North of Red River, Franklin Parish, Louisiana, and being more particularly described as follows:

Commence at a square iron bar found marking the Southeast corner of the Southeast ¼ of the Southwest ¼ of Section 31, Township 15 North, Range 9 East, Land District North of Red River, Franklin Parish, Louisiana for the POINT OF BEGINNING; thence proceed South 88 degrees 59 minutes 54 seconds West along the South line of the Southeast ¼ of the Southwest ¼ of said Section 31, a distance of 884.51 feet to a 5/8" rebar set on the East line of that certain tract of land conveyed to Ward, et al and filed in Conveyance Book 418, Page 385, records of Franklin Parish, Louisiana; thence proceed North 08 degrees 19 minutes 25 seconds East along the East line of said Ward tract, a distance of 25.49 feet to a ½" rebar found marking the Northeast corner of said Ward tract; thence proceed North 89 degrees 56 minutes 48 seconds West along the North line of said Ward tract and a projection thereof, a distance of 245.32 feet to a P.K. nail set in the center of La. Highway No. 578; thence proceed North 12 degrees 44 minutes 42 seconds East along the center of La. Highway No. 578, a distance of 73.67 feet to a set P.K. nail; thence proceed North 12 degrees 01 minutes 52 seconds East along the center of La. Highway No. 575, a distance of 560.37 feet to a set P.K. nail; thence proceed North 11 degrees 39 minutes 56 seconds East along the center of La. Highway No. 578, a distance of 734.56 feet to a set P.K. nail; thence proceed North 12 degrees 37 minutes 08 seconds East along the center of La. Highway No. 578, a distance of 406.43 feet to a set P.K. nail; thence proceed South 80 degrees 06 minutes 33 seconds East, a distance of 30.23 feet to a ½" rebar found marking the Southwest corner of that certain tract of land conveyed to James Hollis Craft and filed in Conveyance Book 401, Page 440, records of Franklin Parish, Louisiana; thence continue South 80 degrees 06 minutes 33 seconds East along the South line of said Craft tract, a distance of 218.30 feet to a ½" iron pipe found marking the Southeast corner of said Craft tract; thence proceed North 12 degrees 14 minutes 38 seconds East along the East line of Craft tract and the projection thereof, a distance of 777.91 feet to a 3/8" iron pipe found marking the Southwest corner line of that certain tract of land conveyed to James C. Donnell and filed in Conveyance Book 353, Page 352, records of Franklin Parish, Louisiana; thence proceed South 86 degrees 37 minutes 33 seconds East, a distance of 188.06 feet to a 2" GS stem found marking the Southeast corner of said Donnell tract; thence proceed North 02 degrees 05 minutes 12 seconds West along the East line of said Donnell tract, a distance of 19.08 feet to a set 5/8" rebar; thence proceed North 87 degrees 59 minutes 59 seconds East, a distance of 144.86 feet to a ½" rebar found marking the Southwest corner of that certain 1.00 acre tract of land conveyed to Barry Don Parker and filed in Conveyance Book 414, Page 183, records of Franklin Parish, Louisiana and on the West line of that certain tract of land conveyed to Harold E. Wood and filed in Conveyance Book 301, Page 58, records of Franklin Parish, Louisiana; thence proceed South 00 degrees 39 minutes 48 seconds East along the West line of said Wood tract, a distance of 2,416.26 feet to the POINT OF BEGINNING, containing 43.222 acres, more or less, and being subject to the right-of-way of Louisiana Highway No. 578.

<div align="center">

Street Address of Property

</div>

888 Hwy 577 Crowville, LA 71230 (the 1.470 acre tract)

311 Hwy 578 Winnsboro, LA 71295 (the 43.22 acre tract)

<div align="center">

B-2

</div>

December 9, 2019
by Shirley Truelove
Dy Clerk

| LARRY TUBBS, TUBBS RICE | : | SUIT NO.: 19-198 DIVISION: B |
| DRYERS, INC., CHIEF VENTURES, | : | |
| L.L.C., and BIG RIVER GRAIN, LLC | : | |
| | : | |
| VERSUS | : | SIXTH JUDICIAL DISTRICT COURT |
| | : | |
| AGSPRING MISSISSIPPI REGION, LLC, | : | |
| AGSPRING, LLC, AGSPRING HOLDCO, | : | |
| LLC, GREG KENNEDY, MARK | : | |
| BEEMER, PACIFIC INVESTMENT | : | PARISH OF MADISON |
| MANAGEMENT COMPANY, LLC, | : | |
| BARINGS LLC, BRUCE CHAPIN, | : | |
| ABC INSURANCE COMPANY, | : | |
| and XYZ INSURANCE COMPANY | : | STATE OF LOUISIANA |

### FIRST AMENDED AND RESTATED PETITION

**NOW INTO COURT,** through undersigned counsel, comes LARRY TUBBS, an

individual of the full age of majority and resident of Madison Parish, Louisiana, TUBBS RICE

DRYERS, INC., a Louisiana corporation whose registered place of business is in Madison Parish,

Louisiana, and CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC, each a Louisiana

limited liability company, whose registered place of business is in Madison Parish, Louisiana, all

of whom are collectively referred to herein as Plaintiffs who respectfully amend and restate their

original petition previously filed herein and assert as follows:

1.

Made Defendants herein and referred collectively to as "Defendants" are the following:

a. Greg Kennedy ("Kennedy"), an individual of the full age of majority, and a resident of the state of California, Orange County;

b. Mark Beemer ("Beemer"), an individual of the full age of majority, a resident of the state of Kansas, Johnson County;

c. Pacific Investment Management Company, LLC, ("PIMCO") a Delaware corporation which is not licensed to do business in Louisiana;

d. Barings, LLC, a Delaware limited liability company whose principal business establishment in Louisiana is in East Baton Rouge Parish;

e. American Infrastructure MLP II IP Feeder LP, a Delaware limited partnership which is not licensed to do business in Louisiana;

f. American Infrastructure MLP Management II LLC, a Delaware limited liability company which is not licensed to do business in Louisiana;

g. American Infrastructure MLP PE Management, L.L.C , a Delaware limited liability company which is not licensed to do business in Louisiana;

h. American Infrastructure MLP Yield Management, L.L.C., a Delaware limited liability company which is not licensed to do business in Louisiana;

i. American Infrastructure MLP Funds, L.P., a Delaware limited partnership which is not licensed to do business in Louisiana;

j.   Agspring Holdco, LLC, a Delaware limited liability company which is not licensed to do business in Louisiana;

k.   Agspring, LLC ("Agspring"), a Delaware limited liability company which is not licensed to do business in Louisiana;

l.   Agspring Mississippi Region, LLC ("Agspring Mississippi"), a Delaware limited liability company, whose principal business establishment in Louisiana is in East Baton Rouge Parish;

m.   Bruce Chapin ("Chapin"), an individual of the full age of majority, who, upon information and belief, is a resident of Kansas;

n.   Lake Providence Grain and Rice, LLC, a Delaware limited liability company, whose registered office is Lake Providence, Louisiana (East Carroll Parish);

o.   ABC INSURANCE COMPANY; and

p.   XYZ INSURANCE COMPANY.

2.

Venue is proper pursuant to La. C.C.P. art. 73 and La. R.S. 13:3203 because Plaintiffs are domiciled in Madison Parish; all Defendants are solidarily obligated to Plaintiffs for the debt hereinafter set forth; and the injury occurred in Madison Parish where the debt was to be paid.

3.

## INTRODUCTION

Agspring Mississippi owes Plaintiffs $22 million (a secured debt guaranteed by Agspring, LLC). Pursuant to the convoluted, non-arms-length transactions described in detail below, Defendants are attempting to defraud Plaintiffs out of the $22 million rightfully owed to them. For example, PIMCO illegally disguised its payment of the purchase price for the membership interest in Agspring LLC as a loan to Agspring LLC. Although PIMCO is actually an equity owner of the interrelated Agspring entities, not their creditor, Defendants improperly maintain that PIMCO is a creditor who was owed approximately $77 million. Indeed, the Agspring Defendants paid the PIMCO Defendant all but $34 million of this money ahead of the $22 million owed to Plaintiffs. After paying PIMCO these large sums, Defendants conveniently claim that the Agspring Defendants are insolvent and unable to pay Plaintiffs' pre-existing debt. In short, Defendants have deliberately fabricated the Agspring Defendants' purported insolvency to the prejudice of Plaintiffs by characterizing the PIMCO Defendant's investment into the Agspring entities as overwhelming debt and repaid themselves before Plaintiffs are paid the $22 million owed to them. Through these and the other acts alleged herein, the large national investment firm Defendants, the companies that they control, their employees, and representatives, are attempting to make a profit

2

by inducing the debtor-companies controlled by these firms to fail pay debt legitimately owed to the Plaintiffs claiming insolvency as an excuse, when these companies artificially created this insolvency through unlawful distributions to the companies' members, unlawful reimbursements of equity funding made by PIMCO, payment of excessive fees not the result of an arm's length transaction, and transfers of assets for less than reasonably equivalent value to other companies or related-party entities, all so that the investment firms make a profit for their equity investors. These acts are unlawful. As alleged herein, Defendants' acts are illegal and constitute breach of contract, intentional interference with a contractual relationship, unfair trade practices, and bad faith breach of their duties of good faith and fair dealing, which caused compensable damages to Plaintiffs.

## FACTUAL BACKGROUND

4.

Larry Tubbs has for over 50 years been immersed in the agricultural industry.

5.

Mr. Tubbs was the President and a stockholder of Tubbs Rice Dryers, Inc., and a member of Chief Ventures, L.L.C., and Big River Grain, LLC.

6.

Plaintiffs owned and operated a grain elevator business with facilities in Mer Rouge and Pioneer, Louisiana, handling rice, corn, soybeans, soft red winter wheat and sorghum.

7.

Grain elevators purchase grain from farmers and then sell that grain on the export market.

8.

Effective June 26, 2013, Plaintiffs sold the Mer Rouge and Pioneer facilities and other assets, including but not limited to all account receivables and inventory, to Agspring Mississippi Region, LLC ("Agspring Mississippi").

9.

Agspring Mississippi did not pay the Plaintiffs the full amount of the purchase price in cash. Instead, on June 26, 2013, Agspring Mississippi executed a note payable to Plaintiffs for $7 million of the purchase price.

10.

The $7 million was to be paid in full in five years, on June 26, 2018, with interest accruing at 5.75 percent per annum.

11.

Thereafter, Agspring Mississippi acquired additional properties in Louisiana from other owners, which it merged with the facilities purchased from Plaintiffs and operated under the name "Big River Rice and Grain."

12.

On or about September 6, 2013, Agspring Mississippi borrowed an additional $10 million from Plaintiffs and signed an amended and restated promissory note changing the interest rate terms and extending the maturity date on which the note must be paid in full to September 6, 2023.

13.

As additional security for the increased debt owed by Agspring Mississippi, on September 6, 2013, Plaintiffs obtained a guarantee from Agspring Mississippi's parent company, Agspring LLC, who unconditionally and *in solido* promised to pay the sums owed by Agspring Mississippi to Plaintiffs.

14.

In February 2014, Agspring Mississippi borrowed more money from Plaintiffs, making the total debt that Agspring Mississippi owed to Plaintiffs $22 million. Agspring Mississippi executed a Second Amended and Restated Promissory Note ("Note") reflecting the obligation of Agspring Mississippi to repay the $22 million.

15.

Larry Tubbs negotiated the above transactions for Plaintiffs. Bradley "Brad" K. Clark, then President of Agspring Mississippi and Agspring, LLC, negotiated the above transactions for these entities.

16.

Upon information and belief, the amounts borrowed by Agspring Mississippi from Plaintiffs were used to acquire properties to expand Agspring Mississippi and Agspring LLC's operations by buying additional agricultural businesses in Louisiana and other states.

17.

From June 2013 until 2015, when he retired at 72 years old, Larry Tubbs worked for Agspring Mississippi profitably running its Louisiana operations as Chief Executive Officer.

## THE AGSPRING ENTITIES

### 18.

Agspring Mississippi is a wholly-owned subsidiary of Agspring.

### 19.

Agspring was formed in 2012 with capital provided by NGP Energy Capital Management ("NGP") and/or its affiliates.

### 20.

Agspring was formed as an operating company to serve as a platform for acquisitions and consolidation of agribusiness firms into a major company to supply grains, oilseeds and related products globally.

### 21.

The acquisition of Plaintiffs' businesses, through its subsidiary Agspring Mississippi, was part of Agspring's strategy to become a major global supplier of grains and related products.

### 22.

By the end of 2014, NGP decided that it would not contribute any additional capital to Agspring, instead desiring to earn its investors a return on their capital, and began efforts to sell its interest in Agspring LLC.

### 23.

American Infrastructure MLP II IP Feeder LP, American Infrastructure MLP Management II L.L.C., American Infrastructure MLP PE Management, L.L.C., American Infrastructure MLP Yield Management, L.L.C., and American Infrastructure MLP Funds, L.P., collectively referred to herein as "AIM", PIMCO and Barings performed extensive due diligence in connection with the sale of NGP's membership interests in Agspring.

### 24.

Upon information and belief, PIMCO, Barings and AIM together formed Agspring LP as the entity through which they would purchase Agspring LLC.

### 25.

Upon information and belief, PIMCO, Barings, and AIM each invested in partnership interests in Agspring LP by providing funding.

5

26.

Upon information and belief, in December 2015, NGP transferred its membership interests in Agspring LLC to Agspring LP, owned by AIM, PIMCO and Barings, through designated affiliates and investor groups.

27.

Upon information and belief, the purchase of the Agspring LLC membership interests by Agspring LP was to provide additional capitalization for Agspring LLC and its subsidiaries to continue to expand.

28.

The change in ownership of the Agspring LLC membership interests from NGP to Agspring LP (and through it to PIMCO, AIM and/or Barings) resulted, however, in Agspring and/or Agspring Mississippi becoming undercapitalized.

29.

"Equity" in connection with an investment means an ownership interest in an asset, like a limited partnership interest.

30.

Agspring LLC, upon information and belief, was undercapitalized because PIMCO treated all or part of its equity funding to Agspring LP as a loan made to Agspring LLC and its subsidiaries, including Agspring Mississippi.

31.

Essentially, PIMCO is pretending that it has the right to repayment of its equity funding as though it was a creditor of Agspring LLC and not as the equity investor that it is.

32.

Upon information and belief, PIMCO's equity funding of Agspring LP was disguised as a term revolving loan to Agspring dated December 14, 2015, ("Dirty Loan") for $77,400,000 with interest at LIBOR plus 8% with a maturity date of 2020 to subsidize the expansion and operations of Agspring LLC and its subsidiaries.

33.

Upon information and belief, no consideration was received by Agspring in exchange for owing $77.4 million to PIMCO because Agspring LP, not Agspring LLC, received these funds and used them to purchase NGP's membership interests in Agspring, LLC.

34.

To secure the Dirty Loan, PIMCO, upon information and belief, through its agent, U.S. Bank National Association, purported to take a security interest in "all personal property of [Agspring Mississippi], whether now owned or hereafter acquired."

35.

In taking this Dirty Loan, PIMCO dishonestly raised the priority of payment of its equity funding to the injury of Agspring LLC and Agspring Mississippi's creditors, including Plaintiffs.

36.

A new company, Agspring Holdco, LLC, was formed in or around September 2017 pursuant to a Restructuring Support Agreement requiring the conversion of Agspring Holdco's predecessor in interest, Agspring, LP, to a limited liability company.

37.

Upon information and belief, PIMCO has received cash and membership shares in Agspring Mississippi, Agspring, Agspring Holdco (collectively referred to herein as "Agspring entities") or related entities in partial payment of the Dirty Loan.

38.

Upon information and belief, the payments to PIMCO on the Dirty Loan are linked to Agspring and/or Agspring Mississippi's distressed financial condition.

39.

Agspring LLC, is or was the sole member and owner of Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, and FO-ND, LLC a Delaware limited liability company, all of which Agspring LLC holds out to the public as its subsidiaries and upon information and belief, are the basis of Agspring, LLC's ability to supply grains, oilseeds and related products globally.

40.

Upon information and belief, since sometime before 2015, Agspring Mississippi has been the wholly-owned subsidiary of Agspring, LLC, which is the wholly-owned subsidiary of initially Agspring LP, then its successor, Agspring Holdco, LLC.

41.

Upon information and belief, Mark Beemer, has been the Chief Executive Officer for each of Agspring Idaho, LLC, Agspring Logistics, LLC, Agspring Mississippi, FO-ND, LLC, and Agspring LLC since at least January 2016.

42.

Upon information and belief, Bruce Chapin has been the Chief Financial Officer for each of Agspring Idaho, LLC, Agspring Logistics, LLC, Agspring Mississippi, FO-ND, LLC, and Agspring LLC since at least April 2018.

43.

Upon information and belief, Greg Kennedy has been a member of the Board of Directors for Agspring Mississippi and Agspring, LLC since at least December 2015 and Agspring Holdco, LLC since it was formed.

44.

Upon information and belief, Greg Kennedy also has been an employee of PIMCO both before and after December 2015 while at the same time serving on the boards of Agspring Mississippi, Agspring Holdco, LLC and Agspring LLC.

45.

By August 2017, upon information and belief, PIMCO had obtained a majority interest in the Agspring entities, by acquiring a majority of the ownership interests in Agspring Holdco, LLC.

46.

On March 1, 2018, Agspring LLC proposed to Plaintiffs a possible restructuring of the indebtedness of Agspring, LLC and its affiliates, including the debt owed by Agspring Mississippi to Plaintiffs.

47.

Plaintiffs agreed to listen to Agspring LLC's proposal.

48.

On or before March 4, 2018, Larry Tubbs and Mark Beemer met in Louisiana to discuss the debt owed by Agspring Mississippi to Plaintiffs. Beemer represented to Tubbs that Agspring LLC and its affiliates, including Agspring Mississippi, had an untenable capital structure which they were working to address. Beemer represented that the Agspring entities needed additional liquidity and balance sheet adjustments to address these issues. Part of the goal, as set forth in a

8

memo from Beemer to Tubbs dated March 4, 2018 providing Tubbs with an update from their discussions, was to "preserve" the value for "stakeholders." Thus, it was seeking an "out-of-court restructuring."

49.

In April of 2018, Beemer represented to Tubbs that Agspring LLC and its subsidiaries were in a difficult financial position, which if they did not get it worked out, Agspring LLC and its subsidiaries were "headed for bankruptcy," thus, Plaintiffs should forgive some of the debt owed by Agspring Mississippi to them.

50.

In response to these communications, Plaintiffs offered to purchase all assets of Agspring Mississippi for $30,000,000, which offer was rejected.

51.

After turning down Plaintiff's offer, during the summer of 2018, George Varughese, a representative of PIMCO, met with Tubbs in Louisiana to again unsuccessfully attempt to convince Plaintiffs to forgive some of the debt owed by Agspring Mississippi.

52.

On or about September 18, 2018, Tubbs, Plaintiffs' accountant Larry Pickett, and their lawyer, Donald Carroll, met in Louisiana in person with Kennedy, Beemer and Chapin to hear PIMCO's proposed restructure of Plaintiffs' Second Amended and Restated Promissory Note.

53.

During that September 18, 2018 meeting, Beemer gave a letter to Tubbs proposing that the Plaintiffs voluntarily agree to restructure the debt owed by Agspring Mississippi to Plaintiffs. Beemer proposed three different options:

1.  Pay the full amount due of $22 million over ten years with no interest at all;

2.  Forgive $12 Million of the debt and be paid the balance of $10 million over seven years at 4% interest per annum with a security interest in all material assets of Agspring LLC through its subsidiaries; or

3.  Conversion of all debt to equity with no management participation rights, but only minority investor rights.

54.

Attached to the September 18, 2018 letter from Beemer were several pages, including a statement that on August 3, 2018, "Barings relinquished its 53.5% equity ownership in Agspring LLC to PIMCO" and that several other "factors combined with long-term debt of $97mm makes the effective value of equity at August 3, 2018 at or near $0."

55.

Upon information and belief, the "long-term debt" of $97 million referred to in paragraph 54 above includes the Dirty Loan.

56.

Additionally, an attachment to the September 18, 2018 letter also stated:

The current Tubbs Note collateral consists of the Pioneer, Mer Rouge and Monticello elevator assets in Louisiana. These three assets were appraised at approximately $16.9 million in April 2018. Agspring management recently went through a sales process and found limited to no interest from likely buyers in these assets (nor any interest from buyers in the other Big River interior elevator assets not securing this Note). Accordingly, management believes the current actual salable value of these assets to be $7-$8mm collectively at best under current market conditions ( if a buyer could even be found). The guarantee for the Tubbs Note from Agspring, LLC is unsecured and therefore ranks below all other secured debt in order of priority. Accordingly, given the amount of secured debt the unsecured guarantee is likely worth $0 as no value would be left for unsecured creditors under the current structure.

57.

Given that Plaintiffs offered $30 million for all the Agspring Mississippi assets in April of 2018 and that offer was rejected, Plaintiffs did not share management's beliefs, but viewed this as Agspring LLC's continued efforts to have Agspring Mississippi's debts forgiven to improve Agspring LLC, Agspring Holdco, and ultimately PIMCO and other members' equity position.

58.

Additionally, Beemer, Kennedy and Chapin provided Plaintiffs with a document entitled "Restructuring Discussion -L.Tubbs- Sept 5, 2018," showing that PIMCO claimed that it was owed a term loan by Agspring, LLC and was also the 96.49 percent equity interest holder in Agspring Holdco, LLC, the sole member of Agspring LLC.

59.

At the September 18, 2018, meeting in Louisiana, Kennedy, Beemer and Chapin stated that since the equity interest holders were losing money on their interest in the Agspring entities, PIMCO demanded that Plaintiff also participate in the losses by voluntarily forgiving a large portion of the Agspring Mississippi debt, so that PIMCO would get more money out of the deal.

60.

Although the September 18, 2018 proposal included a complete conversion of the Agspring debt owed to Plaintiffs to an equity interest in Agspring, LLC, Kennedy, Beemer and Chapin stated that they did not really want the Plaintiffs to select this option. They also indicated at this meeting that if Plaintiffs did not forgive some of the debt, Agspring LLC would file for bankruptcy.

61.

Although Plaintiffs did not find the arguments made by Kennedy, Beemer or Chapin persuasive, they agreed to continue the discussions.

62.

Agspring Mississippi timely paid the installments due on the Note owed to Plaintiffs until October 1, 2018.

63.

Beemer, Chapin, Tubbs, Pickett and Carroll again met on or about October 5, 2018, in Louisiana, where immediately Beemer indicated that the Note owed to Plaintiffs was in default and that they had no intention of paying it unless the Plaintiffs agreed to forgive some of the debt owed under the Note.

64.

Agspring Mississippi has made no payments on the Note after October 1, 2018.

65.

In response to the failure to make this payment, Plaintiffs sent notice to Agspring Mississippi on October 10, 2018, that Plaintiffs exercised their rights to accelerate the due date of the Note in response to Agspring Mississippi's breach of its obligation to timely pay the note. By letter dated October 10, 2018, to Agspring Mississippi, Plaintiffs declared that the Note was accelerated such that the whole principal and interest due at once became due and payable.

66.

By letter dated October 11, 2018, Plaintiffs gave notice to Agspring, LLC that Agspring Mississippi defaulted on the Note, that the notice of default was sent, and that the debt has been accelerated.

11

67.

Because Agspring Mississippi failed to pay the installment payments as they became due under the Note, seven days after the October 10, 2018 notice of default, or October 17, 2018, the Note began to accrue interest using the default rate of 12% per annum.

68.

By letter dated October 23, 2018, Plaintiffs again demanded from Agspring Mississippi payment in full of all amounts due under the Note.

69.

Neither Agspring Mississippi nor Agspring LLC paid the debt owed to Plaintiffs when it came due.

70.

Neither Agspring Mississippi nor Agspring LLC have paid in full the amount due on the Note.

71.

Upon information and belief, Agspring Holdco, Agspring LLC, and Agspring Mississippi's assets exceeded their liabilities at all times after December 2015, including the date on which this suit was filed.

**Claim No. 1: ACTION ON PROMISSORY NOTE, ON THE GUARANTIES, FOR RECOGNITION OF MORTGAGES, AND RIGHT TO SEIZE AND SELL PROPERTIES**

**Claims against Agspring Mississippi and Agspring LLC**

72.

Plaintiffs bring this action against Agspring Mississippi and Agspring to collect on a promissory note and on guaranties of the promissory note and to recognize Plaintiffs' rights pursuant to La. C.C.P. art. 3721, *et seq.* to enforce the Mortgages via foreclosure by ordinary process (*via ordinaria*) as more fully described below.

73.

Agspring Mississippi and Agspring are solidarily liable to Plaintiffs in the principal amount of twenty-two million and no/100 dollars ($22,000,000.00), accrued interest through November 30, 2019 in the amount of $3,000,922.47, additional interest on the principal amount at the default interest rate of 12.0% from December 1, 2019 until paid ($7,232.88 per day), reasonable attorneys' fees, and all costs of this suit and of executing any judgment therefrom, for the following reasons.

74.

Plaintiffs are the current holders and owners for value and before maturity of that certain promissory note, captioned "Second Amended and Restated Promissory Note" (the "Note"), in the original principal amount of twenty-two million and no/100 dollars ($22,000,000.00), dated February 1, 2014, made and subscribed by Agspring Mississippi payable to the order of Plaintiffs, bearing interest at the rate provided therein. The Note was payable in consecutive monthly payments of interest only due on the first day of each month throughout the term thereof, commencing on February 1, 2014, with a full and final payment of all principal and interest due thereon payable on September 6, 2023.  A copy of the Note is attached as Exhibit "A."

75.

The Note further provides that if any installment or part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures the Note, then, at the option of the said payee or holder of the Note, after five days' notice, the whole principal and interest due under the Note at once becomes due and payable.

76.

The Note states that it is an amendment and restatement, and not a novation, of and refinances, amends, and restates in its entirety, that certain promissory note made by and between Agspring Mississippi and Plaintiffs dated June 26, 2013 in the amount of $7,000,000.00 (the "June 26, 2013 Note"), as amended and restated by that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of $17,000,000 (the "September 6, 2013 Note").   A copy of the June 26, 2013 note is attached hereto as Exhibit "B" and a copy of the September 6, 2013 promissory note is attached as Exhibit "C ." Plaintiffs are the holders, for valuable consideration and before maturity, of the June 26, 2013 Note and the September 6, 2013 Note.

77.

Plaintiffs have lost the original September 6, 2013 Note and the June 26, 2013 Note, but have the original of the Second Amended and Restated Promissory Note.  The Note, the June 26, 2013 Note and the September 6, 2013 Note are hereinafter, collectively, referred to as the "Notes."

78.

The Plaintiffs have search diligently for the originals of the September 6, 2013 Note and the June 26, 2013 Note and have been unable to locate the originals, therefore the September 6,

2013 Note and the June 26, 2013 Note have been either lost or destroyed, their whereabouts are unknown or they are in the wrongful possession of an unknown person or persons that have not been found.

79.

The Plaintiffs were in possession of the September 6, 2013 Note and the June 26, 2013 Note until they were lost and were entitled to enforce them when the loss of possession occurred.

80.

The Plaintiffs have not lost possession of the September 6, 2013 Note and the June 26, 2013 Note as a result of a transfer or a lawful seizure.

81.

The Notes are secured by the following security devices:

(a)    That certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of June 26, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of West Carroll Parish in Mortgage Book 254, Page 787, Date Reg. No. 245116, a certified copy of which is attached as Exhibit "D", as amended by that certain Amendment of Mortgage dated as of June 26, 2013, passed before Donald K. Carroll, Notary Public for the State of Louisiana, and recorded in the mortgage records of West Carroll Parish in Mortgage Book 265, page 551, Date Reg. No, 250833, a certified copy of which is attached as Exhibit "E" (the June 26, 2013 Mortgage, Security Agreement and Assignment of Leases and Rents, as amended by the June 26, 2013 Amendment of Mortgage, is hereinafter referred to the " West Carroll Mortgage"), which West Carroll Mortgage affects the immovable property located in West Carroll Parish described therein together with the other property and rights more fully described therein (collectively, the "West Carroll Mortgaged Property"), and secures all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made by Agspring Mississippi not to exceed one hundred million dollars ($100,000,000.00).

(b)    That certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of September 6, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of West Carroll Parish in Mortgage Book 256, Page 25, Date Reg. No. 245613, a certified copy of which is attached as Exhibit "F," and recorded in the mortgage records of Morehouse Parish in Mortgage Book 710, Page 172, File No. 238110, a

certified copy of which is attached as Exhibit "G," as amended by that certain Amendment of Mortgage dated as of September 6, 2013, passed before Donald K. Carroll, Notary Public for the State of Louisiana, recorded in the mortgage records of West Carroll Parish in Mortgage Book 265, Page 546, Date Reg. No. 250832, a certified copy of which is attached as Exhibit "H," and recorded in the mortgage records of Morehouse Parish in Mortgage Book 736, Page 555, File. 248060, a certified copy of which is attached as Exhibit "I," (the September 6, 2013 Mortgage, Security Agreement and Assignment of Leases and Rents, as amended by the September 6, 2013 Amendment of Mortgage, is hereinafter referred to the "West Carroll and Morehouse Mortgage"), which West Carroll and Morehouse Mortgage affects the immovable property located in West Carroll and Morehouse Parishes described therein together with the other property and rights more fully described therein (collectively, the "West Carroll and Morehouse Mortgaged Property"), and secures all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made by Agspring Mississippi not to exceed one hundred million dollars ($100,000,000.00); and

(c)     That certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of February 1, 2014, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of East Carroll Parish in Mortgage Book 220, Page 192, Reg. No. 89267, a certified copy of which is attached as Exhibit "J," as amended by that certain Amendment of Mortgage dated as of February 1, 2014, passed before Donald K. Carroll, Notary Public for the State of Louisiana, and recorded in the mortgage records of East Carroll Parish in Mortgage Book 223, page 229, Reg. No, 90613, a certified copy of which is attached as Exhibit "K" (the February 1, 2014 Mortgage, Security Agreement and Assignment of Leases and Rents, as amended by the February 1, 2014 Amendment of Mortgage, is hereinafter referred to the "East Carroll Mortgage"), which East Carroll Mortgage affects the immovable property located in East Carroll Parish described therein together with the other property and rights more fully described therein (collectively, the "East Carroll Mortgaged Property" and, collectively with the West Carroll Mortgaged Property and the West Carroll and Morehouse Mortgaged Property, the "Mortgaged Properties"), and secures all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made by Agspring Mississippi not to exceed one hundred million dollars ($100,000,000.00).

82.

The security interest granted to Plaintiffs in the West Carroll Mortgage, the West Carroll and Morehouse Mortgage and the East Carroll Mortgage (collectively, the "Mortgages") was perfected by the filing of UCC-1 financing statements in the State of Louisiana (copies attached as Exhibit "L" filed in West Carroll Parish, Exhibit "M" filed in Morehouse Parish, and Exhibit "N" filed in West Carroll Parish) and was also perfected by the filing of a UCC-1 financing statement in the State of Delaware (copy attached as Exhibit "O").

83.

To secure the payment of the September 6, 2013 Note, including interest, attorney' s fees, expenses of collection and costs, on September 6, 2013 Agspring executed and delivered to Plaintiffs its guaranty of the September 6, 2013 Note (the "September 6, 2013 Guaranty"), a copy of which is attached as Exhibit "P."

84.

To secure the payment of the Note, including interest, attorney's fees, expenses of collection and costs, on February 1, 2014 Agspring also executed and delivered to Plaintiffs its guaranty of the Note (the "February 1, 2014 Guaranty" and, collectively with the September 6, 2013 Guaranty, the "Guaranties"), a copy of which is attached as Exhibit "Q."

85.

In the Guaranties, Agspring solidarily and unconditionally guaranteed to Plaintiffs the prompt payment in full of the Note, including interest, attorneys' fees, expenses of collection and costs, and agreed to be bound by all of the terms and conditions of any notes, agreements, mortgages or other documents in favor of Plaintiffs signed or incurred by Agspring Mississippi.

86.

The Notes and the Guaranties provide that they shall be interpreted and governed by the laws of the State of Louisiana.

87.

The Notes provide that the maker, endorsers, sureties and guarantors of the Notes severally waive presentment for payment, demand, notice of nonpayment, protest, and bind themselves solidarily, unconditionally and as original promissors for the payment thereof in principal and interest, costs and attorneys' fees and expenses.

88.

Each of the Notes further provide that if they are placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the makers and endorsers of the Notes bind themselves, jointly, severally and *in solido*, to pay the reasonable fees of the attorney who may be employed for that purpose.

89.

Agspring Mississippi defaulted in the payment of the Note by failing to pay the monthly installment of interest on the Note that was due on October 1, 2018. No payments have been made since then.

90.

The Note provides that in the event of default under the Note, after seven (7) days' notice to Agspring Mississippi, the Note shall bear interest at the rate of 12% per annum.

91.

By letter dated October 10, 2018, a copy of which is attached as Exhibit "R," Plaintiffs notified Agspring Mississippi that in accordance with the provisions of the Note, after seven days, the Note would bear interest at the rate of 12% per annum as provided therein.

92.

Because Agspring Mississippi failed to pay the October 1, 2018 installment on the Note when due (which also constitutes an Event of Default under the Mortgages), in accordance with the Note, Plaintiffs by letter dated October 10, 2018 sent a five-day notice to Agspring in which they exercised their option to declare the whole principal of and interest on the Notes at once due and payable. A copy of the five-day notice of acceleration is attached as Exhibit "S."

93.

By letter dated October 11, 2018, Plaintiffs notified Agspring that Agspring Mississippi had defaulted on its obligations to Plaintiffs. A copy of this letter is attached as Exhibit "T."

94.

Since the notice of acceleration (Exhibit "S") was sent, neither Agspring Mississippi nor Agspring have made any payments on the Note to Plaintiffs. The foregoing failure constitutes an Event of Default under the Mortgages and entitles Plaintiffs to exercise their remedies under the

Mortgages upon the occurrence and continuance of an Event of Default. Agspring Mississippi remains in default under the Note and Mortgages and the default described herein is continuing.

95.

Agspring Mississippi and Agspring are justly and solidarily indebted to Plaintiffs the remaining unpaid principal balance of the Note in the amount of twenty-two million and no/100 dollars ($22,000,000.00), accrued interest through November 30, 2019 in the amount of $3,000,922.47, computed at 8.50% per annum from September 1, 2018 until October 17, 2018 and computed at the rate of 12.0% from October 18, 2019 through November 30, 2019, additional interest on the principal amount at the default interest rate of 12.0% from December 1, 2019 until paid ($7,232.88 per day), reasonable attorneys' fees, and all costs of this suit and of executing any judgment therefrom until paid in full.

96.

Additionally, Plaintiffs seek recognition of (1) the Mortgages, (2) their rights in and, at their option, to have the Mortgaged Property seized and sold and out of the proceeds of the sale to have Plaintiffs' claim be satisfied in preference and with priority over all other persons and inferior encumbrances.

97.

The Mortgages provide in paragraph 9(f) that Plaintiffs may petition the Court for the appointment of a keeper of the Mortgaged Property pursuant to the provisions of La. R.S. 9:5136 *et seq*. Plaintiffs seek recognition of their right to request a sequestration of all or any of the Mortgaged Property and incident thereto the appointment of a keeper as provided in the Mortgages.

98.

After being be duly served with a copy of this petition, citation to appear and answer it, and after all due proceedings are had, Plaintiffs seek a judgment against Agspring Mississippi and Agspring, solidarily, in their favor finding:

A) that Agspring Mississippi and Agspring are liable solidarily to Plaintiffs in the following amounts under the Note (i) $22,000,000.00 in principal; (ii) $3,000,922.47, in accrued interest on the Note through November 30, 2019; (iii) reasonable attorney's fees; (iv) default interest on the principal balance of the Note at the rate of 12.00% per annum from December 1, 2019 until paid in full, a per diem rate of $7,232.88; (v) all costs of this suit; and (vi) all costs of executing on any

judgment and the seizure and sale and of properties subject to the Mortgages rendered herein on the Note resulting therefrom;

B) that the Mortgages be maintained and recognized as valid; and

C) that the properties identified in the Mortgages be seized and sold pursuant to La. C.C. art. 3279, La. C.C.P. art. 3721, *et seq.*, and in the manner provided by law with the proceeds applied in preference to claims of all others to satisfy the amounts due under the Notes, with interest, attorney's fees, expenses and costs be paid in preference and priority over all other persons and inferior encumbrances.

### Claim No. 2: INTENTIONAL INTERFERENCE
### WITH A CONTRACTUAL RELATIONSHIP

### Claims against PIMCO, Kennedy, Beemer and Chapin

99.

Paragraphs 4 through 98 are incorporated herein as though copied *in extenso.*

100.

The Note and Guarantees between Plaintiffs and Agspring Mississippi and Agspring LLC are contracts.

101.

Beemer and Chapin were officers of both Agspring Mississippi and Agspring LLC, and they knew of the Note and Guaranties of Agspring Mississippi and Agspring LLC to Plaintiffs.

102.

Kennedy was a director or manager of Agspring LLC and knew of its contractual obligation to pay Plaintiffs if Agspring Mississippi defaulted on that obligation.

103.

Kennedy intentionally induced Agspring Mississippi and Agspring LLC to refuse to pay Plaintiffs as required by the Note to satisfy the interests of his employer, PIMCO, by demanding that Agspring pay his employer, PIMCO, on the Dirty Loan allegedly owed to it by Agspring LLC, which upon information and belief was not debt, but an equity funding to Agspring Holdco.

104.

Kennedy, Beemer and Chapin expressly intended to cause Agspring Mississippi to breach its obligations to Plaintiff in repaying the Note by inducing it to withhold payment on October 1, 2018.

105.

Kennedy, Beemer and Chapin expressly intended to cause Agspring LLC to breach its obligations to Plaintiff under the Guaranties by i) inducing it to withhold payment after being notified of Agspring Mississippi's default under the Note, ii) inducing it, upon information and belief, to make distributions to equity interest holders after Agspring Mississippi's default under the Note, and iii) upon information and belief, inducing it to direct Agspring Mississippi to make transfers of assets for less than reasonably equivalent value after Agspring Mississippi's default under the Note.

106.

Kennedy, Beemer and Chapin intentionally and expressly directed Agspring Mississippi to not pay the interest due on the Note, including but not limited to the October 2018 interest installment, unless and until Plaintiffs accepted something less than repayment of the Note in full.

107.

Kennedy, Beemer and Chapin expressly and artificially caused or increased the insolvency of Agspring Mississippi and Agspring LLC by transferring assets, and related income streams, from Agspring Mississippi and other subsidiaries, to related-party entities for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

108.

Kennedy, Beemer and Chapin expressly intended to cause a payment default on the Note and Guaranties to force Plaintiffs to forgive a portion of the debt for the unjustifiable purpose of 1) permitting or increasing equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO, Barings and/or AIM as members of Agspring Holdco; or 2) artificially causing or increasing the Agspring Mississippi and Agspring's insolvency.

109.

Kennedy, Beemer and Chapin expressly controlled the diversion of money from Agspring Mississippi and Agspring to other related-parties, subsidiaries or affiliated entities to permit or increase equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO, AIM and/or Barings as members of Agspring Holdco; or 2) to artificially cause or increase Agspring Mississippi, Agspring LLC, Agspring Holdco's insolvency

through the transfer of their assets in an attempt to excuse the default on the Note owed to Plaintiffs.

<center>110.</center>

Kennedy performed the acts identified herein as part of his employment duties for PIMCO and for PIMCO's benefit, therefor PIMCO is vicariously liable for Kennedy's acts.

<center>111.</center>

These and other acts caused damages to the Plaintiffs in the form of the amounts due under the Note.

**CLAIM No. 3: LOUISIANA UNFAIR TRADE PRACTICES PURSUANT TO La. R.S. 51:1401 *et seq.***

**Claims against Kennedy, Beemer, Chapin, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM**

<center>112.</center>

Paragraphs 4 through 111 at incorporated herein as though copied *in extenso*.

<center>113.</center>

Upon information and belief, PIMCO, through its employee Greg Kennedy, AIM and/or Barings, through Agspring Holdco, completely controlled the actions of Agspring, LLC and Agspring Mississippi.

<center>114.</center>

Upon information and belief, PIMCO and Kennedy sought to hide the fact that PIMCO funded the $77 million dollars as part of the acquisition of NGP's membership interest in Agspring LLC by appointing U.S. Bank National Association as its administrative agent and identifying itself only as "Lender."

<center>115.</center>

Upon information and belief, PIMCO, AIM and Barings, through Greg Kennedy, Mark Beemer, Bruce Chapin, and others, completely dominated Agspring Mississippi, Agspring LLC, and Agspring Holdco by instructing their officers on how to perform the operation of these companies, including but not limited to directing whether to pay debts, whether to make distributions to members, and how to account for intercompany transfers.

<center>116.</center>

PIMCO, specifically, demanded that Agspring Mississippi refuse on October 1, 2018 to pay the installment due on the debt to Plaintiffs and to default on its obligations under the Note

<center>21</center>

hereafter, so that PIMCO would receive distributions on account of its ownership interests in Agspring Holdco.

117.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM, conspired with and directed Beemer and Chapin to cause Agspring Mississippi to breach intentionally its obligation to Plaintiffs by inducing it to withhold payment on October 1, 2018.

118.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with and directed Beemer and Chapin to direct Agspring Mississippi to not pay the interest due on the note, including but not limited to the October 2018 interest installment, unless and until Plaintiffs accepted something less than repayment of the Note in full.

119.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with Beemer and Chapin to artificially cause or increase the insolvency of Agspring Mississippi and Agspring LLC by dishonestly characterizing the Dirty Loan as debt instead of equity; transferring assets, and related income streams, from Agspring Mississippi and other subsidiaries of Agspring LLC and/or Agspring LLC to related-party entities without obtaining reasonably equivalent value in return; through self-dealing; or for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

120.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with Beemer and Chapin, intentionally to cause a payment default on the Note to force Plaintiffs' to forgive a portion of the debt for the unjustifiable purpose of 1) permitting or increasing equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO, Barings, and/or AIM as members of Agspring Holdco at a time when to do so would cause or increase Agspring Mississippi and/or Agspring LLC's insolvency; or 2) artificially causing or increasing Agspring Mississippi and Agspring LLC's insolvency for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

121.

Kennedy, Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM conspired with and directed Beemer and Chapin to divert money from Agspring Mississippi and Agspring LLC to other related-parties or affiliated entities to 1) permit or increase equity distributions to the members of Agspring Mississippi, Agspring LLC, Agspring Holdco, and ultimately PIMCO and/or Barings as members of Agspring Holdco and thereby causing or increasing Agspring Mississippi and/or Agspring LLC's insolvency; or 2) artificially cause or increase Agspring Mississippi and Agspring LLC's insolvency by transferring assets for the purposes of hindering, delaying or defrauding Plaintiffs' efforts to collect the debt owed to it by Agspring Mississippi and Agspring LLC.

122.

These acts caused damages to the Plaintiffs in the form of the amounts due under the Note, including but not limited to attorney's fees.

**CLAIM No. 4: NEGLIGENT BREACH OF GOOD FAITH DUTY TO PAY THE DEBT TO PLAINTIFFS PURSUANT TO La. C.C. ARTS. 1983, AND 1994 *et seq.*, OR ALTERNATIVELY, BAD FAITH BREACH PURSUANT TO La. C.C. ART. 1997**

**Claims against Agspring Mississippi and Agspring LLC**

123.

Paragraphs 4 through 122 are incorporated herein as if copied *in extenso*.

124.

Agspring Mississippi and Agspring LLC have a good faith duty to Plaintiffs to ensure that the assets of these companies are used to pay the debt owed Plaintiffs.

125.

At all times that Agspring Mississippi and Agspring LLC owed a duty to Plaintiffs to perform their obligations under the Note in good faith to pursuant to La. C.C. art. 1983.

126.

The assets owned by a company constitute a trust in favor of its creditors for the payment of its debts.

127.

Agspring Mississippi and/or Agspring LLC owed a duty to use the assets of Agspring Mississippi and Agspring LLC to pay Plaintiffs under the Note and Guaranties, including but not limited to paying the Note in full upon acceleration.

128.

Agspring Mississippi and/or Agspring LLC breached their duties by acting on PIMCO's demand, as the controlling member of Agspring Holdco, LLC, and consequently Agspring LLC and Agspring Mississippi, that Agspring Mississippi and/or Agspring LLC default on payment of the Note and Guaranties simply because PIMCO was not getting any concessions from Plaintiffs on forgiveness of some of the debt due under the Note.

129.

Agspring Mississippi and/or Agspring LLC breached their duties to Plaintiffs by artificially creating or increasing Agspring Mississippi or Agspring LLC's insolvency as set forth herein.

130.

Agspring Mississippi and Agspring LLC negligently, or alternatively in bad faith, breached their duty to Plaintiffs when preferring the interests of PIMCO by demanding that Agspring pay PIMCO on the Dirty Loan allegedly owed to it by Agspring Mississippi or Agspring LLC, which upon information and belief was not debt, but an equity funding to Agspring Holdco, when one or more of these companies were insolvent.

131.

These and other acts caused damages to the Plaintiffs in the form of foreseeable damages, the amounts due on the Note including lost interest and attorney's fees, or alternatively all damages, foreseeable or not, that are a direct consequence of Agspring Mississippi and Agspring LLC's failures to perform.

### Claim No. 5: DECLARATORY JUDGMENT, REVOCATORY AND OBLIQUE/DERIVITIVE ACTIONS

**Claims against Beemer, Kennedy, Chapin, Agspring Mississippi and Lake Providence Grain & Rice, LLC, Agspring LLC, Agspring Holdco, PIMCO, Barings, and AIM**

132.

Paragraphs 4 through 131 at incorporated herein as though copied *in extenso*.

133.

Because Agspring Mississippi and Agspring did not pay the Note and Guarantees when they came due, thus they are presumed, as a matter of law, to be insolvent.

134.

If a company is insolvent, creditors gain standing to assert claims derivatively that could be asserted by the debtors or the debtors' members.

135.

Upon information and belief, Agspring Mississippi's and Agspring's total liabilities exceeded all of the fairly appraised value of the assets of Agspring Mississippi and Agspring as of December 2015, and thereafter, including on the dates of all distributions, payments of the PIMCO Dirty loans, and transfers to related and third parties addressed below, including but not limited to the transfer of the Lake Providence Property from Agspring Mississippi to Lake Providence Rice and Grain, LLC.

Recharacterization of the Dirty Loan and Unlawful Distributions

136.

A limited liability company shall not make a distribution to a member if at the time of and after giving effect to the distribution, the fair value of the assets of the limited liability company exceeds all liabilities of the limited liability company.

137.

Agspring Mississippi and Agspring LLC have the right to sue a member who receives a distribution in violation of subsection Del. Code Ann. tit. 6, § 18-607(a) for the amount of the distribution and to sue officers and directors who breach their fiduciary duty by making distributions that are prohibited by law or applicable Limited Liability Company Agreements.

138.

Upon information and belief, each of Agspring Mississippi, Agspring LLC and Agspring Holdco's Limited Liability Company Agreements contain a provision permitting a distribution to members only from excess cash after taking into account all debts, liabilities and obligations of the Company and any subsidiaries, and any reserves for any expenditures, working capital needs or other capital requirements (including capital expenditures) or contingencies.

139.

Plaintiffs request pursuant to La. C.C.P. art. 1871 *et seq.* that the $77.4 million funding made by PIMCO be declared an equity investment in Agspring LP, and not a loan to Agspring LLC.

140.

Any payments to PIMCO on the Dirty Loan were unlawful distributions by Agspring LLC and/or Agspring Mississippi because these are, in truth and in fact, distributions to PIMCO on

account of its equity investment in Agspring Holdco, made when Agspring LLC and Agspring Mississippi were insolvent.

141.

Kennedy, Beemer, Chapin, Agspring Mississippi, Agspring, Agspring Holdco, PIMCO, Barings and/or AIM knew at the time they made or received the distributions that these distributions violated Del. Code Ann. tit. 6, § 18-607 and/or the applicable Limited Liability Company agreements.

142.

Kennedy, Beemer, Chapin, PIMCO, Barings and/or AIM and any other member of Agspring Mississippi, Agspring or Agspring Holdco who administered or received transfers of corporate assets to Agspring, LLC, Agspring Holdco, PIMCO, Barings and/or AIM, are liable, *in solido*, for the return of the amount of the transfers that caused or increased any of these companies' insolvency at the time the transfers were made.

143.

Plaintiffs assert, for themselves and on behalf of Agspring Mississippi and Agspring, LLC, claims against Agspring LLC, Agspring Holdco, PIMCO, Barings and/or AIM for return of the amounts that each received as a distribution from these companies to the extent that it caused or increased the insolvency of any of Agspring Mississippi or Agspring LLC.

144.

Plaintiffs assert, on behalf of Agspring Mississippi and Agspring, LLC, claims against Kennedy, and PIMCO as his employer, Beemer, and Chapin, for damages to Agspring LLC or Agspring Mississippi and attorney's fees arising from their breach of fiduciary duties in administering distributions to Agspring Holdco, PIMCO, Barings and/or AIM which were prohibited under the applicable Limited Liability Company Agreements.

145.

Because these distributions occurred after Agspring Mississippi's obligation to pay $22 million to Plaintiffs arose, Plaintiffs request a judgment annulling the distributions to members of Agspring Mississippi, Agspring LLC, Agspring Holdco, LLC, PIMCO, Barings and/or AIM and ordering these returned to the patrimony of Agspring Mississippi, Agspring LLC, and/or Agspring Holdco, LLC pursuant to Delaware law.

Transfer of Lake Providence Property

146.

On January 1, 2019, Agspring Mississippi Region, LLC recorded a deed purportedly donating to Lake Providence Grain and Rice, LLC, a Delaware limited liability company, all of its rights, title and interest in and to two immovable property tracts in Richland Parish as shown in Exhibit "U" attached hereto.

147.

On January 4, 2019, Agspring Mississippi Region, LLC recorded a deed purportedly donating to Lake Providence Grain and Rice, LLC, all of its rights, title and interest in and to two immovable property tracts in Franklin as shown in the document attached hereto as Exhibit "V."

148.

The four tracts identified at paragraphs 146 and 148 above are collectively referred to herein as the "Lake Providence Property."

149.

Upon information and belief, Lake Providence Rice and Grain, LLC, is a single-purpose enterprise formed only to hold immovable property.

150.

Upon information and belief, Lake Providence Rice and Grain, LLC, has no assets other than the Lake Providence Property.

151.

Upon information and belief, Lake Providence Rice and Grain, LLC is owned or controlled by Agspring Mississippi, Agspring LLC, Agspring Holdco, other Defendants, related-party entities, or those entities controlled by some or all the board of directors or members of Agspring Holdco, Inc.

152.

Upon information and belief, the Lake Providence Property was appraised in April 2018 for approximately $17,000,000.

153.

Upon information and belief, the Lake Providence Property was transferred gratuitously, or alternatively, for less than reasonably equivalent value, thus causing or increasing the insolvency of Agspring Mississippi.

27

154.

Upon information and belief, Lake Providence Rice and Grain, LLC knew or should have known that the transfer of the Lake Providence Property would cause or increase Agspring Mississippi's insolvency.

155.

Plaintiffs seek a judgment revoking the transfer of the Lake Providence Property to Lake Providence Rice and Grain, LLC and returning this asset to the patrimony of Agspring Mississippi.

Breach of Fiduciary Duties of Loyalty, Good Faith, Due Care, and Fair Dealing

156.

Officers, directors, and managing members of a company owe that company a fiduciary duty to exercise their business judgment in the best interests of the company.

157.

Kennedy, Beemer, Chapin and the member managers of Agspring Mississippi, Agspring or Agspring Holdco, willfully or negligently authorized the transfers of corporate assets to Agspring, LLC, Agspring Holdco, PIMCO, Barings and/or AIM on account of their ownership interest from the assets of Agspring Mississippi and Agspring LLC, while these entities were insolvent.

158.

Defendants breached their fiduciary duties of loyalty and good faith to their members and creditors by paying excessive fees not representative of an arm's length transaction to related-party or third-party entities for the management of Agspring Mississippi or Agspring.

159.

Upon information and belief, Kennedy, Beemer, and/or Clark, instead of honestly endeavoring to effect a loan of money for the benefit of Agspring or Agspring Mississippi, in betrayal of their duty to these companies, characterized the equity funding from the PIMCO as a "debt" and granted PIMCO a security interest to guarantee payment to the injury of their creditors as a time when these companies were insolvent.

160.

By January 26, 2018, upon information and belief, Agspring had reduced, either through payments of cash, paid-in kind distributions, or other assets, the balance due on the Dirty Loan from approximately $77.4 million to $34,361,219.00.

161.

Kennedy and PIMCO, as controlling member of Agspring Holdco, which solely owned Agspring and Agspring Mississippi, engaged in self-dealing by obtaining payments on account of the Dirty Loan, which was really equity funding; and which made the payments the equivalent of unlawful distribution.

162.

Alternatively, the terms of the Dirty Loan do not represent the terms of an arm's length transaction, but instead reflects a self-dealing bad faith loan that allowed PIMCO to extract profits from Agspring, and derivatively Agspring Mississippi.

163.

Any demand to Agspring or Agspring Mississippi to assert these breach of fiduciary duty claim is futile as these companies are still controlled by the Defendants who have refused or induced Agspring Mississippi to refuse to pay debts owed to Plaintiffs when they came due and these claims have as damages the failure of Agspring and Agspring Mississippi to pay the Note owed to Plaintiffs. Accordingly, a demand to sue for breach of the duties ultimately causing damages to Plaintiffs by Agspring and Agspring Mississippi's failure to pay the Note is futile.

164.

These and other acts caused damages to the Plaintiffs in the form of the amounts due under the Note.

### Claim No. 6: ALTER EGO/PIERCING THE BUSINESS ENTITY VEIL CLAIMS

### Claims against Agspring Mississippi, Agspring LLC, Agspring Holdco, PIMCO, Barings and AIM

165.

Paragraphs 4 through 164 are incorporated herein as though copied *in extenso*.

166.

Agspring, LLC, Agspring Mississippi and Agspring Holdco are the alter egos of PIMCO, Barings, and/or AIM such that the separate business entities should be disregarded.

167.

Since the 2015 acquisition, none of Agspring Mississippi, Agspring LLC, and Agspring Holdco have been adequately capitalized.

168.

Since 2015, upon information and belief, Agspring Mississippi and Agspring Holdco have no funds of their own; instead Agspring LLC commingles any funds generated by Agspring Mississippi to fund its operations, the operations of its other subsidiaries, or to fund distributions to Agspring Holdco, which passed the funds to PIMCO, Barings, and/or AIM in the form of distributions and Dirty Loan payments.

169.

Upon information and belief, at all times described herein, the directors and/or managers of each of Agspring, LLC, Agspring Mississippi and Agspring Holdco were substantially the same.

170.

In general, these companies function as a façade for PIMCO, the controlling member.

171.

Plaintiffs therefore request that the separate nature of these corporate entities be disregarded and treated as the alter egos of each other, and of PIMCO, Barings, and/or AIM.

172.

Upon information and belief, ABC Insurance Company and XYZ Insurance company provides coverage under insurance policies for some or all of the negligent acts asserted herein, who are liable *in solido* with one or more of the defendants. Plaintiffs assert claims against ABC Insurance Company and XYZ Insurance company preserve its claims for payment under these polices for the negligent acts asserted herein. Plaintiffs reserve their right to amend these pleadings to substitute the insurance companies providing this insurance coverage.

**WHEREFORE**, after being be duly served with a copy of this petition, citation to appear and answer it, and after all due proceedings are had, Plaintiffs seek a judgment in their favor of Plaintiffs and against Defendants finding that:

   a) that Agspring Mississippi and Agspring, are liable solidarily to Plaintiffs in the following amounts under the Note (i) $22,000,000.00 in principal; (ii) $3,000,922.47, in accrued interest on the Note through November 30, 2019; (iii) reasonable attorney's fees; (iv) default interest on the principal balance of the Note at the rate of 12.00% per annum from December 1, 2019 until paid in full, a per diem rate of $7,232.88; (v) all costs of this suit; and (vi) of executing on any

judgment and the seizure and sale and of properties subject to the Mortgages rendered herein on the Note resulting therefrom;

b) that the Mortgages are recognized as valid;

c) that the properties identified in the Mortgages be seized and sold pursuant to La. C.C. art. 3279, La. C.C.P. art. 3721, *et seq.*, and in the manner provided by law with the proceeds applied in preference to claims of all others to satisfy the amounts due under the Notes, with interest, attorney's fees, expenses and costs be paid in preference and priority over all other persons and inferior encumbrances;

d) right to request a sequestration of all or any of the Mortgaged Property and incident thereto the appointment of a keeper as provided in the Mortgages;

e) that all Defendants are liable *in solido* for damages in the amount identified in "a" above due on the Note;

f) recharacterizing PIMCO's funding of approximately $77 Million as an equity interest in Agspring LP, not a loan to Agspring LLC;

g) revoking the transfers that caused or increased Agspring LLC and/or Agspring Mississippi's insolvency;

h) that Agspring Holdco, PIMCO, Barings and/or AIM must return to Agspring Mississippi or Agspring LLC all amounts that each received as a distribution from Agspring Mississippi or Agspring LLC to the extent that it caused or increased the insolvency of any these companies;

i) that the donation of properties from Agspring Mississippi to Lake Providence Rice and Grain, LLC be annulled and that Lake Providence Rice and Grain, LLC be ordered to return, free and clear of all liens and claims, the Lake Providence Property to the patrimony of Agspring Mississippi pursuant to La. C.C. art. 2036, *et seq.*;

j) that the separate nature of the Agspring entities be disregarded and treated as the alter egos of each other, and of PIMCO, Barings, and/or AIM;

k) that the membership interests in any Limited Liability Company of any Defendant against whom a judgment is rendered in Plaintiffs' favor be charged with payment of the unsatisfied amount of said judgment with interest; and

l)  awarding to Plaintiffs damages, attorney's fees and costs, plus all other legal and

equitable relief due under the premises.

Respectfully submitted:

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone:  225-236-3636
Fax:  225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW**
**& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com

**PLEASE SERVE:**

**GREG KENNEDY**
**VIA LONG ARM SERVICE**
2801 Chillon Way
Laguna Beach, CA 92651-2099

**MARK BEEMER**
**VIA LONG ARM SERVICE**
3309 Swanhollow Court
Henrico, VA 23233-7617
      *AND*
12720 Connell Drive
Overland Park, KS 66213

**PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC**
**VIA LONG ARM SERVICE**
Through its registered agent for service of process:
Registered Agent Solutions, Inc.
9 E. Loockerman Street, Suite 311
Dover, DE 19901
      *AND*
**VIA LONG ARM SERVICE**
650 Newport Center Drive
Newport Beach, CA 92660

**BARINGS LLC**
Through its registered agent for service of process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**AMERICAN INFRASTRUCTURE MLP II IP FEEDER LP; AMERICAN INFRASTRUCTURE MLP MANAGEMENT II LLC; AMERICAN INFRASTRUCTURE MLP PE MANAGEMENT, L.L.C.; AMERICAN INFRASTRUCTURE MLP YIELD MANAGEMENT, L.L.C.; and AMERICAN INFRASTRUCTURE MLP FUNDS, LP.**
**VIA LONG ARM SERVICE**
Through their registered agent for service of process:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808
    *AND*
**VIA LONG ARM SERVICE**
950 Tower Lane
Suite 800
Foster City, CA 94404

**AGSPRING HOLDCO, LLC and AGSPRING, LLC**
**VIA LONG ARM SERVICE**
Through their registered agent for service of process:
Cogency Global Inc.
850 New Burton Road, Suite 201
Dover, DE 19904
    *AND*
**VIA LONG ARM SERVICE**
5101 College Boulevard
Leawood, KS 662211

**AGSPRING MISSISSIPPI REGION, LLC and LAKE PROVIDENCE GRAIN AND RICE, LLC**
Through their registered agent for service of process:
Cogency Global Inc.
3867 Plaza Tower Drive, 1st Floor
Baton Rouge, LA 70816

**BRUCE CHAPIN**
**VIA LONG ARM SERVICE**
6618 Willow Lane
Mission Hills, KS 66208

**JEFF LANDRY**
**LOUISIANA ATTORNEY GENERAL**
1885 North Third Street
Baton Rouge, LA 70802

# SECOND AMENDED AND RESTATED
# PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount:  $17,000,000**

**Second Amended and Restated Principal Amount:  $22,000,000.00**

$22,000,000.00                                                             As of February 1, 2014

     For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of TWENTY-TWO MILLION AND 00/100 ($22,000,000.00) Dollars, together with interest at the rate of (i) Five and 75/100th percent (5.75%) per annum from the date hereof until August 30, 2018 (the "Initial Period"); and (ii) with interest beginning on September 1, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"). This Note shall be payable in consecutive monthly installments of interest only due on the first day of each month throughout the term hereof, commencing on February 1, 2014, in the amount of $105,416.66 throughout the Initial Period, and with the monthly payment of interest only to be paid during the Second Period being calculated based upon the Prime Rate plus Three percent (3.0%), with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through January 31, 2014. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

     This Second Amended and Restated Promissory Note is an amendment and restatement, and not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of $7,000,000, as amended and restated by that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of $17,000,000.00.

     All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

     The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be



PLAINTIFF'S
EXHIBIT

A

extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 on June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parish East Carroll, State of Louisiana.

**MAKER:**
AGSPRING MISSISSIPPI REGION, LLC

By: _____
Name: Brad Clark
Its:    President

2

NO:0104474/00001:167545v3

## PROMISSORY NOTE

$7,000,000.00

As of June 26, 2013

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note the principal sum of SEVEN MILLION AND 00/100 ($7,000,000.00) Dollars together with interest at the rate of Five and 75/100th (5.75%) percent per annum, and payable in consecutive monthly installments of interest only due on the first day of each month, commencing on July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June ___, 2018.  Maker has paid the holder of this note the interest due hereon from the date hereof through June 30, 2013.  This note may be prepaid in whole or in part at any time without payment of premium or penalty.

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses.  No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after five days notice to the Maker, this Note shall bear interest at the rate of 12% per annum.  If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and *in solido*, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment  or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal  and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana.

MAKER:

AGSPRING MISSISSIPPI REGION, LLC

By: _____

Name:  Brad Clark

Its:     President



## FIRST AMENDED AND RESTATED
## PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount: $17,000,000**

$17,000,000.00                                  As of September 6, 2013

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of SEVENTEEN MILLION AND 00/100 ($17,000,000.00) Dollars together with interest at the rate of Five and 75/100th percent (5.75%) per annum until September 6, 2018 (the "Initial Period"), and with interest beginning on August 30, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"), and payable in consecutive monthly installments of interest only due on the first day of each month, commencing on October 1, 2013, in the amount of $81,458.33 during the Initial Period and an amount to be calculated based upon the Prime Rate plus Three percent (3.0%) during the Second Period, with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through October 1, 2013. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

This Amended and Restated Promissory Note is not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of SEVEN MILLION DOLLARS ($7,000,000).

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney

PLAINTIFF'S
EXHIBIT
tubbs
C

or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 om June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parishes of West Carroll and Morehouse, State of Louisiana.

**MAKER:**
AGSPRING MISSISSIPPI REGION, LLC

By: _____
Name: Brad Clark
Its:    President

2

| MORTGAGE, SECURITY | * | UNITED STATES OF |
| | * | AMERICA |
| AGREEMENT AND | * | |
| ASSIGNMENT OF LEASES | * | |
| AND RENTS | * | |
| | * | STATE OF LOUISIANA |
| BY: | * | |
| AGSPRING MISSISSIPPI REGION, LLC | * | PARISH OF W. CARROLL |
| a Delaware limited liability company | * | |

IN FAVOR OF:
LARRY TUBBS,

TUBBS RICE DRYERS, INC.
a Louisiana corporation,

CHIEF VENTURES, L.L.C.,
a Louisiana limited liability company and

BIG RIVER GRAIN, LLC,
a Louisiana limited liability company

*Handwritten note:*
*Amendment of Mortgage*
*Filed: Dec. 3, 2015*
*DR# 250833*
*Mtg Bk. 265, Pg. 551*
*Darlene Fuller*
*Dy. Clerk*

* * * * * * * * * * * * * * * * * * * *

BE IT KNOWN, that on the date and place set forth below, to be effective as of June 26, 2013;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

AGSPRING MISSISSIPPI REGION, LLC [TIN XX-XXX_____], a Delaware limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent;

who declared and acknowledged that said Mortgagor is justly and truly indebted unto:

NO:0104474/00001:163393v2

1

A True Copy of Original Filed For Record
This 28th Day of June 20 13
At 12:26 P.M. Book 254
Page 787 Date Reg. No. 245116
Darlene Fuller
Clerk of Court, West Carroll Parish, LA



PLAINTIFF'S
EXHIBIT
D
tabbies

Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company (collectively as "Mortgagee"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

in the full sum of SEVEN MILLION AND NO/100 ($7,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, payable to the order of Mortgagee in consecutive monthly installments of interest only due on the first day of each month, commencing July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June 26, 2018, which Note shall bear interest at the rate of Five and 75/100th (5.75%) per annum, from date until paid (which Promissory Note, together with any renewal or refinancing note or notes delivered in substitution therefore or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note").

Now, in order to secure (i) the full and punctual payment of the Note when due or at maturity, or as it may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "Mortgage", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "Loan Documents"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "Indebtedness"), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real and personal property and rents and leases and all of Mortgagor's estate, right, title and interest therein (hereinafter collectively called the "Security"):

The immovable property described in Exhibit A attached hereto and made a part hereof, lying and being in the Parish of West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the "Land");

TOGETHER with all buildings and other improvements now or hereafter located on said

NO:0104474/00001:163393v2                                    2

Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "Improvements");

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "Real Property");

TOGETHER with all fixtures, machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Mortgagor (the "Personal Property");

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, together with all accounts, any and all escrow accounts, general intangibles, documents, instruments and chattel paper arising from or in connection with the Real Property, including all books and records of Mortgagor in connection therewith; and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the "Incorporeal Rights").

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the

Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the foregoing indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the Note in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized

elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $50,000,000.00. This Mortgage secures obligations that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.    Payment of Indebtedness.  Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.    Title.

(a)    Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on Exhibit B hereto (the "Permitted Encumbrances") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee

hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(b)     Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)     Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)     Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.      Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.      Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.      Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security.

6.   <u>Insurance/Condemnation Proceeds.</u>   Mortgagor hereby assigns to Mortgagee all proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7.   <u>Assignment of Rents and Leases.</u>   As further security for the payment of the Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases

hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.    Events of Default.  Each of the following shall constitute an "Event of Default" hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)    Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(b)    The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.    Remedies Upon Default.  Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(a)    Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)    To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

NO:0104474/00001:163393v2                                    8

(c)     Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(e)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected. This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(g)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Mortgagee without removal may render the Collateral unusable and dispose of the

Personal Property. To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(i)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.     Acceleration Interest.  In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.     Waiver of Statutory Rights.  Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.     Security Interest.  This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*)  Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby.  Upon the occurrence of any of the Events of

11

Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13.    Right of Entry. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14.    Rights Cumulative. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15.    Subrogation. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

16.    No Waiver. Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

NO:0104474/00001:163393v2          12

17.  Indemnification. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand. Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18   Attorneys' Fees. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code. Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.  Protection of Security; Cost and Expenses. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder. If Mortgagor fails to perform any of its covenants or agreements contained in this Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees,

entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.    Notices.  Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing.  The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable.  For purposes hereof, the addresses are as follows:

If to Mortgagee:
Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC
c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266

14

If to Mortgagor:
Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer

21.     Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.     Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "State").  The agreed upon venue for all legal proceedings is the Parish in which the Land is located..

23.     Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.     Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.     Modifications.  This Mortgage may not be changed or terminated except in writing by both parties.  The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

26.     Bind and Inure.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.  The covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.     Time of the Essence.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other

instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.     Business Days.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.     Certificates.  The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.     No Paraph.  No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.

<div style="text-align:center">[SIGNATURE PAGE BEGINS ON NEXT PAGE]</div>

803

THUS DONE AND PASSED by the Mortgagor in my office in the County of
_____Johnson_____, State of _Kansas_, on the 26 day of June, 2013,
to be effective as of the date set forth above, in the presence of the undersigned competent
witnesses, who hereunto sign their names with the said appearer and me, Notary, after due
reading of the whole.

WITNESSES:

_____

JOHN MOENIUS

Print Name:

_____

Randal L. Linville

Print Name:

MORTGAGOR:

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____

Brad Clark
President

_____

NOTARY PUBLIC
Name: Anne Yoesting
Bar/Notary ID: 00006 7904-1
My Commission Expires: 2/3/16

ANNE YOESTING
MY COMMISSION EXPIRES
2/3/16

OFFICIAL
SEAL

8C4

## CONSENT OF SOLE MEMBER AND SOLE MANAGER
## OF AGSPRING MISSISSIPPI REGION, LLC

**WHEREAS**, the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "**Company**") has determined that it is in the best interest of the Company to purchase certain assets of the company from Larry Tubbs, an individual ("**Tubbs**"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("**TRD**"), Chief Ventures, L.L.C., a Louisiana limited liability company ("**CV**"), and Big River Grain, LLC, a Louisiana limited liability company ("**BRG**", and together with Tubbs, TRD, and CV, the "**Sellers**"), and in connection therewith to borrow $7.0 million from the Sellers, and as security for said loan, to execute a mortgage and security interest in certain movable and immovable property of the Company as acquired from the Sellers and described on **Exhibit A** attached hereto and made a part hereof, all as set forth in the Asset Purchase Agreement by and between the Company and the Sellers dated as of May 22, 2013.

**NOW THEREFORE, BE IT RESOLVED**, that the Company is hereby authorized and directed to execute and deliver a Promissory Note and grant a mortgage and security interest on the property of the Company described on **Exhibit A** attached hereto and made a part hereof, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "**Authorized Officer**"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

**RESOLVED**, that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

NO:0104474/00001:163602v1

Dated as of June ___, 2013

SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC

_____
Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature this ___ day of June 2013.

_____
Bradley K. Clark, Secretary

NO:0104474/00001:163602v1

EXHIBIT A
TO
MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

Legal Description

A LEGAL DESCRIPTION OF A
49.582 ACRE TRACT
FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a

NO:0104474/00001:163393v2                    18

point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

**LESS AND EXCEPT**

<div align="center">

**A 31.868 ACRE TRACT**
**SITUATED IN**
**SECTION 10, T 20 N, R 10 E**
**WEST CARROLL PARISH, LOUISIANA**

</div>

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and

808

utilities.EXHIBIT B
TO
MORTGAGE AND SECURITY AGREEMENT

Permitted Exceptions

DEC 03 2015          250833                    551

## AMENDMENT OF MORTGAGE

BE IT KNOWN that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: AGSPRING MISSISSIPPI REGION, LLC., a Delaware limited liability company (the *"Borrower"*) and LARRY TUBBS, an individual, TUBBS RICE DRYERS, INC., a Louisiana corporation, CHIEF VENTURES, L.L.C., a Louisiana limited liability company, and BIG RIVER GRAIN, LLC., a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of June 26, 2013.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded June 28, 2013, in Mortgage Book 254, Page 787, under Date Register No. 245116 of the records of West Carroll Parish, Louisiana, (the "Mortgage").

WHEREAS, the property to be excluded was not included in the mortgage. The "Excluded Property should be added after the fourth full paragraph of Page 3 of the above described mortgage.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage after the fourth full paragraph of Page 3 to include the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

A True Copy of Original Filed For Record
This 3ʳᵈ Day of _Dec._, 20 15
At 3:41 M. Book 265
Page 551 Date Reg. No. 250833
_Darlene Sullen_
Clerk of Court, West Carroll Parish, LA


PLAINTIFF'S
EXHIBIT
E

Except as specifically amended herein and except for the said Amendment, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of West Carroll Parish, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in West Carroll Parish; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3rd day of December, A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

_Barbie Smith_
**Barbie Smith**

_Erline W. Vickery_
**Erline W. Vickery**

MORTGAGEE:

LARRY TUBBS

**TUBBS RICE DRYERS, INC.**

BY:

**CHIEF VENTURES, L.L.C.**

BY:
LARRY TUBBS, MANAGER

**BIG RIVER GRAIN, LLC.**

BY:
LARRY TUBBS, MANAGER

_Donald K. Carroll_
NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the ⎯1⎯ day of December, A.D., 2015, at my office in the county of Johnson, State of Kansas, after due reading of the whole.

WITNESSES:

Signature _____

Printed name _Jennifer Mick_

Signature _____

Printed name _Luanne Eakin_

BORROWER:

AGSPRING MISSISSIPPI REGION, LLC., a Delaware limited liability company

BY: _____

Name: _Brad Clark_

Title: _President_



NOTARY PUBLIC

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

SEP 13 2013                    245613                              25

| | | |
|---|---|---|
| MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS | * * * * * | UNITED STATES OF AMERICA |

MORTGAGE, SECURITY
AGREEMENT AND                    *    UNITED STATES OF
ASSIGNMENT OF LEASES             *    AMERICA
AND RENTS                        *
                                 *    STATE OF LOUISIANA
BY:                              *
                                 *
AGSPRING MISSISSIPPI REGION, LLC *
a Delaware limited liability company *   PARISHES OF MOREHOUSE
                                 *    AND WEST CARROLL
IN FAVOR OF:                     *    *Amendment of Mortgage*
LARRY TUBBS,                     *    *Filed: Dec. 3, 2015*
                                 *    *DR# 250832*
TUBBS RICE DRYERS, INC.          *    *Mtg. Bk. 265, Pg. 546*
a Louisiana corporation,         *    *Darlene Fuller*
                                 *    *Dy. Clerk*
CHIEF VENTURES, L.L.C.,          *
a Louisiana limited liability company and *
                                 *
BIG RIVER GRAIN, LLC,            *
a Louisiana limited liability company *
                                 *

* * * * * * * * * * * * * * * * *

BE IT KNOWN, that on the date and place set forth below, to be effective as of September 6, 2013;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

AGSPRING MISSISSIPPI REGION, LLC [32-0409147], a Delaware limited liability company ("Mortgagor"), duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent of Sole Member and Sole Manager;

who declared and acknowledged that said Mortgagor is justly and truly indebted unto:

NO:0104474/00001:164778v6

A True Copy of Original Filed For Record
This *13th* Day of *Sept.*, 20 *13*
At *12:15* M. Book *256*
Page *25* Date Reg. No. *245613*
*Darlene Fuller*
Clerk of Court, West Carroll Parish, LA

PLAINTIFF'S
EXHIBIT
F

Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company (collectively as "Mortgagee"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVEN MILLION AND NO/100 ($7,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, payable to the order of Mortgagee in consecutive monthly installments of interest only due on the first day of each month, commencing July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June 26, 2018, which Note shall bear interest at the rate of Five and 75/100th (5.75%) per annum, from date until paid (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note").

Now, in order to secure (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "Mortgage", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "Loan Documents"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "Indebtedness"), that except for the Excluded Property (as hereinafter defined), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real property and rents and leases and all of

2

Mortgagor's estate, right, title and interest therein (hereinafter collectively called the "**Security**"):

The two parcels of immovable property described in <u>Exhibit A</u> attached hereto and made a part hereof, lying and being in the Parishes of Morehouse and West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the "**Land**");

TOGETHER with all buildings, fixtures and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "**Improvements**");

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "**Real Property**");

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the "**Incorporeal Rights**").

Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following assets and properties of Mortgagor have been pledged by Mortgagor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "**Administrative Agent**"), and are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"): (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all

3

NO:0104474/00001:164778v6

Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on <u>Schedule 5.21(e)</u> to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among AgSpring, LLC, Mortgagor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time (the **"Credit Agreement"**).

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

4

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the Indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the Indebtedness in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $100,000,000.00. This Mortgage secures obligations and Indebtedness that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.    Payment of Indebtedness. Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and

5

perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.    <u>Title</u>.

(a)    Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on <u>Exhibit B</u> hereto (the "**Permitted Encumbrances**") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(a)    Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)    Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp

6

taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)     Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.     Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.     Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.     Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security.

6.     Insurance/Condemnation Proceeds. Mortgagor hereby assigns to Mortgagee all proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7.     Assignment of Rents and Leases. As further security for the payment of the

7

Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any

8

subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.      Events of Default.   Each of the following shall constitute an "**Event of Default**" hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

   (a)      Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

   (a)      The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.      Remedies Upon Default.   Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

   (b)      Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

   (b)      To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

   (c)      Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

9

(d)   Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(d)   Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)   In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected. This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(e)   Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Mortgagee without removal may render the Collateral unusable and dispose of the Personal Property. To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and

10

NO:0104474/00001:164778v6

cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.  In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(f)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage.  Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or  pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

11

NO:0104474/00001:164778v6

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.     Acceleration Interest.  In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.     Waiver of Statutory Rights.  Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.     Security Interest.  This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*)  Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to

12

this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby. Upon the occurrence of any of the Events of Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13. <u>Right of Entry</u>. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14. <u>Rights Cumulative</u>. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15. <u>Subrogation</u>. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

13

NO:0104474/00001:164778v6

16.    No Waiver.    Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

17.    Indemnification.   Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage.  Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand.  Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18    Attorneys' Fees.   Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel.  Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code.  Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.    Protection of Security; Cost and Expenses.   Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder.  If Mortgagor fails to perform any of its covenants or agreements contained in this

14

NO:0104474/00001:164778v6

Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.   Notices. Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing. The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable. For purposes hereof, the addresses are as follows:

If to Mortgagee:
Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC

15

NO:0104474/00001:164778v6

c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266


If to Mortgagor:
Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer

21.    Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.    Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "**State**").  The agreed upon venue for all legal proceedings is the Parish in which the Land is located..

23.    Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.    Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.    Modifications.  This Mortgage may not be changed or terminated except in writing by both parties.  The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

26.    Bind and Inure.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.  The

16

NO:0104474/00001:164778v6

covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.    Time of the Essence.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.    Business Days.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.    Certificates.    The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.    No Paraph.    No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.

31.    Partial Release of Pioneer Mortgage.    Mortgagee acknowledges that due to the security interests granted by Mortgagor in favor of Administrative Agent as hereinabove described, that it is necessary for Mortgagor to confirm that the Mortgage executed by Mortgagor in favor of Mortgagee dated as of June 26, 2013 and recorded in Mortgage Book 254, Page 787, West Carroll Parish, Louisiana (the "**Pioneer Mortgage**") does not encumber the Excluded Property or the Personal Property referenced therein. Mortgagee hereby authorizes Mortgagor and its agents, attorneys, or representatives to prepare and file an amendment under the Uniform Commercial Code as adopted in Louisiana to expressly exclude the Excluded Property from the security interests created by the Pioneer Mortgage.

**[SIGNATURE PAGE BEGINS ON NEXT PAGE]**

17

NO:0104474/00001:164778v6

42

THUS DONE AND PASSED by the Mortgagor in my office in the County of Johnson, State of Kansas, on the 6th day of September, 2013, to be effective as of the date first set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:

*Jennifer Trupka*

Jennifer Trupka
Print Name:

*Dustin Clevenger*

DUSTIN CLEVENGER
Print Name:

MORTGAGOR:

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____
    Brad Clark
    President

*Anne M. Yoesting*
NOTARY PUBLIC
Name: Anne Yoesting
Bar/Notary ID: 000067994-1
My Commission Expires: 2/3/16

ANNE YOESTING
MY COMMISSION EXPIRES
2/3/16
OFFICIAL SEAL

18

EXHIBIT A
TO
MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10′ W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42′ W, along the center of the canal 453.75 feet, thence turn and run S 81°10′ E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52′ E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana) and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52′ W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52′ W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10′ W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42′ E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10′ E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11′38″ E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52′ W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52′ W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20′13″ W for 995.07 feet to a point; thence run N 15°42′00″ E for 20.89 feet to a point; thence run S 81°09′48″ E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

19

NO:0104474/00001:164778v6

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:       Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D. , et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of L.A. State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of L.A. State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence,  North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

·15

**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

Permitted Exceptions

All easements, servitudes and title covenants of public record.

NO:0104474 00001:164778v6

## CONSENT OF SOLE MEMBER AND SOLE MANAGER
## OF AGSPRING MISSISSIPPI REGION, LLC

WHEREAS, the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "**Company**") has determined that it is in the best interest of the Company to refinance the existing $7.0 million loan to the Company from Larry Tubbs, an individual ("**Tubbs**"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("**TRD**"), Chief Ventures, L.L.C., a Louisiana limited liability company ("**CV**"), and Big River Grain, LLC, a Louisiana limited liability company ("**BRG**", and together with Tubbs, TRD, and CV, the "**Lender**"), to increase the loan amount to $17.0 million, and as security for said loan, to execute a mortgage and security interest in certain fixtures and immovable property of the Company described on **Exhibit A** attached hereto and made a part hereof.

NOW THEREFORE, BE IT RESOLVED, that the Company is hereby authorized and directed to execute and deliver a Promissory Note and grant a mortgage and security interest on the property of the Company described on **Exhibit A** attached hereto and made a part hereof, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "**Authorized Officer**"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

RESOLVED, that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

NO:0104474/00001:163602v5

Dated as of September 6, 2013          SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC

_____
Bradley K. Clark, President


## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature this 6th day of September, 2013.

_____
Bradley K. Clark, Secretary

2

EXHIBIT A

Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.2 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on the same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

3

NO:0104474/00001:163602v5

**A 31.868 ACRE TRACT**
**SITUATED IN**
**SECTION 10, T 20 N, R 10 E**
**WEST CARROLL PARISH, LOUISIANA**

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

4

NO:0104474/00001:163602v5

| | |
|---|---|
| MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS | * UNITED STATES OF<br>* AMERICA<br>* |
| BY: | *<br>* STATE OF LOUISIANA |
| AGSPRING MISSISSIPPI REGION, LLC<br>a Delaware limited liability company | *<br>* PARISHES OF MOREHOUSE<br>* AND WEST CARROLL |
| IN FAVOR OF:<br>LARRY TUBBS, | *<br>* |

FILE NO. 238110

**MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**

**BY:**

**AGSPRING MISSISSIPPI REGION, LLC**
a Delaware limited liability company

**IN FAVOR OF:**
**LARRY TUBBS,**

**TUBBS RICE DRYERS, INC.**
a Louisiana corporation,

**CHIEF VENTURES, L.L.C.,**
a Louisiana limited liability company and

**BIG RIVER GRAIN, LLC,**
a Louisiana limited liability company

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

A true copy of original Filed for Record
this 13th day of Sept., 20 13
at 12:15 P.M. Book 256
Page 25 Date Reg. No. 245613
Darlene Fuller
Clerk of Court--West Carroll Parish, La.

BE IT KNOWN, that on the date and place set forth below, to be effective as September 6, 2013;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

AGSPRING MISSISSIPPI REGION, LLC [32-0409147], a Delaware limited liability company ("**Mortgagor**"), duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent of Sole Member and Sole Manager;

who declared and acknowledged that said Mortgagor is justly and truly indebted unto:

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE
0710          172

PLAINTIFF'S
EXHIBIT
G

Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company (collectively as "**Mortgagee**"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVEN MILLION AND NO/100 ($7,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, payable to the order of Mortgagee in consecutive monthly installments of interest only due on the first day of each month, commencing July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June 26, 2018, which Note shall bear interest at the rate of Five and 75/100th (5.75%) per annum, from date until paid (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "**Note**").

Now, in order to secure (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "**Mortgage**", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "**Loan Documents**"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "**Indebtedness**"), that except for the Excluded Property (as hereinafter defined), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real property and rents and leases and all of

2

NO:0104474/00001:165066v2

MORTGAGE

BOOK          PAGE

0710          173

Mortgagor's estate, right, title and interest therein (hereinafter collectively called the **"Security"**):

The two parcels of immovable property described in <u>Exhibit A</u> attached hereto and made a part hereof, lying and being in the Parishes of Morehouse and West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the **"Land"**);

TOGETHER with all buildings, fixtures and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the **"Improvements"**);

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the **"Real Property"**);

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the **"Incorporeal Rights"**).

Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following assets and properties of Mortgagor have been pledged by Mortgagor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, **"Administrative Agent"**), and are expressly excluded from the foregoing provisions (collectively, the **"Excluded Property"**): (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all

3

MORTGAGE
BOOK        PAGE
0710        174

Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among AgSpring, LLC, Mortgagor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time (the "**Credit Agreement**").

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

4

MORTGAGE
BOOK          PAGE
0710          175

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the Indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the Indebtedness in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $100,000,000.00. This Mortgage secures obligations and Indebtedness that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.     Payment of Indebtedness.  Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and

5

MORTGAGE
BOOK        PAGE
0710        176

perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.      Title.

(a)      Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on Exhibit B hereto (the "**Permitted Encumbrances**") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(a)      Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)      Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp

6

MORTGAGE
BOOK          PAGE
0710          177

taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)     Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.     Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.     Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.     Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security.

6.     Insurance/Condemnation Proceeds.   Mortgagor hereby assigns to Mortgagee all proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof.  No such loss or damage shall itself reduce the Indebtedness.

7.     Assignment of Rents and Leases.  As further security for the payment of the

7

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE
0710         178

Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any

8

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE

0710         179

subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.  Events of Default.  Each of the following shall constitute an **"Event of Default"** hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)  Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(a)  The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.  Remedies Upon Default.  Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(b)  Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)  To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

(c)  Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

9

MORTGAGE
BOOK          PAGE
0710         180

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(d)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected.  This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(e)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale.  Mortgagee without removal may render the Collateral unusable and dispose of the Personal Property.  To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and

10

MORTGAGE
BOOK          PAGE
0710         181

cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(f)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

11

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE

0710          182

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.    Acceleration Interest. In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.    Waiver of Statutory Rights. Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.    Security Interest. This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*) Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to

12

MORTGAGE
BOOK        PAGE
0710        183

this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby. Upon the occurrence of any of the Events of Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13. <u>Right of Entry</u>. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14. <u>Rights Cumulative</u>. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15. <u>Subrogation</u>. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

13

16.  <u>No Waiver</u>.  Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

17.  <u>Indemnification</u>.  Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage.  Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand.  Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18  <u>Attorneys' Fees</u>.  Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel.  Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code.  Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.  <u>Protection of Security; Cost and Expenses</u>.  Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder.  If Mortgagor fails to perform any of its covenants or agreements contained in this

14

MORTGAGE
BOOK         PAGE

0710      185

Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.     Notices. Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore been designated in writing. The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable. For purposes hereof, the addresses are as follows:

If to Mortgagee:
Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC

15

MORTGAGE
BOOK          PAGE
0710        186

c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266


If to Mortgagor:
Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer


21.     Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.     Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "**State**").  The agreed upon venue for all legal proceedings is the Parish in which the Land is located..

23.     Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.     Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.     Modifications.  This Mortgage may not be changed or terminated except in writing by both parties. The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

26.     Bind and Inure.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security. The

16

MORTGAGE
BOOK         PAGE
0710        187

covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.     Time of the Essence.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.     Business Days.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.     Certificates.    The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.     No Paraph.    No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.

31.     Partial Release of Pioneer Mortgage.    Mortgagee acknowledges that due to the security interests granted by Mortgagor in favor of Administrative Agent as hereinabove described, that it is necessary for Mortgagor to confirm that the Mortgage executed by Mortgagor in favor of Mortgagee dated as of June 26, 2013 and recorded in Mortgage Book 254, Page 787, West Carroll Parish, Louisiana (the "**Pioneer Mortgage**") does not encumber the Excluded Property or the Personal Property referenced therein. Mortgagee hereby authorizes Mortgagor and its agents, attorneys, or representatives to prepare and file an amendment under the Uniform Commercial Code as adopted in Louisiana to expressly exclude the Excluded Property from the security interests created by the Pioneer Mortgage.

<div align="center">[SIGNATURE PAGE BEGINS ON NEXT PAGE]</div>

17

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE
0710          188

THUS DONE AND PASSED by the Mortgagor in my office in the County of Johnson, State of Kansas, on the 6th day of September, 2013, to be effective as of the date first set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:

*Jennifer Trupka*

Jennifer Trupka
Print Name:

*Dustin Clevenger*
Print Name:

MORTGAGOR:

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____
Brad Clark
President

_____
NOTARY PUBLIC
Name: Anné Yoesting
Bar/Notary ID: 00067994-1
My Commission Expires: 2/3/16

```
OFFICIAL SEAL    ANNE YOESTING
                 MY COMMISSION EXPIRES
                 2/3/16
```

18

MORTGAGE
BOOK        PAGE
0710        189

# EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

### Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

19

MORTGAGE
BOOK          PAGE
0710         190

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:      Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D. , et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning.  The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence,  North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

MORTGAGE
BOOK          PAGE
0710       191

**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

Permitted Exceptions

All easements, servitudes and title covenants of public record.

21

MORTGAGE
BOOK          PAGE
0710          192

**CONSENT OF SOLE MEMBER AND SOLE MANAGER**
**OF AGSPRING MISSISSIPPI REGION, LLC**

**WHEREAS,** the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "**Company**") has determined that it is in the best interest of the Company to refinance the existing $7.0 million loan to the Company from Larry Tubbs, an individual ("**Tubbs**"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("**TRD**"), Chief Ventures, L.L.C., a Louisiana limited liability company ("**CV**"), and Big River Grain, LLC, a Louisiana limited liability company ("**BRG**", and together with Tubbs, TRD, and CV, the "**Lender**"), to increase the loan amount to $17.0 million, and as security for said loan, to execute a mortgage and security interest in certain fixtures and immovable property of the Company described on **Exhibit A** attached hereto and made a part hereof.

**NOW THEREFORE, BE IT RESOLVED,** that the Company is hereby authorized and directed to execute and deliver a Promissory Note and grant a mortgage and security interest on the property of the Company described on **Exhibit A** attached hereto and made a part hereof, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "**Authorized Officer**"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

**RESOLVED,** that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

MORTGAGE
BOOK          PAGE

0710        193

Dated as of September 6, 2013          SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC

_Bradley K. Clark, President_

Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature this 6th day of September, 2013.

_Bradley K. Clark, Secretary_

Bradley K. Clark, Secretary

NO:0104474/00001:163602v5

MORTGAGE
BOOK          PAGE
0710          194

# EXHIBIT A

## Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

3

MORTGAGE
BOOK        PAGE
0710        195

**A 31.868 ACRE TRACT**
**SITUATED IN**
**SECTION 10, T 20 N, R 10 E**
**WEST CARROLL PARISH, LOUISIANA**

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

NO:0104474/00001:163602v5

MORTGAGE
BOOK          PAGE
0710          196

CERTIFIED TRUE COPY

AUG 28 2019

BY _____
DEPUTY CLERK, MOREHOUSE PARISH

DEC 03 2015  250832  546

## AMENDMENT OF MORTGAGE

BE IT KNOWN that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: **AGSPRING MISSISSIPPI REGION, LLC.**, a Delaware limited liability company (the *"Borrower"*) and **LARRY TUBBS**, an individual, **TUBBS RICE DRYERS, INC.**, a Louisiana corporation, **CHIEF VENTURES, L.L.C.**, a Louisiana limited liability company, and **BIG RIVER GRAIN, LLC.**, a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of September 6, 2013.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded September 13, 2013, in Mortgage Book 256, Page 25, under Date Register No. 245613 of the records of West Carroll Parish, Louisiana, and recorded September 13, 2013, in Mortgage Book 710, Page 172, under Date Register No. 238110 of the records of Morehouse Parish, Louisiana(collectively, the "Mortgage").

WHEREAS, an uncertainty appeared in sums borrowed and advanced in the first paragraph of Page 2. This paragraph should be amended and replaced entirely.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the 1st paragraph on page 2 of the Mortgage by substituting the following:

1.  For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVENTEEN MILLION AND NO/100 ($17,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein, with a full and final payment' of all principal and interest due hereon being due and payable on the "Maturity Date" shown therein) (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note"). This note may be prepaid in whole or in part at any time without payment of premium or penalty.

A True Copy of Original Filed For Record
This 3ʳᵈ Day of *Dec.*, 20 *15*
At *3:40 P* M. Book *265*
Page *546* Date Reg. No. *250832*
*Darlene Fuller*
Clerk of Court, West Carroll Parish, LA



PLAINTIFF'S EXHIBIT

H

WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 and continued on the top of page 4 of the above described mortgages. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 and continued on the top of page 4 to substitute in its place the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein. All of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendments, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of West Carroll and Morehouse Parishes, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in West Carroll and Morehouse Parishes; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

[THE BELOW SPACE IS INTENTIONALLY LEFT BLANK]

548

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3rd day of _December_ , A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

**WITNESSES:**

_[signature]_
**Barbie Smith**

_[signature]_
**Erline W. Vickery**

**MORTGAGEE:**

_[signature]_
LARRY TUBBS

**TUBBS RICE DRYERS, INC.**

BY: _[signature]_

**CHIEF VENTURES, L.L.C.**

BY: _[signature]_
LARRY TUBBS, MANAGER

**BIG RIVER GRAIN, LLC.**

BY: _[signature]_
LARRY TUBBS, MANAGER

_[signature]_
NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

549

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the ___1___ day of December, A.D., 2015, at my office in _Johnson_ County, _Kansas_ , after due reading of the whole.

WITNESSES:

Signature _____
Printed name _Jennifer Mick_

Signature _____
Printed name _Luann Eskew_

BORROWER:

AGSPRING MISSISSIPPI REGION, LLC., a Delaware limited liability company

BY: _____

Name: _BRAD CLARK_

Title: _PRESIDENT_

_Jennifer Ann Trupka_
NOTARY PUBLIC

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

## AGSPRING MISSISSIPPI REGION, LLC

### INCUMBENCY CERTIFICATE

December ⌊ , 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____
Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____
Name: Bradley K. Clark
Title: President and Secretary

FILE NO.
248060

CAROL JONES
CLERK OF COURT
MOREHOUSE

15 DEC -- PM 12:38

_[signature]_
DEPUTY CLERK

## AMENDMENT OF MORTGAGE

BE IT KNOWN that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: **AGSPRING MISSISSIPPI REGION, LLC.**, a Delaware limited liability company (the *"Borrower"*) and **LARRY TUBBS**, an individual, **TUBBS RICE DRYERS, INC.**, a Louisiana corporation, **CHIEF VENTURES, L.L.C.**, a Louisiana limited liability company, and **BIG RIVER GRAIN, LLC.**, a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of September 6, 2013.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded September 13, 2013, in Mortgage Book 256, Page 25, under Date Register No. 245613 of the records of West Carroll Parish, Louisiana, and recorded September 13, 2013, in Mortgage Book 710, Page 172, under Date Register No. 238110 of the records of Morehouse Parish, Louisiana(collectively, the "Mortgage").

WHEREAS, an uncertainty appeared in sums borrowed and advanced in the first paragraph of Page 2. This paragraph should be amended and replaced entirely.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the 1st paragraph on page 2 of the Mortgage by substituting the following:



1. For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVENTEEN MILLION AND NO/100 ($17,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein, with a full and final payment' of all principal and interest due hereon being due and payable on the "Maturity Date" shown therein) (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note"). This note may be prepaid in whole or in part at any time without payment of premium or penalty.

MORTGAGE
BOOK  PAGE
0736  555



PLAINTIFF'S
EXHIBIT

WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 and continued on the top of page 4 of the above described mortgages. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 and continued on the top of page 4 to substitute in its place the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein. All of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendments, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of West Carroll and Morehouse Parishes, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in West Carroll and Morehouse Parishes; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

[THE BELOW SPACE IS INTENTIONALLY LEFT BLANK]

MORTGAGE
BOOK          PAGE
0736          556

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3rd day of _December_, A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

_____
**Barbie Smith**

_____
**Erline W. Vickery**

MORTGAGEE:

_____
LARRY TUBBS

**TUBBS RICE DRYERS, INC.**

BY: _____

**CHIEF VENTURES, L.L.C.**

BY: _____
      LARRY TUBBS, MANAGER

**BIG RIVER GRAIN, LLC.**

BY: _____
      LARRY TUBBS, MANAGER

_____
NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

MORTGAGE
BOOK          PAGE
0736          557

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 1 day of December, A.D., 2015, at my office in Johnson County, Kansas, after due reading of the whole.

WITNESSES:

Signature _____
Printed name: Jennifer MICK

Signature _____
Printed name: Luanne Esker

BORROWER:

**AGSPRING MISSISSIPPI REGION, LLC.,** a Delaware limited liability company

BY: _____
Name: Brad Clark

Title: PRESIDENT


_____
NOTARY PUBLIC

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

MORTGAGE
BOOK        PAGE
0736        558

# AGSPRING MISSISSIPPI REGION, LLC

## INCUMBENCY CERTIFICATE

December 1, 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____
Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____
Name: Bradley K. Clark
Title: President and Secretary

MORTGAGE
BOOK          PAGE
0736          559

CERTIFIED TRUE COPY

AUG 26 2019

BY _____
DEPUTY CLERK, MOREHOUSE PARISH

| | |
|---|---|
| MORTGAGE, SECURITY | * UNITED STATES OF |
| AGREEMENT AND | * AMERICA |
| ASSIGNMENT OF LEASES | * |
| AND RENTS | * |
| | * STATE OF LOUISIANA |
| BY: | * |
| | * |
| AGSPRING MISSISSIPPI REGION, LLC | * |
| a Delaware limited liability company | * PARISH OF |
| | * EAST CARROLL |
| IN FAVOR OF: | * |
| LARRY TUBBS, | * |
| | * |
| TUBBS RICE DRYERS, INC. | * |
| a Louisiana corporation, | * |
| | * |
| CHIEF VENTURES, L.L.C., | * |
| a Louisiana limited liability company and | * |
| | * |
| BIG RIVER GRAIN, LLC, | * |
| a Louisiana limited liability company | * |

State of Louisiana    **REGISTER**
Parish of East Carroll   No. **89267**
Filed: **Feb 12, 2014** at **2:00 PM**
~~Conveyance Book~~ _____ ~~Page~~ _____
Mortgage Book **220** Page **192**

*Dietine N. Carter*
Clerk and Ex-Officio Recorder

* * * * * * * * * * * * * * * * * *

BE IT KNOWN, that on the date and place set forth below, to be effective as of February 1, 2014;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

AGSPRING MISSISSIPPI REGION, LLC [TIN XX-XXX_____], a Delaware limited liability company ("**Mortgagor**"), duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent of Sole Member and Sole Manager;

Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company (collectively as "Mortgagee"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

NO:0104474/00001:167538v4

192



PLAINTIFF'S EXHIBIT
J

For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of TWENTY-TWO MILLION AND NO/100 ($22,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, and further amended and restated by the Second Amended and Restated Promissory Note dated as of February 1, 2014, in the Principal Amount of $22,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein, with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date") (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note"). This note may be prepaid in whole or in part at any time without payment of premium or penalty.

Now, in order to secure (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "Mortgage", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "Loan Documents"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "Indebtedness"), that except for the Excluded Property (as hereinafter defined), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real property and rents and leases and all of Mortgagor's estate, right, title and interest therein (hereinafter collectively called the "Security"):

The three parcels of immovable property described in Exhibit A attached hereto and made a part hereof, lying and being in the ParishEast Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the "Land");

TOGETHER with all buildings, fixtures and other improvements now or hereafter

NO:0104474/00001:167538v4

2

*193*

located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "**Improvements**");

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "**Real Property**");

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the "**Incorporeal Rights**").

Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following assets and properties of Mortgagor have been pledged by Mortgagor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "**Administrative Agent**"), and are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"): (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among AgSpring, LLC, Mortgagor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time (the "**Credit Agreement**") but such meanings may not be construed or changed to include any Excluded Property.

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the Indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the

NO:0104474/00001:167538v4

4

195

Indebtedness in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $100,000,000.00. This Mortgage secures obligations and Indebtedness that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.  <u>Payment of Indebtedness.</u>  Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.  <u>Title.</u>

(a)  Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on <u>Exhibit B</u> hereto (the **"Permitted Encumbrances"**) to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise

196

of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(a)     Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)     Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)     Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.      Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.      Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.      Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security, and all such insurance policies shall include a clause reflecting Mortgagee as loss payee.

6.      Insurance/Condemnation Proceeds. Mortgagor hereby assigns to Mortgagee all

NO:0104474/00001:167538v4

6

191

proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7.    Assignment of Rents and Leases.    As further security for the payment of the Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or

receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.    Events of Default.  Each of the following shall constitute an **"Event of Default"** hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)    Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(b)    The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.    Remedies Upon Default.  Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(a)    Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)    To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

(c)    Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

199

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(e)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected. This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(d)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Mortgagee without removal may render the Collateral unusable and dispose of the Personal Property. To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase

price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(i)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.     <u>Acceleration Interest</u>. In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of

NO:0104474/00001:167538v4

201

creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.   Waiver of Statutory Rights.  Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.   Security Interest.  This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*)  Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby.  Upon the occurrence of any of the Events of Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law.  The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness.  With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the

202

Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13. Right of Entry. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14. Rights Cumulative. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15. Subrogation. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

16. No Waiver. Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

17. Indemnification. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand. Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18 Attorneys' Fees. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges

2๐3

incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code. Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.    Protection of Security; Cost and Expenses. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder. If Mortgagor fails to perform any of its covenants or agreements contained in this Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.    Notices. Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing. The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on

NO:0104474/00001:167538v4

13

204

the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable. For purposes hereof, the addresses are as follows:

If to Mortgagee:

Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC
c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266

If to Mortgagor:

Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer

21.     Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.     Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "State").  The agreed upon venue for all legal proceedings is the Parish in which the Land is located..

23.     Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.     Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.     Modifications.  This Mortgage may not be changed or terminated except in writing by both parties.  The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

NO:0104474/00001:167538v4

14

205

26.    <u>Bind and Inure</u>.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.   The covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.    <u>Time of the Essence</u>.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.    <u>Business Days</u>.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.    <u>Certificates</u>.   The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.    <u>No Paraph</u>.   No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.


**[SIGNATURE PAGE BEGINS ON NEXT PAGE]**


NO:0104474/00001:167538v4

15

*206*

THUS DONE AND PASSED by the Mortgagor in my office in the County of Johnson, State of Kansas, on the __6th__ day of ~~January~~ February 2014, to be effective as of the date first set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:

**MORTGAGOR:**

**AGSPRING MISSISSIPPI REGION, LLC,**
**a Delaware limited liability company**

Print Name: _Jennifer Trupka_

By: _____
     Brad Clark
     President

Print Name: _Dustin Ausborn_



NOTARY PUBLIC
Name: _Anne M. Yoesting_
Bar/Notary ID: _000062994-V_
My Commission Expires: _2/3/16_

OFFICIAL SEAL
ANNE YOESTING
MY COMMISSION EXPIRES
2/3/16

A TRUE COPY ATTEST:
DEPUTY CLERK OF COURT
PARISH OF EAST CARROLL

SEAL

NO:0104474/00001:167538v4

16

209

# EXHIBIT A
## PARCELS I, II, AND III BELOW

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.

NO:0104474/00001:167538v4

17

208

PARCEL III

A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerling of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

210



NO:010447A/00001:167538v4

**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

Permitted Exceptions

Subject to the Exceptions to Title specified in that certain Act of Cash Sale by Monticello Gin & Elevator Co., Inc., a Louisiana corporation, Monticello Gin System, Inc., a Louisiana corporation, and Raley Transport, Inc., a Louisiana corporation in favor of Agspring Mississippi Region, LLC, a Delaware limited liability company, dated on June 21, 2013, but effective June 26, 2013 and recorded June 28, 2013, in Register 88825, Book 170, Page 333, East Carroll Parish, Louisiana.

212

## CONSENT OF SOLE MEMBER AND SOLE MANAGER
## OF AGSPRING MISSISSIPPI REGION, LLC

WHEREAS, the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "Company") has determined that it is in the best interest of the Company to borrow an additional Five Million and No/100 ($5,000,000.00) Dollars and refinance the existing $17.0 million loan to the Company from Larry Tubbs, an individual ("Tubbs"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("TRD"), Chief Ventures, L.L.C., a Louisiana limited liability company ("CV"), and Big River Grain, LLC, a Louisiana limited liability company ("BRG", and together with Tubbs, TRD, and CV, the "Lender"), to increase the loan amount to Twenty-Two Million and No/100 ($22,000,000.00) Dollars, and as security for said loan, to execute a mortgage in the immovable property of the Company described on Exhibit A attached hereto and made a part hereof.

NOW THEREFORE, BE IT RESOLVED, that the Company is hereby authorized and directed to execute and deliver a Second Amended and Restated Promissory Note and grant a mortgage on the immovable property of the Company described on Exhibit A, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "Authorized Officer"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

RESOLVED, that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

213

Effective as of February 1, 2014

SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC,
a Delaware limited liability company

Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature as of the 1st day of February, 2014

Bradley K. Clark, Secretary

2

214

**EXHIBIT A**

**Legal Description**

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East along a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less

3

215

NO:0104474/00001:167552v1

**PARCEL III**

A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

4

216

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerline of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

5

217

NO:0104474/00001:167552v1



LAND DISTRICT NORTH OF THE RED RIVER
SECTIONS 24 & 25 T-19-N, R-10-E
SECTION 30 T-19-N, R-11-E
EAST CARROLL PARISH, LOUISIANA

PROJECT LOCATION

VICINITY MAP
NOT TO SCALE

NOTES

CERTIFICATION

LEGEND

GRAPHIC SCALE

218

6

1 of 4

State of Louisiana   REGISTER
Parish of East Carroll   No. 90613

Filed: DEC - 3 2015     at 3:15 PM

Conveyance Book _____ Page _____

Mortgage Book 223   Page 228

*[signature]*
Clerk and Ex-Officio Recorder

## AMENDMENT OF MORTGAGE

BE IT KNOWN that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: AGSPRING MISSISSIPPI REGION, LLC., a Delaware limited liability company (the *"Borrower"*) and LARRY TUBBS, an individual, TUBBS RICE DRYERS, INC., a Louisiana corporation, CHIEF VENTURES, L.L.C., a Louisiana limited liability company, and BIG RIVER GRAIN, LLC., a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of February 1, 2014.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded February 11, 2014, in Mortgage Book 220, Page 192, under Date Register No. 89267 of the records of East Carroll Parish, Louisiana, (the "Mortgage").

WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 of the above described mortgage. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 to substitute in its place the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the **"Excluded Property"**), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendment, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.



PLAINTIFF'S
EXHIBIT
K

229

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of East Carroll Parish, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in East Carroll Parish, Louisiana; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the _3rd_ day of ___December___, A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

_____
Barbie Smith

_____
Erline W. Vickery

MORTGAGEE:

_____
LARRY TUBBS

TUBBS RICE DRYERS, INC.

BY: _____

CHIEF VENTURES, L.L.C.

BY: _____
LARRY TUBBS, MANAGER

BIG RIVER GRAIN, LLC.

BY: _____
LARRY TUBBS, MANAGER

_____
NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

**SEAL**

230



**SEAL**

STATE OF Kansas

COUNTY OF Johnson

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the ___ day of December, A.D., 2015, at my office in the county of Johnson, State of Kansas, after due reading of the whole.

WITNESSES:

Signature

Printed name Jennifer Mick

Signature

Printed name Luanne Estin

BORROWER:

AGSPRING MISSISSIPPI REGION, LLC., a
Delaware limited liability company



BY: 

Name: Beau Clark

Title: President

Jennifer Ann Trupka
NOTARY PUBLIC

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

231

**AGSPRING MISSISSIPPI REGION, LLC**

**INCUMBENCY CERTIFICATE**

December ___, 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| **Name** | **Office Held** | **Signature** |
|---|---|---|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____
Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____
Name: Bradley K. Clark
Title: President and Secretary

232

SEP 16 2013                    245630

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Robert W. Mouton (504) 558-5113

B. E-MAIL CONTACT AT FILER (optional)
rwmouton@lockelord.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

```
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, LA 70130
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Agspring Mississippi Region, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5251 West 116th Place, Suite 200 | Leawood | KS | 66211 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Tubbs Rice Dryers, Inc. | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Exhibit A, attached hereto and made a part hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:          6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility   ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

PLAINTIFF'S
EXHIBIT

tabber

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**Agspring Mississippi Region, LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name);
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

**Chief Ventures, L.L.C.**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

See Exhibit B, attached hereto and made a part hereof.

17. MISCELLANEOUS:

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

**UCC FINANCING STATEMENT ADDITIONAL PARTY**
FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ |
|---|

| 18a. ORGANIZATION'S NAME |
|---|
| Agspring Mississippi Region, LLC |

OR

| 18b. INDIVIDUAL'S SURNAME |
|---|

| FIRST PERSONAL NAME |
|---|

| ADDITIONAL NAME(S)/INITIALS | SUFFIX |
|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIALS | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIALS | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIALS | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 22. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b) |
|---|

| 22a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| Big River Grain, LLC |  |  |  |
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIALS | SUFFIX |
| 22c. MAILING ADDRESS P.O. Box 38 | CITY Pioneer | STATE LA | POSTAL CODE 71266 | COUNTRY USA |

| 23. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b) |
|---|

| 23a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIALS | SUFFIX |
| Tubbs | Larry | G. |  |
| 23c. MAILING ADDRESS P.O. Box 38 | CITY Pioneer | STATE LA | POSTAL CODE 71266 | COUNTRY USA |

24. MISCELLANEOUS:

EXHIBIT A
TO
UCC FINANCING STATEMENT

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

All Fixtures now or hereafter attached to or used in connection with the Real Property, described on Exhibit A, attached hereto and located in the Parishes of West Carroll and Morehouse, Louisiana, (the "Real Property"), now or place on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may not or hereafter be owned or acquired by Debtor, but expressly excluding: (i) all machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Debtor, and (ii) all of the following assets and properties of Debtor have been pledged by Debtor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "Administrative Agent") and are expressly excluded from the foregoing provisions: (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among Agspring, LLC, Debtor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time.

NO:0104474/00001:164861v1

**EXHIBIT B**
**TO**
**UCC FINANCING STATEMENT**

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

Legal Descriptions

SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Parcel 1

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana, and being the POINT OF BEGINNING; thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 85°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 75°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ¼" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ¼" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

NO:0104474/00001:164859v1

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.96' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

NO:0104474/00001:164859v1

Parcel II

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:  A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet; thence turn and run S 81°10' E, 1053.63 feet to an iron pipe on the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:  From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.538 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:  FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998,.

NO:0104474/00001:164859v1

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:   Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less.  (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right-of-way line a distance of 135.03 feet to the Point of Beginning.  The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana).

NO:0104474/00001:164859v1



APR 18 2018

256324

STATE OF LOUISIANA

## UNIFORM COMMERCIAL CODE - AMENDMENT
### UCC-3
*Important - Read Instructions Before Completing Form*

**FOLLOW INSTRUCTIONS (FRONT AND BACK CAREFULLY)**

| | |
|---|---|
| 1. Initial Financing Statement File # | 62-245630 |

2. ☐ Termination -Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3. ☒ Continuation- Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation - Statement is continued for the additional period provided by applicable law

4. ☐ Assignment (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION) This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c

☐ DELETE name: Give record name to be deleted in item 6a or 6b

☐ ADD name: Complete item 7a or 7b and item 7c; also complete items 7d-7g (if applicable)

**6. CURRENT RECORD INFORMATION:**

| 6a Organization's Name | | |
|---|---|---|

OR

| 6b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |
|---|---|---|

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a Organization's Name | | | | |
|---|---|---|---|---|

OR

| 7b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | | | Middle Name |
|---|---|---|---|---|
| 7c Mailing Address | City | State | Postal Code | Country |

| 7d Tax ID #: SSN or EIN | Add'l Info re Organization: | 7e Type of Organization | 7f Jurisdiction of Organization | 7g Organization ID if any |
|---|---|---|---|---|
| | | | | None ☐ |

8. AMENDMENT (Collateral Change): check only one box.

☐ Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment

| 9a Organization's Name | | |
|---|---|---|
| Tubbs Rice Dryers, Inc. | | |

OR

| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |
|---|---|---|

10. OPTIONAL FILER REFERENCE DATA

11. NAME AND PHONE OF CONTACT AT FILER (optional)

12. SEND ACKNOWLEDGMENT TO: (Name and Address)

The above space is for filing office use only

1. Initial Financing Statement File # 62-245630

Additional Secured Parties:

**I.**

| 9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment | | |
|---|---|---|
| 9a Organization's Name | | |
| CHIEF VENTURES, L.L.C. | | |
| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |

**II.**

| 9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment | | |
|---|---|---|
| 9a Organization's Name | | |
| BIG RIVER GRAIN, LLC | | |
| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |

**III.**

| 9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment | | |
|---|---|---|
| 9a Organization's Name | | |
| | | |
| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |
| TUBBS | LARRY | G. |

256324

Agspring MS. Region, LLC
To: Continuation
Lubb's Rice Dryers, Inc.

FILED and RECORDED
At 2:40 O'CLOCK P M
April 18, 20 18
IN _____ BOOK _____ PAGE
BY _Darlene Suller_
CLERK OF COURT, WEST CARROLL PARISH, LA.

CAROL JONES
CLERK OF COURT
MORE... ...LA

I 2013 SEP 17 A 9: 27

DEPUTY CLERK

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

204492

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Robert W. Mouton (504) 558-5113

**B. E-MAIL CONTACT AT FILER (optional)**
rwmouton@lockelord.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, LA 70130

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Agspring Mississippi Region, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5251 West 116th Place, Suite 200 | Leawood | KS | 66211 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Tubbs Rice Dryers, Inc. | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Exhibit A, attached hereto and made a part hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:   6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility   ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

PLAINTIFF'S EXHIBIT
M
tabbies

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**Agspring Mississippi Region, LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIALS)    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Chief Ventures, L.L.C.** | | | | |
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIALS) | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **P.O. Box 38** | **Pioneer** | **LA** | **71266** | **USA** |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

See Exhibit B, attached hereto and made a part hereof.

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ |
|---|

| 18a. ORGANIZATION'S NAME |
|---|
| Agspring Mississippi Region, LLC |

OR

| 18b. INDIVIDUAL'S SURNAME |
|---|
| |

| FIRST PERSONAL NAME |
|---|
| |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

22. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Big River Grain, LLC | | | | |

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

23. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| Tubbs | Larry | G. | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

24. MISCELLANEOUS:

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

EXHIBIT A
TO
UCC FINANCING STATEMENT

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

All Fixtures now or hereafter attached to or used in connection with the Real Property, described on Exhibit A, attached hereto and located in the Parishes of West Carroll and Morehouse, Louisiana (the "Real Property"), now or place on any part thereof and whether or not attached thereto, appertaining or adapted to the use management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may not or hereafter be owned or acquired by Debtor, but expressly excluding: (i) all machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Debtor, and (ii) all of the following assets and properties of Debtor have been pledged by Debtor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "**Administrative Agent**"), and are expressly excluded from the foregoing provisions: (e) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among Agspring, LLC, Debtor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time.

NO:0104474/00001:164861v1

EXHIBIT B
TO
UCC FINANCING STATEMENT

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

Legal Descriptions

SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Parcel 1

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°64'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

NO:0104474/00001:164859v1

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and utilities.

NO:0104474/00001:164859v1

**Parcel II**

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:  A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet; thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:  From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on the same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less.  (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:  FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998,.

NO:0104474/00001:164359v1

TRACT 4:    A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:    Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

**STATE OF LOUISIANA**

**UNIFORM COMMERCIAL CODE - AMENDMENT**
**UCC-3**
*Important - Read Instructions Before Completing Form*

FOLLOW INSTRUCTIONS (FRONT AND BACK CAREFULLY)

| | |
|---|---|
| 1. | Initial Financing Statement File # **34-204492** |
| 2. | ☐ Termination -Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement |
| 3. | ☒ Continuation- Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law |
| 4. | ☐ Assignment (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9. |

5. AMENDMENT (PARTY INFORMATION) This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b
☐ ADD name: Complete item 7a or 7b and item 7c; also complete items 7d-7g (if applicable)

6. CURRENT RECORD INFORMATION:

| 6a | Organization's Name | | |
|---|---|---|---|
| OR | | | |
| 6b | Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a | Organization's Name | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| 7b | Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | | | Middle Name |
| 7c | Mailing Address | City | State | Postal Code | Country |

| 7d Tax ID #: SSN or EIN | Add'l info re Organization: | 7e Type of Organization | 7f Jurisdiction of Organization | 7g Organization ID if any   None ☐ |
|---|---|---|---|---|

8. AMENDMENT (Collateral Change): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this amendment

| 9a | Organization's Name   Tubbs Rice Dryers, Inc. | |
|---|---|---|
| OR | | |
| 9b | Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name |

10. OPTIONAL FILER REFERENCE DATA

11. NAME AND PHONE OF CONTACT AT FILER (optional)

12. SEND ACKNOWLEDGMENT TO: (Name and Address)

34-0216707

Carol Jones
Parish Clerk of Court
On 04/23/2018 01:39

The above space is for filing office use only

Louisiana Secretary of State 5/4/2011

## STATE OF LOUISIANA
## UNIFORM COMMERCIAL CODE - FINANCING STATEMENT
## UCC-1
### Important - Read instructions before filing out form.

**Follow instructions carefully.**

1. Debtor's exact full legal name - insert only one debtor name (1a or 1b) - do not abbreviate or combine names.

| | | | | |
|---|---|---|---|---|
| OR | 1a Organization's Name **AGSPRING MISSISSIPPI REGION, LLC** | | | |
| | 1b Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | First Name | Middle Name | |

| 1c Mailing Address **5251 West 116th Place, Suite 200** | City **Leawood** | State **KS** | Postal Code **66211** | Country **U.S.A.** |
|---|---|---|---|---|

| 1 d. Tax ID #, SSN or EIN **32-0409147** | Add'l info re Organization Debtor: | 1e Type of Organization | 1f Jurisdiction of Organization | 1 g Organizational ID #, if any ☐ None |
|---|---|---|---|---|

2. Additional debtor's exact full legal name - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 2a Organization's Name | | | |
| | 2b Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | First Name | Middle Name | |

| 2c. Mailing Address | City | State | Postal Code | Country |
|---|---|---|---|---|

| 2 d. Tax ID #, SSN or EIN | Add'l info re Organization Debtor: | 2 e Type of Organization | 2f Jurisdiction of Organization | 2 g Organizational ID #, if any ☐ None |
|---|---|---|---|---|

3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a Organization's Name | | | |
| | 3b Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) **Tubbs** | First Name **Larry** | Middle Name **G.** | |

| 3c. Mailing Address **509 Orion Drive** | City **Bastrop** | State **LA** | Postal Code **71220** | Country **U.S.A.** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

Movables located on and used in storing or handling grain on the Land, tort claims related to loss of property covered by 4 mortgages, immovables and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagees' security and operational software used at the facilities located on the Real Property.

5a Check if applicable and attach legal description of real property [ x ] fixture filing   ☐ As-extracted collateral   ☐ Standing timber constituting goods

☐ The debtor(s) do not have an interest of record in the real property (Enter name of an owner of record in 5b)

5b Owner of real property (if other than named debtor)

6a. Check only if applicable and check only one box

☐ Debtor is a Transmitting Utility. Filing is Effective Until Terminated

☐ Filed in connection with a public finance transaction. Filing is effective for 30 years

6b   Check only if applicable and check only one box

Debtor is a   ☐ Trust or   ☐ Trustee acting with respect to property held in trust or   ☐ Decedent's Estate

7 ALTERNATIVE DESIGNATION (if applicable)

☐ CONSIGNEE/CONSIGNOR   ☐ LESSEE/LESSOR
☐ SELLER/BUY   ☐ AG. LIEN   ☐ BAILEE/BAILOR
   ☐ NON-UCC-FILING

8. Name and Phone Number to contact filer
   **Donald K. Carroll, Attorney at Law   1 (318) 428-1200**

9. Send Acknowledgment To:   (Name and Address)

Donald K. Carroll, Attorney at Law
P. O. Box 1018
301 Marietta St.
Oak Grove, La 71263

10. The space below is for Filing Office Use Only

A true copy of original Filed for Record
this 4th day of Dec., 2015
at 3:15 P.M. Book _____
Page _____ Date Reg. No. 250839
Robin Vuca
Clerk of Court- West Carroll Parish, La.

11.   ☐ CHECK TO REQUEST SEARCH REPORT(S) ON DEBTORS

(ADDITIONAL FEE REQUIRED)   ☐ ALL DEBTORS   ☐ DEBTOR1   ☐ DEBTOR2

LOUISIANA SECRETARY OF STATE- 11/22/10

PLAINTIFF'S EXHIBIT
N

ADDITIONAL SECURED PARTIES

**(2)**

| 3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only one secured party name (3a or 3b) | | | | |
|---|---|---|---|---|
| 3a Organization's Name **TUBBS RICE DRYERS, INC** | | | | |
| OR | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | First Name | Middle Name | |
| 3c. Mailing Address 126 Co-Op Road | City **Pioneer** | State **LA** | Postal Code **71266** | Country **U.S.A.** |

**(3)**

| 3.  Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only one secured party name (3a or 3b) | | | | |
|---|---|---|---|---|
| 3a Organization's Name **TUBBS RICE DRYERS, INC** | | | | |
| OR | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | First Name | Middle Name | |
| 3c.  Mailing Address 126 Co-Op Road | City **Pioneer** | State **LA** | Postal Code **71266** | Country **U.S.A.** |

**(4)**

| 3.  Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only one secured party name (3a or 3b) | | | | |
|---|---|---|---|---|
| 3a Organization's Name **Chief Ventures L.L.C.** | | | | |
| OR | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | First Name | Middle Name | |
| 3c. Mailing Address 8205 Mer Rouge-Collinston Rd. | City **Mer Rouge** | State **LA** | Postal Code **71261** | Country **U.S.A.** |

**(5)**

| 3.  Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only one secured party name (3a or 3b) | | | | |
|---|---|---|---|---|
| 3a Organization's Name **Big River Grain, LLC** | | | | |
| OR | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | First Name | Middle Name | |
| 3c. Mailing Address **7489 Highway 588** | City **Pioneer** | State **LA** | Postal Code **71266** | Country **U.S.A.** |

# EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

19

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:   Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5,000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D. , et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning.  The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

JUNE 10, 2013
REVISED: JUNE 18, 2013

A LEGAL DESCRIPTION OF A
49.582 ACRE TRACT
FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a set 5/8" rebar with plastic cap; thence, South 39°23'58" East, a distance of 376.72' to a set 5/8" rebar with plastic cap; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a set 5/8" rebar with plastic cap; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a set 5/8" rebar with plastic cap near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe;

1/2

thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, SUBJECT TO existing rights of way for public roads, drainage and utilities,

LESS AND EXCEPT the following parcel sold to the Village of Pioneer, to-wit:

Commencing from the Southeast corner of the NW ¼ of NW ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana; thence, North along the 40 line a distance of 8' to the POINT OF BEGINNING; thence, continuing in a Westerly direction perpendicular to the West line of the NW ¼ of NW ¼ a distance of 25' to a point; thence, with a deflection angle to the right of 90°, travel in a Northerly direction 25' to a point; thence, with a deflection angle to the right of 90°, travel in a Easterly direction 25' to a point; thence, with a deflection angle to the right of 90°, travel in a Southerly direction 25' back to the POINT OF BEGINNING and the parcel being 0.014 acres more or less.

As per the survey dated June 10, 2013 and revised June 18, 2013, by Denmon Engineering Co., Inc., attached hereto and made a part hereof.

# EXHIBIT A
## PARCELS I, II, AND III BELOW

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', an arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°33'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.

# EXHIBIT A
## PARCELS I, II, AND III BELOW

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.

NO:0104474/00001:167538v4

17

PARCEL III

A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerling of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>(504) 582-1542 | Delaware Department of State<br>U.C.C. Filing Section<br>Filed: 04:38 PM 08/15/2019 |
| **B. E-MAIL CONTACT AT FILER (optional)**<br>ptitle@sessions-law.com | U.C.C. Initial Filing No: 2019 5688424 |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>Peter S. Title, Esq.<br>400 Poydras Street, Suite 2550<br>New Orleans, LA 70130 | Service Request No:  20196544452 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Agspring Mississippi Region, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5101 College Boulevard | Leawood | KS | 66211 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Tubbs Rice Dryers, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:

All equipment and other movable or personal property of the Debtor, now owned or hereafter acquired, used in storing or handling grain on the land described on the attached Exhibit A (the "Land"), whether tangible or intangible; immovables and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on the Land for purposes of the storage of grain; substitutions, replacements, and all additions and appurtenances to the collateral, and proceeds of the collateral; and operational software used at the facilities located on the Land.

PLAINTIFF'S EXHIBIT

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:   ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:   ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| Agspring Mississippi Region, LLC |

OR

| 18b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| FIRST PERSONAL NAME | | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

---

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

---

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

---

**22.** ☑ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Tubbs | Larry | G. | |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

---

**23.** ☑ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Big River Grain, LLC | | | |
| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

---

24. MISCELLANEOUS:

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ |
|---|

| 18a. ORGANIZATION'S NAME |
|---|
| Agspring Mississippi Region, LLC |

OR

| 18b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☑ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Chief Ventures, LLC | | | | |
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

23. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

Financing Statement
Agspring Mississippi Region, LLC-Debtor
Tubbs Rice Dryers, Inc., Larry G. Tubbs, Big River Grain, LLC and Chief Ventures, LLC-
Secured Parties

Item 4 (continued)
Exhibit A
Description of the Land



EXHIBIT **A**          806

EXHIBIT A
TO
MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

Legal Description

A LEGAL DESCRIPTION OF A
49.582 ACRE TRACT
FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a

NO:0104474/00001:163393v2                    18



EXHIBIT **A**

807

point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

LESS AND EXCEPT

<div align="center">

A 31.868 ACRE TRACT
SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

</div>

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and



**EXHIBIT A**

# EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

### Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:   A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline: thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:   From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:   FROM an iron bar at the corner common to Sections 36, 40 and 43 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E: thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning: thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe: thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

**EXHIBIT** 

TRACT 4:    A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:    Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana); and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Section 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

**EXHIBIT** 

# EXHIBIT A
## PARCELS I, II, AND III BELOW

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 539.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
STHUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.


EXHIBIT A 208

PARCEL III

A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll
Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance
of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with
plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF
BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South
89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74'
to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap;
thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North
87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of
Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears
North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with
plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set
5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar
with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic
cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said
right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of
way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a
distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South
00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30"
East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a
distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana
Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

EXHIBIT A   269

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerline of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 83°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

NO:0104474/00001:167538v4

19

210

**EXHIBIT A**

# GUARANTY

The undersigned (hereinafter sometimes referred to as "Guarantor"), hereby gives to Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana Corporation, Chief Ventures, L.L.C., a Louisiana limited liability company and Big River Grain, LLC, a Louisiana limited liability company, (collectively, "Lender") this Guaranty (this "Guaranty") for the purpose of guarantying the obligations of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Obligor"). Guarantor agrees as follows:

1.  Guarantor solidarily, and unconditionally guarantees to Lender the prompt payment in full that certain First Amended and Restated Promissory Note executed by Obligor in favor of Lender of even date herewith in the principal sum of Seventeen Million and No/100 ($17,000,000.00) Dollars, including interest, attorneys' fees, expenses of collection and costs, (collectively, the "Obligations").

2.  Guarantor shall be bound by all of the terms and conditions of any notes, agreements, or other in favor of Lender signed or incurred by Borrower. Guarantor hereby waives all notice and pleas of presentment, demand, dishonor, protest, discussion and division. Guarantor shall not have any rights of subrogation until the payment in full of all Obligations and any subrogation rights shall relate only to the collateral then held by Lender.

3.  To the extent permitted by law, Guarantor's obligations under this Guaranty shall continue notwithstanding any set-off, counterclaim, reduction, or diminution of the Obligations or any defense of any kind or nature (other than performance by Guarantor of its obligations hereunder) that Borrower may have or assert against Lender.

4.  Without releasing or affecting Guarantor's obligations hereunder, Lender may, one or more times, in its sole discretion, without notice to or the consent of Guarantor or any other Obligor, take any one or more of the following actions: (a) release, renew or modify the obligations of Borrower or any other Obligor; (b) release, exchange, modify, or surrender in whole or in part Lender's rights with respect to any collateral for the Obligations; (c) modify or alter the term, interest rate or due date of any payment of any of the Obligations; (d) grant any postponements, compromises, indulgences, waivers, surrenders or discharges or modify the terms of its agreements with Guarantor, Borrower or any other Obligor; (e) change its manner of doing business with Guarantor, Borrower or any other party; or (f) impute payments or proceeds of any collateral furnished for any of the Obligations, in whole or in part, to any of the Obligations, or retain the payments or proceeds as collateral for the Obligations without applying same toward payment of the Obligations. Guarantor hereby expressly waives any defenses arising from any such actions. The release of liability of any person shall not affect the liability hereunder of any person who is not specifically released.

5.  This Guaranty shall be binding on Guarantor and Guarantor's successors and assigns and shall inure to the benefit of Lender, its successors, assigns, endorsees, and any person or persons, or entities, including, without limitation, any banking or other financial institution, to whom Lender may grant an interest in the Obligations, or any of them, and this Guaranty shall be binding on Guarantor to the extent of such assignment or interest. Any such assignment or grant of interest shall not operate to release Guarantor from any obligation to Lender hereunder with respect to any unassigned Obligations.

6.  If Lender receives any payment or proceeds of collateral, which payment or proceeds or any part

NO:0104474/00001:164889v2



thereof are subsequently required, by any court of competent jurisdiction, to be repaid to Borrower, Borrower's estate, trustee, or any other party, then to the extent of such repayment by Lender, the Obligations or part thereof which has been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date the initial payment, reduction or satisfaction occurred, and Guarantor shall remain solidarily liable to Lender for the repayment of such amount reinstated. .

7.      This Guaranty shall be governed and interpreted under the internal laws of the State of Louisiana.  If any provision of this Guaranty shall be held to be legally invalid or unenforceable by any court of competent jurisdiction, all remaining provisions of this Guaranty shall remain in full force and effect.

This Guaranty is signed on and effective as of the date shown below.

**AGSPRING, LLC,**
a Delaware limited liability company

By: _____
Name: Brad Clark
Title: President
Date: September 6, 2013

2

# GUARANTY

The undersigned (hereinafter sometimes referred to as "Guarantor"), hereby gives to Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana Corporation, Chief Ventures, L.L.C., a Louisiana limited liability company and Big River Grain, LLC, a Louisiana limited liability company, (collectively, "Lender") this Guaranty (this "Guaranty") for the purpose of guaranteeing the obligations of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Obligor").  Guarantor agrees as follows:

1.      Guarantor solidarily, and unconditionally guarantees to Lender the prompt payment in full that certain Second Amended and Restated Promissory Note executed by Obligor in favor of Lender of even date herewith in the principal sum of Twenty-Two Million and No/100 ($22,000,000.00) Dollars, including interest, attorneys' fees, expenses of collection and costs, (collectively, the "Obligations").

2.      Guarantor shall be bound by all of the terms and conditions of any notes, agreements, mortgage or other documents in favor of Lender signed or incurred by Borrower.  Guarantor hereby waives all notice and pleas of presentment, demand, dishonor, protest, discussion and division.  Guarantor shall not have any rights of subrogation until the payment in full of all Obligations and any subrogation rights shall relate only to the collateral then held by Lender.

3.      To the extent permitted by law, Guarantor's obligations under this Guaranty shall continue notwithstanding any set-off, counterclaim, reduction, or diminution of the Obligations or any defense of any kind or nature (other than performance by Guarantor of its obligations hereunder) that Borrower may have or assert against Lender.

4.      Without releasing or affecting Guarantor's obligations hereunder, Lender may, one or more times, in its sole discretion, without notice to or the consent of Guarantor or any other Obligor, take any one or more of the following actions: (a) release, renew or modify the obligations of Borrower or any other Obligor; (b) release, exchange, modify, or surrender in whole or in part Lender's rights with respect to any collateral for the Obligations; (c) modify or alter the term, interest rate or due date of any payment of any of the Obligations; (d) grant any postponements, compromises, indulgences, waivers, surrenders or discharges or modify the terms of its agreements with Guarantor, Borrower or any other Obligor; (e) change its  manner of doing business with Guarantor, Borrower or any other party; or (f) impute payments or proceeds of any collateral furnished for any of the Obligations, in whole or in part, to any of the Obligations, or retain the payments or proceeds as collateral for the Obligations without applying same toward payment of the Obligations.  Guarantor hereby expressly waives any defenses arising from any such actions.  The release of liability of any person shall not affect the liability hereunder of any person who is not specifically released.

5.      This Guaranty shall be binding on Guarantor and Guarantor's successors and assigns and shall inure to the benefit of Lender, its successors, assigns, endorsees, and any person or persons, or entities, including, without limitation, any banking or other financial institution, to whom Lender may grant an interest in the Obligations, or any of them, and this Guaranty shall be binding on Guarantor to the extent of such assignment or interest.  Any such assignment or grant of interest shall not operate to release Guarantor from any obligation to Lender hereunder with respect to any unassigned Obligations.

NO:0104474/00001:167685v3



PLAINTIFF'S
EXHIBIT

6. If Lender receives any payment or proceeds of collateral, which payment or proceeds or any part thereof are subsequently required, by any court of competent jurisdiction, to be repaid to Borrower, Borrower's estate, trustee, or any other party, then to the extent of such repayment by Lender, the Obligations or part thereof which has been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date the initial payment, reduction or satisfaction occurred, and Guarantor shall remain solidarily liable to Lender for the repayment of such amount reinstated. .

7. This Guaranty shall be governed and interpreted under the internal laws of the State of Louisiana. If any provision of this Guaranty shall be held to be legally invalid or unenforceable by any court of competent jurisdiction, all remaining provisions of this Guaranty shall remain in full force and effect.

This Guaranty is signed on and effective as of the date shown below.

> AGSPRING, LLC,
> a Delaware limited liability company
>
> By: _____
> Name: Brad Clark
> Title: President
> Date: February 1, 2014

2

**LARRY G. TUBBS**
125 Cherokee Trail
Delhi, LA 71232

Telephone: 318-282-0562

e-mail: lgt@bigrivergrain.com

October 10, 2018

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

Your Second Amended and Restated Promissory Note in amount of $22,000,000.00 dated as of February 1, 2014, made by you to Larry G. Tubbs, an Individual, Tubbs Rice Dryers, Inc, Chief Ventures, L.L.C., and Big River Grain, LLC, and those notes it re-states, secured by your mortgage(s) securing same, is/are past due because of your failure to pay the installment owed on October 1, 2018. This is an "Event of Default" as provided in Paragraph 8, page 8 of your mortgage(s).

This is your notice that after seven days, this note shall bear interest at the rate of 12% per annum as provided therein.

All other rights under the note(s) and mortgages(s), including, but not limited to, the giving of notice to accelerate all payments, are reserved.

Sincerely,

**TUBBS RICE DRYERS, INC,**
**CHIEF VENTURES, L.L.C.,**
**BIG RIVER GRAIN, LLC**

BY: _____
Larry G. Tubbs

_____
Larry G. Tubbs, Individually



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas    66211

9590 9402 2449 6249 1220 12

2. Article Number (Transfer from service label)

7015 3010 0002 1130 0943

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Kaleb Graber_    ☐ Agent    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Kaleb Graber    10/15/18

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 2.75

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)    $ 3.45
☐ Certified Mail Restricted Delivery    $
☐ Adult Signature Required    $
☐ Adult Signature Restricted Delivery    $

Postage
$ .47

Total Postage and Fees
$ 6.62

Sent To  AgSpring Mississippi Region, LLC
Street and Apt. No., or PO Box No.  5251 West 116th Place, Suite 200
City, State, ZIP+4®  Leawood, Kansas 66211

7015 3010 0002 1130 0943

*LARRY G. TUBBS*
125 Cherokee Trail
Delhi, LA 71232

Telephone: 318-282-0562

e-mail: lgt@bigrivergrain.com

October 10, 2018

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

Because of an Event of Default, i.e., not paying the October 1, 2018, payment, this is your 5-day notice as provided by the Second Amended and Restated Promissory Note dated February 1, 2014, and the notes which are reinstated therein made by you to the Order of Larry Tubbs, individually, Tubbs Rice Dryers Inc, Chief Ventures, L..C., and Big River Grain, LLC, that as Payees, and/or holders, they exercise their option to and do declare the whole principal and interest to at once become due and payable.

This is Notice of option to accelerate all payments as provided in said notes and in the mortgage(s) you executed which secure same dated February 6, 2014, et cetera.

Sincerely,

TUBBS RICE DRYERS, INC,
CHIEF VENTURES, L.L.C.,
BIG RIVER GRAIN, LLC

BY: _____
Larry G. Tubbs

_____
Larry G. Tubbs, Individually

PLAINTIFF'S
EXHIBIT
S
_____

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AgSpring, LLC
5251 West 116th Place
   Suite 200
Leawood, Kansas   66211

9590 9402 2449 6249 1220 05

2. Article Number (Transfer from service label)

7015 3010 0002 1130 0950

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Koleb Gruber   10/18/18

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...ted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
**Domestic Mail Only**

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)   $ 2.75
☐ Return Receipt (electronic)   $ _____
☐ Certified Mail Restricted Delivery   $ _____
☐ Adult Signature Required   $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$ .47

Total Postage and Fees
$ 6.67

Sent To   AgSpring, LLC
Street and Apt. No., or PO Box No.
   5251 West 116th Place, Suite 200
City, State, ZIP+4®
   Leawood, Kansas   66211

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

*Law Office*

# Donald K. Carroll

P.O. Drawer 1018, 301 Marietta Street
Oak Grove, Louisiana 71263
e-mail: don@carrolldonald.net

Tele: 318-428-1200

Fax: 318-428-1220

October 11, 2018

AgSpring, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

You gave your Guaranty dated September 6, 2013, to Larry G. Tubbs, Individually, Tubbs Rice Dryers, Inc, Chief Ventures, L.L.C., and Big River Grain, LLC guarantying the obligations owed by AgSpring Mississippi Region, LLC to the Tubbs Group. This is your notice that this debtor has defaulted on said obligations and has been sent, this day, notices of the default and of the exercise of their option to accelerate all payments. Copies of these notices are enclosed.

Sincerely,

CARROLL LAW OFFICE

Donald K. Carroll
Attorney for Tubbs Group

DKC/ev



**PLAINTIFF'S EXHIBIT**

tubbs

Stacie Williamson
Richland Parish Clerk of Court
**0380168**
Recorded On: 01/04/2019 10:56 AM
Number of Pages: 10

STATE OF LOUISIANA

PARISH OF RICHLAND

**DEED**

BE IT KNOWN, that before me, the undersigned Notary Public, duly commissioned and qualified in and for Richland Parish, Louisiana, and in the presence of the undersigned competent witnesses, on the date hereinafter set forth, personally came and appeared:

AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, acting pursuant to the authority granted to them by the resolution described in Exhibit A, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211;

(hereinafter collectively referred to as "Vendor")

who declared that Vendor does by these presents grant, bargain, sell, convey, transfer, assign, set over and deliver, with full guarantee of title and with full substitution and subrogation in and to any and all rights and actions of warranty which Vendor has or may have against all preceding owners and vendors, unto;

Lake Providence Grain & Rice, LLC, a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211 ("Vendee"),

the following described property, to-wit:

All of Vendor's right, title and interest in and to the real property described on Exhibit B (the "Property").

TO HAVE AND TO HOLD the Property unto Vendee, Vendee's successors, heirs and assigns forever.

This conveyance is made as a capital contribution to Vendee, the receipt and sufficiency of which is hereby acknowledged.

US.121242605.02                                    1



PLAINTIFF'S
EXHIBIT

This sale is made subject to any servitudes, rights-of-ways, or mineral servitudes and leases established by law or of record in the records of Richland Parish, Louisiana, affecting the Property hereby conveyed by Vendor to Vendee. Vendee agrees to accept the Property and all improvements situated thereon in the condition same are now in and in their respective "as is", "where is", and "with all faults" condition, and Vendor makes no representations and/or warranties, express or implied, to Vendee concerning the condition of the Property.

Taxes for the current year have been prorated between Vendor and Vendee as of the date hereof.

The parties hereto acknowledge that no title examination of said property has been performed by any undersigned Notary and, accordingly, title is not warranted in any way by any undersigned Notary.

The parties hereto waive the production of mortgage and conveyance certificates and relieve and release the undersigned Notary from all liability by reason thereof.

[Signature Page Follows]

2

IN WITNESS WHEREOF, Vendor has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

_____
Timothy Veiman

WITNESS:

_____
Weion Graber

VENDOR:

AGSPRING MISSISSIPPI REGION, LLC

By: _____
Name: Bruce R. Chapin
Title: Chief Financial Officer

NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 31, 2018, by Bruce R. Chapin, Chief Financial Officer of Agspring Mississippi Region, LLC, a Delaware limited liability company, on behalf of the company.

(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3/1/2019

_____
(Signature of notarial officer)
Title (and Rank) Notary Office Manager
My appointment expires: 3/1/2019

IN WITNESS WHEREOF, Vendee has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

Timothy Lehman

WITNESS:

Karen Crozier

VENDEE:

Lake Providence Grain & Rice, LLC

By:
Name: Bruce R. Chapin
Title: Chief Financial Officer

## NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Lake Providence Grain & Rice, LLC, a Delaware limited liability company, on behalf of the company.

(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3-11-2019

(Signature of notarial officer)
Title (and Rank) C.O.O. Office Manager
My appointment expires: 3-11-2019

EXHIBIT A TO DEED

RESOLUTION

AGSPRING MISSISSIPPI REGION, LLC

OFFICER'S
CERTIFICATE

December 31, 2018

This Officer's Certificate is delivered by AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company ("Big River")

RECITALS

WHEREAS, Agspring Holdco, LLC, a Delaware limited liability company (the "Company"), is the sole member of Agspring, LLC, a Delaware limited liability Company ("Agspring").

WHEREAS, Agspring is the sole member of Agspring Mississippi Region, LLC, a Delaware limited liability Company ("Big River").

CERTIFICATIONS

I, Mark Beemer, solely in my official capacity as Chief Executive Officer of Big River, and not in my individual capacity, hereby certify on behalf of Big River, as of the date hereof, that:

1. On December 18, 2018, all of the members of the Board of Managers of the Company, held a duly called and held meeting of the Board of Managers at which the following resolutions (the "Resolutions") (in relevant part) were authorized:

   RESOLVED, that each of the Company, Agspring, Big River, and each direct and indirect subsidiary be, and hereby is, authorized to structure, negotiate, and approve the LakeProv Grain Restructuring substantially as presented to and reviewed by the Board, and to consummate and perform the LakeProv Grain Restructuring

   RESOLVED, FURTHER, that Mark Beemer, as Chief Executive Officer, and Bruce Chapin, as Chief Financial Officer (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, authorized to make, execute, enter into and deliver on behalf of and in the name of the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, all instruments, agreements, approvals, notes, consents and documents necessary for the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, to enter into

A-1

the LakeProv Grain Restructuring and to perform the LakeProv Grain Restructuring and to perform its obligations under or otherwise required to consummate the LakeProv Grain Restructuring and that when any such instrument or document is made, executed, entered into or delivered, or such action is taken by any such Authorized Officer, it shall be deemed to be duly authorized by the Company and Agspring

RESOLVED, FURTHER, that any instrument or document authorized by the foregoing resolutions may embody such changes in any of the terms, conditions or provisions thereof as may be approved by an Authorized Officer, the execution thereof by such Authorized Officer to be conclusive evidence of such approval

2. Big River, as "Contributor", and Lake Providence Grain and Rice LLC, a Delaware limited liability company ("Lake Providence") are parties to that certain Capital Contribution Agreement, dated as of December 31, 2018 ("Capital Contribution Agreement"), providing the terms and conditions by which Big River shall contribute, transfer, convey and deliver to Lake Providence certain assets held in connection with Big River's business operations.

3. Pursuant to the Capital Contribution Agreement, Big River agrees to convey to Lake Providence all of Big River's right, title, and interest in the real property and improvements located at 11 Hwy 609, City of Delhi, Parish of Richland, Louisiana, as more particularly described in the Capital Contribution Agreement (such conveyance, the "Deed").

4. The below-named persons are duly elected, qualified and acting officers of Big River as of the date hereof, holding the offices set forth opposite their names, and are authorized to execute and deliver the Deed and Contribution Agreement by and on behalf of Big River, and the signatures set forth opposite the names and offices of the below-named persons are true and correct specimens of their genuine signatures:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Mark Beemer | Chief Executive Officer | |
| Bruce Chapin | Chief Financial Officer | |

5. Pursuant to the Resolutions, I, as an Authorized Officer, have considered the business, financial, and market conditions of the Company, Agspring, Big River and their respective direct and indirect subsidiaries, and believes that it is in the best interest of the Company, Agspring and Big River to approve the Capital Contribution Agreement and the Deed.

6. Further pursuant to the Resolutions, I, as an Authorized Officer, approve on behalf of Agspring and Big River, the Contribution Agreement and the Deed, and approve the execution of such documents for or on behalf of the Company, Agspring and Big River, respectively, as may be necessary or appropriate to evidence the Contribution Agreement and the Deed.

7. Further pursuant to the Resolutions, my actions, as an Authorized Officer, whether heretofore or hereafter taken or done, which are in conformity with the purposes and intent of the foregoing resolutions shall be, and the same hereby are, in all respects ratified, confirmed, authorized, and approved.

8. The undersigned, solely in his capacity as an Authorized Officer of Big River, certifies as of the date hereof that the above is true and correct.

[Signature Page Follows]

A-3

IN WITNESS WHEREOF, the undersigned has executed this Officer's Certificate as of the date first set forth above.

*On behalf of:*

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____
Name: Bruce R. Chapin
Title: Chief Financial Officer

EXHIBIT B TO DEED

Exhibit B to DEED, executed as of December 31, 2018, by AGSPRING MISSISSIPPI REGION, LLC, as "Vendor", and Lake Providence Grain & Rice, LLC, as "Vendee".

Legal Description of the Property

FEE SIMPLE INTEREST

2.704 ACRE TRACT
SITUATED IN
SECTION 17, T 17 N, R 9 E
RICHLAND PARISH, LOUISIANA

Commencing from the S.W. corner of the N.W. ¼ of the N.W. ¼ of Section 17, Township, 17 North, Range 9 East in Richland Parish, Louisiana; thence, North 01°22'52" West along the common Section line of Section 17, and Section 18, a distance of 200.00' to a point; thence, North 89°07'50" East, a distance of 217.50' to a 5/8" rebar with plastic cap; thence, North 01°22'52" West, a distance of 202.00' to a 5/8" rebar with plastic cap; thence, South 89°07'50" West, a distance of 237.53' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 559; thence, North 02°22'35" East along the said right of way, a distance of 117.95' to a 5/8" rebar; thence, South 89°20'39" East, a distance of 380.24' to a 5/8" rebar and being the POINT OF BEGINNING; thence, South 89°20'39" East, a distance of 260.96' to a 5/8" rebar; thence, North 00°41'03" West, a distance of 116.40' to a 5/8" rebar; thence, South 65°43'33" East, a distance of 510.45' to a 5/8" rebar; thence, South 84°22'07" East, a distance of 109.46' to a 5/8" rebar; thence, South 02°14'30" East, a distance of 131.34' to a found 1 ½" steel post; thence, North 89°20'35" West, a distance of 877.45' to a 5/8" rebar; thence, North 00°36'00" West, a distance of 50.01' back to a 5/8" rebar and the POINT OF BEGINNING and containing 2.704 acres more or less.

As per the survey dated April 29, 2014 by Denmon Engineering Co., Inc., recertified November 5, 2015 and last revised, December 3, 2015.

Being the same property acquired by Act of Cash Sale with Predial Servitude by Crowville Grain & Elevator Co., Inc., and Pro-Soil Chemical and Fertilizer Co., Inc., in favor Agspring Mississippi Region, LLC, effective May 2, 2014 and recorded May 14, 2014 as COB 506, folio 280, File No. 354083 in the Conveyance Records of the Parish of Richland, State of Louisiana.

B-1

FEE SIMPLE INTEREST

3.164 ACRE TRACT
SITUATED IN
SECTION 17, T 17 N, R 9 E
RICHLAND PARISH, LOUISIANA

Commencing from the S.W. corner of the N.W. ¼ of the N.W. ¼ of Section 17, Township 17 North, Range 9 East in Richland Parish, Louisiana; thence, North 01°02'52" West along the common Section line of Section 17 and Section 18, a distance of 200.00' to a point; thence, North 89°07'50" East, a distance of 217.60' to a 5/8" rebar with plastic cap; thence, North 01°02'52" West, a distance of 202.03' to a 5/8" rebar with plastic cap; thence, South 89°07'50" West, a distance of 237.53' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 609; thence, North 02° 22' 35" East along the said right of way, a distance of 117.85' to a 5/8" rebar with plastic cap; thence, South 89°20'39" East, a distance of 621.12' to a 5/8" rebar with plastic cap; thence, North 00°41'03" West, a distance of 119.40' to a 5/8" rebar with plastic cap; thence, South 85°43'32" East, a distance of 246.60' to a point; thence, North 04°46'25" East, a distance of 401.83' to a 5/8" rebar with plastic cap on South right of way of Kansas City Southern Railroad; thence, South 85°13'43" East along the said railroad right of way, a distance of 347.85' to a 5/8" rebar with plastic cap; thence, South 05°17'23" West, a distance of 50.00' to a 5/8" rebar with plastic cap and being the POINT OF BEGINNING; thence, South 85°13'43" East, a distance of 561.77' to a 5/8" rebar with plastic cap; thence, South 02°04'18" West, a distance of 245.31' to a 5/8" rebar with plastic cap; thence, North 85°13'43" West, a distance of 551.77' to a 5/8" rebar with plastic cap; thence, North 02° 04' 18" East, a distance of 245.31' back to a 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 3.164 acres more or less.

As per the survey dated April 29, 2014 by Denmon Engineering Co., Inc., recertified November 5, 2015 and last revised, December 3, 2015.

Being the same property acquired by Act of Cash Sale and Option to Purchase by Crowville Grain & Elevator Co., Inc., in favor Agspring Mississippi Region, LLC, effective June 26, 2013 and recorded June 28, 2013 as COB 500, folio 354, File No. 369932 in the Conveyance Records of the Parish of Richland, State of Louisiana.

<u>Street Address of Property</u>

11 Highway 609, Delhi, LA 71232

B-2



Ann Johnson, Clerk of Court
Recorded 1/ 4/2019 at 11:09 AM
Book 448 Page 488 - 10 Pages

**372394-CO**

STATE OF LOUISIANA

PARISH OF FRANKLIN

<h3 style="text-align:center">DEED</h3>

BE IT KNOWN, that before me, the undersigned Notary Public, duly commissioned and qualified in and for Franklin Parish, Louisiana, and in the presence of the undersigned competent witnesses, on the date hereinafter set forth, personally came and appeared:

AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, acting pursuant to the authority granted to them by the resolution described in Exhibit A, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211;

(hereinafter collectively referred to as "Vendor")

who declared that Vendor does by these presents grant, bargain, sell, convey, transfer, assign, set over and deliver, with full guarantee of title and with full substitution and subrogation in and to any and all rights and actions of warranty which Vendor has or may have against all preceding owners and vendors, unto:

Lake Providence Grain & Rice, LLC, a Delaware limited liability company, appearing herein through Bruce R. Chapin, its duly authorized member, with permanent mailing address of 5250 West 116th Place, Suite 200, Leawood, Kansas 66211 ("Vendee"),

the following described property, to-wit:

All of Vendor's right, title and interest in and to the real property described on Exhibit B (the "Property").

TO HAVE AND TO HOLD the Property unto Vendee, Vendee's successors, heirs and assigns forever.

US.121121$33.04



PLAINTIFF'S
EXHIBIT

This conveyance is made as a capital contribution to Vendee, the receipt and sufficiency of which is hereby acknowledged.

This sale is made subject to any servitudes, rights-of-ways, or mineral servitudes and leases established by law or of record in the records of Franklin Parish, Louisiana, affecting the Property hereby conveyed by Vendor to Vendee. Vendee agrees to accept the Property and all improvements situated thereon in the condition same are now in and in their respective "as is", "where is", and "with all faults" condition, and Vendor makes no representations and/or warranties, express or implied, to Vendee concerning the condition of the Property.

Taxes for the current year have been prorated between Vendor and Vendee as of the date hereof.

The parties hereto acknowledge that no title examination of said property has been performed by any undersigned Notary and, accordingly, title is not warranted in any way by any undersigned Notary.

The parties hereto waive the production of mortgage and conveyance certificates and relieve and release the undersigned Notary from all liability by reason thereof.

[Signature Page Follows]

2

IN WITNESS WHEREOF, Vendor has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

Timothy Kelman

WITNESS:

Jared Graber

VENDOR:

AGSPRING MISSISSIPPI REGION, LLC

By:

Name: Bruce R. Chapin
Title: Chief Financial Officer

NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Agspring Mississippi Region, LLC, a Delaware limited liability company, on behalf of the company.
(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3/1/2019

(Signature of notarial officer)

Title (and Rank) H.R. Office Manager
My appointment expires: 3/1/2019

**IN WITNESS WHEREOF,** Vendee has caused this Deed to be executed and made effective as of December 31, 2018.

WITNESS:

_____
Timothy Hoffman

WITNESS:

_____
Keith Graber

VENDEE:

Lake Providence Grain & Rice, LLC

By: _____
Name:  Bruce R. Chapin
Title:   Chief Financial Officer

## NOTARY ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF Kansas

This instrument was acknowledged before me on December 28, 2018, by Bruce R. Chapin, Chief Financial Officer of Lake Providence Grain & Rice, LLC, a Delaware limited liability company on behalf of the company.

(Seal)

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
3 11 2019

_____
(Signature of notarial officer)
Title (and Rank) Co Office Manager
My appointment expires:  3 11 2019

Apr. 15, 2019  3:47PM    Franklin Parish Clerk of Court                No. 2664   P. 6

EXHIBIT A TO DEED

RESOLUTION

AGSPRING MISSISSIPPI REGION, LLC

OFFICER'S
CERTIFICATE

December 31, 2018

This Officer's Certificate is delivered by AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company ("Big River")

RECITALS

WHEREAS, Agspring Holdco, LLC, a Delaware limited liability company (the "Company"), is the sole member of Agspring, LLC, a Delaware limited liability Company ("Agspring").

WHEREAS, Agspring is the sole member of Agspring Mississippi Region, LLC, a Delaware limited liability Company ("Big River").

CERTIFICATIONS

I, Mark Beemer, solely in my official capacity as Chief Executive Officer of Big River, and not in my individual capacity, hereby certify on behalf of Big River, as of the date hereof, that:

1. On December 18, 2018, all of the members of the Board of Managers of the Company, held a duly called and held meeting of the Board of Managers at which the following resolutions (the "Resolutions") (in relevant part) were authorized:

RESOLVED, that each of the Company, Agspring, Big River, and each direct and indirect subsidiary be, and hereby is, authorized to structure, negotiate, and approve the LakeProv Grain Restructuring substantially as presented to and reviewed by the Board, and to consummate and perform the LakeProv Grain Restructuring

RESOLVED, FURTHER, that Mark Beemer, as Chief Executive Officer, and Bruce Chapin, as Chief Financial Officer (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, authorized to make, execute, enter into and deliver on behalf of and in the name of the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, all instruments, agreements, approvals, notes, consents and documents necessary for the Company, for itself and as the sole member of Agspring, for itself and as the sole member of Big River, to enter into

A-1

the LakeProv Grain Restructuring and to perform its obligations under or otherwise required to consummate the LakeProv Grain Restructuring and that when any such instrument or document is made, executed, entered into or delivered, or such action is taken by any such Authorized Officer, it shall be deemed to be duly authorized by the Company and Agspring

RESOLVED, FURTHER, that any instrument or document authorized by the foregoing resolutions may embody such changes in any of the terms, conditions or provisions thereof as may be approved by an Authorized Officer, the execution thereof by such Authorized Officer to be conclusive evidence of such approval

1. Big River, as "Contributor", and Lake Providence Grain and Rice LLC, a Delaware limited liability company ("Lake Providence") are parties to that certain Capital Contribution Agreement, dated as of December 31, 2018 ("Capital Contribution Agreement"), providing the terms and conditions by which Big River shall contribute, transfer, convey and deliver to Lake Providence certain assets held in connection with Big River's business operations.

2. Pursuant to the Capital Contribution Agreement, Big River agrees to convey to Lake Providence all of Big River's right, title, and interest in the real property and improvements located at 5125 Highway 17, Winnsboro, LA 71295 and 311 Highway 578, Winnsboro, LA 71295 as more particularly described in the Capital Contribution Agreement (such conveyance, the "Deed").

3. The below-named persons are duly elected, qualified and acting officers of Big River as of the date hereof, holding the offices set forth opposite their names, and are authorized to execute and deliver the Deed and Contribution Agreement by and on behalf of Big River, and the signatures set forth opposite the names and offices of the below-named persons are true and correct specimens of their genuine signatures:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Mark Beemer | Chief Executive Officer | |
| Bruce Chapin | Chief Financial Officer | |

4. Pursuant to the Resolutions, I, as an Authorized Officer, have considered the business, financial, and market conditions of the Company, Agspring, Big River and their respective direct and indirect subsidiaries, and believes that it is in the best interest of the Company, Agspring and Big River to approve the Capital Contribution Agreement and the Deed.

5. Further pursuant to the Resolutions, I, as an Authorized Officer, approve on behalf of Agspring and Big River, the Contribution Agreement and the Deed, and approve the execution of such documents for or on behalf of the Company, Agspring and Big River, respectively, as may be necessary or appropriate to evidence the Contribution Agreement and the Deed.

7.  Further pursuant to the Resolutions, my actions, as an Authorized Officer, whether heretofore or hereafter taken or done, which are in conformity with the purposes and intent of the foregoing resolutions shall be, and the same hereby are, in all respects ratified, confirmed, authorized, and approved.

8.  The undersigned, solely in his capacity as an Authorized Officer of Big River, certifies as of the date hereof that the above is true and correct.

[Signature Page Follows]

A-3

Aug 15 2013  3:42PM    Travis & Perkin Clerk of Court                    No. 2664    P  9

IN WITNESS WHEREOF, the undersigned has executed this Officer's Certificate as of the date first set forth above.

*On behalf of:*

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

By: _____
Name: Bruce R. Chapin
Title: Chief Financial Officer

Apr. 15, 2019  3:49PM    Franklin Parish Clerk of Court    No. 2684   P. 19

### EXHIBIT B TO DEED

Exhibit B to DEED, executed as of December 31, 2018, by AGSPRING MISSISSIPPI REGION, LLC, as "Vendor", and Lake Providence Grain & Rice, LLC, as "Vendee".

#### Legal Description of the Property

FEE SIMPLE INTEREST

1.470 ACRE TRACT
SITUATED IN
SECTION 31, T 15 N, R 9 E
FRANKLIN PARISH, LOUISIANA

Commencing from the N.E. corner of Section 31, Township 15 North, Range 9 East in Franklin Parish, Louisiana; thence, South 89°55'00" West along the said Section line, a distance of 1940.00' to a point; thence, South 01°39'00" West, a distance of 849.87' to a point on the centerline of Louisiana Highway 577; thence, North 01°39'00" East, a distance of 40.32' to a set 5/8" rebar with plastic cap on the North right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, North 01°14'28" East, a distance of 240.00' to a set 5/8" rebar with plastic cap; thence, North 84°28'44" East, a distance of 266.58' to a set 5/8" rebar with plastic cap; thence, South 01°14'13" West, a distance of 240.00' to a found 1/2" iron pipe (bent) on the North right of way of Louisiana Highway 577; thence, South 84°28'44" West along the said right of way, a distance of 266.99' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 1.470 acres more or less.

B-1

Aug. 15, 2013  3:45PM    Franklin Parish Clerk of Court    No. 2654  P. 17

FEE SIMPLE INTEREST

43.22 ACRE TRACT
SITUATED
SECTION 31, T 15 N, R 9 E
FRANKLIN PARISH, LOUISIANA

A certain tract or parcel of land situated in Section 31, Township 15 North, Range 9 East, Land District North of Red River, Franklin Parish, Louisiana, and being more particularly described as follows:

Commence at a square iron bar found marking the Southeast corner of the Southeast ¼ of the Southwest ¼ of Section 31, Township 15 North, Range 9 East, Land District North of Red River, Franklin Parish, Louisiana for the POINT OF BEGINNING; thence proceed South 88 degrees 59 minutes 54 seconds West along the South line of the Southeast ¼ of the Southwest ¼ of said Section 31, a distance of 284.51 feet to a 5/8" rebar set on the East line of that certain tract of land conveyed to Ward, et al and filed in Conveyance Book 418, Page 385, records of Franklin Parish, Louisiana; thence proceed North 02 degrees 19 minutes 25 seconds East along the East line of said Ward tract, a distance of 29.49 feet to a ½" rebar found marking the Northeast corner of said Ward tract; thence proceed North 89 degrees 58 minutes 49 seconds West along the North line of said Ward tract and a projection thereof, a distance of 245.32 feet to a P.K. nail set in the center of La. Highway No. 578; thence proceed North 12 degrees 44 minutes 49 seconds East along the center of La. Highway No. 578, a distance of 73.67 feet to a set P.K. nail; thence proceed North 12 degrees 01 minutes 52 seconds East along the center of La. Highway No. 578, a distance of 500.37 feet to a set P.K. nail; thence proceed North 11 degrees 39 minutes 56 seconds East along the center of La. Highway No. 578, a distance of 734.56 feet to a set P.K. nail; thence proceed North 12 degrees 37 minutes 08 seconds East along the center of La. Highway No. 578, a distance of 405.43 feet to a set P.K. nail; thence proceed South 86 degrees 08 minutes 33 seconds East, a distance of 30.93 feet to a ½" rebar found marking the Southwest corner of that certain tract of land conveyed to James Kolb, Craft and filed in Conveyance Book 401, Page 440, records of Franklin Parish, Louisiana; thence continue South 86 degrees 08 minutes 33 seconds East along the South line of said Craft tract, a distance of 226.30 feet to a ¾" iron pipe found marking the Southeast corner of said Craft tract; thence proceed North 12 degrees 14 minutes 28 seconds East along the East line of Craft tract and the projection thereof, a distance of 777.31 feet to a 3/8" iron pipe found marking the Southwest corner line of that certain tract of land conveyed to James C. Donnel and filed in Conveyance Book 333, Page 552, records of Franklin Parish, Louisiana; thence proceed South 86 degrees 37 minutes 38 seconds East, a distance of 186.08 feet to a 2" drill stem found marking the Southeast corner of said Donnel tract; thence proceed North 02 degrees 05 minutes 12 seconds West along the East line of said Donnel tract, a distance of 19.59 feet to a set 5/8" rebar; thence proceed North 87 degrees 59 minutes 59 seconds East, a distance of 444.35 feet to a ½" rebar found marking the Southwest corner of that certain 1.00 acre tract of land conveyed to Barry Don Parker and filed in Conveyance Book 414, Page 163, records of Franklin Parish, Louisiana and on the West line of that certain tract of land conveyed to Harold E. Wood and filed in Conveyance Book 301, Page 55, records of Franklin Parish, Louisiana; thence proceed South 00 degrees 39 minutes 40 seconds East along the West line of said Wood tract, a distance of 2,416.36 feet to the POINT OF BEGINNING, containing 43.222 acres, more or less, and being subject to the right-of-way of Louisiana Highway No. 578.

Street Address of Property

88E Hwy 577 Crowville, LA 71230 (the 1.470 acre tract)

311 Hwy 578 Winnsboro, LA 71295 (the 43.22 acre tract)

Exhibit B

April 22, 2021
s/ Shirley Juelon
Dy Clerk

| | | |
|---|---|---|
| LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC | : | SUIT NO.: 19-198 DIVISION: B |
| VERSUS | : | SIXTH JUDICIAL DISTRICT COURT |
| AGSPRING MISSISSIPPI REGION, LLC, AGSPRING, LLC, AGSPRING HOLDCO, LLC, GREG KENNEDY, MARK BEEMER, PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC, BARINGS LLC, BRUCE CHAPIN, ABC INSURANCE COMPANY, and XYZ INSURANCE COMPANY | : | PARISH OF MADISON<br><br>STATE OF LOUISIANA |

**MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE NOTE, MORTGAGES AND SECURITY INTERESTS AND TO DESIGNATE JUDGMENT FINAL PURSUANT TO LA. C.C.P. ART. 1915(B)(1)**

**NOW INTO COURT,** through undersigned counsel, comes plaintiffs Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC, who move this Honorable Court for a Judgment in their favor on the grounds that they are entitled to summary judgment on the Suit on the Note, Guaranty, and to Recognize Mortgages as a matter of law and undisputed fact against Agspring Mississippi and Agspring, LLC (a) that Agspring Mississippi and Agspring, LLC are liable solidarily to Plaintiffs in the following amounts (i) $22,000,000.00 in principal; (ii) $240,794.52 in accrued regular interest on the Note from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum (a per diem rate of $7,232.88) from October 17, 2018 until April 19, 2021 (iv) default interest on the principal balance of the Note at the rate of 12.00% per annum from April 20, 2021 until paid in full; (v) for the costs of obtaining this judgment and (vi) additional costs and attorney's fees incurred in the future for collection of this debt until paid in full, including but not limited to executing against enforceable encumbrances securing the Second Amended and Restated Promissory Note (the "Indebtedness"). Additionally, Plaintiffs' seek a Judgment that b) the Mortgages, Security Interests, and Assignments of Rents and Leases identified below are recognized as valid; c) the properties identified in the Mortgages and security interests can be seized and sold pursuant to La. C.C. art. 3279, La. C.C.P. art. 3721, *et seq*., and in the manner provided by law with the proceeds applied in preference to claims of all others to satisfy the amounts on the Indebtedness to be paid in preference and priority over all other persons and inferior encumbrances; d) Plaintiffs have the right to request a sequestration of all or any of the properties identified in the Mortgages and Security Interests and incident thereto the appointment of a keeper as provided in the Mortgages; and e) that the judgment on the Motion be designated a final judgment pursuant to La. C.C.P. art

1915(B)(1) on the grounds that there is no just reason to delay the collection of and foreclosure on this Indebtedness.

Submitted as Exhibits to the instant Motion are the following:

1. Exhibit A – Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region, LLC, and attached thereto are Exhibit 1, a COPY of that certain Promissory Note made by and between Agspring Mississippi and Plaintiffs dated June 26, 2013 in the original principal amount of Seven Million and No/100 Dollars ($7,000,000.00) made and subscribed to by Agspring Mississippi payable to the order of Plaintiffs and Exhibit 2, a COPY of that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of $17,000,000 made and subscribed to by Agspring Mississippi payable to the order of Plaintiffs.

2. Exhibit "B" – Defendants' Objections and Responses to Plaintiffs' Request for Admissions by Agspring Mississippi Region, LLC.

3. Exhibit "C"-- the ORIGINAL promissory note captioned "Second Amended and Restated Promissory Note," in the original principal amount of Twenty-Two Million and No/100 Dollars ($22,000,000.00), dated February 1, 2014, made and subscribed to by Agspring Mississippi payable to the order of Plaintiffs.

4. Exhibit "D"-- a certified copy of that certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of June 26, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded on June 28, 2013 at 12:26 p.m. in the mortgage records of West Carroll Parish in Mortgage Book 254, Page 787, Date Reg. No. 245116.

5. Exhibit "E" -- a certified copy of that certain Amendment of Mortgage dated as of December 1, 2015, passed before Jennifer Ann Trupka, Notary Public for the State of Kansas, and recorded in the mortgage records of West Carroll Parish on December 3, 2015 at 3:40 p.m. in Mortgage Book 265, page 546, No. 250832.

6. Exhibit "F" -- a certified copy of that certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of September 6, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded on September 13, 2013 at 12:15 p.m. in the mortgage records of West Carroll Parish in Mortgage Book 256, Page 25, No. 245613.

7. Exhibit "G" -- a certified copy of that certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of September 6, 2013, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded on September 18, 2013 at 2:50 p.m. in the mortgage records of Morehouse Parish in Mortgage Book 710, Page 172, No. 238110.

8. Exhibit "H" -- a certified copy of that certain Amendment of Mortgage dated as of December 1, 2013, passed before Jennifer Ann Trupka, Notary Public for the State of Kansas, recorded on December 3, 2015 in the mortgage records of West Carroll Parish in Mortgage Book 265, Page 546, No. 250832.

9. Exhibit "I" -- a certified copy of that certain Amendment of Mortgage dated as of December 1, 2015, passed before Jennifer Ann Trupka, Notary Public for the State of Kansas, recorded on December 3, 2015 at 12:38 p.m. in the mortgage records of Morehouse Parish in Mortgage Book 736, Page 555, File. 248060.

10. Exhibit "J" -- a certified copy of that certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of February 1, 2014, passed before Anne Yoesting, Notary Public for the State of Kansas, and recorded in the mortgage records of East Carroll Parish in Mortgage Book 220, Page 192, No. 89267.

11. Exhibit "K – that certain UCC-1 Financing Statement number 62-245630 filed on September 16, 2013, in favor of Larry Tubbs, Tubbs Rice Dryer, Inc., Big River Grain, LLC, and Chief Ventures, L.L.C. by Agspring Mississippi Region, LLC covering a security interest in all fixtures attached to or used in connection with a tract of Real Property situated in West Carroll and Morehouse Parishes more fully described in Exhibits A and B attached to the UCC-1 Financing Statement filed and recorded in West Carroll Parish on September 16, 2013 at 1:25 P.M., which was continued by that certain UCC-3 Amendment continuing the UCC-1 Continuation Statement filed on April 18, 2018.

12. Exhibit "L" -- that certain UCC-1 Financing Statement number 34-204492, in favor of Larry Tubbs, Tubbs Rice Dryer, Inc., Big River Grain, LLC, and Chief Ventures, L.L.C. by Agspring Mississippi Region, LLC covering a security interest in all fixtures attached to or used in connection with Real Property situated in West Carroll and Morehouse Parishes more fully described in Exhibits A and B attached to the UCC-1 Financing Statement filed and recorded in Morehouse Parish on

September 17, 2013 at 9:27 A.M., and that certain UCC-3 Continuation Amendment filed on April 23, 2018.

13. Exhibit "M" -- a certified copy of that certain UCC-1 Financing Statement number 250839 filed on December 4, 2015, in favor of Larry Tubbs, Tubbs Rice Dryer, Inc., Big River Grain, LLC, and Chief Ventures, L.L.C. by Agspring Mississippi Region, LLC covering a security interest movables located on and used in storing or handling grain on the Land, tort claims related to loss property covered by four mortgages, immovables and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagees' security and operational software used at the facilities located on the Real Property more fully described in Exhibit A attached to the UCC-1 Financing Statement filed and recorded in West Carroll Parish on December 4th, 2015 at 3:15 P.M., and was continued by that certain UCC-3 Amendment filed August 14, 2020.

14. Exhibit "N" -- that certain UCC-Financing Statement number 2019 5688424 filed on August 15, 2019, at 4:38 p.m., with the Delaware Department of State in favor of Larry Tubbs, Tubbs Rice Dryer, Inc., Big River Grain, LLC, and Chief Ventures, L.L.C. by Agspring Mississippi Region, LLC covering a security interest in all equipment and other movable or personal property of the Debtor, now owned or hereafter acquired, used in storing or handling grain on the land described on the attached Exhibit A, whether tangible or intangible, immovables and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on the Land for purposes of the storage of grain; substitutions, replacements, and all additions and appurtenances to the collateral, and proceeds of the collateral; and operation software used at the facilities located on the Land more fully described on Exhibit A attached thereto.

15. Exhibit "O" – Affidavit of Larry Tubbs and Exhibits 1-5 attached thereto.

16. Exhibit "P" – that certain ORIGINAL Guaranty by Agspring, LLC, dated February 1, 2014 executed by Bradley K. Clark, its president, in favor of Plaintiffs

unconditionally and solidarily guaranteeing full payment of the Second Amended and Restated Promissory Note.

17. Exhibit "Q" – Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring, LLC, and Exhibit 1, a COPY of that certain promissory note made by and between Agspring Mississippi and Plaintiffs dated June 26, 2013 in the amount of Seven Million and No/100 Dollars ($7,000,000.00) made and subscribed to by Agspring Mississippi payable to the order of Plaintiffs and Exhibit 2, a COPY of that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of Seventeen Million and No/100 Dollars ($17,000,000.00) made and subscribed to by Agspring Mississippi payable to the order of Plaintiffs which are attached thereto.

18. Exhibit "R" – Agspring LLC's Objections and Responses to Plaintiffs' Request for Admissions.

**WHEREFORE,** Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC, pray that, after due proceedings are had, and for the reasons set forth in their Memorandum in support, this Honorable Court GRANT their Motion for Partial Summary Judgment on these claims and render a partial final judgment against Agspring Mississippi Region, LLC and Agspring LLC holding (a) that Agspring Mississippi and Agspring, LLC are liable solidarily to Plaintiffs in the following amounts (i) $22,000,000.00 in principal; (ii) $240,794.52 in accrued regular interest on the Note from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum (a per diem rate of $7,232.88) from October 17, 2018 until April 19, 2021 (iv) additional default interest on the principal balance of the Note at the rate of 12.00% per annum from April 20, 2021 until paid in full; (v) for the costs of obtaining this judgment and (vi) additional costs and attorney's fees incurred in the future for collection of this debt until paid in full, including but not limited to executing against enforceable encumbrances securing the Second Amended and Restated Promissory Note (the "Indebtedness"); that b) the Mortgages, Security Interests, and Assignments of Rents and Leases identified above are recognized as valid; c) the properties identified in the Mortgages and Security Interests can be seized and sold pursuant to La. C.C. art. 3279, La. C.C.P. art. 3721, *et seq.*, and in the manner provided by law with the proceeds applied in preference to claims of all others to satisfy the amounts on the Indebtedness to be paid in preference and priority

over all other persons and inferior encumbrances; d) Plaintiffs have the right to request a sequestration of all or any of the properties identified in the Mortgages and Security Interests and incident thereto the appointment of a keeper as provided in the Mortgages; and e) that the judgment on the Motion be designated a final judgment pursuant to La. C.C.P. art 1915(B)(1) on the grounds that there is no just reason to delay the collection of and foreclosure on this Indebtedness.

Respectfully submitted:

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone: 225-236-3636
Fax: 225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW**
**& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com

## CERTIFICATE OF SERVICE

     I hereby certify that a true copy of the foregoing has been furnished via e-mail to all counsel of record as follows:

| | |
|---|---|
| Charles D. Marshall | John D. Crigler, Jr. |
| Chaffe McCall | Post Office Box 97 |
| 1100 Poydras St. Suite 2300 | St. Joseph, LA 71366 |
| New Orleans, LA 70163 | |
| | |
| Jodie Hermann Lawson | John Ertman |
| McGuire Woods, LLP | Ertman Dulis & Helisek, PLLC |
| 201 North Tryon St., Suite 3000 | 112 W. 34th St., 18th Floor |
| Charlotte, NC 28202 | New York, NY 10120 |
| | |
| Jacob Bylund | Edward Warner |
| Faegre Drinker Biddle & Reath, LLP | Kean Miller LLP |
| 801 Grand Ave., 33rd Floor | Post Office Box 3513 |
| Des Moines, IA 50309 | Baton Rouge, LA 70821 |
| | |
| Jeffrey K. Coreil | Jeremy M. Suhr |
| Neuner Pate | Boulware Law, LLC |
| 1001 West Pinhook Road, Suite 200 | 1600 Genesse St., Suite 416 |
| Lafayette, LA 70503 | Kansas City, MO 64102 |

Baton Rouge, Louisiana this 21st day of April, 2021.

_____

Andrée Matherne Cullens

LARRY TUBBS, TUBBS RICE           :   SUIT NO.: 19-198 DIVISION: B
DRYERS, INC., CHIEF VENTURES,     :
L.L.C., and BIG RIVER GRAIN, LLC  :

VERSUS                            :   SIXTH JUDICIAL DISTRICT COURT
                                  :
AGSPRING MISSISSIPPI REGION, LLC, :
AGSPRING, LLC, AGSPRING HOLDCO,   :
LLC, GREG KENNEDY, MARK           :
BEEMER, PACIFIC INVESTMENT        :   PARISH OF MADISON
MANAGEMENT COMPANY, LLC,          :
BARINGS LLC, BRUCE CHAPIN,        :
ABC INSURANCE COMPANY,            :
and XYZ INSURANCE COMPANY         :        STATE OF LOUISIANA

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON THE NOTE, MORTGAGES, AND SECURITY INTERESTS
## AND TO DESIGNATE JUDGMENT FINAL
## PURSUANT TO LA. C.C.P. ART. 1915(B)(1)

MAY IT PLEASE THE COURT:

For the following reasons, Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC, collectively referred to herein as "Plaintiffs," show that because there are no genuine issues of material fact bearing upon the liability of defendants, Agspring Mississippi Region, LLC and Agspring LLC, collectively referred to herein as "Agspring," as a matter of law, Plaintiffs are entitled to a judgment in favor of Plaintiffs and against Agspring finding that:

1. Agspring Mississippi and Agspring, LLC are liable solidarily to Plaintiffs in the following amounts (i) $22,000,000.00 in principal; (ii) $240,794.52 in accrued regular interest from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum (a per diem rate of $7,232.88) from October 17, 2018 until April 19, 2021; (iv) additional default interest on the principal balance at the rate of 12.00% per annum from April 20, 2021 until paid in full; (v) for the costs of obtaining this judgment and (vi) additional costs and attorney's fees incurred in the future for collection of this debt until paid in full, including but not limited to executing on this judgment and the collateral securing the Second Amended and Restated Promissory Note (the "Indebtedness");

2. the Mortgages, Security Interests, and Assignments of Rents and Leases attached to the Motion are recognized as valid enforceable encumbrances securing the Indebtedness;

3. the properties identified in the Mortgages and Security Interests can be seized and sold pursuant to La. C.C. art. 3279, La. C.C.P. art. 3721, *et seq.*, and in the manner provided by law, with the proceeds applied in preference to claims of all others to satisfy the amounts due on the Indebtedness to be paid in preference to and priority over all other persons and inferior encumbrances;

4. Plaintiffs have the right to request sequestration of all or any of the properties identified in the Mortgages and Security Interests and incident thereto the appointment of a keeper as provided in the Mortgages; and

5. that the judgment on the Motion be designated a final judgment pursuant to La. C.C.P. art 1915(B)(1) on the grounds that there is no just reason for further delay of the collection of and foreclosure on the Indebtedness.

Because there is no material fact in dispute, Plaintiffs respectfully requests that this Motion for Partial Summary Judgment be GRANTED without further delay.

Pursuant to Local Rule 9.10(a) Tubbs submits:

**1. List of Essential Legal Elements Necessary for Summary Judgment**

1. A "[m]ortgage gives the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward the satisfaction of the obligation in preference to claims of others." La. C.C. art. 3279.

2. A secured party with a security agreement covering both personal and real property party may proceed:

   (1) under this Part as to the personal property without prejudicing any rights with respect to the real property; or

   (2) as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of this Part do not apply.

   (b) [Reserved.]

   (c) Removal of fixtures. Subject to the other provisions of this Part, if a secured party holding a security interest in fixtures has priority over all owners and encumbrancers of the real property, the secured party, after default, may

exercise any of the rights the secured party has with respect to the fixtures consistent with this Part. La. R.S. 10:9-604.

3. After default, a secured party may reduce a claim to judgment, foreclose, execute upon, or otherwise enforce a security interest or agricultural lien by any available judicial procedure; and the security interests continue when the claim is reduced to judgment and secures the judgment without interruption whether or not the security interest is expressly recognized in the judgment. La. R.S. 10:9-601.

4. To enforce a conventional mortgage by an ordinary proceeding, the note holder must first produce the note sued upon and proved entitlement to the amount evidenced by the note. La. C.C.P. art. 3722; *Premier Bank, Nat. Ass'n v. H.A.G. P'ship*, 94–686 (La. App. 3 Cir.12/7/94), 647 So.2d 636; see also, *Wells Fargo Home Mortg. v. Celestin*, 08-691 (La. App. 5 Cir 01/27/09), 8 So.3d 634, 637; *Am. Bank v. Saxena*, 553 So.2d 836, 842 (La. 1989).

5. If the original note has been lost or destroyed, and proof of the loss is shown by testimony under oath and the loss is advertised in a public newspaper, the contents of the note may be proven by testimony. La. R.S. 13:3740[1], R.S 13:3741; *McCloud v. Bufkin*, 544 So.2d 529, 531 (La. App. 5 Cir. 1989); *Gen. Fin. Servs. v. Thompson*, 987 F. Supp. 505, 509 (M.D. La. 1997).

6. Applicable law provides that an affidavit of a person with knowledge stating the amounts due on a promissory note is sufficient evidence on a motion for summary judgment on the indebtedness. *JPMorgan Chase Bank, N.A. v. Jones*, 42,396 (La. App. 2 Cir. 12/5/07), 972 So.2d 1172, 1174.

7. A guarantor is liable to the creditor for the full performance of the obligation of the principal obligor, upon the failure of the obligor to do so, without benefit of division or discussion, even in the absence of an express agreement of solidarity. La. C.C. arts. 3032, 3045; *Bank One v. SWC Corp.*, 36,043 (La. App. 2 Cir. 8/14/02), 823 So.2d 1060, 1062 citing La. C.C. art. 3045, Revision Comment (b).

---

[1] "When an instrument in writing, containing obligations which the party wishes to enforce, has been lost or destroyed, by accident or force, evidence may be given of its contents, provided the party show the loss, either by direct testimony, or by such circumstances, supported by the oath of the party, as render the loss probable; and in this case, the judge may, if required, order reasonable security to be given to indemnify the party against the appearance of the instrument, in case circumstances render it necessary." La. R.S. 13:3740.

8.  A judgment on a motion for partial summary judgment can be designated a final judgment if there is no just reason for delay. La. C.C.P. art. 1915(B)(1).

## 2. List of Uncontested Material Facts

a.  On June 26, 2013, Agspring Mississippi executed that certain Promissory Note payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC for Seven Million Dollars ($7,000,000), of which a true and accurate copy of the original is attached to the Motion. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region. LLC,* Exhibit A-1, *Promissory Note* attached thereto, and Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission Nos. 1 and 2.*

b.  On June 26, 2013, Bradley K. Clark, as president of Agspring LLC and Secretary of Agspring Mississippi, executed in that certain Consent of Sole Member and Sole Manager of Agspring Mississippi authorizing Agspring Mississippi to borrow Seven Million Dollars ($7,000,000) from Plaintiffs, to execute a mortgage and security interest in certain movable and immovable property acknowledging that 1) Agspring LLC was the sole member and manager of Agspring Mississippi, and 2) Bradley K. Clark was authorized to and did sign the Consent of Sole Member and Sole Manager of Agspring Mississippi, and representing that Bradley K. Clark's signature "on any documents or instrument shall be conclusive proof that [he] has approved it and that it is authorized under the terms of these resolutions." Exhibit D, *Mortgage, Security Agreement and Assignment of Leases and Rents dated June 26, 2013,* pp. 804-808.

c.  On or about September 6, 2013, Agspring Mississippi executed that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the total principal amount Seventeen Million Dollars ($17,000,0000), of which a true and accurate copy of the original is attached to the Motion. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region, LLC;* Exhibit A-2, *First Amended and Restated Promissory Note* attached thereto; and Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission Nos. 3 and 4.*

d.  On September 6, 2013 and again on February 1, 2014, Bradley K. Clark, as president of Agspring LLC and Secretary of Agspring Mississippi, executed in those certain Consents of Sole Member and Sole Manager of Agspring Mississippi authorizing Agspring Mississippi to borrow Seventeen Million Dollars ($17,000,000), and an additional Five Million Dollars ($5,000,000) for a total of $Twenty-Two Million Dollars ($22,000,000), from Plaintiffs and to execute a mortgage and security interest in certain movable and immovable property, acknowledging that 1) Agspring LLC was the sole member and manager of Agspring Mississippi and 2) Bradley K. Clark was authorized to and did sign the Consent of Sole Member and Sole Manager of Agspring Mississippi, and representing that Bradley K. Clark's signature "on any documents or instrument shall be conclusive proof that [he] has approved it and that it is authorized under the terms of these resolutions." Exhibit F, *Mortgage, Security Agreement and Assignment of Leases and Rents dated September 6, 2013* and Exhibit J, *Mortgage, Security Agreement and Assignment of Leases and Rents dated February 1, 2014.*

e.  On February 1, 2014, Agspring Mississippi executed that certain Second Amended and Restated Promissory Note with a principal amount of Twenty-Two Million Dollars ($22,000,000) payable to Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC with a maturity date of September 6, 2023 with monthly interest payments calculated 1) at the rate of five and 75/100ths percent (5.75%) per annum from February 1, 2014 until August 30, 2018, and then ii) at the Prime Rate plus three percent (3%) per annum from September 1, 2018 until September 6, 2023 when it matured and became due and payable in full. Exhibit C, *Original Second Amended and Restated Promissory Note dated February 2, 2014 in the principal amount of $22,000,000.*

f.  The Second Amended and Restated Promissory Note waived any of Agspring Mississippi's rights of presentment, demand, notice, or protest, provided for an interest rate of 12% per annum after seven (7) days and allowed acceleration of the Indebtedness in the event of default after five (5) days' notice to Agspring Mississippi and obligated Agspring Mississippi to pay reasonable attorneys' fees incurred to enforce it. *Id.*

g.  The Second Amended and Restated Promissory Note expressly stated that it was an amendment and restatement, and not a novation, and refinanced, amended, and restated in its entirety, that certain Promissory Note made by and between Agspring Mississippi and Plaintiffs dated June 26, 2013 in the amount of $7,000,000 as amended and restated by that certain First Amended and Restated Promissory Note dated September 6, 2013, in the principal amount of $17,000,000.00. *Id.*

h.  On February 1, 2014, Agspring, LLC, through its president Bradley K. Clark, executed that certain Guaranty solidarily and unconditionally guaranteed to Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC the prompt payment in full of the Second Amended and Restated Promissory Note executed by Agspring Mississippi on February 14, 2015 in the principal amount of Twenty-Two Million and No/100 Dollars ($22,000,000.00), including interest, attorneys' fees, and the expenses of collection and costs. Exhibit P, *Original Guaranty by Agspring LLC,* ¶ 1.

i.  The Guaranty provides that it shall be interpreted and governed by the laws of the State of Louisiana. *Id.* ¶ 7.

j.  Agspring LLC waived all rights to notice, presentment, demand, dishonor, protest, discussion and division in the Guaranty. Exhibit P, *Original Guaranty by Agspring LLC,* ¶ 2.

k.  On October 1, 2018, Agspring Mississippi Region failed to make the monthly interest payment due on the Second Amended and Restated Promissory Note. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region, LLC;* Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission No.* 5; Exhibit C, *Second Amended and Restated Promissory Note* attached thereto; Exhibit O, *Affidavit of Larry Tubbs,* ¶ 6.

l.  Failure to pay monthly interest is an event of default under the Second Amended and Restated Promissory Note triggering the accrual, beginning after seven (7) days, of default interest at the rate of 12% per annum. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region. LLC,* Exhibit B, *Defendants' Objections and Responses*

6

to *Plaintiffs' Request for Admission No. 6,* and Exhibit C, *Second Amended and Restated Promissory Note* and of its intent to accelerate.

m. On October 10, 2018, Plaintiffs sent notice of non-payment of the Second Amended and Restated Promissory Note. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region. LLC,* Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission No. 7,* and Exhibit O-1, *Letter to Agspring Mississippi, LLC.*

n. Plaintiffs accelerated the maturity date of the Second Amended and Restated Promissory Note on October 16, 2019. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region. LLC,* and Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission No. 8.*

o. On October 17, 2018, the total amount owed under the Second Amended and Restated Promissory Note began accruing interest at 12% per annum. Exhibit C, *Original Second Amended and Restated Promissory Note dated February 2, 2014;* Exhibit O-2, *Letter to Agspring Mississippi Region, LLC.*

p. Agspring Mississippi has made no payment or after October 1, 2018 on the Second Amended and Restated Note. Exhibits A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region. LLC,* Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission No. 9,* and Exhibit O, *Affidavit of Larry Tubbs,* ¶ 6.

q. As of April 19, 2021, the total amount due on the Second Amended and Restated Promissory Note is (i) Twenty-Two Million and No/100 ($22,000,000.00) Dollars in principal; (ii) $240,794.52 in accrued regular interest from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum ( a per diem rate of $7,232.88) from October 17, 2018 until April 19, 2021; (iv) additional default interest on the principal balance at the rate of 12.00% per annum from April 20, 2021 until paid in full; (v) for the costs of obtaining this judgment; and (vi) additional costs and attorney's fees incurred in the future for collection of this Indebtedness until paid in full, including but not limited to executing

on this judgment and the collateral securing the Second Amended and Restated Promissory Note. Exhibit O, *Affidavit of Larry Tubbs,* ¶ 11.

r.  To secure the indebtedness, including any promissory note or notes executed at any time hereafter to evidence the principal indebtedness owed by Agspring Mississippi and under the Second Amended and Restated Promissory Note, Agspring Mississippi, through its duly authorized representative Bradley K. Clark, mortgaged, affected, hypothecated, and pledged to Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC "all of the following described land, improvements, and real and personal property and rents and leases and all of [its] right, title and interest therein (…collectively called the "Security")" in and to that certain immovable property, located in the Parish of West Carroll, State of Louisiana, bearing the following legal description:

> Commencing from the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48'" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49 West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 1/2" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 1/2' diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT Of BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.
>
> LESS AND EXCEPT
>
> A 31.868 ACRE TRACT SITUATED IN SECTION 10, T 20 N, R 10 E WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found l" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and utilities.

Together with all buildings and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "Improvements"); all right, title and interest in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof; all right, title and interest in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "Real Property");

Together with all fixtures, machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Mortgagor (the "Personal Property");

Together with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, together with all accounts, any and all escrow accounts, general intangibles, documents, instruments and chattel paper arising from or in connection with the Real Property, including all books and records of Mortgagor in connection therewith; and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof.

EXCEPT

Notwithstanding the foregoing, or any provision to the contrary contained herein. All of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "Excluded Property"), all inventory

9

together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, and to natural, increases, accessions, accretions, and issues of the Security.

Further, Agspring Mississippi gave Plaintiffs the right to request sequestration of all or any of the properties identified in therein and incident thereto the appointment of a keeper at page 9, section (f), of the Mortgage. The Mortgage, Security Agreement and Assignment of Leases and Rents dated June 26, 2013, was recorded in the Mortgage records of West Carroll Parish on June 28, 2013 at 12:26 p.m. in Book 254 at Page 787, No. 245116 and the Amendment to Mortgage and attached Incumbency Certificate was recorded in the Mortgage records of West Carroll Parish on December 3, 2015 at 3:40 p.m. at Book 265, Page 546, No. 250832.  Exhibit D, *Mortgage, Security Agreement and Assignment of Leases and Rents dated June 26, 2013*; Exhibit E, *December 2015 Amendment to Mortgage and attached Incumbency Certificate.*

s.   To secure the indebtedness owed by Agspring Mississippi for (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Plaintiffs for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith on September 6, 2013, Agspring Mississippi, through its duly authorized representative Bradley K. Clark, mortgaged, affected, hypothecated, and pledged to Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC "all of the following described land, improvements, and real and personal property and rents and leases and all of [its] right, title and interest therein (…collectively called the "Security")" in and to that certain

immovable property, located in the Parishes of Morehouse and West Carroll, State of

Louisiana, bearing the following legal description:

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of

Louisiana, particularly described as follows, to-wit:

TRACT 1:  A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10'W, along the North line of Section 40, T12N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42'W, along the center of the canal 453.75 feet, thence turn and run S 81°10'E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52'E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:  From an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52'W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.08 to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10'W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15° 42'E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10'E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situation in Section 40, T21N, R6E, Morehouse Parish, Louisiana and containing 2.338 acres, more or less.  (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:   FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Section 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning: thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning.  The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

11

A 31.868 ACRE TRACT SITUATED IN SECTION 10, T 20 N, R 10 E WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

Together with all buildings, fixtures and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "Improvements");

Together with all of the right, title and interest in of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

Together with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties, and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "Real Property");

Together with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. RS. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof.

This Mortgage attaches to subsequent additions, substitutions and replacements to and for the Security as well as to present and future component parts of the security and to natural increases, accessions, accretions and issue of the Security.

Further, Agspring Mississippi gave Plaintiffs the right to request sequestration of all or any of the properties identified in therein and incident thereto the appointment of a keeper at page 10, section f, of the Mortgage. Exhibits F and G, *Mortgage, Security Agreement and Assignment of Leases and Rents dated September 6, 2013*; Exhibits H and I, *Amendment of Mortgage with attached Incumbency Certificate dated as of December 1, 2015.*

t.   Exhibit F, *Mortgage, Security Agreement and Assignment of Leases and Rents dated September 6, 2013,* was recorded in the in the Mortgage records of West Carroll Parish on September 13, 2013 at 12:15 p.m. in Book 256 at Page 25, No. 245613. Exhibit G, *Mortgage, Security Agreement and Assignment of Leases and Rents dated September 6, 2013,* was recorded in the Mortgage records of Morehouse Parish on September 18, 2013 at 2:50 p.m. in Book 0710 at Page 172, No. 238110. Exhibits H, *Amendment of Mortgage with attached Incumbency Certificate dated as of December 1, 2015,* was recorded in the in the Mortgage records of West Carroll Parish on December 3, 2015 at 3:40 p.m. in Book 265 at Page 546, No. 250832. Exhibit I, *Amendment of Mortgage with attached Incumbency Certificate dated as of December 1, 2015,* was recorded in the Mortgage records of Morehouse Parish on December 3, 2015 at 12:38 p.m. in Book 0736 at Page 555, No. 248060.

u.   To secure the indebtedness owed by Agspring Mississippi for (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, on February 1, 2014, Agspring Mississippi, through its duly authorized representative Bradley K. Clark, mortgaged, affected, hypothecated, and pledged to Larry G. Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC "all of the following described land, improvements, and real property and rents and leases and all of [its] estate, right, title and interest therein (…collectively called the "Security")" in and to that certain property, located in the Parish of East Carroll, State of Louisiana, bearing the following legal description:

PARCEL I: A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN SECTIONS 24 & 25, T 19 N, R 10 E EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00"West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a

set 5/8" rebar with plastic cap; thence, South 01°21 '11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8"rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

PARCEL II: A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN SECTION 25, T 19 N, R 10 E EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less

PARCEL III: A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT (LESS AND EXCEPT A 1.892 ACRE TRACT) FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN SECTION 25, T 19 N, R10 E SECTION 30, T 19 N, R 11 E EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8 rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8 rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8 rebar with plastic cap; thence, North 87°00'16" West. a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21"11"

14

West along the said right of way, a distance of 1127.12' to a set 5/l8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence, North 89°56'30" East, a distance of 75.00' to a set 5/8'" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00" to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerling of La. State Hwy. 577; thence, run South 01°2l '11 East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.
All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof:

Together with all buildings, fixtures and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "Improvements")

Together with all of the right, title and interest in of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

Together with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "Real Property");

Together with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants,

agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof.

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, and to natural, increases, accessions, accretions, and issues of the Security.

Further, at page 9, section (f), Agspring Mississippi gave Plaintiffs the right to request sequestration of all or any of the properties identified in therein and incident thereto the appointment of a keeper. Exhibit J, *Mortgage, Security Agreement and Assignment of Leases and Rents dated February 1, 2014.* Exhibit J, *Mortgage, Security Agreement and Assignment of Leases and Rents dated East Carroll Parish,* was recorded in the Mortgage records of East Carroll Parish on February 11, 2014 at 12:00 p.m. in Mortgage Book 220, Page 192, Reg. No. 89267

   v.  Bradley K. Clark was authorized to execute the Amendments to Mortgage dated December 1, 2015 clarifying that the mortgages identified herein covered "all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of [Plaintiffs]" not to exceed $100,000,000.00, including but not limited to the Promissory Note and the First Amended and Restated Promissory Note. Exhibit E, *Amendment to Mortgage and attached Incumbency Certificate*, and Exhibit H, *Amendment to Mortgage and attached Incumbency Certificate.*

   w.  Plaintiffs were the original payees of the lost notes. Exhibit A, *Request for Admission, Interrogatories and Request for Production of Documents Propounded to Defendant, Agspring Mississippi Region. LLC,* and Exhibit B, *Defendants' Objections and Responses to Plaintiffs' Request for Admission Nos. 1 and 2*, Exhibit C, *Second Amended and Restated Promissory Note.*

   x.  Plaintiffs were the last holders of the original June 2013 Promissory Note and the September 6, 2013 First Amended and Restated Note prior to them being lost. *Id.* and Exhibit O, *Affidavit of Larry Tubbs,* ¶ ¶ 13 and 14.

   y.  Plaintiffs have searched diligently for the Promissory Note but have been unable to locate it. *Id.* at ¶ 17.

   z.  Plaintiffs never transferred the Promissory Note or the First Amended and Restated Promissory Note. *Id.* at ¶ 16.

aa. Pursuant to La. R.S. 13:3741, Plaintiffs advertised the loss of these notes in the Madison Journal, the public newspaper in Madison Parish, on March 18, March 25, and April 14, 2021. *Id.* ¶ ¶ 18 and 19 and Exhibits O-4 and O-5 attached thereto.

bb. The security interests in movables granted to Plaintiffs in the West Carroll Mortgage, the West Carroll and Morehouse Mortgage and the East Carroll Mortgage (collectively, the "Mortgages") were perfected by the filing of UCC-1 Financing Statements in the State of Louisiana and in the State of Delaware. Exhibit "L", *UCC-1 Financing Statement number 34-204492*, Exhibit "M", *UCC-1 Financing Statement number 250839,* Exhibit "N", *UCC-1 Financing Statement number 2019 5688424.*

## LAW AND ARGUMENT

### 1. Standard for Summary Judgment

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). The burden of proof is on the mover. The burden on the adverse party is to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Janney v. Pearce*, 2009-2103 (La. App. 1 Cir. 5/7/10), 40 So.3d 285, 289, *writ denied*, 2010-1356 (La. 9/24/10), 45 So.3d 1079. "A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Jackson v. City of New Orleans*, 2012-2742 (La. 1/28/14), 144 So.3d 876, 882, citing *Smitko v. Gulf South Shrimp, Inc.*, 2011–2566 (La.7/2/12), 94 So.3d 750, 755.

**2. The Second Amended and Restated Promissory Note is Due, Owing and in Default**

Agspring Mississippi was the maker of the Second Amended and Restated Promissory Note which required a monthly installment interest only payment on October 1, 2018, which payment Agspring failed to make. Undisputed Facts "e," and "k." The Second Amended and Restated Promissory Note waived any of Agspring Mississippi's rights of presentment, demand, notice, protest, provided for an interest rate of 12% per annum in the event of default, and the right to reasonable attorneys' fees for enforcement. Undisputed Fact "f." Failure to pay any installment when due was an event of default triggering Plaintiffs' right to accelerate the whole principal and interest due after notice. Undisputed Fact "f."

On October 10, 2018, Larry Tubbs provided notice to Agspring Mississippi that 1) an event of default occurred under the Second Amended and Restated Promissory Note because it failed to pay the installment owed on October 1, 2018 (Undisputed Facts "m" and "n"); and 2) after five (5) days, the Indebtedness due on the Second Amended and Restated Promissory Note would be accelerated. Undisputed Fact "m." No payment was made within five days and the whole amount became due on October 16, 2018, and the Indebtedness began to accrue interest after seven (7) days thereafter at the default rate. Undisputed Facts "l" ,"n," "o," "p."

Larry Tubbs, who on his own behalf and as custodian of the records of the remaining plaintiffs, has knowledge of the amounts owed under the Second Amended and Restated Promissory Note and has stated the following amounts are owed by Agspring Mississippi: (i) $22,000,000.00 in principal; (ii) $240,794.52 in accrued regular interest from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum ( a per diem rate of $7,232.88) from October 17, 2018 until April 19, 2021; (iv) additional default interest on the principal at the rate of 12.00% per annum from April 20, 2021 until paid in full; (v) for the costs of obtaining this judgment and (vi) additional costs and attorney's fees incurred in the future for collection of this Indebtedness until paid in full, including but not limited to costs and attorney' fees accrued in executing on this judgment and the collateral securing the Second Amended and Restated Promissory Note. Undisputed Fact "q."

Applicable law provides that an affidavit of a person with knowledge stating the amounts due on a promissory note is sufficient evidence on a motion for summary judgment of the indebtedness. *JPMorgan Chase Bank, N.A. v. Jones*, 42,396 (La. App. 2 Cir. 12/5/07), 972 So.2d 1172, 1174. Thus, Plaintiffs have met their burden of proving the amount due, owing and in default

on the Second Amended and Restated Promissory Note and all of the elements required by La. R.S. 10:3–104[2] to establish that it is a promissory note due and owing by Agspring Mississippi. The Second Amended and Restated Promissory Note was signed by Agspring Mississippi's authorized representative; it contained an unconditional promise to pay a sum certain in money to Plaintiffs; it was payable at a definite time; and it was payable to the order of Plaintiffs. Undisputed Fact "e."

"In a suit on a promissory note, the plaintiff's burden of proof is straightforward. If he produces the note sued upon, then he has proved entitlement to the amount evidenced by the note. The defendant must then affirmatively show that the debt has been diminished or extinguished or is otherwise unenforceable." *Premier Bank, Nat. Ass'n v. H.A.G. P'ship,* 94–686 (La. App. 3d Cir. 12/7/94), 647 So.2d 636; see also, *Wells Fargo Home Mortg. v. Celestin,* 08-691 (La. App. 5 Cir. 01/27/09), 8 So.3d 634, 637.  See also, *Am. Bank v. Saxena,* 553 So.2d 836, 842 (La. 1989)("All five of these promissory notes were signed by Saxena as maker, contained an unconditional promise to pay sums certain in money, were payable on December 1, 1987, and were made to the order of American Bank. Therefore, the bank is a holder and, subject to claims of payment or satisfaction under R.S. 10:3–306, may enforce payment in its own name.")

A "holder" is a person who is in possession of an instrument drawn or issued to him or his order. La. R.S. 10:1–201(21).  Plaintiffs are in possession of and have produced the original of the Second Amended and Restated Promissory Note.  Further, they have complied with their proof obligations with respect to the earlier versions of the note.

When the original note has been lost or destroyed, and proof of the loss is shown by testimony under oath and the loss is advertised in a public newspaper, the contents of the note may be proven by testimony. La. R.S. 13:3740 and R.S. 13:3741; see also *McCloud v. Bufkin,* 544 So.2d 529, 531 (La. App. 5 Cir. 1989); *Gen. Fin. Servs. v. Thompson,* 987 F. Supp. 505, 509 (M.D.

---

[2]     [N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

La. 1997). Plaintiffs' have met this burden of proof by offering the affidavit of Larry Tubbs and the Proofs of Publication by the Madison Journal. Undisputed Facts "x," "y," "z," "aa."

Plaintiffs were the original payees of the lost notes, as shown by the copies submitted. Undisputed Fact "a," "c." Plaintiffs were the last holders of the original Promissory Note and the First Amended and Restated Note prior to them being lost. Undisputed Fact "w," "x." Plaintiffs have searched diligently for the Promissory Note and First Amended and Restated Promissory Note but have been unable to locate it. Undisputed Fact "y." Plaintiffs never transferred the June 2013 Promissory Note First Amended and Restated Note. Undisputed Fact "z." Pursuant to La. R.S. 13:3741, Plaintiff advertised in the Madison Journal on March 18, March 25, and April 14, 2021. Undisputed Fact "aa." Thus, Plaintiffs' have met their burden of proving that they are the holders with standing to enforce the Indebtedness against Agspring Mississippi.

Agspring Mississippi has admitted that the submitted copies of the Promissory Note and the First Amended and Restated Promissory Note are genuine, true and correct copies of that accurately reflect the contents of both documents, which includes the signatures. Undisputed Facts "a," "c." There can be no dispute that these copies are sufficient evidence of the authenticity of the signatures and of the content of the documents. Accordingly, Plaintiffs have proved that Agspring Mississippi is liable to them for the Indebtedness pursuant to the Second Amended and Restated Promissory Note as prayed for in the Motion.

3. **Agspring LLC is solidarily liable with Agspring Mississippi for the Amounts Due on the Indebtedness.**

"A guarantor is liable to the creditor for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity." La. C.C. art. 3045. Suretyship, also known as a guaranty, is "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the other to do so." La. C.C. art. 3035. The guarantor's promise is to satisfy the entire obligation if the debtor fails to do so. *Bank One v. SWC Corp.,* 36,043 (La. App. 2 Cir. 8/14/02), 823 So.2d 1060, 1062 citing La. C.C. art. 3045, Revision Comment (b).

On February 1, 2014, Agspring, LLC, through its president Bradley K. Clark, executed that certain Guaranty solidarily and unconditionally guaranteed to Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC the prompt payment in full of the Second Amended and Restated Promissory Note. Undisputed Fact "h."

Despite having waived its right to notice or demand, on October 11, 2018, Plaintiffs provided notice to Agspring LLC that Agspring Mississippi defaulted on the obligations which Agspring LLC guaranteed and that notices of default and the exercise of the option to accelerate all payments had been provided to Agspring Mississippi. Undisputed Fact "j," and Affidavit of Larry Tubbs, ¶9. Accordingly, Agspring LLC is liable *in solido* with Agspring Mississippi to Plaintiffs for the Indebtedness.

A conventional mortgage is established by written contract by a person having the power to alienate the property mortgaged. La. C.C. arts. 3287, 3289. The mortgage does not have to be signed by the mortgagee, whose consent is presumed. La. C.C. art. 3289. A mortgage may secure obligations arising in the future and the promissory note or other evidence of indebtedness need not be paraphed for identification with the mortgage and need not recite that it is secured by the mortgage. La. C.C. art. 3298.

Louisiana C.C. art. 3279 provides that a "[m]ortgage gives the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward the satisfaction of the obligation in preference to claims of others." This right is enforced by an ordinary proceeding like the instant case. La. C.C.P. art. 3722. As shown below, Plaintiffs are plainly entitled to an *in rem* judgment recognizing their rights to seize and sell movable and immovable collateral in satisfaction of the Indebtedness.

Certified copies of the recorded Mortgages, Security Interests and Assignments of Leases and Rents reflect that Plaintiffs were granted an interest in the identified properties to ensure payment of the Second Amended and Restated Promissory Note, the right to request sequestration of all or any of the properties identified in therein, and incident thereto the appointment of a keeper. Undisputed Facts "r," "s," and "t." The signatory, Bradley K. Clark, on behalf of Agspring Mississippi was duly authorized to do so. Undisputed Facts "b," "d," and "v." Further, the security interests were granted in these documents and Plaintiffs have no additional burden of proof to allow them to enforce any security interests in any movables. La. R.S. 10:9-601. Thus, Plaintiffs have met all of their obligations to prove Indebtedness and their right to enforce their rights in the Agspring Mississippi's collateral to collect it.

21

4. **Plaintiffs Respectfully Move this Honorable Court to Designate the Judgment Rendered Herein as a Final Judgment Pursuant to La. C.C.P art. 1915(B)(1).**

This Indebtedness has been outstanding for years and accrues thousands of dollars in interest every day that it remains unpaid.  There is no dispute that the debt is owed, and reduction of the Indebtedness through assets sales will serve to ameliorate the damages to Plaintiffs in having to await payment and will fix the total amount that can be recovered in the remaining actions against the defendants.  Accordingly, Plaintiffs respectfully request that a judgment in their favor on this Motion be designated as a final judgment because there is no just reason to delay collecting the Indebtedness.

<u>**CONCLUSION**</u>

Plaintiffs respectfully requests that partial summary judgment be rendered in their favor as a final judgment pursuant to La. C.C.P art. 1915(B)(1) and against Agspring Mississippi Region, LLC and Agspring, LLC as prayed for in the Motion because there is no dispute of material fact that Agspring owes the Indebtedness and mortgaged and pledged this property to secure its payment.

Respectfully submitted:

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,
THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone:  225-236-3636
Fax:  225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW
& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been furnished via e-mail to all counsel of record as follows:

Charles D. Marshall
Chaffe McCall
1100 Poydras St. Suite 2300
New Orleans, LA 70163

John D. Crigler, Jr.
Post Office Box 97
St. Joseph, LA 71366

Jodie Hermann Lawson
McGuire Woods, LLP
201 North Tryon St., Suite 3000
Charlotte, NC 28202

John Ertman
Ertman Dulis & Helisek, PLLC
112 W. 34th St., 18th Floor
New York, NY 10120

Jacob Bylund
Faegre Drinker Biddle & Reath, LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309

Edward Warner
Kean Miller LLP
Post Office Box 3513
Baton Rouge, LA 70821

Jeffrey K. Coreil
Neuner Pate
1001 West Pinhook Road, Suite 200
Lafayette, LA 70503

Jeremy M. Suhr
Boulware Law, LLC
1600 Genesse St., Suite 416
Kansas City, MO 64102

Baton Rouge, Louisiana this 21st day of April, 2021.

Andrée Matherne Cullens

December 9, 2019
s/Shelby Thueleur
Dy Clerk

| | | |
|---|---|---|
| LARRY TUBBS, TUBBS RICE | : | SUIT NO.: 19-198 DIVISION: B |
| DRYERS, INC., CHIEF VENTURES, | : | |
| L.L.C., and BIG RIVER GRAIN, LLC | : | |
| | : | |
| VERSUS | : | SIXTH JUDICIAL DISTRICT COURT |
| | : | |
| AGSPRING MISSISSIPPI REGION, LLC, | : | |
| AGSPRING, LLC, AGSPRING HOLDCO, | : | |
| LLC, GREG KENNEDY, MARK | : | |
| BEEMER, PACIFIC INVESTMENT | : | PARISH OF MADISON |
| MANAGEMENT COMPANY, LLC, | : | |
| BARINGS LLC, BRUCE CHAPIN, | : | |
| ABC INSURANCE COMPANY, | : | |
| and XYZ INSURANCE COMPANY | : | STATE OF LOUISIANA |

### REQUEST FOR ADMISSION, INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT, AGSPRING MISSISSIPPI REGION, LLC

**NOW INTO COURT,** through undersigned counsel, comes Plaintiffs, LARRY TUBBS,

TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC, who

propound these Requests for Admission, Interrogatories and Requests for Production of

Documents to Defendant, AGSPRING MISSISSIPPI REGION, LLC, to be answered in writing

and under oath within thirty (30) days of service hereof, in accordance with Louisiana Code of

Civil Procedure Article 1420, *et seq.* These written discovery requests are to be deemed continuing

so as to require supplemental answers if additional information becomes available to defendant.

### INSTRUCTIONS

1.    **Compliance with Louisiana Rules of Civil Procedure.** The requests for production of documents below should be answered by the defendant, and the documents and evidence requested below should be produced to the plaintiff, in accordance with the Louisiana Code of Civil Procedure.

2.    **Time for Response.** Please respond to these discovery requests within the delays allowed by the Louisiana Code of Civil Procedure.

3.    **Location of production.** Plaintiff requests that all documents and evidence produced in response to these interrogatories be produced at the offices of Moore, Walters, Thompson, Thomas, Papillion & Cullens, APLC, 12345 Perkins Road, Building One, Baton Rouge, Louisiana 70810, unless a different place is established by mutual agreement of the parties hereafter.

4.    **Claims of Privilege/Privilege Log.** If any information requested herein is claimed to be privileged or otherwise protected from discovery, the respondent is requested to identify in writing, with particularity, the basis for such claim, and in the case of any document not produced, to identify in writing:

      a)     its author;

      b)     the date of its creation;

      c)     the names, positions and capacities of all persons to whom each document was addressed or by whom it was seen, read, disclosed or examined;

      d)     its general nature and subject matter and the basis upon which it is claimed to be privileged or otherwise protected from discovery; and

      e)     its present location and custodian.



PLAINTIFF'S EXHIBIT
A

5. **Identification of Persons.** Wherever used in these requests for production, a request to "identify" a person includes a request for the person's name, his or her last known address, his or her last known employer, his or her last known telephone number, and any other information known to the respondent which may reasonably be used to locate and contact the person in question.

6. **Identification of Documents.** Wherever used in these requests for production, a request to "identify" a document shall require the respondent to state its author, the date of its creation, the names, positions and capacities of all persons to whom each document was addressed, its general nature and subject matter, and its present location and custodian. Alternatively, a copy of the document may be attached to the response.

7. **Definition of Documents.** Wherever used in these requests for production, and requests for admissions, the term "documents" shall mean all writings, records and recordings of any kind, whether in paper, magnetic or digital format, including but not limited to letters, memoranda, reports, handwritten notes, logs, formal or informal minutes, tape recordings, photographs, photocopies, telegrams, telexes, transcripts, electronic word processing and spreadsheet and other computer files, and email messages, wherever such "documents" are located and however produced or reproduced. A request for all "documents" includes a request for any and all non-identical copies of any such "documents" which may differ to any extent because of alterations, attachments, blanks, comments, notes, underlining or otherwise.

8. **Definition of You and Your.** As used in these requests for production, the terms "you" and "your" refer to AGSPRING MISSISSIPPI REGION, LLC, and its wholly-owned subsidiaries, including their employees, agents and representatives.

9. **Definition of Plaintiffs.** As used in these requests for production, the term "Plaintiffs" means LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC.

10. **Continuing Nature.** These requests for production are intended to be continuing in nature, and any information which you might receive between now and the trial of this matter should be furnished to the undersigned by supplemental answers and responses as required by the Louisiana Code of Civil Procedure.

## REQUEST FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

The copy attached hereto as Exhibit 1 is a genuine copy of the original Promissory Note

executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal

amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice

Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

### REQUEST FOR ADMISSION NO. 2:

The copy attached hereto as Exhibit 1 accurately reflects the contents of the original

Promissory Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the

original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry

Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

### REQUEST FOR ADMISSION NO. 3:

The document attached hereto as Exhibit 2 is a genuine copy of the original First Amended

and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of

Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**REQUEST FOR ADMISSION NO. 4:**

The document attached hereto as Exhibit 2 accurately reflects the contents of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**REQUEST FOR ADMISSION NO. 5:**

On October 1, 2018 Agspring Mississippi Region failed to make the monthly interest payment due on under the Second Amended and Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**REQUEST FOR ADMISSION NO. 6:**

Failure to pay monthly interest is an event of default under the Second Amended and Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**REQUEST FOR ADMISSION NO. 7:**

Plaintiffs sent notice of non-payment of the under the Second Amended and Restated Promissory Note in the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, to Agspring Mississippi Region on October 10, 2019.

**REQUEST FOR ADMISSION NO. 8:**

Plaintiffs accelerated the maturity date of the Second Amended and Restated Promissory Note on October 17, 2019.

**REQUEST FOR ADMISSION NO. 9:**

On or after October 1, 2018, Agspring Mississippi Region has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**REQUEST FOR ADMISSION NO. 10:**

On or after October 1, 2018, Agspring LLC has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3,.

**REQUEST FOR ADMISSION NO. 11:**

Agspring Mississippi has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, on or after October 1, 2018.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

If you answered anything less than an unqualified admission to any Request for Admission, please explain your answer, including identification, with specificity, of any dates, documents, or other data supporting your answer.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a current list of the full name and last known business address of each member and manager of AGSPRING MISSISSIPPI REGION, LLC.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any company record that would allow petitioner to determine the relative voting rights of the members of AGSPRING MISSISSIPPI REGION, LLC.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the articles of organization of AGSPRING MISSISSIPPI REGION, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce the federal and state income tax returns and reports filed by AGSPRING MISSISSIPPI REGION, LLC, for the last five (5) years.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any written operating agreement of AGSPRING MISSISSIPPI REGION, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any financial statement of AGSPRING MISSISSIPPI REGION, LLC prepared at any time during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a complete listing of all distributions made by AGSPRING MISSISSIPPI REGION, LLC over the last three (3) years, that identifies all recipients of said distributions, the amount of each distribution, the date of every such distribution, and the business purpose of each distribution.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all appraisals of AGSPRING MISSISSIPPI REGION, LLC conducted at any time during the last three (3) years, regardless of who commissioned the appraisal or the purpose of the same.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all income statements and balance sheets for AGSPRING MISSISSIPPI REGION, LLC compiled during the last three (3) years.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all financial statements provided by AGSPRING MISSISSIPPI REGION, LLC to any bank, credit union, financial institution, or lender of any kind during the last three (3) years.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any agreement, promissory note, contract, debenture, terms of repayment, loan document, or writing of any kind that relates to any loan made to or by AGSPRING MISSISSIPPI REGION, LLC to any other entity, including but not limited to related-party entities, or individual during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any agreement, contract, stock certificate, certificate of deposit, or writing of any kind that relates to any investment made by AGSPRING MISSISSIPPI REGION, LLC in any other entity, individual, or business venture during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce the minutes of any meeting held for AGSPRING MISSISSIPPI REGION, LLC during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 14:**

      Any business valuation report or appraisal regarding AGSPRING MISSISSIPPI REGION, LLC performed in the last five (5) years.

**REQUEST FOR PRODUCTION NO. 15:**

      Any document, certificate, or writing of any kind that evidences the ownership interest of all entities and individuals in AGSPRING MISSISSIPPI REGION, LLC during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 16:**

      All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the debt owed by AGSPRING MISSISSIPPI REGION, LLC to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 17:**

      All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to transfers of assets of any kind worth over $1,000 to any Defendant, Agspring Mississippi, or FO-ND, LLC during the last three (3) years.

**REQUEST FOR PRODUCTION NO. 18:**

      Any and all communications whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, between AGSPRING MISSISSIPPI REGION, LLC, and any Defendant, Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, or FO-ND, LLC related to cash, finances, accounting, or financing issues that took place within the last five (5) years.

**REQUEST FOR PRODUCTION NO. 19:**

      All documents, reports, materials, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the financial dealings of AGSPRING MISSISSIPPI REGION, LLC since December 1, 2015.

**REQUEST FOR PRODUCTION NO. 20:**

Any insurance policy issued to AGSPRING MISSISSIPPI REGION, LLC or naming

AGSPRING MISSISSIPPI REGION, LLC as an insured, that is currently in place or that provided

coverage at any time during the last five (5) years, regardless of the nature or type of insurance

policy involved.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper

documents or electronic data (including e-mails and computer files) or otherwise, that you support

or relate to your response to Interrogatory No. 1.

Respectfully submitted,

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone: 225-236-3636
Fax: 225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW**
**& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com

**PLEASE SERVE:**

**GREG KENNEDY**
**VIA LONG ARM SERVICE**
2801 Chillon Way
Laguna Beach, CA 92651-2099

**MARK BEEMER**
**VIA LONG ARM SERVICE**
3309 Swanhollow Court
Henrico, VA 23233-7617
        *AND*
12720 Connell Drive
Overland Park, KS 66213

**PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC**
**VIA LONG ARM SERVICE**
Through its registered agent for service of process:
Registered Agent Solutions, Inc.
9 E. Loockerman Street, Suite 311
Dover, DE 19901
*AND*
**VIA LONG ARM SERVICE**
650 Newport Center Drive
Newport Beach, CA 92660

**BARINGS LLC**
Through its registered agent for service of process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**AMERICAN INFRASTRUCTURE MLP II IP FEEDER LP; AMERICAN INFRASTRUCTURE MLP MANAGEMENT II LLC; AMERICAN INFRASTRUCTURE MLP PE MANAGEMENT, L.L.C.; AMERICAN INFRASTRUCTURE MLP YIELD MANAGEMENT, L.L.C.; and AMERICAN INFRASTRUCTURE MLP FUNDS, LP.**
**VIA LONG ARM SERVICE**
Through their registered agent for service of process:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808
*AND*
**VIA LONG ARM SERVICE**
950 Tower Lane
Suite 800
Foster City, CA 94404

**AGSPRING HOLDCO, LLC and AGSPRING, LLC**
**VIA LONG ARM SERVICE**
Through their registered agent for service of process:
Cogency Global Inc.
850 New Burton Road, Suite 201
Dover, DE 19904
*AND*
**VIA LONG ARM SERVICE**
5101 College Boulevard
Leawood, KS 662211

**AGSPRING MISSISSIPPI REGION, LLC and LAKE PROVIDENCE GRAIN AND RICE, LLC**
Through their registered agent for service of process:
Cogency Global Inc.
3867 Plaza Tower Drive, 1st Floor
Baton Rouge, LA 70816

**BRUCE CHAPIN**
**VIA LONG ARM SERVICE**
6618 Willow Lane
Mission Hills, KS 66208

**JEFF LANDRY**
**LOUISIANA ATTORNEY GENERAL**
1885 North Third Street
Baton Rouge, LA 70802

## PROMISSORY NOTE

$7,000,000.00                                       As of June 26, 2013

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note the principal sum of SEVEN MILLION AND 00/100 ($7,000,000.00) Dollars together with interest at the rate of Five and 75/100th (5.75%) percent per annum, and payable in consecutive monthly installments of interest only due on the first day of each month, commencing on July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June ___, 2018. Maker has paid the holder of this note the interest due hereon from the date hereof through June 30, 2013. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after five days notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and *in solido*, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana.

MAKER:

AGSPRING MISSISSIPPI REGION, LLC

By: _____

Name:  Brad Clark

Its:    President



PLAINTIFF'S
EXHIBIT
1

## FIRST AMENDED AND RESTATED
## PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount: $17,000,000**

$17,000,000.00                                              As of September 6, 2013

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of SEVENTEEN MILLION AND 00/100 ($17,000,000.00) Dollars together with interest at the rate of Five and 75/100th percent (5.75%) per annum until September 6, 2018 (the "Initial Period"), and with interest beginning on August 30, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"), and payable in consecutive monthly installments of interest only due on the first day of each month, commencing on October 1, 2013, in the amount of $81,458.33 during the Initial Period and an amount to be calculated based upon the Prime Rate plus Three percent (3.0%) during the Second Period, with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through October 1, 2013. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

This Amended and Restated Promissory Note is not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of SEVEN MILLION DOLLARS ($7,000,000).

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney



PLAINTIFF'S
EXHIBIT
2

or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 om June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parishes of West Carroll and Morehouse, State of Louisiana.

MAKER:
AGSPRING MISSISSIPPI REGION, LLC

By: _____
Name: Brad Clark
Its:    President

2

## SECOND AMENDED AND RESTATED
## PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount:  $17,000,000**

**Second Amended and Restated Principal Amount:  $22,000,000.00**


$22,000,000.00                                          As of February 1, 2014

     For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of TWENTY-TWO MILLION AND 00/100 ($22,000,000.00) Dollars, together with interest at the rate of (i) Five and 75/100th percent (5.75%) per annum from the date hereof until August 30, 2018 (the "Initial Period"); and (ii) with interest beginning on September 1, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"). This Note shall be payable in consecutive monthly installments of interest only due on the first day of each month throughout the term hereof, commencing on February 1, 2014, in the amount of $105,416.66 throughout the Initial Period, and with the monthly payment of interest only to be paid during the Second Period being calculated based upon the Prime Rate plus Three percent (3.0%), with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through January 31, 2014. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

     This Second Amended and Restated Promissory Note is an amendment and restatement, and not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of $7,000,000, as amended and restated by that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of $17,000,000.00.

     All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

     The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be

NO:0104474/00001:167545v3



PLAINTIFF'S
EXHIBIT
3

extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 on June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parish East Carroll, State of Louisiana.

MAKER:
AGSPRING MISSISSIPPI REGION, LLC

By: _____
Name: Brad Clark
Its:    President

2

| | | |
|---|---|---|
| LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., AND BIG RIVER GRAIN, LLC | : : : | SUIT NO.: 19-198 DIVISION: B |
| | : | |
| | : | SIXTH JUDICIAL DISTRICT COURT |
| VERSUS | : | |
| | : | |
| AGSPRING MISSISSIPPI REGION, LLC, AGSPRING HOLDCO, LLC, GREG KENNEDY, MARK BEEMER, PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC, BARINGS LLC, BRUCE CHAPIN, ABC INSURANCE COMPANY, AND XYZ INSURANCE COMPANY | : : : : : : : : | PARISH OF MADISON STATE OF LOUISIANA |
| | : | |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS

**NOW INTO COURT**, through the undersigned counsel, comes Defendant Agspring Mississippi Region, LLC, et al. ("Agspring"), pursuant to La. Code Civ. Proc. Ann. art. 1467, hereby responds to Plaintiffs' Requests for Admissions as follows:

### Preliminary Statement

These responses reflect only the current status of Agspring's knowledge, understanding, and belief respecting the matters about which inquiry has been made. Discovery in this action is continuing and, consequently, Agspring may not have yet identified all information responsive to the Requests. As discovery in this action proceeds, Agspring anticipates that it may discover additional or different information or documents. Without in any way obligating itself to do so, Agspring reserves the right to amend, modify, supplement, clarify, or further explain these responses and objections at any time in the future.

Furthermore, these responses are without prejudice to the right of Agspring to use or rely on at any time, any subsequently discovered information, or information omitted from these responses as a result of mistake, error, oversight, or inadvertence. Agspring further reserves the right to object on appropriate ground to the introduction of any portion of these responses into evidence.

Any inadvertent disclosure by Agspring of information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection shall not constitute a waiver of that privilege or protection.

These responses are made solely for the purpose of and in relation to discovery conducted in this case. Each response is given subject to all appropriate objections (including, but not limited

1



to, objections concerning competency, privacy, relevancy, specificity, overbreadth, undue burden, materiality, confidential proprietary or trade secret material, or admissibility), which would require the exclusion of any response contained herein. All such objections are therefore reserved and may be interposed at trial.

Agspring responds to the Requests as it interprets and understands them. If Plaintiffs subsequently assert an interpretation of the Requests that differs from Agspring's understanding, Agspring reserves its right to supplement its objections and/or responses herein.

Agspring states that, except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred from the Requests or responses thereto. The fact that Agspring has responded to the Requests should not be taken as an admission, or a concession of the existence, of any fact set forth or assumed by the Requests, or that such response constitutes evidence of any fact thus set forth or assumed.

Agspring will make all productions described below on a rolling basis, and only after the parties enter into a mutually agreed-upon protective order providing for the confidential treatment of documents so designated.

Lastly, Agspring reserves the right to supplement its responses and objections to the Requests if the Court's Order on the Motion to Dismiss the Amended Petition narrows the claims that will proceed beyond the Motion to Dismiss.

### General Objections and Responses

Agspring objects to these Requests to the extent they seek privileged information, including information encompassed by the attorney-client privilege, the attorney work-product doctrine, privacy rights of third parties (including but not limited to the Insurance Privacy and Protection Act and any similar laws), or any other applicable privilege. Any inadvertent disclosure by Agspring of information that is protected as an attorney-client communication or as attorney work product, or that is otherwise immune from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to such information, or of Agspring right to object to the use of any such information during this action or otherwise.

**Objections and Responses to Requests for Admissions**

**REQUEST FOR ADMISSION REQUEST FOR ADMISSION NO. 1:**

The copy attached hereto as Exhibit 1 is a genuine copy of the original Promissory    Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 2:**

The copy attached hereto as Exhibit 1 accurately reflects the contents of the original Promissory Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 3:**

The document attached hereto as Exhibit 2 is a genuine copy of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 4:**

The document attached hereto as Exhibit 2 accurately reflects the contents of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain,

LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi

Region, LLC.

**RESPONSE**:

    Admitted.

**REQUEST FOR ADMISSION NO. 5:**

    On October 1, 2018 Agspring Mississippi Region failed to make the monthly interest

payment due on under the Second Amended and Restated Promissory Note in the principal amount

of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**RESPONSE**:

    Admitted.

**REQUEST FOR ADMISSION NO. 6:**

    Failure to pay monthly interest is an event of default under the Second Amended and

Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached

hereto as Exhibit 3.

**RESPONSE**:

    Admitted.

**REQUEST FOR ADMISSION NO. 7:**

    Plaintiffs sent notice of non-payment of the under the Second Amended and Restated

Promissory Note in the Second Amended and Restated principal amount of $22,000,000.00, a copy

of which is attached hereto as Exhibit 3, to Agspring Mississippi Region on October 10, 2019.

**RESPONSE**:

    Admitted.

**REQUEST FOR ADMISSION NO. 8:**

    Plaintiffs accelerated the maturity date of the Second Amended and Restated Promissory

Note on October 17, 2019.

**RESPONSE**:

    Admitted.

**REQUEST FOR ADMISSION NO. 9:**

On or after October 1, 2018, Agspring Mississippi Region has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 10:**

On or after October 1, 2018, Agspring LLC has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 11:**

Agspring Mississippi has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, on or after October 1, 2018.

**RESPONSE:**

Admitted.

<div align="center">

**ANSWERS TO INTERROGATORIES**

</div>

**INTERROGATORY   NO. 1:**

If you answered anything less than an unqualified admission to any Request for Admission, please explain your answer, including identification, with specificity, of any dates, documents, or other data supporting your answer.

**ANSWER:**

No response is required.

<div align="center">

**RESPONSES TO REQUEST FOR PRODUCTION**

</div>

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a current list of the full name and last known business address of each member and manager of AGSPRING MISSISSIPPI REGION, LLC.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any company record that would allow petitioner to determine the relative voting rights of the members of AGSPRING MISSISSIPPI REGION, LLC.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the articles of organization of AGSPRING MISSISSIPPI REGION, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce the federal and state income tax returns and reports filed by AGSPRING MISSISSIPPI REGION, LLC, for the last five (5) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any written operating agreement of AGSPRING MISSISSIPPI REGION, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any financial statement of AGSPRING MISSISSIPPI REGION, LLC prepared at any time during the last five (5) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a complete listing of all distributions made by AGSPRING MISSISSIPPI REGION, LLC over the last three (3) years, that identifies all recipients of said distributions, the amount of each distribution, the date of every such distribution, and the business purpose of each distribution.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all appraisals of AGSPRING MISSISSIPPI REGION, LLC conducted at any time during the last three (3) years, regardless of who commissioned the appraisal or the purpose of the same.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all income statements and balance sheets for AGSPRING MISSISSIPPI REGION, LLC compiled during the last three (3) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all financial statements provided by AGSPRING MISSISSIPPI REGION, LLC to any bank, credit union, financial institution, or lender of any kind during the last three (3) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any agreement, promissory note, contract, debenture, terms of repayment, loan document, or writing of any kind that relates to any loan made to or by AGSPRING MISSISSIPPI REGION, LLC to any other entity, including but not limited to related-party entities, or individual during the last five (5) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any agreement, contract, stock certificate, certificate of deposit, or writing of any kind that relates to any investment made by AGSPRING MISSISSIPPI REGION, LLC in any other entity, individual, or business venture during the last five (5) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce the minutes of any meeting held for AGSPRING MISSISSIPPI REGION, LLC during the last five (5) years.

**RESPONSE**:

 Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

 Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 14**:

 Any business valuation report or appraisal regarding AGSPRING MISSISSIPPI REGION, LLC performed in the last five (5) years.

**RESPONSE**:

 Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

 Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 15**:

 Any document, certificate, or writing of any kind that evidences the ownership interest of all entities and individuals in AGSPRING MISSISSIPPI REGION, LLC during the last five (5) years.

**RESPONSE**:

 Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

 Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to

10

the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the debt owed by AGSPRING MISSISSIPPI REGION, LLC to Plaintiffs.

**RESPONSE:**

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 17:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to transfers of assets of any kind worth over $1,000 to any Defendant, Agspring Mississippi, or FO-ND, LLC during the last three (3) years.

**RESPONSE:**

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all communications whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, between AGSPRING MISSISSIPPI REGION, LLC, and any Defendant, Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, or FO-ND, LLC related to cash, finances, accounting, or financing issues that took place within the last five (5) years.

**RESPONSE:**

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 19:**

All documents, reports, materials, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the financial dealings of AGSPRING MISSISSIPPI REGION, LLC since December 1, 2015.

**RESPONSE:**

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 20:**

Any insurance policy issued to AGSPRING MISSISSIPPI REGION, LLC or naming AGSPRING MISSISSIPPI REGION, LLC as an insured, that is currently in place or that provided coverage at any time during the last five (5) years, regardless of the nature or type of insurance policy involved.

**RESPONSE:**

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that you support or relate to your response to Interrogatory No. 1.

**RESPONSE:**

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

Respectfully submitted,
NEUNERPATE

BY: _____

Jeffrey K. Coreil                    #32405
(JCoreil@NeunerPate.com)
Cliff A. LaCour                      #30581
(CLaCour@NeunerPate.com)
1001 West Pinhook Road, Suite 200
Lafayette, LA 70503
Phone:          (337) 237-7000
Fax:            (337) 233-9450

-and-

Jane E. Maschka  (MN Attorney No. 0389130)
jane.maschka@faegredrinker.com
(*Pro Hac Vice Admission to be Applied for*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone (612) 766-7000
Facsimile (612) 766-1600

ATTORNEYS FOR AGSPRING MISSISSIPPI REGION,
LLC

---

### Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

| ☐ | Hand delivery | ☐ | Prepaid U. S. Mail |
| X | Facsimile/Electronic Mail | ☐ | Federal Express |
| X | Certified Mail/Return Receipt Requested | ☐ | CM/ECF |

Lafayette, Louisiana on February 18, 2020.

_____
Counsel

US 126690683 01

14

**VERIFICATION OF FIRST SET OF RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION AND INTERROGATORIES**

Before me, the undersigned authority, a notary public, duly commissioned and qualified in and for Miami County, Bruce Chapin, personally appeared:

Bruce Chapin

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires
1/29/2021

who, after being duly sworn, declared:

He has reviewed the preceding responses by Agspring Mississippi Region, LLC, to Larry Tubbs' interrogatories and requests for admission and the answers set forth in the responses are true and correct to the best of his knowledge, information, and belief.

s/

18

## SECOND AMENDED AND RESTATED
## PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount: $17,000,000**

**Second Amended and Restated Principal Amount: $22,000,000.00**

$22,000,000.00                                                   As of February 1, 2014

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of TWENTY-TWO MILLION AND 00/100 ($22,000,000.00) Dollars, together with interest at the rate of (i) Five and 75/100th percent (5.75%) per annum from the date hereof until August 30, 2018 (the "Initial Period"); and (ii) with interest beginning on September 1, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"). This Note shall be payable in consecutive monthly installments of interest only due on the first day of each month throughout the term hereof, commencing on February 1, 2014, in the amount of $105,416.66 throughout the Initial Period, and with the monthly payment of interest only to be paid during the Second Period being calculated based upon the Prime Rate plus Three percent (3.0%), with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through January 31, 2014. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

This Second Amended and Restated Promissory Note is an amendment and restatement, and not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of $7,000,000, as amended and restated by that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of $17,000,000.00.

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be

PLAINTIFF'S EXHIBIT C

extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses.  No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum.  If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 on June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parish East Carroll, State of Louisiana.

**MAKER:**
AGSPRING MISSISSIPPI REGION, LLC

By:_____
Name: Brad Clark
Its:     President

2

| MORTGAGE, SECURITY | * | UNITED STATES OF |
| --- | --- | --- |
| | * | AMERICA |
| AGREEMENT AND | * | |
| ASSIGNMENT OF LEASES | * | |
| AND RENTS | * | |
| | * | |
| BY: | * | STATE OF LOUISIANA |
| AGSPRING MISSISSIPPI REGION, LLC | * | |
| a Delaware limited liability company | * | PARISH OF W. CARROLL |
| | *... | |
| IN FAVOR OF: | * | |
| LARRY TUBBS, | * | |
| | * | |
| TUBBS RICE DRYERS, INC. | * | |
| a Louisiana corporation, | * | |
| | * | |
| CHIEF VENTURES, L.L.C., | * | |
| a Louisiana limited liability company and | * | |
| | * | |
| BIG RIVER GRAIN, LLC, | * | |
| a Louisiana limited liability company | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*A True Copy of Original Filed For Record This 28th Day of June, 2013 At 12:26 P.M. Book 254 Page 787 Date Reg. No. 245116 Carrie Stanley Clerk of Court, West Carroll Parish, LA*

BE IT KNOWN, that on the date and place set forth below, to be effective as of June 26, 2013;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

**AGSPRING MISSISSIPPI REGION, LLC** [TIN XX-XXX_____ ], a Delaware limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent;

who declared and acknowledged that said Mortgagor is justly and truly indebted unto:

NO:0104474/00001:163393v2

1



**Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company** (collectively as "**Mortgagee**"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

in the full sum of SEVEN MILLION AND NO/100 ($7,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100  ($7,000,000.00) DOLLARS, payable to the order of Mortgagee in consecutive monthly installments of interest only due on the first day of each month, commencing July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June 26, 2018, which Note shall bear interest at the rate of Five and 75/100th (5.75%) per annum, from date until paid (which Promissory Note, together with any renewal or refinancing note or notes delivered in substitution therefore or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "**Note**").

Now, in order to secure (i) the full and punctual payment of the Note when due or at maturity, or as it may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "**Mortgage**", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "**Loan Documents**"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "**Indebtedness**"), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real and personal property and rents and leases and all of Mortgagor's estate, right, title and interest therein (hereinafter collectively called the "**Security**"):

The immovable property described in Exhibit A attached hereto and made a part hereof, lying and being in the Parish of West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the "**Land**");

TOGETHER with all buildings and other improvements now or hereafter located on said

NO:0104474/00001:163393v2                                    2

Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "**Improvements**");

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "**Real Property**");

TOGETHER with all fixtures, machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Mortgagor (the "**Personal Property**");

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, together with all accounts, any and all escrow accounts, general intangibles, documents, instruments and chattel paper arising from or in connection with the Real Property, including all books and records of Mortgagor in connection therewith; and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the "**Incorporeal Rights**").

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the

3

Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the foregoing indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the Note in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized

NO:0104474/00001:163393v2                    4

elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $50,000,000.00. This Mortgage secures obligations that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.    Payment of Indebtedness. Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.    Title.

(a)    Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on Exhibit B hereto (the "**Permitted Encumbrances**") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee

NO:0104474/00001:163393v2                    5

hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(b)     Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)     Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)     Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.      Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.      Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.      Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security.

6.     Insurance/Condemnation Proceeds.     Mortgagor hereby assigns to Mortgagee all proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7.     Assignment of Rents and Leases.     As further security for the payment of the Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases

NO:0104474/00001:163393v2                    7

hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.     Events of Default. Each of the following shall constitute an **"Event of Default"** hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)     Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(b)     The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.     Remedies Upon Default. Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(a)     Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)     To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

(c)     Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(e)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected. This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(g)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Mortgagee without removal may render the Collateral unusable and dispose of the

NO:0104474/00001:163393v2                    9

Personal Property. To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(i)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or  pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

NO:0104474/00001:163393v2                    10

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.    Acceleration Interest.  In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.    Waiver of Statutory Rights.  Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.    Security Interest.  This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*)  Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby.  Upon the occurrence of any of the Events of

Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13.     Right of Entry. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14.     Rights Cumulative. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15.     Subrogation. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

16.     No Waiver. Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

NO:0104474/00001:163393v2                    12

17.     Indemnification. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand. Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18     Attorneys' Fees. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code. Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.     Protection of Security; Cost and Expenses. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder. If Mortgagor fails to perform any of its covenants or agreements contained in this Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees,

DO:0104474/00001:163393v2                    13

entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.     Notices.  Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing.  The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable.  For purposes hereof, the addresses are as follows:

If to Mortgagee:
Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC
c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266

If to Mortgagor:
Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer

21.   Release.   Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.   Applicable Law.   The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "State").   The agreed upon venue for all legal proceedings is the Parish in which the Land is located..

23.   Invalidity.   If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.   Captions.   The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.   Modifications.   This Mortgage may not be changed or terminated except in writing by both parties.   The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

26.   Bind and Inure.   The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.   The covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.   Time of the Essence.   Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other

instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.     Business Days.   The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.     Certificates.     The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.     No Paraph.     No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.

<center>**[SIGNATURE PAGE BEGINS ON NEXT PAGE]**</center>

THUS DONE AND PASSED by the Mortgagor in my office in the County of _____ Ichisa _____, State of __Kansas__, on the _26_ day of June, 2013, to be effective as of the date set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

**WITNESSES:**

_Maenin_

JOHN MOENIVI

Print Name:
_Ronckel Z. Tuel_

_Randal L. Linville_
Print Name:

**MORTGAGOR:**

**AGSPRING MISSISSIPPI REGION, LLC,**
**a Delaware limited liability company**

By: _____
Brad Clark
President

_Anne Yocsty_
NOTARY PUBLIC
Name: _Anne Yocsting_
Bar/Notary ID: _00006 7994-1_
My Commission Expires: _2/3/16_

ANNE YOESTING
MY COMMISSION EXPIRES
2/3/16

## CONSENT OF SOLE MEMBER AND SOLE MANAGER
### OF AGSPRING MISSISSIPPI REGION, LLC

**WHEREAS**, the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "**Company**") has determined that it is in the best interest of the Company to purchase certain assets of the company from Larry Tubbs, an individual ("**Tubbs**"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("**TRD**"), Chief Ventures, L.L.C., a Louisiana limited liability company ("**CV**"), and Big River Grain, LLC, a Louisiana limited liability company ("**BRG**", and together with Tubbs, TRD, and CV, the "**Sellers**"), and in connection therewith to borrow $7.0 million from the Sellers, and as security for said loan, to execute a mortgage and security interest in certain movable and immovable property of the Company as acquired from the Sellers and described on **Exhibit A** attached hereto and made a part hereof, all as set forth in the Asset Purchase Agreement by and between the Company and the Sellers dated as of May 22, 2013.

**NOW THEREFORE, BE IT RESOLVED**, that the Company is hereby authorized and directed to execute and deliver a Promissory Note and grant a mortgage and security interest on the property of the Company described on **Exhibit A** attached hereto and made a part hereof, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "**Authorized Officer**"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

**RESOLVED**, that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

NO:0104474/00001:163602v1

Dated as of June 26, 2013

SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC

Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature this 26 day of June 2013.

Bradley K. Clark, Secretary

NO:0104474/00001:163602v1

**EXHIBIT A**
**TO**
**MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS**

Legal Description

**A LEGAL DESCRIPTION OF A**
**49.582 ACRE TRACT**
**FOR**
**AGSPRING MISSISSIPPI REGION, LLC**
**SITUATED IN**
**SECTION 10, T 20 N, R 10 E**
**WEST CARROLL PARISH, LOUISIANA**

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a

point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

LESS AND EXCEPT

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and

NO:0104474/00001:163393v2                    19

utilities.**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

<u>Permitted Exceptions</u>

A true copy of original Filed for Record
this 3ʳᵈ day of Dec., 20 15
at 3:40 M Book 265
Page 546 Date Reg. No. 250832
Darlene Miller
Clerk of Court--West Carroll Parish, La.

## AMENDMENT OF MORTGAGE

**BE IT KNOWN** that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: **AGSPRING MISSISSIPPI REGION, LLC.**, a Delaware limited liability company (the *"Borrower"*) and **LARRY TUBBS**, an individual, **TUBBS RICE DRYERS, INC.**, a Louisiana corporation, **CHIEF VENTURES, L.L.C.**, a Louisiana limited liability company, and **BIG RIVER GRAIN, LLC.**, a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of September 6, 2013.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded September 13, 2013, in Mortgage Book 256, Page 25, under Date Register No. 245613 of the records of West Carroll Parish, Louisiana, and recorded September 13, 2013, in Mortgage Book 710, Page 172, under Date Register No. 238110 of the records of Morehouse Parish, Louisiana(collectively, the "Mortgage").

WHEREAS, an uncertainty appeared in sums borrowed and advanced in the first paragraph of Page 2. This paragraph should be amended and replaced entirely.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the 1ˢᵗ paragraph on page 2 of the Mortgage by substituting the following:

1. For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVENTEEN MILLION AND NO/100 ($17,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein, with a full and final payment' of all principal and interest due hereon being due and payable on the "Maturity Date" shown therein) (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note"). This note may be prepaid in whole or in part at any time without payment of premium or penalty.

PLAINTIFF'S EXHIBIT
E

WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 and continued on the top of page 4 of the above described mortgages. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 and continued on the top of page 4 to substitute in its place the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein. All of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendments, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of West Carroll and Morehouse Parishes, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in West Carroll and Morehouse Parishes; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

[THE BELOW SPACE IS INTENTIONALLY LEFT BLANK]

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3ʳᵈ day of _December_ , A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

_Barbie Smith_
**Barbie Smith**

_Erline W. Vickery_
**Erline W. Vickery**

MORTGAGEE:

_____
LARRY TUBBS

**TUBBS RICE DRYERS, INC.**

BY: _____

**CHIEF VENTURES, L.L.C.**

BY: _____
LARRY TUBBS, MANAGER

**BIG RIVER GRAIN, LLC.**

BY: _____
LARRY TUBBS, MANAGER

_Donald K. Carroll_
NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the ___ day of December, A.D., 2015, at my office in _Johnson_ County, _Kansas_____, after due reading of the whole.

WITNESSES:                                    **BORROWER**:

                                              **AGSPRING MISSISSIPPI REGION, LLC.**, a
                                              Delaware limited liability company

Signature _____           BY: _____
Printed name _Jennifer Mick_____            Name: _BRAD CLARK_____

Signature _____           Title: _PRESIDENT_____
Printed name _Luanne Eskew_____

                        _____
                                NOTARY PUBLIC

                        JENNIFER ANN TRUPKA
                        My Appointment Expires
                        April 25, 2018

## AGSPRING MISSISSIPPI REGION, LLC

## INCUMBENCY CERTIFICATE

December ___, 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____
Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____
Name: Bradley K. Clark
Title: President and Secretary

A True Copy of Original Filed For Record
This 13th Day of Sept., 20 13
At 12:15 P.M. Book MH9256
Page 25   Date Reg. No. 245613

Karen Jones
By. Clerk of Court, West Carroll Parish, LA

| | |
|---|---|
| **MORTGAGE, SECURITY**<br>**AGREEMENT AND**<br>**ASSIGNMENT OF LEASES**<br>**AND RENTS**<br><br>**BY:**<br><br>**AGSPRING MISSISSIPPI REGION, LLC**<br>**a Delaware limited liability company**<br><br>**IN FAVOR OF:**<br>**LARRY TUBBS,**<br><br>**TUBBS RICE DRYERS, INC.**<br>**a Louisiana corporation,**<br><br>**CHIEF VENTURES, L.L.C.,**<br>**a Louisiana limited liability company and**<br><br>**BIG RIVER GRAIN, LLC,**<br>**a Louisiana limited liability company** | **UNITED STATES OF**<br>**AMERICA**<br><br>**STATE OF LOUISIANA**<br><br>**PARISHES OF MOREHOUSE**<br>**AND WEST CARROLL** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

BE IT KNOWN, that on the date and place set forth below, to be effective as of September 6, 2013;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

**AGSPRING MISSISSIPPI REGION, LLC** [32-0409147], a Delaware limited liability company ("**Mortgagor**"), duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent of Sole Member and Sole Manager;

who declared and acknowledged that said Mortgagor is justly and truly indebted unto:

NO:0104474/00001:164778v6



A True Copy of Original Filed For Record
this ___ Day of ___ 20___
___
at ___ M.B.M. ___
Page ___ Doc. No. ___
Clerk & Ex Off... Recorder, Franklin ...

**Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company** (collectively as **"Mortgagee"**), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

For all sums loaned and advanced or to be loaned in advance, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVEN MILLION AND NO/100 ($7,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, payable to the order of Mortgagee in consecutive monthly installments of interest only due on the first day of each month, commencing July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June 26, 2018, which Note shall bear interest at the rate of Five and 75/100th (5.75%) per annum, from date until paid (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the **"Note"**).

Now, in order to secure (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the **"Mortgage"**, and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the **"Loan Documents"**), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the **"Indebtedness"**), that except for the Excluded Property (as hereinafter defined), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real property and rents and leases and all of

2

Mortgagor's estate, right, title and interest therein (hereinafter collectively called the **"Security"**):

The two parcels of immovable property described in <u>Exhibit A</u> attached hereto and made a part hereof, lying and being in the Parishes of Morehouse and West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the **"Land"**);

TOGETHER with all buildings, fixtures and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the **"Improvements"**);

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the **"Real Property"**);

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the **"Incorporeal Rights"**).

Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following assets and properties of Mortgagor have been pledged by Mortgagor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, **"Administrative Agent"**), and are expressly excluded from the foregoing provisions (collectively, the **"Excluded Property"**):  (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all

3

Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among AgSpring, LLC, Mortgagor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time (the "**Credit Agreement**").

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

4

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the Indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the Indebtedness in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security.  The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $100,000,000.00.  This Mortgage secures obligations and Indebtedness that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.    Payment of Indebtedness.  Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and

5

perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.  Title.

(a)   Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on Exhibit B hereto (the "**Permitted Encumbrances**") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(a)   Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)   Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp

6

taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)    Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.    Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.    Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.    Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security.

6.    Insurance/Condemnation Proceeds. Mortgagor hereby assigns to Mortgagee all proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7.    Assignment of Rents and Leases. As further security for the payment of the

7

Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder.  Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section.  Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any

8

subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.     Events of Default.  Each of the following shall constitute an "**Event of Default**" hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)     Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(a)     The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.     Remedies Upon Default.  Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(b)     Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)     To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

(c)     Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

9

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(d)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder.  Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid.  Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected.  This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(e)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale.  Mortgagee without removal may render the Collateral unusable and dispose of the Personal Property.  To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and

10

cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(f)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

11

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.     Acceleration Interest.  In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.     Waiver of Statutory Rights.  Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.     Security Interest.  This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*) Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to

12

this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby. Upon the occurrence of any of the Events of Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13.     Right of Entry. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14.     Rights Cumulative. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15.     Subrogation. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

NO:0104474/00001:164778v6

16.   <u>No Waiver</u>.   Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

17.   <u>Indemnification</u>.   Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage.   Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand.   Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18   <u>Attorneys' Fees</u>.   Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel.   Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code.   Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.   <u>Protection of Security; Cost and Expenses</u>.   Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder.   If Mortgagor fails to perform any of its covenants or agreements contained in this

14

Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.    Notices.    Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing. The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable. For purposes hereof, the addresses are as follows:

If to Mortgagee:
Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC

15

c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266


If to Mortgagor:
Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention:  Chief Executive Officer


21.   Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.   Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "**State**").  The agreed upon venue for all legal proceedings is the  Parish in which the Land is located..

23.   Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.   Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.   Modifications.  This Mortgage may not be changed or terminated except in writing by both parties.  The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

26.   Bind and Inure.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.  The

16

covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.    Time of the Essence.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.    Business Days.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.    Certificates.  The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.    No Paraph.  No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.

31.    Partial Release of Pioneer Mortgage.  Mortgagee acknowledges that due to the security interests granted by Mortgagor in favor of Administrative Agent as hereinabove described, that it is necessary for Mortgagor to confirm that the Mortgage executed by Mortgagor in favor of Mortgagee dated as of June 26, 2013 and recorded in Mortgage Book 254, Page 787, West Carroll Parish, Louisiana (the "**Pioneer Mortgage**") does not encumber the Excluded Property or the Personal Property referenced therein. Mortgagee hereby authorizes Mortgagor and its agents, attorneys, or representatives to prepare and file an amendment under the Uniform Commercial Code as adopted in Louisiana to expressly exclude the Excluded Property from the security interests created by the Pioneer Mortgage.

### [SIGNATURE PAGE BEGINS ON NEXT PAGE]

17

NO:0104474/00001:164778v6

THUS DONE AND PASSED by the Mortgagor in my office in the County of Johnson, State of Kansas, on the 6th day of September, 2013, to be effective as of the date first set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:

*Jennifer Trupka*

Jennifer Trupka

Print Name:

*Dustin Clevenger*

Print Name:

**MORTGAGOR:**

**AGSPRING MISSISSIPPI REGION, LLC,**
**a Delaware limited liability company**

By: _____

Brad Clark
President

_____
NOTARY PUBLIC

Name: Anne Yoesting
Bar/Notary ID: 00606 7994-1
My Commission Expires: 2/3/16

ANNE YOESTING
OFFICIAL SEAL
MY COMMISSION EXPIRES
2/3/16

18

# EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

### Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

NO:0104474/00001:164778v6

TRACT 4:    A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:    Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning. The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

<u>Permitted Exceptions</u>

All easements, servitudes and title covenants of public record.

21

## CONSENT OF SOLE MEMBER AND SOLE MANAGER
## OF AGSPRING MISSISSIPPI REGION, LLC

**WHEREAS,** the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "**Company**") has determined that it is in the best interest of the Company to refinance the existing $7.0 million loan to the Company from Larry Tubbs, an individual ("**Tubbs**"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("**TRD**"), Chief Ventures, L.L.C., a Louisiana limited liability company ("**CV**"), and Big River Grain, LLC, a Louisiana limited liability company ("**BRG**", and together with Tubbs, TRD, and CV, the "**Lender**"), to increase the loan amount to $17.0 million, and as security for said loan, to execute a mortgage and security interest in certain fixtures and immovable property of the Company described on **Exhibit A** attached hereto and made a part hereof.

**NOW THEREFORE, BE IT RESOLVED,** that the Company is hereby authorized and directed to execute and deliver a Promissory Note and grant a mortgage and security interest on the property of the Company described on **Exhibit A** attached hereto and made a part hereof, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "**Authorized Officer**"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

**RESOLVED,** that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

NO:0104474/00001:163602v5

Dated as of September 6, 2013          SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC

Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature this 6th day of September, 2013.

Bradley K. Clark, Secretary

2

## EXHIBIT A

## Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:   A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:   From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:   FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

3

## A 31.868 ACRE TRACT
## SITUATED IN
## SECTION 10, T 20 N, R 10 E
## WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

4

NO:0104474/00001:163602v5

MORTGAGE, SECURITY      *    UNITED STATES OF
AGREEMENT AND           *    AMERICA
ASSIGNMENT OF LEASES     *
AND RENTS               *
                        *    STATE OF LOUISIANA
BY:                     *
                        *
AGSPRING MISSISSIPPI REGION, LLC   *
a Delaware limited liability company   *    PARISHES OF MOREHOUSE
                        *    AND WEST CARROLL
IN FAVOR OF:             *
LARRY TUBBS,           *
                        *
TUBBS RICE DRYERS, INC.      *
a Louisiana corporation,        *
                        *
CHIEF VENTURES, L.L.C.,      *
a Louisiana limited liability company and   *
                        *
BIG RIVER GRAIN, LLC,       *
a Louisiana limited liability company    *
                        *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FILE NO. 238110

A true copy of original Filed for Record
this 13th day of Sept. 20 13
at 12:15 P.M. Book 256
Page 25 Date Reg. No. 245613
_Darlene Sullen_
Clerk of Court—West Carroll Parish, La.

     BE IT KNOWN, that on the date and place set forth below, to be effective as of
September 6, 2013;

     BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and
in the presence of the undersigned competent witnesses:

     PERSONALLY CAME AND APPEARED:

     **AGSPRING MISSISSIPPI REGION, LLC** [32-0409147], a
Delaware limited liability company ("**Mortgagor**"), duly organized,
validly existing and in good standing under the laws of the State of
Delaware, having its registered office and mailing address at 5251
West 116th Place, Suite 200, Leawood, Kansas 66211, appearing
herein by and through Brad Clark, its President and duly authorized
representative pursuant to the attached Consent of Sole Member and
Sole Manager;

who declared and acknowledged that said Mortgagor is justly and truly indebted unto:

NO:0104474/00001:164778v6

MORTGAGE
BOOK       PAGE
0710      172



PLAINTIFF'S EXHIBIT G

Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company (collectively as "Mortgagee"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVEN MILLION AND NO/100 ($7,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, payable to the order of Mortgagee in consecutive monthly installments of interest only due on the first day of each month, commencing July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June 26, 2018, which Note shall bear interest at the rate of Five and 75/100th (5.75%) per annum, from date until paid (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note").

Now, in order to secure (i) the full and punctual payment of all debts, Notes, and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "Mortgage", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "Loan Documents"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "Indebtedness"), that except for the Excluded Property (as hereinafter defined), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real property and rents and leases and all of

2

NO:0104474/00001:165066v2

MORTGAGE
BOOK        PAGE
0710        173

Mortgagor's estate, right, title and interest therein (hereinafter collectively called the **"Security"**):

The two parcels of immovable property described in <u>Exhibit A</u> attached hereto and made a part hereof, lying and being in the Parishes of Morehouse and West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the **"Land"**);

TOGETHER with all buildings, fixtures and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the **"Improvements"**);

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the **"Real Property"**);

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the **"Incorporeal Rights"**).

Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following assets and properties of Mortgagor have been pledged by Mortgagor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, **"Administrative Agent"**), and are expressly excluded from the foregoing provisions (collectively, the **"Excluded Property"**): (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all

3

Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among AgSpring, LLC, Mortgagor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time (the **"Credit Agreement"**).

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

4

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the Indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the Indebtedness in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $100,000,000.00. This Mortgage secures obligations and Indebtedness that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.   Payment of Indebtedness.  Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and

5

MORTGAGE
BOOK          PAGE
0710      176

perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.   Title.

(a)   Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on Exhibit B hereto (the "**Permitted Encumbrances**") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(a)   Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)   Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp

6

MORTGAGE
BOOK          PAGE
0710          177

taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d) Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3. Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4. Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5. Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security.

6. Insurance/Condemnation Proceeds. Mortgagor hereby assigns to Mortgagee all proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7. Assignment of Rents and Leases. As further security for the payment of the

7

MORTGAGE
BOOK        PAGE
0710       178

Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any

8

subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.    Events of Default.  Each of the following shall constitute an "**Event of Default**" hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)    Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(a)    The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.    Remedies Upon Default.  Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(b)    Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)    To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

(c)    Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

9

MORTGAGE
BOOK          PAGE
0710        180

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(d)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected. This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(e)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Mortgagee without removal may render the Collateral unusable and dispose of the Personal Property. To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and

10

MORTGAGE
BOOK          PAGE

0710        181

cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)   Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(f)   Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or by executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)   Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

11

NO:0104474/00001:164778v6

MORTGAGE
BOOK      PAGE
0710      182

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.  _Acceleration Interest_.  In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.  _Waiver of Statutory Rights_.  Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.  _Security Interest_.  This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 _et seq._)  Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to

12

MORTGAGE
BOOK        PAGE
0710        183

this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby. Upon the occurrence of any of the Events of Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13. Right of Entry. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14. Rights Cumulative. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15. Subrogation. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

13

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE
0710       184

16.    No Waiver.    Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

17.    Indemnification.    Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand. Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18    Attorneys' Fees.    Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code. Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.    Protection of Security; Cost and Expenses.    Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder. If Mortgagor fails to perform any of its covenants or agreements contained in this

14

MORTGAGE
BOOK        PAGE
0710        185

Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto. Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise. Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate. All such amounts shall be payable by Mortgagor immediately without demand. Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.     Notices.  Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing.  The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable.  For purposes hereof, the addresses are as follows:

If to Mortgagee:
Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC

15

NO:0104474/00001:164778v6

BOOK 0710  MORTGAGE  PAGE 186

c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266


If to Mortgagor:
Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer


21.   Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.   Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "**State**").  The agreed upon venue for all legal proceedings is the Parish in which the Land is located..

23.   Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.   Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.   Modifications.  This Mortgage may not be changed or terminated except in writing by both parties.  The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

26.   Bind and Inure.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.  The

16

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE

0710      187

covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.    Time of the Essence.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.    Business Days.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.    Certificates.  The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.    No Paraph.  No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.

31.    Partial Release of Pioneer Mortgage.  Mortgagee acknowledges that due to the security interests granted by Mortgagor in favor of Administrative Agent as hereinabove described, that it is necessary for Mortgagor to confirm that the Mortgage executed by Mortgagor in favor of Mortgagee dated as of June 26, 2013 and recorded in Mortgage Book 254, Page 787, West Carroll Parish, Louisiana (the "**Pioneer Mortgage**") does not encumber the Excluded Property or the Personal Property referenced therein. Mortgagee hereby authorizes Mortgagor and its agents, attorneys, or representatives to prepare and file an amendment under the Uniform Commercial Code as adopted in Louisiana to expressly exclude the Excluded Property from the security interests created by the Pioneer Mortgage.

<div align="center">[SIGNATURE PAGE BEGINS ON NEXT PAGE]</div>

17

NO:0104474/00001:164778v6

```
         MORTGAGE
   BOOK        PAGE
   0710      188
```

THUS DONE AND PASSED by the Mortgagor in my office in the County of Johnson, State of Kansas, on the 6th day of September, 2013, to be effective as of the date first set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:

MORTGAGOR:

AGSPRING MISSISSIPPI REGION, LLC,
a Delaware limited liability company

_Jennifer Trupka_

Jennifer Trupka
Print Name:

By: _____

Brad Clark
President

DUSTIN CLAVENGER
Print Name:

_Anne M. Yoesting_
NOTARY PUBLIC
Name: Anne Yoesting
Bar/Notary ID: 00067994-1
My Commission Expires: 2/3/16

ANNE YOESTING
MY COMMISSION EXPIRES
2/3/16

18

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE
0710        189

# EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

### Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.64 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

19

NO:0104474/00001:164778v6

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:   Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W. along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning. The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D. , et al. pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368. page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

MORTGAGE
BOOK       PAGE
0710       191

**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

Permitted Exceptions

All easements, servitudes and title covenants of public record.

21

NO:0104474/00001:164778v6

MORTGAGE
BOOK          PAGE
0710        192

## CONSENT OF SOLE MEMBER AND SOLE MANAGER
## OF AGSPRING MISSISSIPPI REGION, LLC

**WHEREAS,** the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "**Company**") has determined that it is in the best interest of the Company to refinance the existing $7.0 million loan to the Company from Larry Tubbs, an individual ("**Tubbs**"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("**TRD**"), Chief Ventures, L.L.C., a Louisiana limited liability company ("**CV**"), and Big River Grain, LLC, a Louisiana limited liability company ("**BRG**", and together with Tubbs, TRD, and CV, the "**Lender**"), to increase the loan amount to $17.0 million, and as security for said loan, to execute a mortgage and security interest in certain fixtures and immovable property of the Company described on **Exhibit A** attached hereto and made a part hereof.

**NOW THEREFORE, BE IT RESOLVED,** that the Company is hereby authorized and directed to execute and deliver a Promissory Note and grant a mortgage and security interest on the property of the Company described on **Exhibit A** attached hereto and made a part hereof, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "**Authorized Officer**"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

**RESOLVED,** that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

NO:0104474/00001:163602v5

MORTGAGE
BOOK    PAGE
0710    193

Dated as of September 6, 2013          SOLE MEMBER AND SOLE MANAGER

AGSPRING, LLC

_____
Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature this 6th day of September, 2013.

_____
Bradley K. Clark, Secretary

2

MORTGAGE
BOOK          PAGE
0710         194

NO:0104474/00001:163602v5

EXHIBIT A

Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy. No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.97 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

**A 31.868 ACRE TRACT**
**SITUATED IN**
**SECTION 10, T 20 N, R 10 E**
**WEST CARROLL PARISH, LOUISIANA**

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence,  North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

NO:0104474/00001:163602v5

MORTGAGE
BOOK       PAGE

0710      196

CERTIFIED TRUE COPY

AUG 2 8 2019

BY
DEPUTY CLERK, MOREHOUSE PARISH

## AMENDMENT OF MORTGAGE

**BE IT KNOWN** that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: **AGSPRING MISSISSIPPI REGION, LLC.**, a Delaware limited liability company (the *"Borrower"*) and **LARRY TUBBS**, an individual, **TUBBS RICE DRYERS, INC.**, a Louisiana corporation, **CHIEF VENTURES, L.L.C.**, a Louisiana limited liability company, and **BIG RIVER GRAIN, LLC.**, a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of September 6, 2013.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded September 13, 2013, in Mortgage Book 256, Page 25, under Date Register No. 245613 of the records of West Carroll Parish, Louisiana, and recorded September 13, 2013, in Mortgage Book 710, Page 172, under Date Register No. 238110 of the records of Morehouse Parish, Louisiana(collectively, the "Mortgage").

WHEREAS, an uncertainty appeared in sums borrowed and advanced in the first paragraph of Page 2. This paragraph should be amended and replaced entirely.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the 1st paragraph on page 2 of the Mortgage by substituting the following:

1.      For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVENTEEN MILLION AND NO/100 ($17,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein, with a full and final payment' of all principal and interest due hereon being due and payable on the "Maturity Date" shown therein) (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note"). This note may be prepaid in whole or in part at any time without payment of premium or penalty.

A True Copy of Original Filed For Record
This 3rd Day of Dec., 2015
At 3:40 P M Book 265
Page 546 Date Reg. No 250832
Darlene Fuller
Clerk of Court, West Carroll Parish, LA

PLAINTIFF'S EXHIBIT
H

WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 and continued on the top of page 4 of the above described mortgages. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 and continued on the top of page 4 to substitute in its place the following:

Notwithstanding the foregoing, or any provision to the contrary contained herein. All of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendments, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of West Carroll and Morehouse Parishes, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in West Carroll and Morehouse Parishes; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

[THE BELOW SPACE IS INTENTIONALLY LEFT BLANK]

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3rd day of December , A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

_____
**Barbie Smith**

_____
**Erline W. Vickery**

MORTGAGEE:

_____
LARRY TUBBS

**TUBBS RICE DRYERS, INC.**

BY: _____

**CHIEF VENTURES, L.L.C.**

BY: _____
LARRY TUBBS, MANAGER

**BIG RIVER GRAIN, LLC.**

BY: _____
LARRY TUBBS, MANAGER

_____
NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the ___ day of December, A.D., 2015, at my office in _Johnson_ County, _Kansas_____ after due reading of the whole.

WITNESSES:

BORROWER:

AGSPRING MISSISSIPPI REGION, LLC., a Delaware limited liability company

Signature _____
Printed name: _Jennifer Mick_

BY: _____
Name: _BRAD CLARK_
Title: _PRESIDENT_

Signature _____
Printed name: _Luann Eskew_

_____
NOTARY PUBLIC

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

550

## AGSPRING MISSISSIPPI REGION, LLC

### INCUMBENCY CERTIFICATE

December __1__, 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____

Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____

Name: Bradley K. Clark
Title: President and Secretary

FILE NO.
248060

CAROL JONES
CLERK OF COURT
MOREHOUSE

15 DEC ... PM 12:38

### AMENDMENT OF MORTGAGE DEPUTY CLERK

**BE IT KNOWN** that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: **AGSPRING MISSISSIPPI REGION, LLC.**, a Delaware limited liability company (the *"Borrower"*) and **LARRY TUBBS**, an individual, **TUBBS RICE DRYERS, INC.**, a Louisiana corporation, **CHIEF VENTURES, L.L.C.**, a Louisiana limited liability company, and **BIG RIVER GRAIN, LLC.**, a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of September 6, 2013.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded September 13, 2013, in Mortgage Book 256, Page 25, under Date Register No. 245613 of the records of West Carroll Parish, Louisiana, and recorded September 13, 2013, in Mortgage Book 710, Page 172, under Date Register No. 238110 of the records of Morehouse Parish, Louisiana(collectively, the "Mortgage").

WHEREAS, an uncertainty appeared in sums borrowed and advanced in the first paragraph of Page 2. This paragraph should be amended and replaced entirely.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the 1st paragraph on page 2 of the Mortgage by substituting the following:



1.  For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of SEVENTEEN MILLION AND NO/100 ($17,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100 ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein, with a full and final payment' of all principal and interest due hereon being due and payable on the "Maturity Date" shown therein) (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "Note"). This note may be prepaid in whole or in part at any time without payment of premium or penalty.

MORTGAGE
BOOK          PAGE
0736          555



WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 and continued on the top of page 4 of the above described mortgages. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 and continued on the top of page 4 to substitute in its place the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein. All of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendments, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of West Carroll and Morehouse Parishes, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in West Carroll and Morehouse Parishes; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

[THE BELOW SPACE IS INTENTIONALLY LEFT BLANK]

MORTGAGE
BOOK          PAGE
0736          556

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3rd day of _December_ , A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

Barbie Smith

Erline W. Vickery

MORTGAGEE:

LARRY TUBBS

TUBBS RICE DRYERS, INC.

BY:

CHIEF VENTURES, L.L.C.

BY:
LARRY TUBBS, MANAGER

BIG RIVER GRAIN, LLC.

BY:
LARRY TUBBS, MANAGER

NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

MORTGAGE
BOOK        PAGE
0736        557

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 1 day of December, A.D., 2015, at my office in **Johnson** County, **Kansas** , after due reading of the whole.

WITNESSES:

Signature
Printed name _Jennifer MICK_

Signature
Printed name _Luanne Eskew_

NOTARY PUBLIC

**BORROWER:**

**AGSPRING MISSISSIPPI REGION, LLC.,** a Delaware limited liability company

BY:
Name: _BRAD CLARK_

Title: _PRESIDENT_

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

MORTGAGE
BOOK       PAGE
0736        558

## AGSPRING MISSISSIPPI REGION, LLC

### INCUMBENCY CERTIFICATE

December __|__, 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| **Name** | **Office Held** | **Signature** |
|---|---|---|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____
Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____
Name: Bradley K. Clark
Title: President and Secretary

MORTGAGE
BOOK          PAGE
0736          559

CERTIFIED TRUE COPY

AUG 2 6 2019

BY _____ DEPUTY CLERK, MOREHOUSE PARISH

| MORTGAGE, SECURITY | * | UNITED STATES OF |
| AGREEMENT AND | * | AMERICA |
| ASSIGNMENT OF LEASES | * | |
| AND RENTS | * | |
| | * | |
| BY: | * | STATE OF LOUISIANA |
| | * | |
| AGSPRING MISSISSIPPI REGION, LLC | * | |
| a Delaware limited liability company | * | PARISH OF |
| | * | EAST CARROLL |
| IN FAVOR OF: | * | |
| LARRY TUBBS, | * | |
| | * | |
| TUBBS RICE DRYERS, INC. | * | |
| a Louisiana corporation, | * | |

State of Louisiana    **REGISTER**
Parish of East Carroll    No. **89267**
Filed: **Feb 11, 2014** at **2:00 PM**
~~Conveyance Book~~_____ Page_____
Mortgage Book **220** Page **192**
_Barbara A. Carter_
Clerk and Ex-Officio Recorder

| CHIEF VENTURES, L.L.C., | * |
| a Louisiana limited liability company and | * |
| | * |
| BIG RIVER GRAIN, LLC, | * |
| a Louisiana limited liability company | * |

* * * * * * * * * * * * * * * * * *

BE IT KNOWN, that on the date and place set forth below, to be effective as of February 1, 2014;

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

**AGSPRING MISSISSIPPI REGION, LLC** [TIN XX-XXX_____], a Delaware limited liability company ("**Mortgagor**"), duly organized, validly existing and in good standing under the laws of the State of Delaware, having its registered office and mailing address at 5251 West 116th Place, Suite 200, Leawood, Kansas 66211, appearing herein by and through Brad Clark, its President and duly authorized representative pursuant to the attached Consent of Sole Member and Sole Manager;

**Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company** (collectively as "**Mortgagee**"), having a collective mailing address at P.O. Box 38, Pioneer, Louisiana 71266;

NO:0104474/00001:167538v4

192

PLAINTIFF'S EXHIBIT 3

For all sums loaned and advanced or to be loaned and advanced, obligations incurred or to be incurred or notes made or to be made in favor of Mortgagee not to exceed One Hundred Million dollars ($100,000,000.00) including, but not limited to, the sum of TWENTY-TWO MILLION AND NO/100 ($22,000,000.00) DOLLARS, which was loaned and advanced to Mortgagor, and for the reimbursement thereof, Mortgagor has made and subscribed, as evidence of said indebtedness one certain Promissory Note dated as of June 26, 2013 in the principal sum of Seven Million and No/100  ($7,000,000.00) DOLLARS, as amended and restated by that certain Amended and Restated Promissory Note dated as of September 6, 2013, in the Principal Amount of $17,000,000.00, and further amended and restated by the Second Amended and Restated Promissory Note dated as of February 1, 2014, in the Principal Amount of $22,000,000.00, payable to the order of Mortgagee and payable in consecutive monthly payments as set forth therein,  with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date") (which Promissory Note, together with any increases or extensions thereof as evidenced by any renewal or refinancing note or notes delivered in substitution therefor or other amendments or supplements thereto, shall be collectively referred to hereinafter as the "**Note**").  This note may be prepaid in whole or in part at any time without payment of premium or penalty.

Now, in order to secure (i) the full and punctual payment of all debts,  Notes,  and/or obligations of mortgage to Mortgagee for all funds advanced or to be advanced, when due or at maturity, or as same may be extended or renewed, in principal and interest, together with all deferral and delinquency charges, prepayment premiums, costs and attorney's fees as therein stipulated, (ii) the performance of the covenants herein contained and the payment of any monies expended by Mortgagee in connection therewith, (iii) the payment of all obligations and the performance of all covenants of Mortgagor under this Mortgage (hereinafter the "**Mortgage**", and together with all of the documents executed by Mortgagor or Borrower or their respective partners in connection with the aforesaid loan, being referred to herein collectively as the "**Loan Documents**"), and (iv) any and all additional advances made by Mortgagee to protect or preserve the Security (as defined below) or the security interest created hereby on the Security, or for taxes, assessments, or insurance premiums as hereinafter provided or for performance of any of Mortgagor's obligations hereunder or for any other purpose provided herein (whether or not the original Mortgagor remains the owner of the Security at the time of such advances) (all of the aforesaid indebtedness and obligations of Mortgagor being herein called the "**Indebtedness**"), that except for the Excluded Property (as hereinafter defined), the Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real property and rents and leases and all of Mortgagor's estate, right, title and interest therein (hereinafter collectively called the "**Security**"):

The three parcels of immovable property described in Exhibit A attached hereto and made a part hereof, lying and being in the ParishEast Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the "**Land**");

TOGETHER with all buildings, fixtures and other improvements now or hereafter

NO:0104474/00001:167538v4

2

*193*

located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the "**Improvements**");

TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;

TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "**Real Property**");

TOGETHER with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the "**Incorporeal Rights**").

Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following assets and properties of Mortgagor have been pledged by Mortgagor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "**Administrative Agent**"), and are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"): (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among AgSpring, LLC, Mortgagor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time (the "**Credit Agreement**") but such meanings may not be construed or changed to include any Excluded Property.

Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Upon and after the occurrence of an Event of Default (as hereinafter defined), the Mortgagee may, at its option, carry out and enforce all or any specified portion of the Incorporeal Rights collaterally assigned or pledged by the Mortgagor hereunder, and the Mortgagee shall have the right to exercise all rights of a pledgee to enforce this pledge under Louisiana law.

Mortgagor does hereby name, constitute and appoint Mortgagee and Mortgagee's agents as Mortgagor's true and lawful agent and attorney-in-fact with full power of substitution and with power for the Mortgagee in its name and capacity or in the name and capacity of the Mortgagor to carry out and enforce any or all of the Incorporeal Rights collaterally assigned and pledged under this Mortgage and at the Mortgagee's sole discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of the Mortgagor or otherwise, that the Mortgagee may deem necessary or desirable in order to collect and enforce the payment and performance of the obligations owed to the Mortgagor under the Incorporeal Rights. Upon receipt of a written notice from the Mortgagor that an Event of Default exists, the parties to the Incorporeal Rights (other than the Mortgagor) are hereby expressly and irrevocably authorized and directed to pay any and all amounts and perform any duties, liabilities or obligations due to the Mortgagor pursuant to any of the Incorporeal Rights to and for the Mortgagee or such nominee as the Mortgagee may designate in such notice. The power of attorney granted to Mortgagee and its agents is coupled with an interest and may not be revoked by Mortgagor as long as this Mortgage remains in effect.

The Mortgagee is hereby vested with full power to use all remedies, legal and equitable, deemed by it necessary or proper to enforce this collateral assignment and pledge and to exercise the Mortgagor's right under the Incorporeal Rights assigned hereunder.

Nothing in this Mortgage shall be construed to impose any obligation, responsibility or liability on Mortgagee or its agents to prosecute any obligations, duties, responsibilities or liabilities of Mortgagor under or in connection with the Incorporeal Rights, it being understood and agreed that this collateral assignment and pledge of the Incorporeal Rights is a collateral assignment and pledge of rights only and not of any obligations, duties, responsibilities or liabilities. Mortgagee does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of the Mortgagor with respect to any of the Incorporeal Rights. Mortgagor agrees that this collateral assignment and pledge shall not obligate Mortgagee or its agents, employees, successors and assigns for the performance of any of the terms and conditions of any of the Incorporeal Rights or for the performance or discharge of any obligations of Mortgagor under any of the Incorporeal Rights.

Mortgagor does furthermore by these presents hereby acknowledge the Indebtedness to Mortgagee and confess judgment in favor of Mortgagee for the full amount of the

Indebtedness in principal, interest and attorney's fees and for all other costs and any sums that the Mortgagee may advance during the term of this Mortgage in accordance with the terms of this Mortgage for the payment of premiums of insurance, payment of taxes and charges, making of repairs, or for the protection and preservation of the security of this Mortgage as authorized elsewhere in this act up to an amount equal to twice the face amount of the Note, and expressly waives (a) the benefit of appraisement, as provided in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring the same; (b) the demand and three (3) days delay accorded by Article 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; and (e) the benefit of the other provisions of Articles 2331, 2722 and 2723, Louisiana Code of Civil Procedure, and any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above which would prevent the immediate seizure and sale of the Security. The maximum amount of Indebtedness secured by this Mortgage both as a mortgage and as a collateral assignment of leases and rents is $100,000,000.00. This Mortgage secures obligations and Indebtedness that may arise in the future in accordance with La. C.C. art. 3298.

AND, Mortgagor hereby further covenants, agrees and warrants as follows:

1.    Payment of Indebtedness.  Mortgagor will pay any and all sums due hereunder, with interest thereon, in accordance with the provisions of this Mortgage, and will keep and perform all the covenants, promises and agreements and pay all sums provided in (i) any promissory note or notes executed by Mortgagor at any time hereafter issued to evidence the principal indebtedness, (ii) this Mortgage, and (iii) any and all other Loan Documents executed by Mortgagor, if any, all in the manner herein or therein set forth.

2.    Title.

(a)    Mortgagor warrants that, subject to the Permitted Encumbrances (as hereinafter defined), it has good and merchantable title to an indefeasible fee simple estate in the Land described in Exhibit "A" attached hereto, and the Improvements; that Mortgagor's interest in the Security is subject to no liens, charges, encumbrances, easements, restrictions or leases, except those easements, restrictions, liens, leases and encumbrances listed on Exhibit B hereto (the "**Permitted Encumbrances**") to which this Mortgage is expressly subject, or which may hereafter be created in accordance with the terms hereof; that Mortgagor warrants that Mortgagor has full power and authority to grant, bargain, sell and convey its interest in the Security in the manner and form herein done or intended hereafter to be done; that this Mortgage is and shall remain a valid and enforceable first lien on its interest in the Security subject only to the Permitted Encumbrances or other matters hereafter created in accordance with the terms of this Mortgage or otherwise approved in writing by Mortgagee; that Mortgagor and its successors and assigns shall warrant and defend its interest in the Security forever against the lawful claims and demands of all persons whomsoever, other than as excepted above; and that this covenant shall not be extinguished by any foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder; however, this covenant shall be only for the benefit of Mortgagee (and its successors in interest under this Mortgage) and the immediate successor in title to the Real Property pursuant to any exercise

NO:0104474/00001:167538v4

5

196

of the foreclosure sale, *dation en paiement*, or exercise of other remedies of Mortgagee hereunder, and that Mortgagee shall have the right, at its option and at such time or times as it, in its sole and absolute discretion, shall reasonably deem to be necessary, to take whatever action it may deem necessary to defend or uphold the lien of this Mortgage or to otherwise enforce any of the rights of Mortgagee hereunder or any obligation secured hereby, including without limitation, the right to institute appropriate legal proceedings for such purposes.

(a)     Mortgagor has and shall maintain title to its interest in the Security, including any additions or replacement thereto, free of all security interests, liens and encumbrances, other than the security interest granted hereunder, the Permitted Encumbrances and such matters as otherwise may be accepted by Mortgagee in writing, and has good right to subject its interest in the Security to the security interests created hereby.

(c)     Mortgagor shall pay all filing, registration or recording fees of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Security, and any instrument of further assurance, and all federal, state, parish, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, and the other Loan Documents, any renewals or supplements of the foregoing, any security instrument with respect to the Security or any instrument of further assurance.

(d)     Mortgagor shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to Mortgagor or to its interest in the Security or any part thereof.

3.     Usury. If any interest or other charges are ever deemed to exceed the maximum amount permitted by law then: (a) the amount of interest or charges payable hereunder shall be reduced to the maximum amount permitted by law; and (b) any excess amount previously collected which exceeded the maximum amount permitted by law will be credited against the outstanding principal indebtedness. If the principal indebtedness has already been paid, the excess amount paid will be refunded to Mortgagor.

4.     Impositions. Mortgagor will pay, not later than the last day on which the same may be paid without penalty or interest, all real estate taxes, sewer rents, water charges and all other municipal and governmental assessments, rates, charges, impositions and liens which now or hereafter are imposed by law upon the Security, whether relating directly to the Security or to property adjoining or abutting the Security.

5.     Insurance. Mortgagor shall at all times until the Indebtedness shall be paid in full, keep the Security insured against loss or damage for its full replacement cost (which cost may be reset every two years at Mortgagee's option) under policies and in amounts customary for properties similar to the Security, and all such insurance policies shall include a clause reflecting Mortgagee as loss payee.

6.     Insurance/Condemnation Proceeds. Mortgagor hereby assigns to Mortgagee all

NO:0104474/00001:167538v4

6

proceeds of any insurance or condemnation awards which Mortgagor may be entitled to receive for loss or damage to or taking of the Security. In the event of loss or damage to, or a taking of, the Security, the proceeds of said insurance or condemnation award shall be payable to Mortgagee alone and Mortgagor hereby authorizes and directs any affected insurance company or government agency to make payment of the insurance proceeds or condemnation awards directly to Mortgagee. In the event that any such insurance proceeds or condemnation awards are paid directly to Mortgagor, Mortgagor shall make such proceeds or awards available to Mortgagee within five (5) days of Mortgagor's receipt thereof. No such loss or damage shall itself reduce the Indebtedness.

7.    <u>Assignment of Rents and Leases</u>.   As further security for the payment of the Indebtedness, Mortgagor hereby collaterally grants, transfers, assigns and sets over unto Mortgagee, pursuant to La. R.S. 9:§ 4401 *et seq.* all of its right title and interest in and to all present and future leases, oral or written, of the Land and of space in the Improvements together with all modifications, supplements, extensions and renewals thereof now existing or hereafter made, and also together with the rights to sue for, collect and receive all rents, prepaid rents, additional rents, security deposits, profits, and issues of the Security, to be applied by Mortgagee in payment of the Indebtedness, and also together with any and all guaranties of the obligations of the tenants thereunder and the rights of Mortgagor to receive, hold and apply all bonds and security in all of said leases provided to be furnished to the lessor thereunder, and also together with the rights of Mortgagor to enforce any and all of the agreements, terms, covenants and conditions in all of said leases provided and to give notices thereunder. Upon the occurrence of an Event of Default hereunder, Mortgagee may receive and collect said rents, issues and profits personally or through a keeper or receiver so long as any such Event of Default shall exist, and during the pendency of any foreclosure proceeding, and Mortgagor agrees to consent to a keeper or receiver if this is believed necessary or desirable by Mortgagee to enforce its rights under this Section. Mortgagor hereby makes, constitutes and appoints Mortgagee its attorney-in-fact, giving unto said attorney irrevocable power, either in its own name or in the name of Mortgagor, upon and during the continuance of an Event of Default, to take all necessary steps, by proceedings in court or otherwise, to notify any and all Lessees of this assignment and to collect all rentals, revenues, issues, and profits, to cause the said premises to be vacated and, when vacant, to relet such premises and to do all such things in such manner and on such terms as said Mortgagee may deem best. Until the occurrence of an Event of Default hereunder, Mortgagee has granted to Mortgagor a revocable license to collect the rents and enforce the leases as provided for in the Assignment.

Mortgagor agrees that it shall execute at any future time or times, and as often as may be deemed necessary, on demand of Mortgagee, all such further instruments and/or assignments in such form and effect as may be deemed reasonably proper by Mortgagee to the better carrying out of the true intent and meaning of the assignments hereinabove set forth.

Nothing in this Mortgage shall be construed to obligate Mortgagee, expressly or by implication, to perform any of the covenants of Mortgagor as lessor under any of the leases hereinabove assigned or to pay any sum of money or damages therein provided to be paid by the lessor.

If Mortgagee shall from time to time suffer or permit Mortgagor to sue for, collect or

receive any rent, additional rent, percentage rent or other sums in said leases provided to be paid to Mortgagor thereunder, or to receive, hold or apply any bonds or security thereunder, or to enforce any of the agreements, terms, covenants or conditions thereunder or to give notices thereunder, neither such sufferance nor permission shall constitute a waiver or relinquishment by Mortgagee of the rights hereunder and hereby assigned to Mortgagee with respect to any subsequent rent, additional rent, or any other sums payable to the lessor under said leases or with respect to any subsequent receipt, holding or application of bonds or security or any subsequent enforcement of such agreements, terms, covenants or conditions or any subsequent notices.

8.     Events of Default.  Each of the following shall constitute an **"Event of Default"** hereunder and shall entitle Mortgagee to exercise its remedies hereunder and under any of the other Loan Documents or as otherwise provided by law:

(a)     Any payment of any installment or other payment of principal, interest, taxes or other amounts due under the Note, this Mortgage or any other Loan Document that is not received by Mortgagee, subject to applicable notice and cure periods set forth in the Note, on the date on which such payment is due and payable;

(b)     The occurrence of any other event of default under the Note or the other Loan Documents, subject to applicable notice and cure periods set forth in the Note.

9.     Remedies Upon Default.  Immediately upon the occurrence of and during the continuance of any Event of Default, Mortgagee shall have the option, in addition to and not in lieu of or substitution for all other rights and remedies provided in this Mortgage or any other Loan Documents or provided by law or in equity, and is hereby authorized and empowered by Mortgagor, to do any or all of the following:

(a)     Declare without further notice the entire unpaid amount of the Indebtedness immediately due and payable, and, at Mortgagee's option, (i) to bring suit therefor, or (ii) to bring suit for any delinquent payment of or upon the Indebtedness, or (iii) to take any and all steps and institute any and all other proceedings in law or in equity that Mortgagee deems to be necessary to enforce payment of the Indebtedness and performance of other obligations secured hereunder and to protect the lien of this Mortgage.

(b)     To cause all and singular the Security to be seized and sold under executory process without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as Mortgagee may determine, to the highest bidder for cash, or on such terms as may be acceptable to Mortgagee, and Mortgagor does by these presents consent, agree and stipulate and authorize Mortgagor to institute such sale by executory process.

(c)     Proceed against the Personal Property in accordance with Mortgagee's rights and remedies with respect to the Personal Property or sell the Personal Property separately and without regard to the remainder of the Security in accordance with Mortgagee's rights and remedies as a "secured party" under the Louisiana Uniform Commercial Code as well as other rights and remedies available at law or in equity.

(d)     Cause to be brought down to date a title examination and tax histories of the Security, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories.

(e)     Mortgagee may, at its option without waiving any Event of Default, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate hereunder. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Security or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without hereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, except the gross negligence or willful misconduct of Mortgagee, its agents, employees and contractors.

(f)     In the event the Property or any part thereof is seized as an incident to an action for the recognition or the enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias, or otherwise, Mortgagor and Mortgagee hereby agree that the Court issuing any such order shall, if petitioned for by Mortgagee, to appoint as a keeper of the Property, the Mortgagee, or any agent designated by Mortgagee or any person named by the Mortgagee at the time such seizure is affected. This designation is made pursuant to La.R.S. 9:§5136 et seq., inclusive, as the same may be amended, and Mortgagee shall be entitled to all the rights and benefits afforded thereunder including reasonable compensation.

(d)     Upon the occurrence and during the continuance of an Event of Default and prior to the curing thereof, Mortgagee shall have all of the remedies of a "secured party" under the Uniform Commercial Code of Louisiana, including without limitation the right and power to sell by private sale or executory process, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of Personal Property, or any part thereof, and with or without judicial process, center upon any Property on which the Personal Property, or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Mortgagee's option Mortgagor shall assemble the Personal Property and make it available to Mortgagee at the place and at the time designated in the demand. Mortgagee shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Mortgagee without removal may render the Collateral unusable and dispose of the Personal Property. To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Mortgagor existing after an Event of Default hereunder, and to the extent any notice is required and cannot be waived, Mortgagor agrees, that as it relates to this subsection (g) only, if the notice is marked, postage prepaid, to Mortgagor at the above address at least twenty (20) days before the time of the sale or disposition, the notice shall be deemed reasonable and shall fully satisfy any requirement for giving of notice.

(h)     Upon any foreclosure sale, Mortgagee may bid for and purchase the Security and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase

NO:0104474/00001:167538v4

9

*200*

price. In the event of any sale of the Security by foreclosure, through judicial proceedings, by advertisement or otherwise, the proceeds of any such sale which are applied in accordance with this Mortgage shall be applied in the following order, except to the extent inconsistent with applicable law: (i) all expenses incurred for the collection of the Indebtedness and the foreclosure of this Mortgage, including reasonable attorneys' fees, or such reasonable attorneys' fees as are permitted by law; (ii) all sums expended or incurred by Mortgagee directly or indirectly in carrying out the terms, covenants and agreements of the Note or notes evidencing the Indebtedness, of this Mortgage and any other Loan Documents, together with interest thereon as therein provided; (iii) all accrued and unpaid interest upon the Indebtedness; (iv) the unpaid principal amount of the Indebtedness and (v) the surplus, if any, to the person or persons legally entitled thereto.

(i)     Any such sale or sales made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of executory process, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(j)     Upon any sale made under or by virtue of this Section 8, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Security or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage. Mortgagee, upon so acquiring the Security, or any part thereof, shall be entitled to hold, lease, rent, operate, manage and sell the same in any manner provided by applicable laws.

In the event of any acceleration of the Note or  pursuant to the first paragraph of this Section, Mortgagor shall pay to Mortgagee together with the Indebtedness an amount equal to the Default Prepayment Fee provided for in the Note and such fee shall be included as part of the Indebtedness.

Failure to exercise any option to accelerate in the event of a default or other circumstance permitting the exercise of such option, shall not constitute a waiver of the default or of the right to exercise such option at a later time, or a waiver of the right to exercise such option in the event of any other default or circumstance specified above.

10.     <u>Acceleration Interest</u>. In addition to any late payment charge which may be due under the Note, Mortgagor shall pay interest at the Default Rate from and after the first to occur of the following events: if Mortgagee elects to cause the acceleration of the Indebtedness; if a petition under Title 11, United States Code, shall be filed by or against Mortgagor or if Mortgagor shall seek or consent to the appointment of a receiver or trustee for itself or for any of the Security, file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, make a general assignment for the benefit of

201

creditors, or be unable to pay its debts as they become due; if a court shall enter an order, judgment or decree appointing, with or without the consent of Mortgagor, a receiver or trustee for it or for any of the Security or approving a petition filed against Mortgagor which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and any such order, judgment or decree shall remain in force, undischarged or unstayed, sixty (60) days after it is entered; or if all sums due hereunder are not paid on the maturity date as set forth in the Note, until the date the outstanding Indebtedness, together with all accrued interest and other amounts payable hereunder, under the Note, or under any of the other Loan Documents are paid in full.

11.    Waiver of Statutory Rights. Mortgagor agrees, to the full extent permitted by law, that upon the occurrence of an Event of Default on the part of Mortgagor hereunder, neither Mortgagor nor anyone claiming through or under Mortgagor will set up, claim, or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, stay, homestead, or extension laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, or the sale of the Security, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully do so, the benefit of all such laws, and any and all rights to have the assets subject to the security interest of this Mortgage marshaled upon any foreclosure or sale under the power granted herein.

12.    Security Interest. This Mortgage shall, as to any equipment and other Personal Property covered hereby, be deemed to constitute a security agreement, and Mortgagor, as debtor, hereby grants to Mortgagee, as secured party, a continuing security interest therein pursuant to the Louisiana Uniform Commercial Code (La. R.S. 10:9-101 *et seq.*) Mortgagor agrees, upon request of Mortgagee, to furnish an inventory of Personal Property owned by it and subject to this Mortgage and, upon request by Mortgagee, to execute any supplements to this Mortgage, any separate security agreement and any financing statements and continuation statements in order to include specifically said inventory of Personal Property or otherwise to perfect the security interest granted hereby. Upon the occurrence of any of the Events of Default referred to herein, Mortgagee shall have all of the rights and remedies of a secured party under the Louisiana Uniform Commercial Code or otherwise provided by law or by this Mortgage, including but not limited to the right to seize and sell the Personal Property by executory process, to require the Mortgagor to assemble such Personal Property and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties, the right to take possession of such Personal Property with or without demand and with or without process of law and the right to sell and dispose of the same and distribute the proceeds according to law. The parties hereto agree that any requirement of reasonable notice shall be met if Mortgagee sends such notice to the Mortgagor at least twenty (20) days prior to the date of sale, disposition or other event giving rise to the required notice, and that the proceeds of any such disposition of any such Personal Property may be applied by Mortgagee first to the reasonable expenses in connection therewith, including reasonable attorneys' fees and legal expenses incurred, and then to payment of the Indebtedness. With respect to the Personal Property that has become so attached to the Real Property that an interest therein arises under the real property law of the State, this Mortgage shall also constitute a financing statement and a fixture filing under the

NO:0104474/00001:167538v4

11

202

Louisiana Uniform Commercial Code. Mortgagor hereby authorizes Mortgagee to file a UCC-1 financing statement to evidence the security interest created hereby.

13. <u>Right of Entry</u>. Mortgagee and Mortgagee's representatives may at all times and upon at least 48 hours notice to Mortgagor enter upon the Security and inspect the same, or cause it to be inspected by agents, employees, or independent contractors of Mortgagee, and show the same to others, but Mortgagee shall not be obligated to make any such entry or inspection. In exercising such right of entry, Mortgagee and its representatives shall not unreasonably interfere with occupancy rights of tenants of the Security.

14. <u>Rights Cumulative</u>. Each right and remedy of Mortgagee under this Mortgage, the Note and any other Loan Documents, shall be in addition to every other right and remedy of Mortgagee and such rights and remedies may be enforced separately or in any combination.

15. <u>Subrogation</u>. To the extent that proceeds of the Indebtedness are used to pay any outstanding lien, charge or encumbrance affecting the Security, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all rights, interest and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; provided, however, that the terms and provisions hereof shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Mortgagee is subrogated hereunder.

16. <u>No Waiver</u>. Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions hereof to be performed by Mortgagor.

17. <u>Indemnification</u>. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall indemnify and hold Mortgagee harmless from and against, and shall be responsible for, all obligations, liabilities, losses, costs, expenses, fines, penalties or damages (including attorneys' fees) which Mortgagee may incur by reason of this Mortgage or with regard to the Security prior to the exercise of any remedies under this Mortgage. Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall defend Mortgagee against any claim or litigation involving Mortgagee for the same, and should Mortgagee incur such obligation, liability, loss, cost, expense, fine, penalty or damage, then Mortgagor shall reimburse Mortgagee upon demand. Any amount owed Mortgagee under this provision shall bear interest at the Default Rate set forth herein and shall be secured hereby.

18 <u>Attorneys' Fees</u>. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees" in this document includes but is not limited to both the reasonable fees, charges and costs incurred by Mortgagee through Mortgagee's retention of outside legal counsel and the allocable reasonable fees, costs and charges for services rendered by Mortgagee's in-house counsel. Any reference to "attorney fees", "attorneys' fees", or "attorney's fees, shall also include but not be limited to those reasonable attorneys or legal fees, costs and charges

NO:0104474/00001:167538v4

12

203

incurred by Mortgagee in the collection of any Indebtedness, the enforcement of any obligations hereunder, the protection of the Security, the foreclosure of this Mortgage and Security Agreement, the sale of the Security, the defense of actions arising hereunder and the collection, protection or setoff of any claim Mortgagee may have in a proceeding under Title 11, United States Code. Attorneys Fees provided for hereunder shall accrue whether or not Mortgagee has provided notice of default or of an intention to exercise its remedies for such default.

19.    <u>Protection of Security; Cost and Expenses</u>.  Except to the extent of Mortgagee's intentional or negligent acts or omissions, Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof granted and conveyed by Mortgagor or the rights or powers of Mortgagee, and shall pay all costs and expenses, including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Mortgage or to enforce or establish any other rights or remedies of Mortgagee hereunder.  If Mortgagor fails to perform any of its covenants or agreements contained in this Mortgage, or if any action or proceeding is commenced which affects Mortgagee's interest in the Security or any part thereof, including, but not limited to, eminent domain, code enforcement, or proceedings of any nature whatsoever under any federal or state law, whether now existing or hereafter enacted or amended, relating to bankruptcy, insolvency, arrangement, reorganization or other form of debtor relief, or to a decedent, then Mortgagee may, but without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder, make such appearances, disburse such sums and take such action as Mortgagee deems necessary or appropriate to protect Mortgagee's interest, including, but not limited to, disbursement of reasonable attorneys' fees, entry upon the Security to make repairs or take other action to protect the security hereof, and payment, purchase, contest or compromise of any encumbrance, charge or lien which in the judgment of either Mortgagee appears to be prior or superior hereto.  Mortgagor further agrees to pay all reasonable expenses of Mortgagee (including without limitation fees and disbursements of counsel) incident to the protection of the rights of Mortgagee hereunder, or to enforcement or collection of payment of the Indebtedness, whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Mortgagor, or otherwise.  Any amounts disbursed by Mortgagee pursuant to this Section shall be additional indebtedness of Mortgagor secured by the Loan Documents as of the date of disbursement and shall bear interest at the Default Rate.  All such amounts shall be payable by Mortgagor immediately without demand.  Nothing contained in this Section shall be construed to require Mortgagee to incur any expense, make any appearance, or take any other action.

20.    <u>Notices</u>.  Any notice, demand, request, statement or consent made hereunder shall be in writing, signed by the party giving such notice, request, demand, statement, or consent, and shall be deemed to have been properly given when either delivered personally, delivered to a reputable overnight delivery service providing a receipt or deposited in the United States mail, postage prepaid and registered or certified return receipt requested, at the address set forth below, or at such other address within the continental United States of America as may have theretofore have been designated in writing.  The effective date of any notice given as aforesaid shall be, and notice shall be deemed to have been properly given and received, on

NO:0104474/00001:167538v4

13

*204*

the date of personal service, one (1) business day after delivery to such overnight delivery service, or three (3) business days after being deposited in the United States mail, whichever is applicable. For purposes hereof, the addresses are as follows:

If to Mortgagee:

Larry G. Tubbs
Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC
c/o Larry G. Tubbs
P.O. Box 38
Pioneer, LA 71266

If to Mortgagor:

Agspring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211
Attention: Chief Executive Officer

21.     Release.  Upon the payment in full of all sums secured by this Mortgage and performance of all monetary and non-monetary obligations of Mortgagor and Borrower hereunder or under the other Loan Documents, Mortgagee shall release the Security from the lien of this Mortgage and shall surrender all notes evidencing indebtedness secured by this Mortgage to Mortgagor.

22.     Applicable Law.  The provisions of this Mortgage shall be construed in accordance with the laws of the State of Louisiana (the "**State**").  The agreed upon venue for all legal proceedings is the  Parish in which the Land is located..

23.     Invalidity.  If any provision of this Mortgage shall be held invalid or unenforceable, the same shall not affect in any respect whatsoever the validity of the remainder of this Mortgage, except that if such provision relates to the payment of a monetary sum, then Mortgagee may, at its option, declare the Indebtedness due and payable upon ninety (90) days prior written notice to Mortgagor and, provided there exists no Event of Default hereunder, without prepayment fee or premium.

24.     Captions.  The captions in this instrument are inserted only as a matter of convenience and for reference, and are not and shall not be deemed to be any part hereof.

35.     Modifications.  This Mortgage may not be changed or terminated except in writing by both parties.  The provisions of this Mortgage shall extend and be applicable to all renewals, amendments, extensions, consolidations, and modifications, of the other Loan Documents, and any and all references herein to the Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations, or modification thereof.

NO:0104474/00001:167538v4

14

205

26.     Bind and Inure.  The provisions of this Mortgage shall be binding on the Mortgagor and its heirs, successors and assigns, and any subsequent owners of the Security.  The covenants of Mortgagor herein shall run with the Land, and this Mortgage and all of the covenants herein contained shall inure to the benefit of Mortgagee, its successors and assigns. Any assignment by Mortgagee shall not modify Mortgagor's or Mortgagee's rights or obligations under the Loan Documents.

27.     Time of the Essence.  Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

28.     Business Days.  The phrase "Business Day" or "business day" as used herein shall mean any calendar day except those calendar days on which the National Banks in the states of Louisiana or Texas are required or permitted to be closed for business.

29.     Certificates.  The production of mortgage, conveyance, tax research or other certificates are waived by consent, and Mortgagor and Mortgagee agree to hold me, Notary, harmless for failure to procure and attach same hereto.

30.     No Paraph.  No Note has been presented to the Notary Public for purposes of paraphing it for identification herewith.


**[SIGNATURE PAGE BEGINS ON NEXT PAGE]**

NO:0104474/00001:167538v4

206

THUS DONE AND PASSED by the Mortgagor in my office in the County of Johnson, State of Kansas, on the __6th__ day of ~~January~~ February, 2014, to be effective as of the date first set forth above, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

**MORTGAGOR:**

WITNESSES:

**AGSPRING MISSISSIPPI REGION, LLC,**
**a Delaware limited liability company**

Print Name: Jennifer Trupka



By: _____
     Brad Clark
     President

Print Name: Dustin Clevenger

    NOTARY PUBLIC
Name: Anne M. Yoesting
Bar/Notary ID: 00006594-N
My Commission Expires: 2/3/16

ANNE YOESTING
OFFICIAL SEAL
MY COMMISSION EXPIRES
2/3/16

A TRUE COPY. ATTEST:
DEPUTY CLERK OF COURT
PARISH OF EAST CARROLL

SEAL

NO:0104474/00001:167538v4

16

209

# EXHIBIT A
## PARCELS I, II, AND III BELOW

PARCEL I:

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

PARCEL II:

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.

208

**PARCEL III**

A LEGAL DESCRIPTION OF A 66.988  ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', an arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

209

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerline of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

210



NO:0104474/00001:167538v4

211

**EXHIBIT B**
**TO**
**MORTGAGE AND SECURITY AGREEMENT**

<u>Permitted Exceptions</u>

Subject to the Exceptions to Title specified in that certain Act of Cash Sale by Monticello Gin & Elevator Co., Inc., a Louisiana corporation, Monticello Gin System, Inc., a Louisiana corporation, and Raley Transport, Inc., a Louisiana corporation in favor of Agspring Mississippi Region, LLC, a Delaware limited liability company, dated on June 21, 2013, but effective June 26, 2013 and recorded June 28, 2013, in Register 88825, Book 170, Page 333, East Carroll Parish, Louisiana.

212

**CONSENT OF SOLE MEMBER AND SOLE MANAGER**
**OF AGSPRING MISSISSIPPI REGION, LLC**

WHEREAS, the undersigned sole member and sole manager of AGSPRING MISSISSIPPI REGION, LLC, a Delaware limited liability company (the "Company") has determined that it is in the best interest of the Company to borrow an additional Five Million and No/100 ($5,000,000.00) Dollars and refinance the existing $17.0 million loan to the Company from Larry Tubbs, an individual ("Tubbs"), Tubbs Rice Dryers, Inc., a Louisiana corporation ("TRD"), Chief Ventures, L.L.C., a Louisiana limited liability company ("CV"), and Big River Grain, LLC, a Louisiana limited liability company ("BRG", and together with Tubbs, TRD, and CV, the "Lender"), to increase the loan amount to Twenty-Two Million and No/100 ($22,000,000.00) Dollars, and as security for said loan, to execute a mortgage in the immovable property of the Company described on Exhibit A attached hereto and made a part hereof.

NOW THEREFORE, BE IT RESOLVED, that the Company is hereby authorized and directed to execute and deliver a Second Amended and Restated Promissory Note and grant a mortgage on the immovable property of the Company described on Exhibit A, as security for said Note, all upon such terms and conditions as Bradley K. Clark, the President of the Company (the "Authorized Officer"), in his sole and uncontrolled discretion, determines, and such mortgage may contain a confession of judgment and such other provisions as are customary for Louisiana mortgages, and the Authorized Officer is hereby authorized to execute and deliver on behalf of the Company such other documents, instruments, certificates, or security agreements as the Authorized Officer, in his sole and uncontrolled discretion, deems to be necessary or desirable in connection with the hereinabove described transaction; and

RESOLVED, that the signature of the Authorized Officer on any document or instrument shall be conclusive evidence that the Authorized Officer has approved it and that it is authorized under the terms of these resolutions.

[Signature Page Follows.]

213

NO:0104474/00001:167552v1

Effective as of February 1, 2014

**SOLE MEMBER AND SOLE MANAGER**

**AGSPRING, LLC,**
**a Delaware limited liability company**

Bradley K. Clark, President

## CERTIFICATE

I, Secretary of AGSPRING MISSISSIPPI REGION, LLC, do hereby certify that (i) Agspring, LLC, a Delaware limited liability company, is the sole member and manager of the Company, and that Bradley K. Clark is the President of the same, and that his true and correct signature is set forth hereinabove; and (ii) the foregoing constitutes true and correct resolutions adopted by the sole member and the sole manager of the Company, and that the same have not been revoked or rescinded.

Witness my signature as of the 1st day of February, 2014.

Bradley K. Clark, Secretary

2

214

**EXHIBIT A**

**Legal Description**

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" East for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less

3

215

PARCEL III

A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

4

216

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerling of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

5

217



NO:0104474/00001:167552v1

218

State of Louisiana     REGISTER
Parish of East Carroll   No. __90613__

Filed: DEC - 3 2015 ___ at _3:15PM_

Conveyance Book _____ Page _____

Mortgage Book _223_ Page _229_

~~signature~~
Clerk and Ex-Officio Recorder

## AMENDMENT OF MORTGAGE

**BE IT KNOWN** that on this day before me, Notary in and for the Parish of West Carroll, State of Louisiana, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared: **AGSPRING MISSISSIPPI REGION, LLC.**, a Delaware limited liability company (the *"Borrower"*) and **LARRY TUBBS**, an individual, **TUBBS RICE DRYERS, INC.**, a Louisiana corporation, **CHIEF VENTURES, L.L.C.**, a Louisiana limited liability company, and **BIG RIVER GRAIN, LLC.**, a Louisiana limited liability company (individually or collectively the *"Mortgagee"*).

This AMENDMENT OF MORTGAGE, ("Amendment") is dated and made effective as of February 1, 2014.

WHEREAS, Borrower granted to the Mortgagee that certain Mortgage, Security Agreement and Assignment of Leases and Rents recorded February 11, 2014, in Mortgage Book 220, Page 192, under Date Register No. 89267 of the records of East Carroll Parish, Louisiana, (the "Mortgage").

WHEREAS, an uncertainty appeared in "Excluded Property in the last paragraph of Page 3 of the above described mortgage. This should be deleted and replaced.

NOW, THEREFORE, Borrower and the Mortgagee agree to amend the Mortgage on the last paragraph of Page 3 to substitute in its place the following:

> Notwithstanding the foregoing, or any provision to the contrary contained herein, all of the following personal properties of Mortgagor are expressly excluded from the foregoing provisions (collectively, the "**Excluded Property**"), all inventory together with the following property of mortgagor related to inventory: cash, movables not located and used in storing or handling grain on the Land, accounts receivable, chattel paper, deposit accounts, documents, farm products, books, grain inventory, motor vehicles, tort claims not related to loss of property covered by this mortgage and the like, but excepted from this "Excluded Property" are immovable and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagee's security and operational software used at the facilities located on the Real Property.

Except as specifically amended herein and except for the said Amendment, the Mortgage shall remain in full force and effect as originally executed. This Amendment shall be binding on the successors and assigns of the parties hereto.



EXHIBIT
K

_229_

This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

This Amendment shall be governed by, and construed in accordance with, the laws of the State of Louisiana (without giving effect to any conflicts of law principles).

This Amendment represents the final agreement between Borrower and the Mortgagee as to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

The Clerk of Court of East Carroll Parish, Louisiana is authorized to note this Amendment in the margin of the above described document when filed of records in East Carroll Parish, Louisiana; and this Amendment shall be given retroactive effect to the date of the above described instruments which it does correct.

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 3ʳᵈ day of December , A.D., 2015, at my office in West Carroll Parish, Louisiana, after due reading of the whole.

WITNESSES:

Barbie Smith

Erline W. Vickery

MORTGAGEE:

LARRY TUBBS

TUBBS RICE DRYERS, INC.

BY:

CHIEF VENTURES, L.L.C.

BY:
LARRY TUBBS, MANAGER

BIG RIVER GRAIN, LLC.

BY:
LARRY TUBBS, MANAGER

NOTARY PUBLIC

DONALD K. CARROLL
Bar # 3897/ Notary Public # 39095
State of Louisiana
My Commission Expires: At Death

SEAL

230



TRUE COPY ATTEST:
DEPUTY CLERK OF COURT
PARISH OF EAST CARROLL
STATE OF LOUISIANA

SEAL

STATE OF Kansas
COUNTY OF Johnson

THUS DONE AND PASSED before me, notary and the two undersigned competent witnesses, on this the 1 day of December, A.D., 2015, at my office in the county of Johnson, State of Kansas, after due reading of the whole.

WITNESSES:

Signature _____
Printed name Jennifer Mick

Signature _____
Printed name Luanne Blew

**BORROWER:**

AGSPRING MISSISSIPPI REGION, LLC., a Delaware limited liability company

BY: _____
Name: BRAD CLARK

Title: PRESIDENT

_____
NOTARY PUBLIC

JENNIFER ANN TRUPKA
My Appointment Expires
April 25, 2018

231

## AGSPRING MISSISSIPPI REGION, LLC

## INCUMBENCY CERTIFICATE

December 1, 2015

I, Chris Stratton, Chief Financial Officer of Agspring, LLC, a Delaware limited liability company (the "Member"), which is the sole member of and, pursuant to Section 8 of the Limited Liability Company Agreement of Agspring Mississippi (as hereinafter defined), has the sole authority to manage and conduct the business affairs of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Agspring Mississippi"), do hereby certify on behalf of the Member and Agspring Mississippi that the following named person is, and at all times, has been a duly elected, qualified and acting officer of Agspring Mississippi as of the date hereof, holding the offices set forth opposite his name, and is authorized to execute and deliver those certain Amendments of Mortgage, by and between Agspring Mississippi and the other parties listed on the signature pages thereto (the "Amendments of Mortgage"), and other agreements, reports, certificates, notices and other documents related to or required by the Amendments of Mortgage, by and on behalf of Agspring Mississippi, and the signature appearing below is his true and genuine signature:

| Name | Office Held | Signature |
|------|-------------|-----------|
| Bradley K. Clark | President and Secretary | |

IN WITNESS WHEREOF, I have hereunto subscribed my name as of the day first written above.

By: _____
Name: Chris Stratton
Title: Chief Financial Officer

I, Bradley K. Clark, President and Secretary of Agspring Mississippi, hereby certify that the information contained in the above certificate is true and correct.

By: _____
Name: Bradley K. Clark
Title: President and Secretary

232

SEP 16 2013

245630

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Robert W. Mouton (504) 558-5113

**B. E-MAIL CONTACT AT FILER (optional)**
rwmouton@lockelord.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

```
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, LA 70130
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Agspring Mississippi Region, LLC | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 5251 West 116th Place, Suite 200 | Leawood | KS  66211 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Tubbs Rice Dryers, Inc. | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| P.O. Box 38 | Pioneer | LA  71266 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

See Exhibit A, attached hereto and made a part hereof.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
**6a.** Check only if applicable and check only one box:    **6b.** Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien   ☐ Non-UCC Filing
**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor
**8. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

PLAINTIFF'S EXHIBIT
tabbies®

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

Agspring Mississippi Region, LLC

OR  9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR  10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

Chief Ventures, L.L.C.

OR  11b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

See Exhibit B, attached hereto and made a part hereof.

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

## UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Agspring Mississippi Region, LLC | | | | | |

OR

| 18b. INDIVIDUAL'S SURNAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |

| FIRST PERSONAL NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |

| ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX | | |
|---|---|---|---|---|---|
| | | | | | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

22. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Big River Grain, LLC | | | | |

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

23. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Tubbs | Larry | G. | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

24. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 04/20/11)   International Association of Commercial Administrators (IACA)

EXHIBIT A
TO
UCC FINANCING STATEMENT
Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

All Fixtures now or hereafter attached to or used in connection with the Real Property, described on Exhibit A, attached hereto and located in the Parishes of West Carroll and Morehouse, Louisiana, (the "Real Property"), now or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may not or hereafter be owned or acquired by Debtor, but expressly excluding: (i) all machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Debtor, and (ii) all of the following assets and properties of Debtor have been pledged by Debtor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "Administrative Agent"), and are expressly excluded from the foregoing provisions: (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among Agspring, LLC, Debtor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time.

NO:0104474/00001:164861v1

EXHIBIT B
TO
UCC FINANCING STATEMENT

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

Legal Descriptions

SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Parcel 1

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 35°34'48" West, a distance of 133.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°57'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 549.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'15" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

NO:0104474/00001:164859v1

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

NO:0104474/00001:164859v1

Parcel II

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:   A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet; thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline, 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:   From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy. No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.538 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 529, of the records of Morehouse Parish, Louisiana.)

TRACT 3:   FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

NO:0104474/00001:164859v1

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:   Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning. The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right-of-way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana).

NG:0104474/00001:164859v1

24563 A.



256324

**STATE OF LOUISIANA**

## UNIFORM COMMERCIAL CODE - AMENDMENT
### UCC-3
*Important - Read Instructions Before Completing Form*

**FOLLOW INSTRUCTIONS (FRONT AND BACK CAREFULLY)**

| | |
|---|---|
| 1. | Initial Financing Statement File # **62-945630** |
| 2. | ☐ **Termination** - Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement |
| 3. | ☒ **Continuation** - Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law |
| 4. | ☐ **Assignment** (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9. |

5. **AMENDMENT (PARTY INFORMATION)** This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

☐ **CHANGE name and/or address:** Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c   ☐ **DELETE name:** Give record name to be deleted in item 6a or 6b   ☐ **ADD name:** Complete item 7a or 7b and item 7c; also complete items 7d-7g (if applicable)

6. **CURRENT RECORD INFORMATION:**

| 6a. Organization's Name | | |
|---|---|---|

OR

| 6b. Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |
|---|---|---|

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. Organization's Name | | |
|---|---|---|

OR

| 7b. Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |
|---|---|---|

| 7c. Mailing Address | | City | State | Postal Code | Country |
|---|---|---|---|---|---|

| 7d. Tax ID #; SSN or EIN | Add'l info re Organization: | 7e. Type of Organization | 7f. Jurisdiction of Organization | 7g. Organization ID if any  None ☐ |
|---|---|---|---|---|

8. **AMENDMENT (Collateral Change):** check only **one** box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment

| 9a. Organization's Name |
|---|
| Tubbs Rice Dryers, Inc. |

OR

| 9b. Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |
|---|---|---|

10. **OPTIONAL FILER REFERENCE DATA**

11. **NAME AND PHONE OF CONTACT AT FILER** (optional)

12. **SEND ACKNOWLEDGMENT TO:** (Name and Address)

The above space is for filing office use only

Louisiana Secretary of State 5/4/2011

**1. Initial Financing Statement File # 62-245630**

**Additional Secured Parties:**

**I.**

| 9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment | | |
|---|---|---|
| 9a Organization's Name  CHIEF VENTURES, L.L.C. | | |
| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |

**II.**

| 9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment | | |
|---|---|---|
| 9a Organization's Name  BIG RIVER GRAIN, LLC | | |
| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |

**III.**

| 9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment | | |
|---|---|---|
| 9a Organization's Name | | |
| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable  TUBBS | First Name  LARRY | Middle Name  G. |

256394.

Appearing Md. Region, LLC
3: Continuation;
Zubbia Rice Dryers, Inc.



FILED and RECORDED
At 2:50 O'CLOCK __ M.
April 18, 20 78
IN _____ BOOK _____ PAGE
BY _____
CLERK OF COURT, WEST CARROLL PARISH, LA

CAROL JONES
CLERK OF COURT
MORE___ ___LA

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

2 0 4 4 9 2

1 2013 SEP 17  A 9:27



DEPUTY CLERK

A. NAME & PHONE OF CONTACT AT FILER (optional)
Robert W. Mouton (504) 558-5113

B. E-MAIL CONTACT AT FILER (optional)
rwmouton@lockelord.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, LA 70130

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Agspring Mississippi Region, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5251 West 116th Place, Suite 200 | Leawood | KS | 66211 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Tubbs Rice Dryers, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 38 | Pioneer | LA | 71266 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Exhibit A, attached hereto and made a part hereof.

6. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

5a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

PLAINTIFF'S EXHIBIT

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**Agspring Mississippi Region, LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME
**Chief Ventures, L.L.C.**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **P.O. Box 38** | **Pioneer** | **LA** | **71266** | **USA** |

12. ADDITIONAL SPACE FOR (ITEM 4) (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

See Exhibit B, attached hereto and made a part hereof.

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME
Agspring Mississippi Region, LLC

OR

18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **OR** 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **OR** 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **OR** 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

22. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME   Big River Grain, LLC | | | |
|---|---|---|---|
| **OR** 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS   P.O. Box 38 | CITY   Pioneer | STATE  POSTAL CODE   LA   71266 | COUNTRY   USA |

23. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **OR** 23b. INDIVIDUAL'S SURNAME   Tubbs | FIRST PERSONAL NAME   Larry | ADDITIONAL NAME(S)/INITIAL(S)   G. | SUFFIX |
| 23c. MAILING ADDRESS   P.O. Box 38 | CITY   Pioneer | STATE  POSTAL CODE   LA   71266 | COUNTRY   USA |

24. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 05/22/11) International Association of Commercial Administrators (IACA)

**EXHIBIT A**
**TO**
**UCC FINANCING STATEMENT**

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

All Fixtures now or hereafter attached to or used in connection with the Real Property, described on Exhibit A, attached hereto and located in the Parishes of West Carroll and Morehouse, Louisiana (the "Real Property"), now or place on any part thereof and whether or not attached thereto, appertaining or adapted to the use management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may not or hereafter be owned or acquired by Debtor, but expressly excluding: (i) all machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Debtor, and (ii) all of the following assets and properties of Debtor have been pledged by Debtor to Bank of America, N.A., in its capacity as administrative agent for certain Secured Parties (in such capacity, "**Administrative Agent**"), and are expressly excluded from the foregoing provisions: (a) all Accounts; (b) all cash, currency and Cash Equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 5.21(e) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment; (h) all General Intangibles; (i) all Goods; (j) all Instruments; (k) all Farm Products; (l) all Inventory; (m) all Investment Property (excluding equity interests in the Grantors); (n) all Letter-of-Credit Rights; (o) all Payment Intangibles; (p) all Securities Accounts; (q) all Software; (r) all Supporting Obligations; (s) all Vehicles; (t) all books and records pertaining to the Collateral; and (u) all Accessions and all Proceeds and products of any and all of the foregoing. All of the foregoing capitalized terms shall have the meanings specified in that certain Security Agreement by and among Agspring, LLC, Debtor and Bank of America, N.A., as Administrative Agent, dated as of June 26, 2013, as the same may be amended, restated, replaced or substituted from time to time.

NO:0104474/00001:164861v1

**EXHIBIT B**
**TO**
**UCC FINANCING STATEMENT**

Agspring Mississippi Region, LLC – Debtor
Tubbs Rice Dryers, Inc.,
Chief Ventures, L.L.C.,
Big River Grain, LLC, and
Larry G. Tubbs (collectively as Secured Party)

Legal Descriptions

SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Parcel 1

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

NO:0104474/00001:164859v1

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and utilities.

NO:0104474/00001:164859v1

**Parcel II**

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:   A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:   From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less.  (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:   FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'58" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning.  The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998..

NO:0104474/00001:164859v1

TRACT 4:  A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:     Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1856.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning.  The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

NO:0104474/00001:164859v1

**STATE OF LOUISIANA**

**UNIFORM COMMERCIAL CODE - AMENDMENT**
**UCC-3**
*Important - Read Instructions Before Completing Form*

*FOLLOW INSTRUCTIONS (FRONT AND BACK CAREFULLY)*

| | |
|---|---|
| 1. | Initial Financing Statement File #  34-204492 |
| 2. | ☐ Termination -Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement |
| 3. | ☒ Continuation- Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law |
| 4. | ☐ Assignment (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9. |

5. AMENDMENT (PARTY INFORMATION) This amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c  ☐ DELETE name: Give record name to be deleted in item 6a or 6b  ☐ ADD name: Complete item 7a or 7b and item 7c; also complete items 7d-7g (if applicable)

**6. CURRENT RECORD INFORMATION:**

| 6a  Organization's Name | | |
|---|---|---|
OR
| 6b  Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a  Organization's Name | | |
|---|---|---|
OR
| 7b  Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |

| 7c  Mailing Address | | City | State | Postal Code | Country |
|---|---|---|---|---|---|

| 7d  Tax ID #: SSN or EIN | Add'l info re Organization: | 7e  Type of Organization | 7f  Jurisdiction of Organization | 7g  Organization ID if any   None ☐ |
|---|---|---|---|---|

**8. AMENDMENT (Collateral Change):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of Debtor authorizing this Amendment

| 9a  Organization's Name |
|---|
| Tubbs Rice Dryers, Inc. |
OR
| 9b  Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable  First Name |

| 10. OPTIONAL FILER REFERENCE DATA |
|---|

| 11. NAME AND PHONE OF CONTACT AT FILER (optional) |
|---|

| 12. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|

The above space is for filing office use only

*Louisiana Secretary of State 5/4/2011*

34-0216707
Carol Jones Parish Clerk of Court
04/23/2018 01:39

**STATE OF LOUISIANA**
**UNIFORM COMMERCIAL CODE - FINANCING STATEMENT**
**UCC-1**
**Important - Read instructions before filing out form.**

**Follow instructions carefully.**

1. Debtor's exact full legal name - insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names.

| | 1a Organization's Name **AGSPRING MISSISSIPPI REGION, LLC** | | | | |
|---|---|---|---|---|---|
| **OR** | 1b Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | | First Name | | Middle Name |

| 1c Mailing Address **5251 West 116th Place, Suite 200** | City **Leawood** | State **KS** | Postal Code **66211** | Country **U.S.A.** |
|---|---|---|---|---|

| 1 d. Tax ID #, SSN or EIN **32-0409147** | Add'l info re Organization Debtor: | 1e Type of Organization | 1f Jurisdiction of Organization | 1 g Organizational ID #, if any ☐None |
|---|---|---|---|---|

2. Additional debtor's exact full legal name - insert only <u>one</u> debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a Organization's Name | | | | |
|---|---|---|---|---|---|
| **OR** | 2b Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | | First Name | | Middle Name |

| 2c. Mailing Address | City | State | Postal Code | Country |
|---|---|---|---|---|

| 2 d. Tax ID #, SSN or EIN | Add'l info re Organization Debtor: | 2 e Type of Organization | 2f Jurisdiction of Organization | 2 g Organizational ID #, if any ☐None |
|---|---|---|---|---|

3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only <u>one</u> secured party name (3a or 3b)

| | 3a Organization's Name | | | | |
|---|---|---|---|---|---|
| **OR** | 3b Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) **Tubbs** | | First Name **Larry** | | Middle Name **G.** |

| 3c. Mailing Address **509 Orion Drive** | City **Bastrop** | State **LA** | Postal Code **71220** | Country **U.S.A.** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

Movables located on and used in storing or handling grain on the Land, tort claims related to loss of property covered by 4 mortgages, immovables and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on this real property for purposes of storage grain, substitutions and replacements, and all additions and appurtenances to the security, insurance proceeds for loss of Mortgagees' security and operational software used at the facilities located on the Real Property.

5a Check if applicable and attach legal description of real property ☐ fixture filing [x] ☐ As-extracted collateral ☐ Standing timber constituting goods

☐ The debtor(s) do not have an interest of record in the real property (Enter name of an owner of record in 5b)

5b Owner of real property (if other than named debtor)

| 6a. Check only if applicable and check <u>only</u> one box | 10. The space below is for Filing Office Use Only |
|---|---|
| ☐ Debtor is a Transmitting Utility. Filing is Effective Until Terminated | |
| ☐ Filed in connection with a public finance transaction. Filing is effective for 30 years | |
| 6b Check <u>only</u> if applicable and check <u>only</u> one box | A true copy of original Filed for Record |
| Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate | this 4th day of Dec. 2015 at 3:15 P.M. Book |

7 ALTERNATIVE DESIGNATION (if applicable)
☐ CONSIGNEE/CONSIGNOR ☐ LESSEE/LESSOR
☐ SELLER/BUY ☐ AG. LIEN ☐ BAILEE/BAILOR
☐ NON-UCC-FILING

Page ___ Date Reg. No. 250839

Clerk of Court--West Carroll Parish, La.

8. Name and Phone Number to contact filer
**Donald K. Carroll. Attorney at Law 1 (318) 428-1200**

9. Send Acknowledgment To: (Name and Address)

Donald K. Carroll, Attorney at Law
P. O. Box 1018
301 Marietta St.
Oak Grove, La 71263

| 11. ☐ CHECK TO REQUEST SEARCH REPORT(S) ON DEBTORS |
|---|
| (ADDITIONAL FEE REQUIRED) ☐ ALL DEBTORS ☐ DEBTOR1 ☐ DEBTOR2 |

LOUISIANA SECRETARY OF STATE- 11/22/10



PLAINTIFF'S EXHIBIT

ADDITIONAL SECURED PARTIES

**(2)**

3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only <u>one</u> secured party name (3a or 3b)

| | 3a Organization's Name<br>**TUBBS RICE DRYERS, INC** | | | | | |
|---|---|---|---|---|---|---|
| **OR** | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | | First Name | | Middle Name | |
| | 3c. Mailing Address<br>**126 Co-Op Road** | City<br>**Pioneer** | State<br>**LA** | | Postal Code<br>**71266** | Country<br>**U.S.A.** |

**(3)**

3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only <u>one</u> secured party name (3a or 3b)

| | 3a Organization's Name<br>**TUBBS RICE DRYERS, INC** | | | | | |
|---|---|---|---|---|---|---|
| **OR** | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | | First Name | | Middle Name | |
| | 3c. Mailing Address<br>**126 Co-Op Road** | City<br>**Pioneer** | State<br>**LA** | | Postal Code<br>**71266** | Country<br>**U.S.A.** |

**(4)**

3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only <u>one</u> secured party name (3a or 3b)

| | 3a Organization's Name<br>**Chief Ventures L.L.C.** | | | | | |
|---|---|---|---|---|---|---|
| **OR** | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | | First Name | | Middle Name | |
| | 3c. Mailing Address<br>**8205 Mer Rouge-Collinston Rd.** | City<br>**Mer Rouge** | State<br>**LA** | | Postal Code<br>**71261** | Country<br>**U.S.A.** |

**(5)**

3. Secured Party's Name (or Name of Total Assignee or Assignor S/P) - insert only <u>one</u> secured party name (3a or 3b)

| | 3a Organization's Name<br>**Big River Grain, LLC** | | | | | |
|---|---|---|---|---|---|---|
| **OR** | 3b  Individual's Last Name (and Title of Lineage (e.g. Jr. Sr., III, if applicable) | | First Name | | Middle Name | |
| | 3c. Mailing Address<br>**7489 Highway 588** | City<br>**Pioneer** | State<br>**LA** | | Postal Code<br>**71266** | Country<br>**U.S.A.** |

# EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

### Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1: A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2: From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3: FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'03" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning. The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.

19

TRACT 4: A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning. The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D. , et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2,933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20

JUNE 10, 2013
REVISED: JUNE 18, 2013

A LEGAL DESCRIPTION OF A
49.582 ACRE TRACT
FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a set 5/8" rebar with plastic cap; thence, South 39°23'58" East, a distance of 376.72' to a set 5/8" rebar with plastic cap; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a set 5/8" rebar with plastic cap; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a set 5/8" rebar with plastic cap near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe;

1/2

thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, SUBJECT TO existing rights of way for public roads, drainage and utilities,

LESS AND EXCEPT the following parcel sold to the Village of Pioneer, to-wit:

Commencing from the Southeast corner of the NW ¼ of NW ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana; thence, North along the 40 line a distance of 8' to the POINT OF BEGINNING; thence, continuing in a Westerly direction perpendicular to the West line of the NW ¼ of NW ¼ a distance of 25' to a point; thence, with a deflection angle to the right of 90°, travel in a Northerly direction 25' to a point; thence, with a deflection angle to the right of 90°, travel in a Easterly direction 25' to a point; thence, with a deflection angle to the right of 90°, travel in a Southerly direction 25' back to the POINT OF BEGINNING and the parcel being 0.014 acres more or less.

As per the survey dated June 10, 2013 and revised June 18, 2013, by Denmon Engineering Co., Inc., attached hereto and made a part hereof.

2/2

# EXHIBIT A
## PARCELS I, II, AND III BELOW

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.

NO:0104474/00001:167538v4

# EXHIBIT A
## PARCELS I, II, AND III BELOW

**PARCEL I:**

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

**PARCEL II:**

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°38'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.

NO:0104474/00001:167538v4

PARCEL III

A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
(LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
SECTION 30, T 19 N, R 11 E
EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less,

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerling of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

STATE OF LOUISIANA

## UNIFORM COMMERCIAL CODE - AMENDMENT
### UCC-3
*Important - Read instructions Before Completing Form*

**FOLLOW INSTRUCTIONS (FRONT AND BACK CAREFULLY)**

1. Initial Financing Statement File #  62-250839

2. [ ] Termination -Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3. [X] Continuation- Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4. [ ] Assignment (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION) This amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
[ ] CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c     [ ] DELETE name: Give record name to be deleted in item 6a or 6b     [ ] ADD name: Complete item 7a or 7b and item 7c; also complete items 7d-7g (if applicable)

6. CURRENT RECORD INFORMATION:

| 6a Organization's Name |  |  |
|---|---|---|

OR

| 6b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | Middle Name |
|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a Organization's Name |  |  |  |  |
|---|---|---|---|---|

OR

| 7b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III, if applicable) | First Name | | | Middle Name |
|---|---|---|---|---|
| 7c Mailing Address | City | State | Postal Code | Country |

| 7d Tax ID #: SSN or EIN | Add'l info re Organization: | 7e Type of Organization | 7f Jurisdiction of Organization | 7g Organization ID if any |
|---|---|---|---|---|
|  |  |  |  | None [ ] |

8. AMENDMENT (Collateral Change): check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME or SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of Debtor authorizing this Amendment

| 9a Organization's Name |  |  |
|---|---|---|

OR

| 9b Individual's Last Name (and Title of Lineage (e.g. Jr., Sr., III), if applicable | First Name | Middle Name |
|---|---|---|
| Tubbs | Larry | G. |

10. OPTIONAL FILER REFERENCE DATA  15748-44832

11. NAME AND PHONE OF CONTACT AT FILER (optional)
Peter S. Title, Esq. 504-582-1542

12. SEND ACKNOWLEDGMENT TO: (Name and Address)

Peter S. Title
400 Poydras Street, Suite 2550
New Orleans, LA 70130

DR# 261014
FILED and RECORDED
At 1:13 O'CLOCK P M
Aug. 14, 20 20
IN     BOOK     PAGE
BY *Darlene Fuller*
CLERK OF COURT, WEST CARROLL PARISH, LA

The above space is for filing office use only

Attachment to Continuation of  FINANCING STATEMENT  # 62-250839

Additional Secured Parties

Item 9 continued:

Item 9a:  Tubbs Rice Dryers, Inc.
Chief Ventures, L.L.C.
Big River Grain, LLC

LOUISIANA SECRETARY OF STATE
OFFICE OF UNIFORM COMMERCIAL CODE/CENTRAL REGISTRY
CONFIRMATION OF FILING


PETER S. TITLE
400 POYDRAS ST., STE. 2550
NEW ORLEANS, LA  70130


Pursuant to La.R.S.10:9-523(g), this is a confirmation that the following information has been received and included within the Secretary of State's master index of Uniform Commercial Code filings.  Note that this confirmation does not constitute a determination of the legal sufficiency of the filing.

Any questions regarding the filing information contained herein should be directed to the filing officer which accepted and recorded the filing.  General UCC assistance may be obtained by contacting our UCC Division at 225.925.4701.


R. Kyle Ardoin
Secretary of State

=========================================================================================
ORIGINAL FILE NUMBER 62-250839       FILED 12/04/15  3:15 PM
                                     PARISH IN WHICH FILED:  WEST CARROLL

SUBSEQUENT FILINGS

1.   CONTINUATION      FILE NUMBER 62-261014    FILED  8/14/20  1:13 PM WEST CARROLL
                       Continuation


     DEBTOR(S)
     AGSPRING MISSISSIPPI REGION, LLC                      #####9147
     5251 WEST 116TH PLACE, SUITE 200
     LEAWOOD, KS  66211


     SECURED PARTY
     LARRY G. TUBBS                                        #####0000
     509 ORION DRIVE
     BASTROP, LA  71220


     TUBBS RICE DRYERS, INC                                #####0000
     126 CO-OP ROAD
     PIONEER, LA  71266


     TUBBS RICE DRYERS, INC                                #####0000
     126 CO-OP ROAD
     PIONEER, LA  71266


     CHIEF VENTURES L.L.C.                                 #####0000
     8205 MER ROUGE-COLLINSTON RD.
     MER ROUGE, LA  71261


     BIG RIVER GRAIN, LLC                                  #####0000
     7489 HIGHWAY 588
     PIONEER, LA  71266

SOS-0293

PETER S. TITLE  (62-250839)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>**(504) 582-1542** | Delaware Department of State<br>U.C.C. Filing Section<br>Filed: 04:38 PM 08/15/2019<br>U.C.C. Initial Filing No: 2019 5688424 |
| B. E-MAIL CONTACT AT FILER (optional)<br>**ptitle@sessions-law.com** | |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address)<br><br>⌐ Peter S. Title, Esq. ⌐<br>400 Poydras Street, Suite 2550<br>New Orleans, LA 70130<br><br>⌐ ⌐ | Service Request No:  20196544452 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Agspring Mississippi Region, LLC** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS<br>**5101 College Boulevard** | CITY<br>**Leawood** | STATE<br>**KS** | POSTAL CODE<br>**66211** | COUNTRY<br>**USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Tubbs Rice Dryers, Inc.** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>**125 Cherokee Trail** | CITY<br>**Delhi** | STATE<br>**LA** | POSTAL CODE<br>**71232** | COUNTRY<br>**USA** |

4. COLLATERAL: This financing statement covers the following collateral:

All equipment and other movable or personal property of the Debtor, now owned or hereafter acquired, used in storing or handling grain on the land described on the attached Exhibit A (the "Land"), whether tangible or intangible; immovables and/or fixtures, improvements, component parts, extensions, betterments, attachments, renewals, renovations, bins, silos, grain elevators and any other structure used or installed on the Land for purposes of the storage of grain; substitutions,replacements, and all additions and appurtenances to the collateral, and proceeds of the collateral; and operational software used at the facilities located on the Land.

**PLAINTIFF'S EXHIBIT N** tabbies

| | | |
|---|---|---|
| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
| 6a. Check only if applicable and check only one box.<br>☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box:<br>☐ Agricultural Lien  ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| Agspring Mississippi Region, LLC |

OR

| 18b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL (S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☑ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Tubbs | Larry | | G. | |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

23. ☑ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Big River Grain, LLC | | | | |
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

24. MISCELLANEOUS:

## UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| Agspring Mississippi Region, LLC |

OR

| 18b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| FIRST PERSONAL NAME | | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☑ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Chief Ventures, LLC | | | | |
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 125 Cherokee Trail | Delhi | LA | 71232 | USA |

23. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

Financing Statement
Agspring Mississippi Region, LLC-Debtor
Tubbs Rice Dryers, Inc., Larry G. Tubbs, Big River Grain, LLC and Chief Ventures, LLC-
Secured Parties

Item 4 (continued)
Exhibit A
Description of the Land



EXHIBIT **A**    806

EXHIBIT A
TO
MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

Legal Description

A LEGAL DESCRIPTION OF A
49.582 ACRE TRACT
FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN
SECTION 10, T 20 N, R 10 E
WEST CARROLL PARISH, LOUISIANA

Commencing from the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a point on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a point; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, North 88°34'18" East, a distance of 49.18' to a point; thence, South 39°23'58" East, a distance of 376.72' to a point; thence, South 45°56'00" West, a distance of 156.95' to a point near the centerline of a gravel road; thence, North 81°37'00" West along the said gravel road, a distance of 72.40' to a point; thence, South 85°24'00" West along the said gravel road, a distance of 138.60' to a point; thence, North 80°22'00" West along the said gravel road, a distance of 246.49' to a point; thence, North 87°05'00" West along the said gravel road, a distance of 304.41' to a point; thence, South 77°01'00" West along the said gravel road, a distance of 126.49' to a point; thence, leaving the gravel road North 05°44'00" West, a distance of 27.53' to a point; thence, South 89°28'49" West along the North right of way of Louisiana Highway 588, a distance of 649.10' to a point near the center of a ditch; thence, North 29°01'22" West along the center of the said ditch, a distance of 149.72' to a point; thence, North 40°47'47" West along the center of the ditch, a distance of 168.03' to a

NO:0104474/00001:163393v2                    18



EXHIBIT **A**

807

point; thence, North 36°04'13" West along the said ditch, a distance of 260.50' to a point; thence, North 41°05'27" West along the said ditch, a distance of 135.14' to a found 3 ½" diameter x 4 ½" height metal post near the ditch; thence, East, a distance of 830.01' to a found 3 ½" diameter x 4 ½" height metal post; thence, South 38°45'04" East, a distance of 307.32' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 49.596 acres more or less, LESS AND EXCEPT the 0.014 acre parcel that was sold to the Village of Pioneer.

**LESS AND EXCEPT**

<div align="center">

**A 31.868 ACRE TRACT**
**SITUATED IN**
**SECTION 10, T 20 N, R 10 E**
**WEST CARROLL PARISH, LOUISIANA**

</div>

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less,

SUBJECT TO existing rights of way for public roads, drainage and



EXHIBIT A

43

## EXHIBIT A
## TO
## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

### Legal Description

Those portions of ground, lying, being and situated in the Parish of Morehouse, State of Louisiana, particularly described as follows, to-wit:

TRACT 1:    A tract of land situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows: Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline, and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40, and 43 of T21N, R7E, Morehouse Parish, Louisiana, and thence run N 81°10' W, along the North line of Section 40, T21N, R6E, a distance of 1280 feet to the center of a drainage canal; thence turn and run S 15°42' W, along the center of the canal 453.75 feet, thence turn and run S 81°10' E, 1053.63 feet to an iron pipe in the West line of LA State Hwy. No. 138, and being 50.8 feet from the centerline; thence turn and run N 40°52' E, along the West line of said highway and being 50.8 feet from the centerline 530.8 feet to an iron pipe and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, and containing 12.04 acres, more or less. (This being the same tract of land acquired by Morehouse Gin and Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 28, 1966, and recorded in Conveyance Book 237, page 414 of the records of Morehouse Parish, Louisiana), and

TRACT 2:    From an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Sections 39, 40 and 43 of Township 21 N, R7E, Morehouse Parish, Louisiana, and thence run S 40°52' W, along the West line of said LA State Hwy No. 138 and being 50.8 feet from the centerline 530.8 feet to the Point of Beginning; thence continue on th same course of S 40°52' W, along the West side of the said highway and being 50.8 feet from the centerline 116.78 feet; thence run N 81°10' W, 1003.61 feet to the center of a drainage canal; thence turn and run N 15°42' E, along the center of the drainage canal 99.71 feet to the Southwest corner of that certain 12.04 acre tract of land belonging to the Morehouse Gin & Elevator Company, Inc.; thence turn and run S 81°10' E, along the South line of said 12.04 acre tract of land 1053.63 feet to the Southeast corner thereof and the Point of Beginning.

The above described tract of land being situated in Section 40, T21N, R6E, Morehouse Parish, Louisiana, and containing 2.338 acres, more or less.   (This being the same tract of land acquired by Morehouse Gin & Elevator Company from George Donald Bacon, Jr., per Act of Sale on March 8, 1967, and recorded in Conveyance Book 243, page 329, of the records of Morehouse Parish, Louisiana.)

TRACT 3:    FROM an iron bar at the corner common to Sections 36, 40 and 45 of T21N, R6E, Morehouse Parish, Louisiana, thence run S 81°11'38" E along the line common to said Sections 45 and 40 and Section 39 for 3,053.30 feet to a point in the western right-of-way line of Louisiana State Hwy. No. 138 and being 3,046.10 feet South and 3,368.30 feet West of the corner common to Sections 39, 40 and 43 of T21N, R7E; thence run S 40°52' W along the said western right-of-way line of Louisiana State Hwy. No. 138 for 647.58 feet to an iron pipe and the Point of Beginning; thence continue S 40°52' W along the said western right-of-way line for 20.88 feet to an iron pipe; thence run N 81°20'13" W for 995.07 feet to a point; thence run N 15°42'00" E for 20.89 feet to a point; thence run S 81°09'48" E for 1,003.61 feet to an iron pipe in the aforesaid western right-of-way line of Louisiana State Hwy. No. 138 and the Point of Beginning.  The above described tract of land is situated in a portion of Section 40 of T21N, R6E, Morehouse Parish, Louisiana, and containing 0.4409 acres as surveyed by Frank L. Messenger, Professional Land Surveyor in July of 1998.


EXHIBIT A

TRACT 4:   A tract of land situated in Sections 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, more particularly described as follows:   Beginning at an iron pipe on the West side of LA State Hwy. 138 and being 50.8 feet from and at right angles to the centerline and being 3368.3 feet West and 3046.1 feet South of the corner common to Section 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana; thence run N 81°10' W, along the North line of Section 40 and the South line of Section 39 and 45 a distance of 1789.79 feet to the Southwest corner of the Emma Davenport Williams Estate; thence turn and run N 8°02' E, along the West line of said property 119.17 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 a distance of 1866.0 feet to the intersection of the Western right-of-way line of LA State Hwy. No. 138; thence run S 40°52' W, along said Western right-of-way line a distance of 140.55 feet to the Point of Beginning. The above described property being situated in a portion of Section 39 and 45 of T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less. (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D. , et al, pursuant to Act of Sale dated July 15, 1980, and recorded in Conveyance Book 355, page 450, of the records of Morehouse Parish, Louisiana), and

Beginning at an iron pipe on the West side of LA State Hwy. No. 138 and being 50.8 feet from and at right angles to the centerline and being 3,276.37 feet West and 2.933.85 feet South of the corner common to Sections 39, 40 and 43 of T21N, R7E, Morehouse Parish, Louisiana, thence run N 81°10' W, parallel to the North line of Section 40 and the South line of Sections 39 and 45, T21N, R6E, a distance of 1,866.0 feet to the West line of the Emma Davenport Williams Estate; thence turn and run S 8°02' E, along the West line of said property 114.49 feet to a point; thence turn and run S 81°10' E, parallel to the South line of Section 39 and 45 a distance of 1,939.23 feet to the intersection of the Western right of way line of LA State Hwy. No. 138; thence run S 40°52' W, along the Western right of way line a distance of 135.03 feet to the Point of Beginning. The above described tract of land being situated in a portion of Section 39 and 45, T21N, R6E, Morehouse Parish, Louisiana, and containing 5.000 acres, more or less (This being the same tract of land acquired by Morehouse Gin & Elevator Company for Guy D. Williams, M.D., et al, pursuant to Act of Sale dated January 7, 1982, and recorded in Conveyance Book 368, page 59, of the records of Morehouse Parish, Louisiana)

## AND TOGETHER WITH THE FOLLOWING IMMOVABLE PROPERTY LOCATED IN WEST CARROLL PARISH, LOUISIANA:

### A 31.868 ACRE TRACT
### SITUATED IN
### SECTION 10, T 20 N, R 10 E
### WEST CARROLL PARISH, LOUISIANA

Commencing from a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll Parish, Louisiana and being the POINT OF BEGINNING, thence North 89°19'06" East along the line common to Sections 3 and 10, a distance of 1599.38' to a set 5/8" rebar with plastic cap on the western right of way line of Louisiana State Highway 17; thence, South 15°34'28" West along the said western right of way, a distance of 981.89' to a found 1" iron pipe on the western right of way of Louisiana State Highway 17; thence, leaving the said right of way North 80°12'46" West, a distance of 488.56' to a set 5/8" rebar with plastic cap; thence, South 33°34'48" West, a distance of 153.97' to a found 1" iron pipe; thence, South 88°34'18" West, a distance of 758.87' to a found 1" iron pipe; thence, North 00°36'04" West, a distance of 991.00' back to a set 5/8" rebar with plastic cap at the Northwest corner of the Northeast ¼ of the Northwest ¼ of Section 10, T20N, R10E, West Carroll, Louisiana and being the POINT OF BEGINNING and containing 31.868 acres more or less.

20


EXHIBIT A

## EXHIBIT A
## PARCELS I, II, AND III BELOW

PARCEL 1:

A LEGAL DESCRIPTION OF A 11.343 ACRE TRACT
FOR AGSPRING MISSISSIPPI REGION, LLC SITUATED IN
SECTIONS 24 & 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, North 02°00'45" West along the centerline of Louisiana Highway 577, a distance of 71.63' to a point; thence, South 89°15'00" West, a distance of 25.01' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING; thence, South 09°56'28" West along the said West right of way, a distance of 72.36' to a set 5/8" rebar with plastic cap; thence, South 01°21'11" E along the said West right of way, a distance of 1030.83' to a point near the centerline of Parish Road 7748; thence, North 73°19'00" West along the said centerline, a distance of 339.63' to a point; thence, North 01°34'59" West along the East edge of a concrete ditch, a distance of 594.95' to a set 5/8" rebar with plastic cap; thence, North 89°16'00" West, a distance of 318.04' to a set 5/8" rebar with plastic cap on the approximate high bank of Bayou Macon; thence, North 35°17'09" East along the said high bank, a distance of 331.36' to a point; thence, North 54°35'46" East along the said high bank, a distance of 241.72' to a point; thence, North 22°13'04" East along the said high bank, a distance of 228.08' to a set 5/8" rebar with plastic cap; thence, North 05°06'42" East along the said high bank, a distance of 290.04' to a set 5/8" rebar with plastic cap; thence, North 54°48'12" East, a distance of 97.47' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and a curve to the right whose radius is 1157.65', whose chord bears South 09°56'27" East for a chord distance of 348.13', a arc length of 349.45' to a point; thence, South 02°00'45" East along the said West right of way, a distance of 218.44' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 11.343 acres more or less.

PARCEL II:

A LEGAL DESCRIPTION OF A 29.419 ACRE TRACT FOR
AGSPRING MISSISSIPPI REGION, LLC
SITUATED IN SECTION 25, T 19 N, R 10 E
EAST CARROLL PARISH, LOUISIANA

Commencing from a found cotton spindle at the point of intersection of the centerline of Louisiana Highway 580 with the centerline of Louisiana Highway 577; thence, South 01°21'11" East along the centerline of Louisiana Highway 577, a distance of 1169.03' to a PK nail; thence, South 01°24'06" East along the said highway centerline, a distance of 636.76' to a point on a curve to the right whose radius is 2573.64', whose chord bears South 05°06'33" West for a chord length of 498.64', an arc length of 499.42' to a point; thence, North 79°19'54" West, a distance of 40.08' to a set 5/8" rebar with plastic cap on the West right of way of Louisiana Highway 577 and the POINT OF BEGINNING and being a curve to the right whose radius is 2532.84', whose chord bears South 11°28'31" West for a chord length of 54.97', an arc length of 54.97' to a set 5/8" rebar with plastic cap; thence, North 84°33'44" West, a distance of 596.78' of which a portion being along and parallel to the 8' wide x 4' deep ditch to a set 5/8" rebar with plastic cap; thence, South 03°15'16" West along the said ditch, a distance of 426.96' to a point; thence, North 86°09'48" West along old hogwire fence and large tree line, a distance of 797.78' to a set 5/8" rebar with plastic cap; thence North 00°30'20" West along the old hogwire fence, a distance of 1172.54' to a point on the centerline of Parish Road 7748; thence, North 46°03'20" East along the said centerline, a distance of 471.47' to a point; thence, South 44°09'58" East along a 2' wide x 1' deep ditch, a distance of 1573.36' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 29.419 acres more or less.


EXHIBIT A 208

PARCEL III

### A LEGAL DESCRIPTION OF A 66.988 ACRE TRACT
### (LESS AND EXCEPT A 1.892 ACRE TRACT) FOR
### AGSPRING MISSISSIPPI REGION, LLC
### SITUATED IN SECTION 25, T 19 N, R 10 E
### SECTION 30, T 19 N, R 11 E
### EAST CARROLL PARISH, LOUISIANA

Commencing from the N.W. corner of Section 30, Township 19 North, Range 11 East in East Carroll Parish, Louisiana; thence, North 89°56'30" East along the said North line of said section, a distance of 661.01' to a point; thence, South 00°35'19" East, a distance of 39.01' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580 and being the POINT OF BEGINNING; thence, South 00°35'19" East, a distance of 2677.10' to a point; thence, South 89°34'29" West, a distance of 660.85' to a point; thence, North 00°35'29" West, a distance of 91.74' to a point; thence, North 87°00'16" West, a distance of 406.63' to a set 5/8" rebar with plastic cap; thence, North 16°10'06" East, a distance of 104.99' to a set 5/8" rebar with plastic cap; thence, North 87°00'16" West, a distance of 420.41' to a set 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577 and being on a curve to the left whose radius is 2612.84', whose chord bears North 07°05'09" East for a chord distance of 685.34', a arc length of 687.32' to a set 5/8" rebar with plastic cap; thence, leaving the right of way South 89°42'11" East, a distance of 1014.17' to a set 5/8" rebar with plastic cap; thence, North 00°35'29" West, a distance of 668.05' to a set 5/8" rebar with plastic cap; thence, South 88°35'54" West, a distance of 1022.36' to a 5/8" rebar with plastic cap on the East right of way of Louisiana Highway 577; thence, North 01°21'11" West along the said right of way, a distance of 1127.12' to a set 5/8" rebar with plastic cap intersecting the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of 300.36' to a set 5/8" rebar with plastic cap; thence leaving the South right of way South 00°34'00" East, a distance of 80.00' to a set 5/8" rebar with plastic cap; thence North 89°56'30" East, a distance of 75.00' to a set 5/8" rebar with plastic cap; thence, North 00°34'00" West, a distance of 80.00' to a set 5/8" rebar with plastic cap on the South right of way of Louisiana Highway 580; thence, North 89°56'30" East along the said South right of way, a distance of

EXHIBIT A    209

1012.46' back to a set 5/8" rebar with plastic cap and the POINT OF BEGINNING and containing 66.988 acres more or less.

LESS AND EXCEPT THE FOLLOWING:

A parcel of land located in Section 25, T 19 N, R 10 E, East Carroll Parish, Louisiana, more particularly described as follows: Commencing from a found cotton spindle at the intersection of the centerline of La. State Hwy. 580 and the centerline of La. State Hwy. 577; thence, run South 01°21'11" East, along with the centerline of La. State Hwy. 577, for a distance of 1169.03' to a pk nail in the center of the said highway; thence, run North 88°35'54" East, a distance of 40' to a 5/8" rebar with plastic cap on the East right of way of La. State Hwy. 577 and being the POINT OF BEGINNING; thence, run North 01°21'11" West, along and with the East boundary of La. State Hwy. 577 approximately 88' to a point in the center of a drainage ditch or canal; thence, run Easterly along and with the center of said ditch or canal to a point on the West boundary line of that 22.0577 acres, more or less, acquired from James J. Schneider by Monticello Gin System, Inc. in deed recorded in Conveyance Book 127, Page 580 of the records of East Carroll Parish, Louisiana; thence run South 00°35'29" East, to a point which is North 88°35'54" East, of the POINT OF BEGINNING; thence, run South 88°35'54" West, along and with the North boundary line of that 5 acre tract acquired by Crop Production Services, Inc. to the POINT OF BEGINNING and containing 1.892 acres, more or less.

SUBJECT TO existing rights of way for public roads, drainage and utilities.

All as more fully shown on the Survey of Denmon Engineering, Inc. dated June 10, 2013 attached hereto and made a part hereof.

EXHIBIT A

210

LARRY TUBBS, TUBBS RICE      :    SUIT NO.: 19-198 DIVISION: B
DRYERS, INC., CHIEF VENTURES,    :
L.L.C., and BIG RIVER GRAIN, LLC    :
                                   :
VERSUS                          :    SIXTH JUDICIAL DISTRICT COURT
                                     :
AGSPRING MISSISSIPPI REGION, LLC,   :
AGSPRING, LLC, AGSPRING HOLDCO,    :
LLC, GREG KENNEDY, MARK        :
BEEMER, PACIFIC INVESTMENT       :    PARISH OF MADISON
MANAGEMENT COMPANY, LLC,       :
BARINGS LLC, BRUCE CHAPIN,       :
ABC INSURANCE COMPANY,          :
and XYZ INSURANCE COMPANY      :    STATE OF LOUISIANA

## <u>AFFIDAVIT OF LARRY TUBBS</u>

**STATE OF LOUISIANA**

**PARISH OF RICHLAND**

       **BEFORE** ME, the undersigned Notary Public, duly commissioned in

and qualified for said State and Parish, personally came and appeared:

### LARRY TUBBS

    (*"Affiant"*) who, after being duly sworn, did depose and state as follows:

1.    Affiant is a Plaintiff in these proceedings.

2.    Affiant is the authorized representative of Tubbs Rice Dryers, Inc., Chief Ventures,

      L.L.C. and Big River Grain, LLC, whom collectively along with Affiant are

      referred to herein as Plaintiffs.

3.    Affiant has personal knowledge of the lending relationship and amounts owed by

      Agspring Mississippi Region LLC ("Agspring Mississippi*"*) to Plaintiffs.



4.  Affiant has personal knowledge of the business relationship, Guaranty and the collateral agreements by and between Plaintiffs, Agspring Mississippi and Agspring, LLC.

5.  Affiant has personal knowledge of the relationship between Agspring, LLC, Agspring Mississippi, and Plaintiffs.

6.  Agspring Mississippi Region, LLC failed to make the installment on the Second Amended and Restated Promissory Note due on October 1, 2018 and has made no payments thereafter.

7.  Affiant signed and sent to Agspring Mississippi Region, LLC, by certified USPS mail, on October 10, 2018, a letter, a true and correct copy of which the attached hereto as Exhibit 1, notifying it that the Second Amended and Restated Promissory Note was in past due and was an "Event of Default" which triggered the accrual of default interest.

8.  Affiant signed and sent to Agspring Mississippi Region, LLC, by certified USPS mail, on October 10, 2018, a letter, a true and correct copy of which is attached hereto as Exhibit 2, notifying it of Plaintiffs' intention to accelerate the date owed under the Second Amended and Restated Promissory Note after five (5) days from the date of the letter.

9.  Affiant signed and sent to Agspring, LLC, by certified USPS mail, on October 11, 2018, a letter, a true and correct copy of which the attached hereto as Exhibit 3, notifying it that Agspring Mississippi Region, LLC defaulted on the obligations guaranteed by Agspring, LLC and had been provided with notices of a default and accelerations of the debt.

10. Attached to the Motion for Partial Summary Judgment are the following original documents:

    a. This Affidavit;

    b. Exhibit "C"-- the ORIGINAL promissory note captioned "Second Amended and Restated Promissory Note," in the original principal amount of Twenty-Two Million and No/100 Dollars ($22,000,000.00), dated February 1, 2014, made and subscribed to by Agspring Mississippi payable to the order of Plaintiffs; and

    c. Exhibit "P" – that certain ORIGINAL Guaranty by Agspring, LLC, dated February 1, 2014 executed by Brad Clark, its president, in favor of Plaintiffs unconditionally and solidarily guaranteeing full payment of the Second Amended and Restated Promissory Note.

11. As of April 19, 2021, Agspring Mississippi is truly indebted to Plaintiffs under the terms of that certain Second Amended and Restated Promissory Note for (i) Twenty-Two Million and No/100 Dollars ($22,000,000.00) in principal; (ii) $240,794.52 in accrued regular interest from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum (a per diem rate of $7,232.88) from October 17, 2018 until April 19, 2021; (iv) additional default interest on the principal balance at the rate of 12.00% per annum from April 20, 2021 until paid in full; (v) for the costs of obtaining this judgment and (vi) additional costs and attorney's fees incurred in the future for collection of this debt until paid in full, including but not limited to executing on

this judgment and the collateral securing the Second Amended and Restated Promissory Note.

12. The indebtedness and obligations described in the preceding paragraph are past due, owing and in default.

13. Affiant was in possession and an original holder of that certain Promissory Note dated June 26, 2013, made by Agspring Mississippi Region, LLC payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC in the original principal amount of Seven Million Dollars ($7,000,000), of which a true and accurate copy of the original is attached to the Motion as Exhibit A-1.

14. Affiant was in possession and the original holder of that certain First Amended and Restated Promissory Note dated as of September 6, 2013, made by Agspring Mississippi Region, LLC payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC in the principal amount of Seventeen Million Dollars ($17,000,000), of which a true and accurate copy of the original is attached to the Motion as Exhibit A-2.

15. Over the course of time, the originals of Promissory Note and the First Amended and Restated Promissory Note were inadvertently lost or destroyed.

16. None of myself, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC ever transferred the Promissory Note or the First Amended and Restated Promissory Note.

17. Affiant made a diligent search for the Promissory Note and the First Amended and Restated Promissory Note prior to filing this Motion for Partial Summary Judgment and was unable to locate the originals.

18. Affiant advertised the loss of the Promissory Note in the Madison Journal, the public newspaper in Madison Parish,  on March 18 and 25, 2021 and advertised the loss of the First Amended and Restated Promissory Note in the Madison Journal on April 14, 2021.

19. Attached hereto are the proofs of publication of the loss by the Madison Journal on those dates as Exhibits 4 and 5.

20. To the best of Affiant's information, knowledge and belief, the signatures of Bradley K. Clark, as President of Agspring, L.L.C., on the Guaranty, the Amendments to Mortgage, and the Consents of Sole Member and Sole Manager of Agspring Mississippi attached to the Motion for Partial Summary Judgment are genuine.

**LARRY TUBBS**

**SWORN TO AND SUBSCRIBED BEFORE ME** this 16th day of April, 2021.

Name: Edwin P Fuller

My commission expires e death

Notary

...MENT NOT PREPARED BY
...ERSIGNED NOTARY.
...TING TO SIGNATURES ONLY.

Edwin P. Fuller
Notary Public
Notary Number 16108
Richland Parish, Louisiana

**LARRY G. TUBBS**
125 Cherokee Trail
Delhi, LA 71232

Telephone: 318-282-0562

e-mail: lgt@bigrivergrain.com

October 10, 2018

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

Your Second Amended and Restated Promissory Note in amount of $22,000,000.00 dated as of February 1, 2014, made by you to Larry G. Tubbs, an Individual, Tubbs Rice Dryers, Inc, Chief Ventures, L.L.C., and Big River Grain, LLC, and those notes it re-states, secured by your mortgage(s) securing same, is/are past due because of your failure to pay the installment owed on October 1, 2018. This is an "Event of Default" as provided in Paragraph 8, page 8 of your mortgage(s).

This is your notice that after seven days, this note shall bear interest at the rate of 12% per annum as provided therein.

All other rights under the note(s) and mortgages(s), including, but not limited to, the giving of notice to accelerate all payments, are reserved.

Sincerely,

**TUBBS RICE DRYERS, INC,**
**CHIEF VENTURES, L.L.C.,**
**BIG RIVER GRAIN, LLC**

BY:
Larry G. Tubbs

Larry G. Tubbs, Individually

EXHIBIT
1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas   66211

9590 9402 2449 6249 1220 12

2. Article Number (Transfer from service label)

7015 3010 0002 1130 0943

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

Kaleb Graber          10/15/18

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...stricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 2.75

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $ 3.45
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery  $

Postmark
Here

Postage
$ .47

Total Postage and Fees
$ 6.67

Sent To  AgSpring Mississippi Region, LLC
Street and Apt. No., or PO Box No.  5251 West 116th Place, Suite 200
City, State, ZIP+4®  Leawood, Kansas 66211

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

7015 3010 0002 1130 0943

**LARRY G. TUBBS**

125 Cherokee Trail
Delhi, LA 71232

Telephone: 318-282-0562

October 10, 2018

e-mail: lgt@bigrivergrain.com

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

Because of an Event of Default, i.e., not paying the October 1, 2018, payment, this is your 5-day notice as provided by the Second Amended and Restated Promissory Note dated February 1, 2014, and the notes which are reinstated therein made by you to the Order of Larry Tubbs, individually, Tubbs Rice Dryers Inc, Chief Ventures, L..C., and Big River Grain, LLC, that as Payees, and/or holders, they exercise their option to and do declare the whole principal and interest to at once become due and payable.

This is Notice of option to accelerate all payments as provided in said notes and in the mortgage(s) you executed which secure same dated February 6, 2014, et cetera.

Sincerely,

**TUBBS RICE DRYERS, INC,
CHIEF VENTURES, L.L.C.,
BIG RIVER GRAIN, LLC**

BY: _____
Larry G. Tubbs

_____
Larry G. Tubbs, Individually

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $ | 2.75 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) $ | |
| ☐ Return Receipt (electronic) $ | 3.45 |
| ☐ Certified Mail Restricted Delivery $ | |
| ☐ Adult Signature Required $ | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ | .47 |
| Total Postage and Fees $ | 6.67 |

Postmark Here

Sent To AgSpring Mississippi Region, LLC
Street and Apt. No., or PO Box No. 5251 West 116th Place, Suite 200
City, State, ZIP+4 Leawood, Kansas 66211

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7015 3010 0002 1130 3430

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas    66211

9590 9402 2449 6249 1220 12

2. Article Number (Transfer from service label)
7015 3010 0002 1130 0943

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Kaleb Graber                    10/15/18

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:           ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... stricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**EXHIBIT 2**
tabbies

*Law Office*
# Donald K. Carroll
P. O. Drawer 1018, 301 Marietta Street
Oak Grove, Louisiana 71263
e-mail: don@carrolldonald.net

Tele: 318-428-1200

Fax: 318-428-1220

October 11, 2018

AgSpring, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

You gave your Guaranty dated September 6, 2013, to Larry G. Tubbs, Individually, Tubbs Rice Dryers, Inc, Chief Ventures, L.L.C., and Big River Grain, LLC guarantying the obligations owed by AgSpring Mississippi Region, LLC to the Tubbs Group. This is your notice that this debtor has defaulted on said obligations and has been sent, this day, notices of the default and of the exercise of their option to accelerate all payments. Copies of these notices are enclosed.

Sincerely,

CARROLL LAW OFFICE

Donald K. Carroll
Attorney for Tubbs Group



EXHIBIT
3

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee  $ 3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage  $ .47

Total Postage and Fees  $ 6.67

Sent To  AgSpring, LLC

Street and Apt. No., or PO Box No.  5251 West 116th Place, Suite 200

City, State, ZIP+4®  Leawood, Kansas   66211

PS Form 3800

7015 3010 0002 1130 0950

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AgSpring, LLC
5251 West 116th Place,
Suite 200
Leawood, Kansas   66211

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2449 6249 1220 05

2. Article Number (Transfer from service label)
7015 3010 0002 1130 0950

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                           ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
Koleb Graber                    10/15/18
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

**LARRY G. TUBBS**
125 Cherokee Trail
Delhi, LA 71232

Telephone: 318-282-0562

e-mail: lgt@bigrivergrain.com

October 10, 2018

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

Your Second Amended and Restated Promissory Note in amount of $22,000,000.00 dated as of February 1, 2014, made by you to Larry G. Tubbs, an Individual, Tubbs Rice Dryers, Inc, Chief Ventures, L.L.C., and Big River Grain, LLC, and those notes it re-states, secured by your mortgage(s) securing same, is/are past due because of your failure to pay the installment owed on October 1, 2018. This is an "Event of Default" as provided in Paragraph 8, page 8 of your mortgage(s).

This is your notice that after seven days, this note shall bear interest at the rate of 12% per annum as provided therein.

All other rights under the note(s) and mortgages(s), including, but not limited to, the giving of notice to accelerate all payments, are reserved.

Sincerely,

**TUBBS RICE DRYERS, INC,**
**CHIEF VENTURES, L.L.C.,**
**BIG RIVER GRAIN, LLC**

BY: Larry G. Tubbs

Larry G. Tubbs, Individually

## LARRY G. TUBBS

125 Cherokee Trail
Delhi, LA 71232

Telephone: 318-282-0562

e-mail: lgt@bigrivergrain.com

October 10, 2018

AgSpring Mississippi Region, LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211

Gentlemen:

Because of an Event of Default, i.e., not paying the October 1, 2018, payment, this is your 5-day notice as provided by the Second Amended and Restated Promissory Note dated February 1, 2014, and the notes which are reinstated therein made by you to the Order of Larry Tubbs, individually, Tubbs Rice Dryers Inc, Chief Ventures, L..C., and Big River Grain, LLC, that as Payees, and/or holders, they exercise their option to and do declare the whole principal and interest to at once become due and payable.

This is Notice of option to accelerate all payments as provided in said notes and in the mortgage(s) you executed which secure same dated February 6, 2014, et cetera.

Sincerely,

**TUBBS RICE DRYERS, INC,
CHIEF VENTURES, L.L.C.,
BIG RIVER GRAIN, LLC**

BY: _____
Larry G. Tubbs

_____
Larry G. Tubbs, Individually

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AgSpring, LLC
5251 West 116th Place,
   Suite 200
Leawood, Kansas   66211

9590 9402 2449 6249 1220 05

2. Article Number (Transfer from service label)

7015 3010 0002 1130 0950

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Koleb Gruber   10/15/18

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery
icted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$   3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)   $
☐ Return Receipt (electronic)   $ 2.75
☐ Certified Mail Restricted Delivery   $
☐ Adult Signature Required   $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$   .47

Total Postage and Fees
$   6.67

Sent To
AgSpring, LLC
Street and Apt. No., or PO Box No.
5251 West 116th Place, Suite 200
City, State, ZIP+4
Leawood, Kansas   66211

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions



**Louisiana Press Association**

404 Europe Street • Baton Rouge, LA 70802 • Ph: (225) 344-9309 • Fax: (225) 344-9344

# Proof of Publication

I certify that the attached legal notice for ___Andree Cullens___
(Organization Running the Legal Notice)

was published in the ___Madison Journal___
(Name of Publication)

on ___Thurs., March 18 & Thurs., March 25, 2021___
(Date of Publication)

Title of Legal Notice (If not attached): ___Whereabouts Inquiry___

___Blakely D. Bell, Publisher___
Printed Name and Title

_____
Signature and Title

Signed before me, Notary, this __12th__ day of __April__, 20_21_.

___Tim Whinstead___
JP-33-2  com. Exp
01-26

# Notices

**FROM**

ST, TALLU-

EL ST, TALLU-

LINCOLN ST,

, TALLULAH,

WALNUT ST,

GRIFFIN ST,

TH ST, TALLU-

, TALLULAH,

JANICE AVE,

E
tion

tion, Inc.

Is an Equal Op-
, applicant, or
ge, color, na-
ffiliation, or any

Delta Head Start/Early Head Start
— 404 East Oughborne St.
318-574-9200

Gultery Child-Care Learning
Center – 1011B Ethel St.
318-574-2933

Kids Planet Learning Center –
121 N. Mulberry St.
318-574-0806

Broadway's Childcare Learning
Center - 610 North Cedar
318-574-1133

In order to register, your child must meet the age re-
quirement and/or income requirements set forth in each
program. Foster Care and Homeless Children are Cate-
gorically Eligible.
Please bring your child's birth certificate, proof of in-
come (last 4 check stubs or food stamp budget sheet),
proof of residency, immunization records, social secu-
rity card, and medical card. If applicable, disability
record, foster-care agreement, for homeless families'
letter of support from school system liaison or support
source.

For more information you may call or visit any of the
locations listed above.

---

## PUBLIC NOTICE
### Whereabouts Inquiry
#### Public Notice

Anyone knowing the whereabouts of one certain promis-
sory note executed by AGSPRING MISSISSIPPI RE-
GION, LLC, on JUNE, 26, 2013, made payable to LARRY
TUBBS, TUBBS RICE DRYERS, INC., CHIEF VEN-
TURES,L.L.C., and BIG RIVER GRAIN, LLC, in the
amount of $7,000,000 with payments of $33,541.67 be-
ginning on JULY 1, 2013 at the interest rate of 5.75%, PER
ANNUM, please contact: Andree Cullens, Attorney At
Law, 12345 Perkins Road, Bldg. 1, Baton Rouge,
Louisiana, 70810, (225) 236-3643.

---

## PUBLIC NOTICE

held in the Parish of Madison, State of Louisiana, on
SATURDAY, DECEMBER 5, 2020 (the "Election"), to
authorize the levy of a special tax therein pursuant to the
following proposition (the "Proposition"):

### MILLAGE RENEWAL PROPOSITION
### (COUNCIL ON AGING)

Shall the Parish of Madison, State of
Louisiana (the "Parish"), continue to
levy a special tax of one (1) mill on all
the property subject to taxation within
the Parish (an estimated $107,500 rea-
sonably expected at this time to be col-
lected from the levy of the tax for an
entire year) for a period of ten (10)
years, beginning with the year 2021
and ending with the year 2030, to ac-
quire, improve, maintain, operate and
support facilities, equipment, vehicles,
programs and services for senior citi-
zens of the Parish, including paying
salaries and providing funding for fa-
cilities, equipment, vehicles, programs
and services provided by the Madison
Voluntary Council on Aging?

This Governing Authority does further pro-
ceed to examine and canvass the returns of the Election
thereof.

SECTION 2. Election Results. According to the official
certified tabulation of votes cast at said Election, there
was a total of **750** votes cast **IN FAVOR OF** the Proposi-
tion and a total of **319** votes cast **AGAINST** the Proposi-
tion, resulting in a majority of **431** votes cast **IN FAVOR
OF** the Proposition. The Proposition was therefore duly
**CARRIED** by a majority of the votes cast by the quali-
fied electors voting at the Election.

SECTION 3. Promulgation of Election Result. The re-
sults of said election shall be promulgated by publication
in the manner provided by law, after receipt from the
Secretary of State's office of the actual costs of the elec-
tion, as required by Act 205 of the Regular Session of the

# Notices

## 10

Thursday, March 18, 2021

## PUBLIC NOTICE
### Richmond Auto Center
#### Permit to Sell

2009 Silver JEEP Patriot 1J4FT28B89D190925 is stored at Richmond Auto Center, #2 Fredrick St., Tallulah LA 70445. If all current charges are claimed by owner by 3/11/2021, a Permit to Sell may be obtained.

## PUBLIC NOTICE
### Whereabouts Inquiry
#### Notice

Anyone knowing the whereabouts of one certain promissory note executed by AGSPRING MISSISSIPPI REGION, LLC, on JUNE, 26, 2013, made payable to LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES,L.L.C., and BIG RIVER GRAIN, LLC, in the amount of $7,000,000 with payments of $33,541.67 beginning on JULY 1, 2013 at the interest rate of 5.75%, PER ANNUM, please contact: Andree Cullens, Attorney At Law, 12345 Perkins Road, Bldg. 1, Baton Rouge, Louisiana, 70810, (225) 236-3643.

## PUBLIC NOTICE
### Whereabouts Inquiry
#### Notice

NOTICE

"Anyone having any information or knowing the whereabouts of JENNIFER SUZANNE WILLIAMS, Aka, Jennifer S. Williams, Jennifer S. Cummins, Jennifer S. Sasser, or, STEVEN ANTHONY WILLIAMS, Aka, Steven A. Williams, who was last known to have lived at 143 Sidney Williams Drive,, Tallulah, Louisiana, please contact Vicki V. Baker, Attorney, at the phone number 318-574-1715."

## PUBLIC NOTICE
### Delta Connection
#### Pre-Registration

ATTENTION!!

program. Foster Care and Homeless Children are Categorically Eligible.

Please bring your child's birth certificate, proof of income (last 4 check stubs or food stamp budget sheet), proof of residency, immunization records, social security card, and medical card. If applicable, disability record, foster-care agreement, for homeless families' letter of support from school system liaison or support source.

For more information you may call or visit any of the locations listed above.

## PUBLIC NOTICE
### Madison Parish Police Jury
#### Sale of Immovable Property

PUBLIC NOTICE

SALE OF ADJUDICATED IMMOVABLE PROPERTY AS SURPLUS PROPERTY BY THE PARISH OF MADISON

By virtue of the provisions of **Chapter 13-A of Title 33 of the Louisiana Revised Statues and Louisiana Revised Statue 33:4712**, the Parish of Madison has received a request to sell **Lot number Thirteen (13)** of **Block Two (2)** of the GEORGIA ADDITION to the Village of Tallulah, as per Plat Recorded in Conveyance **Book CR: JJ, Page 455**, Records of Madison Parish, Louisiana, together with all building and improvements located thereon. LESS AND EXCEPT Two (2) feet off of the South Side thereof. This sale is made and accepted subject to a mineral reservation in Vendor's deed of acquisition. Said property having a municipal address of 700 Henderson Street, Tallulah, Louisiana (**GEO 200039685**) as adjudicated surplus property. **Carroll M. Finister, et, al, c/o Louis Finister of 26311 Iris Ave. Moreno, C. 92555**, has been identified as a party who might have a vested or contingent interest in said property, subject to cancella-



**Louisiana Press Association**

404 Europe Street • Baton Rouge, LA 70802 • Ph: (225) 344-9309 • Fax: (225) 344-9344

# Proof of Publication

I certify that the attached legal notice for **Andree Cullens**
(Organization Running the Legal Notice)

was published in the **Madison Journal**
(Name of Publication)

on **Thurs., April 15, 2021**.
(Date of Publication)

Title of Legal Notice (If not attached): **Whereabouts Inquiry**

**Blakely D. Bell, Publisher**
Printed Name and Title

Signature and Title

Signed before me, Notary, this **15th** day of **April**, 20**21**.

**Tom Winstead**
JP-33-2   Com Exp.
01-26

# Notices

## Gas news, prices for the week of April 11

(April 12, 2021) - Louisiana gas prices have fallen 2.5 cents per gallon in the past week, averaging $2.59/g today, according to GasBuddy's daily survey of 2,436 stations in Louisiana. Gas prices in Louisiana are 5.7 cents per gallon higher than a month ago and stand 87.8 cents per gallon higher than a year ago.

According to GasBuddy price reports, the cheapest station in Louisiana is priced at $2.31/g today while the most expensive is $3.19/g, a difference of 88.0 cents per gallon. The lowest price in the state today is $2.31/g while the highest is $3.19/g, a difference of 88.0 cents per gallon.

The national average price of gasoline has fallen 2.1 cents per gallon in the last week, averaging $2.85/g today. The national average is down 0.5 cents per gallon from a month ago and stands $1.02/g higher than a year ago.

Historical gasoline prices in Louisiana and the national average going back ten years:
April 12, 2020: $1.71/g (U.S. Average: $1.83/g)
April 12, 2019: $2.54/g (U.S. Average: $2.83/g)
April 12, 2018: $2.44/g (U.S. Average: $2.70/g)
April 12, 2017: $2.20/g (U.S. Average: $2.41/g)
April 12, 2016: $1.84/g (U.S. Average: $2.06/g)
April 12, 2015: $2.17/g (U.S. Average: $2.39/g)
April 12, 2014: $3.42/g (U.S. Average: $3.63/g)
April 12, 2013: $3.37/g (U.S. Average: $3.55/g)
April 12, 2012: $3.81/g (U.S. Average: $3.90/g)
April 12, 2011: $3.66/g (U.S. Average: $3.79/g)

Neighboring areas and their current gas prices:
Baton Rouge- $2.53/g, down 1.7 cents per gallon from last week's $2.55/g.
Jackson- $2.55/g, down 2.0 cents per gallon from last week's $2.57/g.
New Orleans- $2.56/g, down 0.7 cents per gallon from last week's $2.57/g.

"It has been a fairly tame last few weeks at the pump for

## PUBLIC NOTICE
### Whereabouts Inquiry

Anyone knowing the whereabouts of one certain first amended and restated promissory note executed by AGSPRING MISSISSIPPI REGION, LLC, on SEPTEMBER 6, 2013, made payable to LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC, in the amount of $17,000,000 with payments of $81,458.33 beginning on OCTOBER 1, 2013 at the interest rate of 5.75 %, PER ANNUM, please contact: Andree Cullens, Attorney At Law, 12345 Perkins Road, Bldg. 1, Baton Rouge, Louisiana, 70810, (225) 236-3643."

## PUBLIC NOTICE
### Request for Clemency

I, George Moore III, DOC# 98494, have applied for clemency for my conviction of first degree murder. If you have any comments, contact the Board of Pardons at (225) 342-5421.

## Home for Sale

* Approximately 1170 square feet
* Located at corner of Jefferson and Liberty Streets
* 3 bedroom, 1 1/2 bath
* Red brick home on quiet street (only three houses on street)
* New roof, doors, thermal windows.
* New water heater installed 6/2019
* New gas heating and air conditioning installed 8/2019
* Sold "as is"
* $49,500 (qualified buyers, please)
* Not for rent
* Call (601) 831-2330 and leave message for more information

# GUARANTY

The undersigned (hereinafter sometimes referred to as "Guarantor"), hereby gives to Larry G. Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana Corporation, Chief Ventures, L.L.C., a Louisiana limited liability company and Big River Grain, LLC, a Louisiana limited liability company, (collectively, "Lender") this Guaranty (this "Guaranty") for the purpose of guaranteeing the obligations of Agspring Mississippi Region, LLC, a Delaware limited liability company ("Obligor").  Guarantor agrees as follows:

1.      Guarantor solidarily, and unconditionally guarantees to Lender the prompt payment in full that certain Second Amended and Restated Promissory Note executed by Obligor in favor of Lender of even date herewith in the principal sum of Twenty-Two Million and No/100 ($22,000,000.00) Dollars, including interest, attorneys' fees, expenses of collection and costs, (collectively, the "Obligations").

2.      Guarantor shall be bound by all of the terms and conditions of any notes, agreements, mortgage or other documents in favor of Lender signed or incurred by Borrower.  Guarantor hereby waives all notice and pleas of presentment, demand, dishonor, protest, discussion and division.  Guarantor shall not have any rights of subrogation until the payment in full of all Obligations and any subrogation rights shall relate only to the collateral then held by Lender.

3.      To the extent permitted by law, Guarantor's obligations under this Guaranty shall continue notwithstanding any set-off, counterclaim, reduction, or diminution of the Obligations or any defense of any kind or nature (other than performance by Guarantor of its obligations hereunder) that Borrower may have or assert against Lender.

4.      Without releasing or affecting Guarantor's obligations hereunder, Lender may, one or more times, in its sole discretion, without notice to or the consent of Guarantor or any other Obligor, take any one or more of the following actions: (a) release, renew or modify the obligations of Borrower or any other Obligor; (b) release, exchange, modify, or surrender in whole or in part Lender's rights with respect to any collateral for the Obligations; (c) modify or alter the term, interest rate or due date of any payment of any of the Obligations; (d) grant any postponements, compromises, indulgences, waivers, surrenders or discharges or modify the terms of its agreements with Guarantor, Borrower or any other Obligor; (e) change its  manner of doing business with Guarantor, Borrower or any other party; or (f) impute payments or proceeds of any collateral furnished for any of the Obligations, in whole or in part, to any of the Obligations, or retain the payments or proceeds as collateral for the Obligations without applying same toward payment of the Obligations.  Guarantor hereby expressly waives any defenses arising from any such actions.  The release of liability of any person shall not affect the liability hereunder of any person who is not specifically released.

5.      This Guaranty shall be binding on Guarantor and Guarantor's successors and assigns and shall inure to the benefit of Lender, its successors, assigns, endorsees, and any person or persons, or entities, including, without limitation, any banking or other financial institution, to whom Lender may grant an interest in the Obligations, or any of them, and this Guaranty shall be binding on Guarantor to the extent of such assignment or interest.  Any such assignment or grant of interest shall not operate to release Guarantor from any obligation to Lender hereunder with respect to any unassigned Obligations.

NO:0104474/00001:167685v3



PLAINTIFF'S EXHIBIT

6.  If Lender receives any payment or proceeds of collateral, which payment or proceeds or any part thereof are subsequently required, by any court of competent jurisdiction, to be repaid to Borrower, Borrower's estate, trustee, or any other party, then to the extent of such repayment by Lender, the Obligations or part thereof which has been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date the initial payment, reduction or satisfaction occurred, and Guarantor shall remain solidarily liable to Lender for the repayment of such amount reinstated. .

7.  This Guaranty shall be governed and interpreted under the internal laws of the State of Louisiana.  If any provision of this Guaranty shall be held to be legally invalid or unenforceable by any court of competent jurisdiction, all remaining provisions of this Guaranty shall remain in full force and effect.

This Guaranty is signed on and effective as of the date shown below.

**AGSPRING, LLC,**
a Delaware limited liability company

By: _____
Name:  Brad Clark
Title:  President
Date:  February 1, 2014

2

December 9, 2019
Shirley Shurlove
Dy Clerk

| | | |
|---|---|---|
| LARRY TUBBS, TUBBS RICE | : | SUIT NO.: 19-198 DIVISION: B |
| DRYERS, INC., CHIEF VENTURES, | : | |
| L.L.C., and BIG RIVER GRAIN, LLC | : | |
| | : | |
| VERSUS | : | SIXTH JUDICIAL DISTRICT COURT |
| | : | |
| AGSPRING MISSISSIPPI REGION, LLC, | : | |
| AGSPRING, LLC, AGSPRING HOLDCO, | : | |
| LLC, GREG KENNEDY, MARK | : | |
| BEEMER, PACIFIC INVESTMENT | : | PARISH OF MADISON |
| MANAGEMENT COMPANY, LLC, | : | |
| BARINGS LLC, BRUCE CHAPIN, | : | |
| ABC INSURANCE COMPANY, | : | |
| and XYZ INSURANCE COMPANY | : | STATE OF LOUISIANA |

### REQUEST FOR ADMISSION, INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT, AGSPRING, LLC

**NOW INTO COURT,** through undersigned counsel, comes Plaintiffs, LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC, who propound these Requests for Admission, Interrogatories and Requests for Production of Documents to Defendant, AGSPRING, LLC, to be answered in writing and under oath within thirty (30) days of service hereof, in accordance with Louisiana Code of Civil Procedure Article 1420, *et seq.* These written discovery requests are to be deemed continuing so as to require supplemental answers if additional information becomes available to defendant.

### INSTRUCTIONS

1. **Compliance with Louisiana Rules of Civil Procedure.** The requests for production of documents below should be answered by the defendant, and the documents and evidence requested below should be produced to the plaintiff, in accordance with the Louisiana Code of Civil Procedure.

2. **Time for Response.** Please respond to these discovery requests within the delays allowed by the Louisiana Code of Civil Procedure.

3. **Location of production.** Plaintiff requests that all documents and evidence produced in response to these interrogatories be produced at the offices of Moore, Walters, Thompson, Thomas, Papillion & Cullens, APLC, 12345 Perkins Road, Building One, Baton Rouge, Louisiana 70810, unless a different place is established by mutual agreement of the parties hereafter.

4. **Claims of Privilege/Privilege Log.** If any information requested herein is claimed to be privileged or otherwise protected from discovery, the respondent is requested to identify in writing, with particularity, the basis for such claim, and in the case of any document not produced, to identify in writing:

    a)    its author;

    b)    the date of its creation;

    c)    the names, positions and capacities of all persons to whom each document was addressed or by whom it was seen, read, disclosed or examined;

    d)    its general nature and subject matter and the basis upon which it is claimed to be privileged or otherwise protected from discovery; and

    e)    its present location and custodian.



PLAINTIFF'S EXHIBIT
Q

5.    **Identification of Persons.**  Wherever used in these requests for production, a request to "identify" a person includes a request for the person's name, his or her last known address, his or her last known employer, his or her last known telephone number, and any other information known to the respondent which may reasonably be used to locate and contact the person in question.

6.    **Identification of Documents.**  Wherever used in these requests for production, a request to "identify" a document shall require the respondent to state its author, the date of its creation, the names, positions and capacities of all persons to whom each document was addressed, its general nature and subject matter, and its present location and custodian.  Alternatively, a copy of the document may be attached to the response.

7.    **Definition of Documents.**  Wherever used in these requests for production, and requests for admissions, the term "documents" shall mean all writings, records and recordings of any kind, whether in paper, magnetic or digital format,  including but not limited to letters, memoranda, reports, handwritten notes, logs, formal or informal minutes, tape recordings, photographs, photocopies, telegrams, telefaxes, transcripts, electronic word processing and spreadsheet and other computer files, and email messages, wherever such "documents" are located and however produced or reproduced.  A request for all "documents" includes a request for any and all non-identical copies of any such "documents" which may differ to any extent because of alterations, attachments, blanks, comments, notes, underlining or otherwise.

8.    **Definition of You and Your.**  As used in these requests for production, the terms "you" and "your" refer to AGSPRING, LLC, and its wholly-owned subsidiaries, including their employees, agents and representatives.

9.    **Definition of Plaintiffs.**  As used in these requests for production, the term "Plaintiffs" means LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C., and BIG RIVER GRAIN, LLC.

10.    **Continuing Nature.**  These requests for production are intended to be continuing in nature, and any information which you might receive between now and the trial of this matter should be furnished to the undersigned by supplemental answers and responses as required by the Louisiana Code of Civil Procedure.

## REQUEST FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

The copy attached hereto as Exhibit 1 is a genuine copy of the original Promissory Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

**REQUEST FOR ADMISSION NO. 2:**

The copy attached hereto as Exhibit 1 accurately reflects the contents of the original Promissory Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

**REQUEST FOR ADMISSION NO. 3:**

The document attached hereto as Exhibit 2 is a genuine copy of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**REQUEST FOR ADMISSION NO. 4:**

The document attached hereto as Exhibit 2 accurately reflects the contents of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**REQUEST FOR ADMISSION NO. 5:**

On October 1, 2018 Agspring Mississippi failed to make the monthly interest payment due on under the Second Amended and Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**REQUEST FOR ADMISSION NO. 6:**

Failure to pay monthly interest is an event of default under the Second Amended and Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**REQUEST FOR ADMISSION NO. 7:**

Plaintiffs sent notice of non-payment of the under the Second Amended and Restated Promissory Note in the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, to Agspring Mississippi on October 10, 2019.

**REQUEST FOR ADMISSION NO. 8:**

Plaintiffs accelerated the maturity date of the Second Amended and Restated Promissory Note on October 17, 2019.

**REQUEST FOR ADMISSION NO. 9:**

Agspring. LLChas made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, on or after October 1, 2018.

**REQUEST FOR ADMISSION NO. 10:**

Agspring, LLC has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, on or after October 1, 2018.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

If you answered anything less than an unqualified admission to any Request for Admission, please explain your answer, including identification, with specificity, of any dates, documents, or other data supporting your answer.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a current list of the full name and last known business address of each member and manager of AGSPRING, LLC.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any company record that would allow petitioner to determine the relative voting rights of the members of AGSPRING, LLC.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the articles of organization of AGSPRING, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce the federal and state income tax returns and reports filed by AGSPRING, LLC, for the last three (3) years.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any written operating agreement of AGSPRING, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any financial statement of AGSPRING, LLC prepared at any time during the last three (3) years.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a complete listing of all distributions made by AGSPRING, LLC over the last five (5) years, that identifies all recipients of said distributions, the amount of each distribution, the date of every such distribution, and the business purpose of each distribution.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all appraisals of AGSPRING, LLC conducted at any time during the last three (3) years, regardless of who commissioned the appraisal or the purpose of the same.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all income statements and balance sheets for AGSPRING, LLC compiled during the last three (3) years.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all financial statements provided by AGSPRING, LLC to any bank, credit union, financial institution, or lender of any kind during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any agreement, promissory note, contract, debenture, terms of repayment, loan document, or writing of any kind that relates to any loan made to or by AGSPRING, LLC to any other entity, including but not limited to related-party entities, or individual during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any agreement, contract, stock certificate, certificate of deposit, or writing of any kind that relates to any investment made by AGSPRING, LLC in any other entity, individual, or business venture during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce the minutes of any meeting held for AGSPRING, LLC during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 14:**

Any business valuation report or appraisal regarding AGSPRING, LLC performed in the last five (5) years.

**REQUEST FOR PRODUCTION NO. 15:**

Any document, certificate, or writing of any kind that evidences the ownership interest of all entities and individuals in AGSPRING, LLC during the last five (5) years.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the debt owed by AGSPRING, LLC to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 17:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to transfers of assets of any kind worth over $1,000 to any Defendant, AGSPRING, LLC,  and any Defendant, Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, or FO-ND, LLC during the last three (3) years.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all communications whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, between AGSPRING, LLC,  and any Defendant, Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, or FO-ND, LLC related to cash, finances, accounting, or financing issues that took place within the last five (5) years.

**REQUEST FOR PRODUCTION NO. 19:**

All documents, reports, materials, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the financial dealings of AGSPRING, LLC since December 1, 2015.

**REQUEST FOR PRODUCTION NO. 20:**

Any insurance policy issued to AGSPRING, LLC or naming AGSPRING, LLC as an insured, that is currently in place or that provided coverage at any time during the last five (5) years, regardless of the nature or type of insurance policy involved.

## REQUEST FOR PRODUCTION NO. 21:

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that you support or relate to your response to Interrogatory No. 1.

Respectfully submitted:

J. E. Cullens, Jr., T.A. (La. Bar #23011)
Andrée Matherne Cullens (La. Bar #23212)
**WALTERS, PAPILLION,**
**THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
Telephone: 225-236-3636
Fax: 225-236-3650
cullens@lawbr.net
acullens@lawbr.net

and

Paul M. Sterbcow (La. Bar #17817)
**LEWIS, KULLMAN, STERBCOW**
**& ABRAMSON, LLC**
2615 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130
Telephone: 504-588-9722
Fax: 504-588-1514
sterbcow@lksalaw.com

**PLEASE SERVE:**

**GREG KENNEDY**
**VIA LONG ARM SERVICE**
2801 Chillon Way
Laguna Beach, CA 92651-2099

**MARK BEEMER**
**VIA LONG ARM SERVICE**
3309 Swanhollow Court
Henrico, VA 23233-7617
    *AND*
12720 Connell Drive
Overland Park, KS 66213

**PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC**
**VIA LONG ARM SERVICE**
Through its registered agent for service of process:
Registered Agent Solutions, Inc.
9 E. Loockerman Street, Suite 311
Dover, DE 19901
    *AND*
**VIA LONG ARM SERVICE**
650 Newport Center Drive
Newport Beach, CA 92660

**BARINGS LLC**
Through its registered agent for service of process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802


**AMERICAN INFRASTRUCTURE MLP II IP FEEDER LP; AMERICAN INFRASTRUCTURE MLP MANAGEMENT II LLC; AMERICAN INFRASTRUCTURE MLP PE MANAGEMENT, L.L.C.; AMERICAN INFRASTRUCTURE MLP YIELD MANAGEMENT, L.L.C.; and AMERICAN INFRASTRUCTURE MLP FUNDS, LP.
VIA LONG ARM SERVICE**
Through their registered agent for service of process:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808
         *AND*
**VIA LONG ARM SERVICE**
950 Tower Lane
Suite 800
Foster City, CA 94404


**AGSPRING HOLDCO, LLC and AGSPRING, LLC
VIA LONG ARM SERVICE**
Through their registered agent for service of process:
Cogency Global Inc.
850 New Burton Road, Suite 201
Dover, DE 19904
         *AND*
**VIA LONG ARM SERVICE**
5101 College Boulevard
Leawood, KS 662211


**AGSPRING MISSISSIPPI REGION, LLC and LAKE PROVIDENCE GRAIN AND RICE, LLC**
Through their registered agent for service of process:
Cogency Global Inc.
3867 Plaza Tower Drive, 1st Floor
Baton Rouge, LA 70816


**BRUCE CHAPIN
VIA LONG ARM SERVICE**
6618 Willow Lane
Mission Hills, KS 66208


**JEFF LANDRY
LOUISIANA ATTORNEY GENERAL**
1885 North Third Street
Baton Rouge, LA 70802

## PROMISSORY NOTE

$7,000,000.00                                                   As of June 2̲6̲, 2013

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note the principal sum of SEVEN MILLION AND 00/100 ($7,000,000.00) Dollars together with interest at the rate of Five and 75/100th (5.75%) percent per annum, and payable in consecutive monthly installments of interest only due on the first day of each month, commencing on July 1, 2013, in the amount of $33,541.67, with a full and final payment of all principal and interest due hereon being due and payable on June ___, 2018. Maker has paid the holder of this note the interest due hereon from the date hereof through June 30, 2013. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after five days notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and *in solido*, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana.

MAKER

AGSPRING MISSISSIPPI REGION, LLC

By: _____

Name:   Brad Clark

Its:        President



PLAINTIFF'S
EXHIBIT

1

## FIRST AMENDED AND RESTATED
## PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount: $17,000,000**

$17,000,000.00                                   As of September 6, 2013

For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of SEVENTEEN MILLION AND 00/100 ($17,000,000.00) Dollars together with interest at the rate of Five and 75/100th percent (5.75%) per annum until September 6, 2018 (the "Initial Period"), and with interest beginning on August 30, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"), and payable in consecutive monthly installments of interest only due on the first day of each month, commencing on October 1, 2013, in the amount of $81,458.33 during the Initial Period and an amount to be calculated based upon the Prime Rate plus Three percent (3.0%) during the Second Period, with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through October 1, 2013. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

This Amended and Restated Promissory Note is not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of SEVEN MILLION DOLLARS ($7,000,000).

All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney

NO:0104474/00001:164779v1



PLAINTIFF'S
EXHIBIT
2

or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 om June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parishes of West Carroll and Morehouse, State of Louisiana.

**MAKER:**
AGSPRING MISSISSIPPI REGION, LLC

By: _____

Name:  Brad Clark
Its:       President

2

# SECOND AMENDED AND RESTATED
# PROMISSORY NOTE

**Original Issuance Date: June 26, 2013**

**Original Principal Amount: $7,000,000**

**Amended and Restated Principal Amount: $17,000,000**

**Second Amended and Restated Principal Amount: $22,000,000.00**

$22,000,000.00                                              As of February 1, 2014

  For value received, the undersigned (the "Maker") promises to pay to the order of Larry Tubbs, an individual, Tubbs Rice Dryers, Inc., a Louisiana corporation, Chief Ventures, L.L.C., a Louisiana limited liability company, and Big River Grain, LLC, a Louisiana limited liability company or any future holder of this note (collectively, the "Lender") the principal sum of TWENTY-TWO MILLION AND 00/100 ($22,000,000.00) Dollars, together with interest at the rate of (i) Five and 75/100th percent (5.75%) per annum from the date hereof until August 30, 2018 (the "Initial Period"); and (ii) with interest beginning on September 1, 2018 until the Maturity Date calculated at the Prime Rate plus Three percent (3.00%) per annum (the "Second Period"). This Note shall be payable in consecutive monthly installments of interest only due on the first day of each month throughout the term hereof, commencing on February 1, 2014, in the amount of $105,416.66 throughout the Initial Period, and with the monthly payment of interest only to be paid during the Second Period being calculated based upon the Prime Rate plus Three percent (3.0%), with a full and final payment of all principal and interest due hereon being due and payable on September 6, 2023 (the "Maturity Date"). The "Prime Rate" for the purposes hereof shall mean the Prime Rate as published from time to time in the *Wall Street Journal*, under "Money Rates". In the event the *Wall Street Journal* ceases to publish the Prime Rate, Prime Rate for the purposes hereof shall mean the prime rate of interest quoted in the Federal Reserve Statistical Release H.15, under "Selected Interest Rates". Maker has paid the holder of this note the interest due hereon from the date hereof through January 31, 2014. This note may be prepaid in whole or in part at any time without payment of premium or penalty.

  This Second Amended and Restated Promissory Note is an amendment and restatement, and not a novation, and refinances, amends, and restates in its entirety, that certain promissory note made by and between Maker and Lender dated June 26, 2013 in the amount of $7,000,000, as amended and restated by that certain First Amended and Restated Promissory Note dated as of September 6, 2013, in the principal amount of $17,000,000.00.

  All sums due hereunder shall be payable in lawful money of the United States of America at Tubbs Rice Dryers, Inc., Attn: Larry Tubbs, P.O. Box 38, Pioneer, Louisiana 71266, or at such other place as the holder hereof may from time to time designate.

  The Maker and endorsers, sureties and guarantors hereof severally waive presentment for payment, demand, notice of nonpayment, protest, and agree that a payment hereof may be



PLAINTIFF'S
EXHIBIT
3

extended from time to time, one or more times, without notice, hereby binding themselves, solidarily, unconditionally and as original promissors for the payment hereof in principal and interest, costs and attorneys' fees and expenses. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

In the event of default under this Note, after seven (7) days' notice to the Maker, this Note shall bear interest at the rate of 12% per annum. If this note is placed in the hands of an attorney or attorneys at law for collection, to prosecute claims in bankruptcy, to institute legal proceedings to recover the amount hereof, or any part hereof, in principal or interest, for compromise or other action, or otherwise to protect the interests of the holder, the Makers and endorsers of the note bind themselves, jointly, severally and in solido, to pay the reasonable fees of the attorney who may be employed for that purpose.

And it is hereby agreed, in the making and delivery of this note, that if any installment or any part thereof shall remain unpaid at the date when due or there be an Event of Default on any mortgage which secures this note, then, at the option of the said payee or holder of this note, after five days' notice, the whole principal and interest shall at once become due and payable.

This note shall be governed by and construed in accordance with the laws of the State of Louisiana and is secured by (i) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of June 26, 2013, and recorded as DR No. 245116, in MB 254, Page 787 on June 28, 2013 in West Carroll Parish, Louisiana; and (ii) the Mortgage, Security Agreement and Assignment of Leases and Rents executed by Maker in favor of Lender as of the date hereof, and to be recorded in the parish East Carroll, State of Louisiana.

MAKER:
AGSPRING MISSISSIPPI REGION, LLC

By: _____
Name: Brad Clark
Its:    President

2

LARRY TUBBS, TUBBS RICE DRYERS, :  SUIT NO.:  19-198 DIVISION:  B
INC., CHIEF VENTURES, L.L.C., AND :
BIG RIVER GRAIN, LLC :
 :  SIXTH JUDICIAL DISTRICT COURT
VERSUS :
 :
AGSPRING MISSISSIPPI REGION, LLC, :   PARISH OF MADISON
AGSPRING, LLC, AGSPRING HOLDCO, :
LLC, GREG KENNEDY, MARK :
BEEMER, PACIFIC INVESTMENT :   STATE OF LOUISIANA
MANAGEMENT COMPANY, LLC, :
BARINGS LLC, BRUCE CHAPIN, ABC :
INSURANCE COMPANY, AND XYZ :
INSURANCE COMPANY :
 :
 :

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS

**NOW INTO COURT**, through the undersigned counsel, comes Defendant Agspring, LLC, et al. ("Agspring"), pursuant to La. Code Civ. Proc. Ann. art. 1467, hereby responds to Plaintiffs' Requests for Admissions as follows:

### Preliminary Statement

These responses reflect only the current status of Agspring's knowledge, understanding, and belief respecting the matters about which inquiry has been made. Discovery in this action is continuing and, consequently, Agspring may not have yet identified all information responsive to the Requests. As discovery in this action proceeds, Agspring anticipates that it may discover additional or different information or documents. Without in any way obligating itself to do so, Agspring reserves the right to amend, modify, supplement, clarify, or further explain these responses and objections at any time in the future.

Furthermore, these responses are without prejudice to the right of Agspring to use or rely on at any time, any subsequently discovered information, or information omitted from these responses as a result of mistake, error, oversight, or inadvertence. Agspring further reserves the right to object on appropriate ground to the introduction of any portion of these responses into evidence.

Any inadvertent disclosure by Agspring of information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection shall not constitute a waiver of that privilege or protection.

These responses are made solely for the purpose of and in relation to discovery conducted in this case. Each response is given subject to all appropriate objections (including, but not limited



1

to, objections concerning competency, privacy, relevancy, specificity, overbreadth, undue burden, materiality, confidential proprietary or trade secret material, or admissibility), which would require the exclusion of any response contained herein. All such objections are therefore reserved and may be interposed at trial.

Agspring responds to the Requests as it interprets and understands them. If Plaintiffs subsequently assert an interpretation of the Requests that differs from Agspring's understanding, Agspring reserves its right to supplement its objections and/or responses herein.

Agspring states that, except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred from the Requests or responses thereto. The fact that Agspring has responded to the Requests should not be taken as an admission, or a concession of the existence, of any fact set forth or assumed by the Requests, or that such response constitutes evidence of any fact thus set forth or assumed.

Agspring will make all productions described below on a rolling basis, and only after the parties enter into a mutually agreed-upon protective order providing for the confidential treatment of documents so designated.

Lastly, Agspring reserves the right to supplement its responses and objections to the Requests if the Court's Order on the Motion to Dismiss the Amended Petition narrows the claims that will proceed beyond the Motion to Dismiss.

### General Objections and Responses

Agspring objects to these Requests to the extent they seek privileged information, including information encompassed by the attorney-client privilege, the attorney work-product doctrine, privacy rights of third parties (including but not limited to the Insurance Privacy and Protection Act and any similar laws), or any other applicable privilege. Any inadvertent disclosure by Agspring of information that is protected as an attorney-client communication or as attorney work product, or that is otherwise immune from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to such information, or of Agspring right to object to the use of any such information during this action or otherwise.

2

**Objections and Responses to Requests for Admissions**

**REQUEST FOR ADMISSION REQUEST FOR ADMISSION NO. 1:**

The copy attached hereto as Exhibit 1 is a genuine copy of the original Promissory Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

**RESPONSE**:

Admitted.

**REQUEST FOR ADMISSION NO. 2:**

The copy attached hereto as Exhibit 1 accurately reflects the contents of the original Promissory Note executed by Brad Clark as President of Agspring Mississippi Region, LLC in the original principal amount of $7,000,000.00 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC.

**RESPONSE**:

Admitted.

**REQUEST FOR ADMISSION NO. 3:**

The document attached hereto as Exhibit 2 is a genuine copy of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**RESPONSE**:

Admitted.

**REQUEST FOR ADMISSION NO. 4:**

The document attached hereto as Exhibit 2 accurately reflects the contents of the original First Amended and Restated Promissory Note in the principal amount of $17,000,000.00 payable to the order of Larry Tubbs, Tubbs, Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain,

LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.

**RESPONSE**:

 Admitted.

**REQUEST FOR ADMISSION NO. 5**:

 On October 1, 2018 Agspring Mississippi Region failed to make the monthly interest payment due on under the Second Amended and Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**RESPONSE**:

 Admitted.

**REQUEST FOR ADMISSION NO. 6**:

 Failure to pay monthly interest is an event of default under the Second Amended and Restated Promissory Note in the principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3.

**RESPONSE**:

 Admitted.

**REQUEST FOR ADMISSION NO. 7**:

 Plaintiffs sent notice of non-payment of the under the Second Amended and Restated Promissory Note in the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, to Agspring Mississippi Region on October 10, 2019.

**RESPONSE**:

 Admitted.

**REQUEST FOR ADMISSION NO. 8**:

 Plaintiffs accelerated the maturity date of the Second Amended and Restated Promissory Note on October 17, 2019.

**RESPONSE**:

 Admitted.

**REQUEST FOR ADMISSION NO. 9:**

Agspring, LLC has made no payment on the Second Amended and Restated principal amount of $22,000,000, a copy of which is attached hereto as Exhibit 3, on or after October 1, 2018.

**RESPONSE**:

Admitted.

**REQUEST FOR ADMISSION NO. 10:**

Agspring LLC has made no payment on the Second Amended and Restated principal amount of $22,000,000.00, a copy of which is attached hereto as Exhibit 3, on or after October 1, 2018.

**RESPONSE**:

Admitted.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

If you answered anything less than an unqualified admission to any Request for Admission, please explain your answer, including identification, with specificity, of any dates, documents, or other data supporting your answer.

**ANSWER**:

No response is required.

## RESPONSES TO REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a current list of the full name and last known business address of each member and manager of AGSPRING, LLC.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce any company record that would allow petitioner to determine the relative voting rights of the members of AGSPRING, LLC.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the articles of organization of AGSPRING, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce the federal and state income tax returns and reports filed by AGSPRING, LLC, for the last three (3) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any written operating agreement of AGSPRING, LLC, including all predecessor companies or corporations, together with any amendments thereto.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any financial statement of AGSPRING, LLC prepared at any time during the last three (3) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a complete listing of all distributions made by AGSPRING, LLC over the last five (5) years, that identifies all recipients of said distributions, the amount of each distribution, the date of every such distribution, and the business purpose of each distribution.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all appraisals of AGSPRING, LLC conducted at any time during the last three (3) years, regardless of who commissioned the appraisal or the purpose of the same.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all income statements and balance sheets for AGSPRING, LLC compiled during the last three (3) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all financial statements provided by AGSPRING, LLC to any bank, credit union, financial institution, or lender of any kind during the last five (5) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any agreement, promissory note, contract, debenture, terms of repayment, loan document, or writing of any kind that relates to any loan made to or by AGSPRING, LLC to any other entity, including but not limited to related-party entities, or individual during the last five (5) years.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 12**:

Please produce any agreement, contract, stock certificate, certificate of deposit, or writing of any kind that relates to any investment made by AGSPRING, LLC in any other entity, individual, or business venture during the last five (5) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 13**:

Please produce the minutes of any meeting held for AGSPRING, LLC during the last five (5) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

9

**REQUEST FOR PRODUCTION NO. 14:**

Any business valuation report or appraisal regarding AGSPRING, LLC performed in the last five (5) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 15:**

Any document, certificate, or writing of any kind that evidences the ownership interest of all entities and individuals in AGSPRING, LLC during the last five (5) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 16:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the debt owed by AGSPRING, LLC to Plaintiffs.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 17:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to transfers of assets of any kind worth over $1,000 to any Defendant, Agspring Mississippi, or FO-ND, LLC during the last three (3) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all communications whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, between AGSPRING, LLC, and any Defendant, Agspring Idaho, LLC, a Delaware limited liability company, Agspring Logistics, LLC, a Delaware limited liability company, Agspring Mississippi, or FO-ND, LLC related to cash, finances, accounting, or financing issues that took place within the last five (5) years.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 19**:

All documents, reports, materials, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that relate to the financial dealings of AGSPRING, LLC since December 1, 2015.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 20**:

Any insurance policy issued to AGSPRING, LLC or naming AGSPRING, LLC as an insured, that is currently in place or that provided coverage at any time during the last five (5) years, regardless of the nature or type of insurance policy involved.

**RESPONSE**:

Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, reports, materials, electronic mail, and things, whether in the form of paper documents or electronic data (including e-mails and computer files) or otherwise, that you support or relate to your response to Interrogatory No. 1.

**RESPONSE**:

Agspring objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or the joint-defense and common-interest privilege and will withhold the same.

Subject to and without waiving these objections, Agspring will conduct a reasonable search and appropriate review and will produce non-privileged documents responsive to this Request, to the extent such documents exist and are in its custody or control, as they are identified and after the entry of a stipulated protective order in this case.

Respectfully submitted,

NEUNERPATE

BY:

Jeffrey K. Coreil              #32405
(JCoreil@NeunerPate.com)
Cliff A. LaCour               #30581
(CLaCour@NeunerPate.com)
1001 West Pinhook Road, Suite 200
Lafayette, LA  70503
Phone:        (337) 237-7000
Fax:          (337) 233-9450

-and-

Jane E. Maschka  (MN Attorney No. 0389130)
jane.maschka@faegredrinker.com
(*Pro Hac Vice Admission to be Applied for*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone (612) 766-7000
Facsimile (612) 766-1600

ATTORNEYS FOR AGSPRING, LLC

## Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

☐    Hand delivery                         ☐    Prepaid U. S. Mail

X    Facsimile/Electronic Mail            ☐    Federal Express

X    Certified Mail/Return Receipt Requested     ☐    CM/ECF

Lafayette, Louisiana on February 18, 2020.

_____
Counsel

US.126689916.01

14

## VERIFICATION OF FIRST SET OF RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION AND INTERROGATORIES

Before me, the undersigned authority, a notary public, duly commissioned and qualified in and for Miami County, Bruce Chapin, personally appeared:

Bruce Chapin

JENNIFER M MICK
Notary Public, State of Kansas
My Appointment Expires

who, after being duly sworn, declared:

He has reviewed the preceding responses by Agspring, LLC, to Larry Tubbs' interrogatories and requests for admission and the answers set forth in the responses are true and correct to the best of his knowledge, information, and belief.

s/

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AGSPRING MISSISSIPPI REGION, LLC, *et al.*, | Case No. 21-11238 (CTG) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. ___** |

### ORDER GRANTING MOTION OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO § 362(d) OF THE BANKRUPTCY CODE

Upon consideration of the Motion of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (the "Movants") for Limited Relief from the Automatic Stay Pursuant to § 362(d) of the Bankruptcy Code (the "Motion"); and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and due and proper notice of the Motion having been provided pursuant to Local Bankruptcy Rule 4001-1; and it appearing that no other or further notice being required; and upon consideration of any response timely filed with respect to the Motion; and after due deliberation and sufficient cause therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as set forth herein.

2.    The automatic stay in these cases is modified to permit the court in the Louisiana Litigation (as defined in the Motion) to hold oral argument, render a decision and enter judgment on the Movant's Motion for Partial Summary Judgment currently pending in the Louisiana Litigation.

## **CERTIFICATE OF SERVICE**

I, Michael L. Vild, hereby certify that, on this 8th day of October, 2021, I caused copies of

the foregoing *Motion of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big*

*River Grain, LLC for Limited Relief from the Automatic Stay Pursuant to Section 362(d) of the*

*Bankruptcy Code* to be served upon all interested parties via CM/ECF and the parties listed below

by electronic mail.

Laura Davis Jones, Esquire
Timothy P. Cairns, Esquire
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
ljones@pszjlaw.com
tcairns@pszjlaw.com

Samuel R. Maizel, Esquire
Tania M. Moyron, Esquire
Dentons US LLP
601 S. Figueroa Street, #2500
Los Angeles, CA 90017
samuel.maizel@dentons.com
tania.moyron@dentons.com

David F. Cook, Esquire
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
david.f.cook@dentons.com

David L. Buchbinder, Esquire
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox # 35
Wilmington, DE 19801
david.l.buchbinder@usdoj.gov

 */s/ Michael L. Vild*
Michael L. Vild (No. 3042)