# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AGSPRING MISSISSIPPI REGION, LLC, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11238 (CTG)<br><br>(Jointly Administered)<br><br>Hearing Date: March 30, 2022 at 10:00 a.m.<br>Obj. Deadline: March 23, 2022 at 4:00 p.m. |

## MOTION OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC FOR RELIEF FROM THE AUTOMATIC STAY

Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (collectively, the "Tubbs Parties"), by and through undersigned counsel, hereby move this Honorable Court (the "Motion"), pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") for an Order granting relief from the automatic stay to allow the Tubbs Parties to enforce their rights to foreclose via ordinary process against collateral securing their claims. In support of this Motion, the Tubbs Parties respectfully state as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, and this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

## BACKGROUND

2. On September 10, 2021, (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The Debtors remain as debtors-in-possession.

3. The Tubbs Parties are all either Louisiana residents or entities organized under the laws of the State of Louisiana, who are secured creditors of the Debtors.

4. As set forth in more detail below, the Tubbs Parties loaned the Debtors $22 million reflected in a promissory note payable to the Tubbs Parties and secured by mortgages, assignments of leases and rents, and security interests in the Debtors' personal property in Louisiana (the "Collateral").

5. The Debtors are in default of their obligations to the Tubbs Parties, and now owe (i) $22,000,000.00 in principal; (ii) $240,794.52 in accrued regular interest from September 1, 2018 to October 16, 2018; (iii) plus $6,610,852.32 in additional interest at the default rate of 12.0% per annum (a per diem rate of $7,232.88) from October 16, 2016 to April 19, 2021; (iv) additional default interest on the principal balance at the rate of 12.00% per annum from April 20, 2021 until September 10, 2021 (the "Petition Date") in the amount of $1,041,534.72; (v) additional default interest on the principal balance at the rate of 12.00% per annum from September 11, 2021 until March 16, 2022 in the amount of $1,345,315.68; (vi) the costs of obtaining judgment, and (vii) additional costs and attorney's fees incurred in the future for collection of this debt until paid in full, including but not limited to obtaining the collateral securing this debt. *See* Affidavit of Larry Tubbs filed contemporaneously herewith ("Tubbs Aff.").

6. On September 30, 2019, the Tubbs Parties filed suit in state court in Louisiana against certain of the Debtors, certain non-debtor affiliates of the Debtors and several investment

funds that purchased the ownership interests in the Debtors' ultimate parent company Agspring, LLC, a non-debtor entity (the "Louisiana Litigation").

7. The Louisiana Litigation seeks, among other relief, to foreclose by ordinary process on the Collateral, which requires a judgment against the Debtor Agspring Mississippi Region, LLC ("AMR") for its default on the note and an order authorizing judicial seizure and sale of the Tubbs Parties' Collateral ("Foreclosure"). The Louisiana Litigation was stayed by the commencement of the Debtor's chapter 11 case.

8. Larry Tubbs, a resident of Madison Parish, Louisiana, has been, individually and through a group of family-owned companies – Chief Ventures, L.L.C., Tubbs Rice Dryers, Inc., and Big River Grain, LLC – an integral part of the farming and grain industry in the Louisiana region for over 50 years. *See* Tubbs Aff. ¶ 1. After several conversations with representatives of the debtor AMR and his own family, the Tubbs Parties agreed to the sale of their grain business assets, including but not limited to grain elevator facilities located at Pioneer Louisiana and Mer Rouge, Louisiana, to AMR in June 2013. *Id*. at ¶ 4.

9. Part of the sale was financed on credit from the Tubbs Parties, memorialized on June 26, 2013 by a promissory note payable to the order of Larry Tubbs, Chief Ventures, L.L.C., Tubbs Rice Dryers, Inc., and Big River Grain, LLC signed by AMR in the principal amount of $7,000,000. *See* Promissory Note in the original principal amount of $7,000,000 as of June 26, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, L.L.C. executed on June 26, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC. Tubbs Aff. Exhibit B.

10. By September 2013, AMR requested another loan, increasing the principal amount of the debt to $17,000,000, memorialized by a First Amended and Restated Promissory Note

signed by AMR on September 6, 2013.  First Amended and Restated Promissory Note in the principal amount of $17,000,000 as of September 6, 2013 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, and executed as of September 6, 2013 by Brad Clark as President of Agspring Mississippi Region, LLC.  Tubbs Aff. Exhibit C.

11. AMR again borrowed additional money from the Tubbs Parties, which was memorialized by the Second Amended and Restated Promissory Note in the principal amount of $22,000,000 as of February 1, 2014 payable to the order of Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C., and Big River Grain, LLC, executed as of February 1, 2014 by Brad Clark as President of Agspring Mississippi Region, LLC.  Tubbs Aff. Exhibit A.

12. To secure this debt AMR granted the Tubbs Parties a Collateral Mortgage, Security Agreement and Assignment of Leases and Rents, which was filed for record June 28, 2013 in West Carroll parish (where the grain elevator known as Pioneer is located) with the following granting language:

> [T]he Mortgagor does hereby specially mortgage, affect, hypothecate and pledge unto and in favor of Mortgagee and Mortgagee's successors and assigns, all of the following described land, improvements, real and personal property and rents and leases and all of Mortgagor's estate, right, title and interest therein (hereinafter collectively called the "Security"):
>
> The immovable property described in Exhibit A attached hereto and made a part hereof, lying and being in the Parish of West Carroll, State of Louisiana (as hereinafter defined shall be referred to hereinafter as the "Land"); TOGETHER with all buildings and other improvements now or hereafter located on said Land or any part thereof, including, but not limited to, all constructions, component parts, extensions, betterments, attachments, renewals, renovations, substitutions and replacements of, and all additions and appurtenances to the Security (the improvements");
>
> TOGETHER with all of the right, title and interest of Mortgagor in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Land to the center lines thereof;
>
> TOGETHER with all of the right, title and interest of Mortgagor in and to tenements, hereditaments, easements, servitudes, appurtenances, passages, waters,

> water courses, riparian rights, other rights, liberties and privileges thereof or in any way now or hereafter appertaining now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part thereof, rights-of-way, licenses, permits, approvals and privileges, belonging or in any way appertaining to the Land and/or Improvements (all of the foregoing Land, Improvements, rights, servitudes and privileges, collectively, the "Real Property"); Together with all fixtures, machinery, equipment, goods, and every other article of movable property, tangible or intangible, now or hereafter attached to or used in connection with the Real Property, or placed on any part thereof and whether or not attached thereto, appertaining or adapted to the use, management, operation or improvement of the Real Property, insofar as the same and any reversionary right thereto may now or hereafter be owned or acquired by Mortgagor (the "Personal Property");
>
> Together with all leases and contracts of sale for the Real Property, or any portion thereof, now and hereafter entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees or contract purchasers; all proceeds and revenue arising from or out of the Real Property or any part thereof, including insurance proceeds in accordance with the provisions of La. R.S. 9:5386; all licenses, permits, franchises, governmental approvals and all sanitary sewer, drainage, water and utility service agreements benefiting the Real Property or any part thereof, together with all accounts, any and all escrow accounts, general intangibles, documents, instruments and chattel paper arising from or in connection with the Real Property, including all books and records of Mortgagor in connection therewith; and all rights of Mortgagor under any leases, covenants, agreements, easements, restrictions or declarations recorded with respect to, or as an appurtenance to, the Real Property or any part thereof (hereinafter collectively referred to as the "Incorporeal Rights").
>
> Notwithstanding anything in this Mortgage to the contrary, this Mortgage shall attach, in addition to the Security, to subsequent additions, substitutions and replacements to and for the Security, as well as to present and future component parts of the Security and to natural increases, accessions, accretions, and issues of the Security.

Tubbs Aff. Exhibit D.

13. Another Mortgage, Security Agreement and Assignment of Leases and Rents with substantially similar granting language (with the exception of the property identification) was filed for record in West Carroll and Morehouse parishes on September 13, 2013 granting mortgages on the land and Pioneer grain elevator facility and the land and grain elevator facility known as "Mer Rouge" located in Morehouse Parish. Tubbs Aff. Exhibits F and G.

14. Another Mortgage, Security Agreement and Assignment of Leases and Rents was filed for record on February 12, 2014 in East Carroll Parish with substantially similar granting

language (with the exception of the property identification) granting a mortgage on the land and grain elevator facility known as "Monticello" located in East Carroll Parish.  Tubbs Aff. Exhibit J.

15. Under Louisiana law, land, grain elevators, and their component parts are immovable property. *St. John the Baptist Parish School Bd. v. Marbury-Pattillo Constr. Co.,* 259 La. 1133, 1147 (La. 1971) (Contract to build a grain elevator was a contract for the construction of immovables). *See also*, La. C.C. arts. 462[2], 463[3], and 465.[4]

16. The Tubbs Parties have a first-priority, validly perfected security interest in the land, grain elevator facilities, and all of their component parts located at Pioneer, Mer Rouge and Monticello.

17. The Tubbs Parties also have a validly perfected security interest in all of the personal (movable) property used in storing or handling grain at these facilities.  See Tubbs Aff. Exhibits E, H, I, K, L, M, N, and O.

18. In October 2018, AMR failed to make its required interest payment.  Accordingly, under the terms of the Note, the Tubbs Parties accelerated the Debt, which began accruing default interest on October 17, 2018.  *See* Seven-day letter [Tubbs Aff. Exhibit R], Five-day letter [See Tubbs Aff. Exhibit S], and Default Letter [See Tubbs Aff. Exhibit T].

19. The Tubbs Parties prepared and filed an ordinary process foreclosure suit in Madison Parish, Louisiana on September 30, 2019, amended on December 17, 2019, seeking,

---

[2] "Tracts of land, with their component parts, are immovables."

[3] "Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruit of trees are component parts of a tract of land when they belong to the owner of the ground."

[4] "Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts."

among other things, a judgment on the note and mortgages, and the right to seize and sell the properties subject to its mortgages.

20. The Tubbs Parties filed, on April 22, 2021, a Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. art. 1915,[5] which would reduce the debt to judgment, recognize that the mortgages secured the judgment, and allow the Tubbs Parties to seize and sell the Collateral. Despite the Tubbs Parties' request for an earlier hearing, after a telephone conference with the state court, the hearing on the Foreclosure Motion was set on September 13, 2021 to allow non-debtor Agspring LLC and AMR sufficient time to conduct discovery.

21. AMR and Agspring, LLC filed their Opposition to the Foreclosure Motion on August 27, 2021 arguing that: 1) they needed more time to understand the complaint and conduct discovery; 2) that the Defendants may have been fraudulently induced to borrow money from the Tubbs Parties (an argument for which they produced no evidence or authority to support); and 3) they were entitled to a reduction in the interest due from the date that the Tubbs Parties refused to release their mortgage on part of its collateral in exchange for an amount that the Tubbs Parties knew to be unfairly low. The Tubbs Parties replied to these arguments on September 3, 2021, showing that, as a matter of law and fact, none of those arguments precluded a judgment in their favor.

22. On September 8, 2021, AMR retained a Chief Restructuring Officer.

23. AMR filed for bankruptcy on September 10, 2021, the Friday afternoon before the Monday hearing on the Foreclosure Motion.

---

[5] A copy of the Motion for Partial Summary Judgment on the Note, Mortgages and Security Interests and to Designate Judgment Final Pursuant to La. C.C.P. art. 1915 is found at Tubbs Aff. Exhibit U.

24. On October 8, 2021, the Tubbs Parties filed a motion for limited relief from the automatic stay [D.I. 81] in this Court seeking an Order to allow the court in the Louisiana Litigation to consider the pending motion for partial summary judgment. In their opposition to the motion for relief from stay, the Debtors represented to this Court that recent appraisals of the Collateral valued the property at $20.5 million. *See* Debtors' Opposition to Motion of Tubbs Parties for Relief From Stay [D.I. 136] at ¶ 15. Accordingly, the Debtors have conceded that the Tubbs Parties are undersecured and that the Debtors' estates have no equity or interest in the Collateral. The Court ultimately denied, without prejudice, the Tubbs Parties' motion for stay relief. [D.I. 178]

25. On September 30, 2021, the Debtors filed a motion to sell certain of their assets (D.I. 61) (the "Sale Motion"). The Sale Motion specifically excluded the Tubbs Parties' Collateral from the proposed sale. The Tubbs Parties filed a limited objection to the Sale Motion [D.I. No. 135], which the parties ultimately resolved. The Order entered approving the Sale Motion preserved the Tubbs Parties' rights to seek to recover from the proceeds of the sale. [D.I. 179].

26. According to the Debtors, the only substantial assets that remain in their estates are the Collateral of the Tubbs Parties. *See* Sale Hearing Tr. at 24 (The approved sale was for "the large bulk of the estate assets, Your Honor. And other than the Tubbs collateral, I'm not aware that there are significant assets.").

**RELIEF REQUESTED**

27. The Tubbs Parties respectfully request entry of an order pursuant to section 362(d) of the Bankruptcy Code, lifting the automatic stay to permit the Tubbs Parties to exercise any and all rights they have under the Notes and related security agreements, including, but not limited to, foreclosure proceedings via ordinary process with respect to the Properties.

**The Tubbs Parties Should Be Granted Relief From The Automatic Stay**

28. Section 362(d) of the Bankruptcy Code provides, in relevant part, that:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>     (A)    the debtor does not have an equity in such property; and
>     (B)    such property is not necessary for an effective reorganization....

U.S.C. § 362(d)(2).

29. The Debtors are liquidating all of their assets. Given the Debtors' stated value of the Collateral, the Debtors' estates have no "equity" or interest in the Collateral. Moreover, because the Debtors are liquidating, the Collateral cannot be necessary for an effective reorganization, satisfying the second requirement of Section 362(d)(2). *See* Declaration of Kyle Sturgeon [D.I. 19 at p. 6]("The Debtors' ultimate goals are to preserve the going-concern value of the Debtors' businesses, their stakeholders, and parties in interest, and to effectuate an orderly sale process and liquidation") and Declaration of Kyle Sturgeon, [D.I. 98 at p. 7] ("The Debtors' ultimate goal is to maximize the value of the Debtors' estates through orderly sale processes and liquidation of any assets not sold as a going concern for the benefit of all of the Debtors' stakeholder").

30. The Tubbs Parties recently obtained appraisals for the properties that are subject to their liens, which, as of the Petition Date had fair market values as follows:

- Pioneer, West Carroll Parish        $4,500,000
- Mer Rouge, Morehouse Parish      $10,400,000
- Monticello, East Carroll Parish      $ 900,000

Added together, these appraisals, attached to the Declaration of Wes McBrayer [filed contemporaneously herewith] reflect that AMR – as the Debtors already admit – has no "equity"[6] in these properties, satisfying the first factor required to obtain stay relief under Section 362(d)(2). Accordingly, the Tubbs Parties are at risk of losing the benefit of their mortgage interests by not being able to foreclose. *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 206 (3d Cir. 1995)

31.     Given the value of the Properties as established by both the Debtors' concession and the appraisers' valuation, and the amounts owed to the Tubbs Parties, the Debtors have no interest in the Collateral pursuant to section 362(d)(2)(A) as the debts owed by the Debtors exceed the value of the Tubbs' Parties security interest in the Properties. *See In re Indian Palm Assocs., Ltd.*, 61 F.3d at 207 ("The classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value.").

32.     Furthermore, because the Debtors are liquidating all of their assets, lifting the stay is mandatory because both factors necessary for stay relief are met. Section 362(d)(2) requires that "the court **shall grant relief** from the stay" if the debtor has no equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). *In re Indian Palms Assocs., Ltd.*, 61 F.3d at 208.

---

[6] When Congress enacted the Bankruptcy Code, the generally understood meaning of "equity" was that the value of a property was greater than all secured liens. *See* Black's Law Dictionary 634 (4th ed. 1968) (defining equity for purposes of real estate transactions as: "The remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens. The amount or value of a property above the total liens or charges.").
 *In re Indian Palms Assocs., Ltd*., 61 F.3d at 207.

## **CONCLUSION**

**WHEREFORE**, the Tubbs Parties respectfully request the entry of an Order lifting the automatic stay imposed by section 362(a) of the Bankruptcy Code to allow the Tubbs Parties to proceed with foreclosure on the Collateral by ordinary process.

Dated: March 16, 2022

CROSS & SIMON, LLC

 /s/ Michael L. Vild
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

- and -

J. E. Cullens, Jr., Esquire
Andrée M. Cullens, Esquire
WALTERS, PAPILLION, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. 1
Baton Rouge, LA 70810
Telephone: (225) 236-3636
cullens@lawbr.net
acullens@lawbr.net

- and -

Paul M. Sterbcow, Esquire
LEWIS, KULLMAN, STERBCOW & ABRAMSON, LLC
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504) 588-1500
sterbcow@lksalaw.com

*Co-Counsel for Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC*