**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING MISSISSIPPI REGION, LLC, *et al.*,[1] | Case No. 21-11238 (CTG) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. Nos. 297 & 309 |

**REPLY BY LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY AND IN RESPONSE TO SECURED LENDERS' PRELIMINARY OBJECTION TO MOTION OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC FOR
<u>RELIEF FROM THE AUTOMATIC STAY</u>**

Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (collectively, the "Tubbs Parties"), by and through undersigned counsel, hereby respectfully submit this reply in support of the Tubbs Parties' Motion for Relief from the Automatic Stay [D.I. 297] (the "Stay Relief Motion") and in response to the Secured Lenders' (the "Lenders") Preliminary Objection to the Stay Relief Motion [D.I. 309].

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

Case 21-11238-CTG    Doc 332    Filed 03/28/22    Page 2 of 15

## **PRELIMINARY STATEMENT**

The Lenders do not dispute that the Tubbs Parties have a first priority, validly perfected security interest in real property constituting the Collateral.[2] Instead, the Lenders take the position that "grain bins, other grain storage equipment, and grain dryers" are *personal* property[3] [D. I. 310, ¶4], and thus the Lenders have claims to some of the Collateral. For the reasons set forth in detail below, this is both irrelevant and unsupported by the law in Louisiana and many other states. While the Lenders have filed an adversary proceeding seeking a determination of liens, the claim over which party has a security interest in the alleged personal property (grain bins, grain dryers, and grain piles), or any other collateral is a dispute over which this Court should abstain pursuant to 28 U.S.C. 1334(c)(2).[4] Abstention is required because the adversary proceeding unquestionably raises only state law claims, has only "related to" jurisdiction, and there are no other independent grounds for jurisdiction besides the bankruptcy filing. Moreover, whether some of the Collateral is claimed by both the Tubbs Parties and the Lenders is not the question before the Court. The Lenders have made no argument that the Collateral is necessary to Agspring Mississippi Regions' effective reorganization or that there is equity in the Collateral. The Lenders are instead apparently

---

[2] Capitalized terms used herein have the meaning set forth in the Stay Relief Motion.

[3] "'Tangible personal property' is synonymous with "corporeal movable property" as set forth in the Louisiana Civil Code." *Hitachi Med. Sys. Am., Inc. v. Bridges,* 2015-0658 (La. App. 1 Cir. 12/9/15), *writ denied,* 2016-0042 (La. 2/26/16), 187 So.3d 1004 *citing South Central Bell Telephone Co. v. Barthelemy,* 94–0499 (La.10/17/94) 643 So.2d 1240, 1243–1244; *see also* La. C.C. art.471.

[4] The Tubbs Parties intend to file a motion in the adversary proceeding filed by the Lenders. "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

motivated to unduly multiply litigation against the Tubbs Parties and to prevent allowing the already pending dispute over claims to the proceeds of the collateral to be decided by a Court sitting in Louisiana where the property is located and which has the most interest in determining what classification these items hold. The Tubbs Parties respectfully request that this Court reject the Lenders' arguments and grant the Tubbs Parties' relief.

## ARGUMENT

1. The collateral alleged by the Lenders is not "personal property" under Louisiana law that is not subject to the liens and claims of the Tubbs Parties. In Louisiana, property is characterized as either immovable or movable.[5] Under Louisiana law, "all things, corporeal or incorporeal, that the law does not consider as immovables, are movables." La. C.C. art. 475. Louisiana law has several code articles identifying the tests for what is an immovable and its component parts.

- "Tracts of land, with their component parts, are immovables." La. C.C. art. 462.

- "Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruit of trees are component parts of a tract of land when they belong to the owner of the ground." La. C.C. art. 464.

- "Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts." La. C.C. art. 465.

- "Things that are attached to a building and that, according to prevailing usages, serve to complete a building of the same general type, without regard to its specific

---

[5] "Things are divided into common, public, and private; corporeals and incorporeals; and movables and immovables." La. C.C. art. 448.

use, are its component parts. Component parts of this kind may include doors, shutters, gutters, and cabinetry, as well as plumbing, heating, cooling, electrical, and similar systems." La. C.C. art. 466.[6]

When one transfers an immovable, the transfer includes its component parts. La. C.C. art. 469. Conversely, corporeal movables, are things that "normally move or can be moved from one place to another." La. C.C. art. 471. However, "materials gathered for the erection of new building or other construction, even though deriving from the demolition of an old one, are movables until their incorporation into the new building or after construction." La. C.C. art. 472.

    2.      In 1971, the Louisiana Supreme Court determined that a contract to build a terminal grain elevator was a contract to build an immovable based on the 1870 version of Louisiana Code articles 464, 467 and 468.  These articles at the time provided as follows:

    a.     "Lands and buildings or other constructions, whether foundations in the soil or not, are immovable by their nature." La. C.C. art. 464 (1870).

    b.     Wire screens, water, pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces, when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature. (As amended by Acts 1912, No. 51.) La. C.C. art. 467 (1870).

    c.     Things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination. Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to wit: Cattle intended for cultivation. Implements of husbandry, seeds, plants, fodder, and manure. Pigeons in a pigeon house. Beehives.  Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works. Th [sic] utensils necessary for working cotton, and sawmills, taffia, distilleries, sugar refineries and other manufactures. All such movables as the owner

---

[6] Things may also be declared by the owner as immovables under La. C.C. art. 467, but that is not at issue in the present case.

>has attached permanently to the tenement or to the building, are likewise immovable by destination. La. C.C. art. 468 (1870).

3. Civil Code article 464 has not substantively changed since 1870. Current Civil Code articles 465 and 466 are the modernized versions of the 1870 version of Civil Code Articles 467 and 468. Thus, the decision in *St. John the Baptist Parish School Board v. Marbury-Patillo Constr. Co.,* 250 La. 1153, 1147 (La. 1971) applies. Lenders incorrectly suggest that the determination that the grain elevator construction contract in this case was based on "the interpretation of a definition under a municipal ordinance instead of the analysis of property classification under applicable state law… ." [D.I. , fn. 4]. While the ultimate issue presented to the Court was whether sales and use taxes under the municipal ordinance were owed by the contractor who built the elevator, to make this determination, the Court relied upon Louisiana state law (not a municipal ordinance) to make this determination. Sales and use taxes under the municipal ordinance were owed on "tangible personal property." *Id.* at p. 1147. The Court cited to La. C.C. arts. 464, 467 and 468 (1870) referenced above to hold that a grain elevator is not personal property, but immovable property.

>The definition of 'tangible personal property' in the ordinance corresponds with the definition of corporeal movables in the Civil Code. C.C. arts. 460, 473, 475. The port commission's contract was not for the purchase of movables, but for the construction of immovables." C.C. arts. 464, 467, 468. No provisions of the ordinance taxing the owner of land who contracts for the erection of structures thereon have been brought to our attention, and we have been able to discovery none. Considering the ordinance as a whole, it is apparent that the sales tax apply only to movables, not immovables. *Id.* at 1147-1148.

4. Lenders' arguments supporting their position reflect that they, not the Tubbs Parties, have failed to recognize changes in the law. Indeed, one of the cases that they cite to, *P.H.A.C. Servs., Inc. v. Seaways Int'l, Inc.*, 403 So.2d 1199 (La. 1981), recognized that it was decided under a version of Article 463 which has not been in effect since 1979. *Id.* at 1202 ("The Civil Code articles on the classification of thing [sic] were recently amended. 1978 La. Acts, No.

5

728, amending the Civil Code articles 448-87. Because the revision became effective in 1979, and the operative facts leading to this litigation occurred in 1978, the rights of the parties are governed by the articles as they existed prior to the revision.") The change from 1870 and 1979 that affected the outcome of *P.H.A.C.* related to cases where the owner of the movable and the owner of the immovable was different, a fact not in the instant case. *P.H.A.C.*, 403 So.2d at 1203. [7]

5. The holding of *P.H.A.C.* is not binding here because a) it applied different laws than were effective when the Tubbs' mortgages were entered into and when this adversary proceeding was filed, and b) there is no evidence that the owners of the grain bins, grain piles, grain piles, and other grain storage equipment are owned by anyone other than Agspring Mississippi Region, LLC. Even despite these differences, the holding in *P.H.A.C.* favors the Tubbs Parties. The *P.H.A.C.* court determined that the "three story high permanent steel structure (not owned by the landowner) qualifies as a building and therefore is an immovable" even though the "unit is capable of being moved by a powerful crane" and was intended to be moved offshore. *P.H.A.C.*, at 1204.

6. *P.H.A.C.* is instructive in understanding how Louisiana court's analyze classification of property into movable (personal) and immovable (real) property. The Louisiana Court recognized that "[i]mmovability is a legal concept and not merely an inherent quality of a thing. Whether a thing is classified as an immovable depends upon whether the legislature has accorded to that thing the preferred status of immovability. Immovability 'in fact' is not itself a

---

[7] "The 1978 revision effect several changes. Constructions other than buildings are now classified as movables unless they are component parts of a tract of land. To be a component part of a tract of land, a construction must meet two requirements: It must be permanently attached to the ground, and it must Belong to the owner of the ground. C.C. 463, as amended by 1978 La. Acts, No. 728."

prerequisite to immovability 'in law', and things regarded as immovables by the law might be moved through the application of extraordinary mechanical means."

7. Agspring Mississippi Region, LLC has been the owner of these three facilities since 2013 when Plaintiffs sold it Pioneer and Mer Rouge, and it acquired the Monticello facility. As suggested by the court in *P.H.A.C.*, the term "building" as used in the articles cited above is broad enough to encompass all types of buildings, not just those intended for habitation. *Olsen v. Shell Oil Co.*, 365 So.2d 1285,1290 (La. 1978). This includes oil wells and grain elevators. *Chevron U.S.A., Inc. v. Atmos Pipeline and Storage, LLC,* 2019 WL 2480074 (W.D. La. 6/11/2019)("Wells are considered constructions permanently attached to the ground.") and *St. John*, cited *supra.*

8. The Lenders incorrectly rely on *Beckham v. Hibernia National Bank,* 665 So.2d 706 (La. App. 2 Cir. 1995) for the proposition that buildings that can be moved without substantial damage to itself or the immovable to which is attached are always movables. This case is distinguishable, firstly, for the reason identified in *P.H.A.C.*: The buildings in *Beckham* were not owned by the landowner, but by the lessee of the properties and thus different laws applied. In *Beckham v. Hibernia National Bank,* 665 So.2d 706 (La. App. 2 Cir. 1995). Hibernia Bank bought and moved a modular building to a tract of land owned by plaintiffs and leased by Hibernia. *Id*. at 708. Plaintiffs sued to prevent Hibernia from moving the building at the expiration of the lease claiming that it was permanently attached and thus they were its owners. The *Beckham* court recognized at the outset that "Louisiana Civil Code articles governing ownership and reimbursement rights when one person makes improvements on another's land, such as LSA–C.C. Art. 493, apply only in situations where those rights are not regulated by agreement of the parties." *Beckham*, 665 So.2d at 708 citing *Wilson Oil Co. v. Central Oil and Supply Corp.,* 557 So.2d 753 (La.App. 2d Cir.), *writ denied,* 563 So.2d 885, 886 (La.1990).

7

9. *Beckham* is distinguishable, secondly, because it relies on an outdated version of La. C.C. art. 466. The *Beckham* court relied on the 1978 version of La. C.C. art. 466[8] to hold that the building was not permanently attached because the article restricted component parts to only those things that could not be removed "without substantial damage" to themselves or to the immovable to which they were attached. *Id.* at 708. Since the building could be moved by disconnecting it from the one and one-half square contract footings without substantial damage to anything, the *Beckham* court concluded that the building was not permanently attached.

10. Understanding the history of Article 466 from 1979 to today is essential to understanding the error made by Lenders. La. C.C. art. 466 was substantially revised after this case. The best explanation can be found in *Hitachi Med. Sys. Am., Inc. v. Bridges*, 2015-0658 (La. App. 1 Cir. 12/9/15), *writ denied*, 2016-0042 (La. 2/26/16), 187 So.3d 1004 and excerpts from the decision are below:

> In 1999, in the case of *Willis–Knighton Medical Center v. Louisiana Department of Revenue*, No. 5046 c/w 4984 (La. Bd. Tax App. 9/14/99), 1999 WL 817688 ("FWillis–Knighton (I)"), the Board of Tax Appeals determined that various systems of equipment in Willis–Knighton Medical Center's physical plant, including MRIs, nuclear cameras, sterilizers, and heart catheter laboratories, were electrical or other installations as contemplated by La. C.C. art. 466 and could not be removed from the physical plant without substantial damage as contemplated by La. C.C. art. 466; thus, those systems were permanently attached to the physical plant and were component parts of the physical plant pursuant to La. C.C. art. 466. Accordingly, the Board concluded that those systems were immovables and that maintenance services and repairs to those systems were not subject to sales and use taxes.
>
> In 2002, the State of Louisiana, Department of Revenue ("Department") issued Revenue Ruling No. 02–003 ("RR 02–003").2 Therein, the Department evaluated

---

[8] "Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.
Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached." La. C.C. art. 466 (1978).

whether MRIs became component parts of a building or other construction through permanent attachment as described in La. C.C. art. 466. In applying La. C.C. art. 466, the Department determined that MRIs housed in specifically designed imaging rooms that were wired into the hospital electrical system would meet both requirements of paragraphs of La. C.C. art. 466 because they were an electrical or other installation (that also met the "societal expectation" test for such installations) and because they could not be removed from the hospital without substantial damage to both the unit and the hospital. Thus, the Department concluded that the MRIs became component parts of the hospital through permanent attachment. As such, sales tax would not be collectible by the sellers, lessor, and repair dealers on sales and leases of or on repair services rendered to the MRIs.

In 2003, the Department issued Private Letter Ruling 03–005 ("PLR 03–005"). Therein, the Department determined that various imaging equipment installed at a medical facility, including MRIs, met the requirements of electrical installations because the installed equipment was hard wired into the medical center's electrical systems and thus, met the requirements of the first paragraph of La. C.C. art. 466. In addition, the equipment was determined to have met the test set forth in the second paragraph of La. C.C. art. 466 because the hospital or equipment would be damaged if the imaging equipment were removed.

Thereafter, in 2005, in *Willis–Knighton* (II), 903 So.2d at 1090–1091, the Louisiana Supreme Court held that the nuclear cameras, which includes MRIs, installed in Willis–Knighton's medical facility building were not component parts of the building because the cameras were not permanently attached within the meaning of La. C.C. art. 466 and could be removed without substantial damage to either the cameras or the building. Thus, the Court concluded that the cameras were not immovable within the contemplation of the civil code articles governing immovable property. *Willis–Knighton* (II), 903 So.2d at 1091. In doing so, the Court rejected the societal expectations test as a means of determining component parts of immovable under La. C.C. art. 466, and it also rejected a disjunctive reading of the two paragraphs of La. C.C. art. 466 as creating two independent types of component parts. *Willis–Knighton* (II), 903 So.2d at 1092. On rehearing, the Court stated that the opinion would be given prospective effect only. *Willis–Knighton* (II), 903 So.2d at 1107.

Shortly after the *Willis–Knighton* (II) decision, the Louisiana Legislature amended La. C.C. art. 466 to provide as follows:

Things permanently attached to an immovable are its component parts.

Things, such as plumbing, heating, cooling, electrical or other installations, are component parts of an immovable as a matter of law.

Other things are considered permanently attached to a building or other construction if they cannot be removed without substantial damage to themselves or to the building or other construction, or if, according to prevailing notions in society, they are considered to be its component parts.

9

This amendment to La. C.C. art. 466 became effective June 29, 2005. See 2005 La. Acts, No. 301, § 1. The amendment was intended to clarify and reconfirm the interpretation of La. C.C. art. 466, including the societal expectation test, which prevailed prior to *Willis–Knighton* (II). 2005 La. Acts, No. 301, § 4. In addition, the amendment was made applicable to existing immovables and was to be used in determining whether a thing was a component part. 2005 La. Acts, No. 301, § 2. Thus, the effect of this amendment to La. C.C. art. 466 was to legislatively overrule *Willis–Knighton* (II) insofar as that case rejected both the societal expectation test and a disjunctive interpretation of La. C.C. art. 466.

In October 2005, the Department published in its quarterly newsletter, Tax Topics, Vol. 25, No. 4 ("Tax Topics"), that 2005 La. Acts, No. 301 "amends [La. C.C. art.] 466 to clarify and re-confirm the interpretation of this Article, including the 'societal expectations' analysis that prevailed prior to [*Willis–Knighton* (II) ]."

The next year, in 2006 La. Acts, No. 765, § 1, the Louisiana Legislature again amended La. C.C. art. 466 to provide as follows:

Things permanently attached to a building or other construction are its component parts.

Things such as plumbing, heating, cooling, electrical, or other installations are component parts of a building or other construction as a matter of law.

Other things are considered permanently attached to a building or other construction if they cannot be removed without substantial damage to themselves or to the building or other construction, or if, according to prevailing notions in society, they are considered to be its component parts.

The provisions of this amendment were made retroactive to June 29, 2005. See 2006 La. Acts, No. 765, § 2. While the 2005 amendment to La. C.C. art. 466 applied to an "immovable," the 2006 amendment limited the application of La. C.C. art. 466 to a "building or other construction." See La. C.C. art. 466, Revision Comments—2008, Editor's Note I.

The Department then issued Private Letter Ruling 06–010 ("PLR 06–010") in July 2006. Therein, the Department noted that although the imaging equipment (in PLR 06–010) was the type of imaging equipment at issue in RR 02–003 and PLR 03–005, the equipment attachment and contract terms were different. The Department also noted the sales and use tax treatment of imaging equipment in *Willis–Knighton* (II) and the legislative amendment to La. C.C. art. 466 by 2005 La. Acts, No. 301. The Department ultimately determined that, under the facts, the imaging equipment was tangible personal property because there would be no substantial damage to either the underlying immovable if the MRI was removed or the MRI equipment itself (because there was a secondary market for used MRI equipment). In doing so, the Department relied on the "substantial damage" analysis of *Willis–Knighton* (II) (as opposed to the "societal expectation" analysis therein). Notably, however, the Department stated that in determining whether or not attached property has

> become a component part, the test provided in La. C.C. art. 466 had to be used, and further implied that the question of whether something constituted a component part was a facts-and-circumstances test.
>
> In 2008, the Louisiana Legislature again amended La. C.C. art. 466. The new and current version of La. C.C. art. 466 provides:
>
> Things that are attached to a building and that, according to prevailing usages, serve to complete a building of the same general type, without regard to its specific use, are its component parts. Component parts of this kind may include doors, shutters, gutters, and cabinetry, as well as plumbing, heating, cooling, electrical, and similar systems.
>
> Things that are attached to a construction other than a building and that serve its principal use are its component parts.
>
> Other things are component parts of a building or other construction if they are attached to such a degree that they cannot be removed without substantial damage to themselves or to the building or other construction.
>
> See 2008 La. Acts, No. 632, § 1, eff. July 1, 2008. According to the Revision Comments—2008(a), the new version of La. C.C. art. 466 "represents a fresh start in an area of law that has been the focus of extensive academic jurisprudential debate."
>
> However, in 2009 La. Acts No. 442, § 2, eff July 1, 2009, the Louisiana Legislature enacted, among other things, La. R.S. 47:301(16)(q), which provides that "[f]or purposes of sales and use taxes ... the term 'tangible personal property' shall not include any property that would have been considered immovable property prior to [2008 La. Acts, No. 632.]" The stated purpose of this act was to "restore the prior definition of a component part for sales tax purposes consistent with [2005 La. Acts, No. 301] and [2006 La. Acts, No. 594]." See 2009 La. Acts No. 442, § 3. In addition, the act was declared to be "remedial, curative, and procedural and therefore [to] be applied retroactively as well as prospectively, and shall [be applied] to all transactions occurring on or after the enactment of [2008 La. Acts, No. 632]." 2009 La. Acts, No. 442, § 5. Thus, for purposes of sales taxes, the prior version of La. C.C. art. 466 (rather than the current version of La. C.C. art. 466) is applicable to the determination of whether a thing becomes a component part.

*Hitachi Med. Sys. Am., Inc. v. Bridges*, 2015-0658 (La. App. 1 Cir. 12/9/15*), writ denied*, 2016-0042 (La. 2/26/16), 187 So. 3d 1004.

11. Notably, many cases in other jurisdictions have determined that grain elevators are real property. *See, Nationwide Agribusiness Ins. Co. v. SMA Elevator Const. Inc.*, 816 F. Supp. 2d 631, 646 (N.D. Iowa 2011 ("a grain elevator … is not tangible personal property…. The Alton

11

grain elevator is a building erected upon and affixed to real property—i.e., it is 'real property.'"); *In re United Ag Servs., Inc.*, 37 Kan. App. 2d 902, 906, 159 P.3d 1050, 1055-1056 (2007)(two new concrete bins or grain elevators located upon land are real property regardless of ownership of the land);; *Nay Co. v. Navigators Specialty Ins. Co.,* No. 3:16-CV-02675-N, 2018 WL 10396586, at *2 (N.D. Tex. Mar. 27, 2018) (Grain Elevator was real property regardless of the parties intent because the Texas definition of "real property" has been broadly construed to include both the land and anything erected on, growing on, or affixed to it); *Stanske v. Wazee Elec. Co.,* 722 P.2d 402, 405 (Colo. 1986)(component of a grain elevator was an improvement to real property because it was part of an integrated distribution system by which grain is distributed from the ground underneath the railroad tracks into appropriate bins).

12. In 1958, the Supreme Court of Oregon recognized that even grain bins held in place by gravity, not attached to concrete slabs on the ground like those at Mer Rouge, Pioneer, and Monticello, are buildings, not personal property. *Waldorf v. Elliott*, 214 Or. 437, 439–40, 330 P.2d 355, 356-357 (1958)("The grain tanks or granaries were buildings upon defendant's land. True, they could be moved around more easily than a farmhouse, a silo, or a barn, but they were buildings, nevertheless. The structures in question were of imposing size, if not weight, and to one observing the land would give every indication of being permanent.").

13. The process of storing and drying grain in these bins is absolutely essential to the function of a grain elevator. Grain elevators were created to hold crops being purchased or available for resale, and to help with the problem of storing grain. The essential function of a gain elevator is to provide storage to protect the grain from the elements and allow for it to be stored and tracked for quality and temperature. The inside building houses a vertical storage with bins that allows for easy transport of the grain. Moisture content is a major factor for storing safely.

High moisture can lead to mold and fungus. As grains reach maturity the moisture content diminishes. Without bins, a grain elevator cannot fulfil its purpose as shown by the image below.



14.     Grain bins are buildings, no different than a barn or shed except for the shape, which are clearly immovables under Article 464.  See, *Miedema Metal Bldg. Sys., Inc. v. Dep't of Treasury*, 127 Mich. App. 533, 537, 338 N.W.2d 924, 927 (1983)(Grain bins bolted onto "J"-shaped anchor brackets imbedded approximately ten inches into poured concrete foundations are permanently affixed to realty).  Pursuant to the first sentence of Article 466, grain bins, if they are not buildings themselves, are immovables because they are attached to a grain elevator and, according to prevailing usages, serve to complete the grain elevator.[9] Ground piles are also buildings, or component parts of buildings, for these same reasons making them immovables under

---

[9] Unlike Louisiana, in 2008, Washington did not consider the use or function of the building as determinative of whether the building was personal or real property. See, *Union Elevator & Warehouse Co. v. State ex rel. Dep't of Transp.,* 144 Wash. App. 593, 605, 183 P.3d 1097, 1103 (2008)("But the fact that an item is essential to the use or function of a building is not dispositive of whether it was intended to be a permanent part of the realty.")

Articles 464 or 466. Grain dryers are immovable as they are heating components attached to the grain elevator which meets the first definition of a component part under Article 466.

15. For purposes of argument only, if grain piles and grain bins are not themselves buildings or permanently affixed to parts of buildings, prevailing notions in society as shown by the cases cited at paragraph 22, 23 and 25 above, consider grain bins, grain dryers and grain piles to be component parts of a grain elevator and have historically been understood to be immovable property.

16. Additionally, Lenders have no basis to use this artificial dispute as a method to forestall the Tubbs' Parties rights to relief from the stay because this dispute has no bearing on whether the Collateral is necessary for the Debtors' reorganization.

17. More importantly, this dispute does not change the ultimate fact that the grain bins, grain silos, and grain dryers are all either the Tubbs Parties' or the Lenders' collateral and there is no equity for Agspring Mississippi Region in any of these assets.

18. Accordingly, the Tubbs Parties ask this Court to disregard Lender's arguments and grant the Tubbs Parties' Stay Relief Motion.

Dated: March 28, 2022	CROSS & SIMON, LLC

*/s/ Christopher P. Simon*
Michael L. Vild (No. 3042)
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
(302) 777-4200 (Telephone)
(302) 777-4224 (Facsimile)
mvild@crosslaw.com
csimon@crosslaw.com

- and -

J. E. Cullens, Jr., Esquire
Andrée M. Cullens, Esquire
WALTERS, PAPILLION, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. 1
Baton Rouge, LA 70810
Telephone: (225) 236-3636
Facsimile: (225) 236-3650
cullens@lawbr.net
acullens@lawbr.net

- and -

Paul M. Sterbcow, Esquire
LEWIS, KULLMAN, STERBCOW & ABRAMSON, LLC
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504)588-1500
sterbcow@lksalaw.com

*Counsel for Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC*

15