**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING MISSISSIPPI REGION, LLC, *et al.*,[1] | Case No. 21-11238 (CTG) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. Nos. 297 & 321 |

**REPLY BY LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY AND IN RESPONSE TO DEBTORS' PRELIMINARY OBJECTION TO MOTION OF LARRY TUBBS, TUBBS RICE DRYERS, INC., CHIEF VENTURES, L.L.C. AND BIG RIVER GRAIN, LLC FOR RELIEF FROM THE AUTOMATIC STAY**

Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC (collectively, the "Tubbs Parties"), by and through undersigned counsel, hereby respectfully submit this reply in support of the Tubbs Parties' Motion for Relief from the Automatic Stay [D.I. 297] (the "Stay Relief Motion") and in response to the Debtors' (the "Debtors") Preliminary Objection to the Stay Relief Motion [D.I. 321].

**PRELIMINARY STATEMENT**

The Debtors' opposition to the Stay Relief Motion is circular and nonresponsive, provides no basis for the Debtors to continue to hold the Collateral[2] securing the Debtors' obligations to the Tubbs Parties, and shows the disparate treatment the Debtors give the two secured parties in this case. On the one hand, the Debtors are eager to distribute proceeds of a sale to the Lenders, even

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

[2] Capitalized terms used herein have the meaning set forth in the Stay Relief Motion.

without providing evidence of value of collateral sold or the allocation of sale proceeds. On the other hand, the Debtors refuse to dispose of the Collateral securing the Tubbs Parties' claims. For example, the Debtors argue that they do not know the amount owed to the Tubbs Parties – even though the Tubbs Parties have filed proofs of claim – purportedly because the Louisiana Litigation is stayed, while arguing that the Louisiana Litigation should continue to be stayed, but this Stay Relief Motion cannot be granted because the Tubbs' Parties claim is unknown since the Louisiana Litigation is stayed. Finally, the Debtors fail to meet their burden to present evidence showing why the Collateral constitutes any "equity" for creditors, or is necessary for an effective reorganization for the reasons set forth below.

## ARGUMENT

1. To determine whether a debtor lacks equity in a property, the court "focuses on a comparison between the total liens against the property and the property's current value." *In re Indian Palms Assoc.,* Ltd., 61 F.3d 197, 206 (3d Cir.1995) (citations omitted); *In re Dye,* 502 B.R. 47, 57 (Bankr. M.D. Pa. 2013). The Debtors do not dispute that the Tubbs Parties have a validly perfected first priority security interest in the "immovables" constituting the Collateral. Nor do they dispute that the Lenders claim on in the "movables" constituting the Collateral. The Lenders are allegedly owed $100,986,371.42. [D.I. 174, p.7] The Tubbs Parties are owed $29,893,181.56. *See* claims register for each Debtor. The appraisals, which show the market value for purposes of selling the property, which is the use proposed by the Debtors, are less than what is owed to both parties and all immovable and personal property for Mer Rouge, Pioneer and Monticello are security for the Lenders and the Tubbs Parties claims.

2. The Tubbs Parties set forth the mathematical calculation for its notes in their proofs of claim. Their proof of claim is *prima facie* proof of the amount owed by Agspring Mississippi

Region, LLC ("AMR"). In a motion to lift stay, the court recognized that, pursuant to 11 U.S.C. § 502, the creditor's proof of claim is *presumptively valid* until challenged by the debtor. *In re Telegroup, Inc.*, 237 B.R. 87, 92 (Bankr. D.N.J. 1999) citing *In re King Street Investments, Inc.,* 219 B.R. 848 (9th Cir. BAP 1998) and *In re Klassen, Jr.,* 227 B.R. 187 (Bankr.D.Kan.1998). See also, *In re Hartford Sands Inc.,* 372 F.3d 637, 640 (4th Cir. 2004); *In re Falwell*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); *Meral, Inc. v. Xinergy, Ltd.,* No. 7:16CV00059, 2016 WL 7235846, at *3 (W.D. Va. Dec. 13, 2016); and Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). Debtors have offered no evidence that these amounts are not owed, have not filed a motion seeking to disallow all or part of the claims, or taken any action to dispute the amount owed.

3. With respect to the Debtors' reliance on cases addressing counterclaims, AMR filed no counterclaims in the Louisiana Litigation. *See* Exhibit A attached hereto. Even if AMR had asserted counterclaims, "the only matters potentially in issue in relation to a motion to lift an automatic stay relate to the adequacy of the creditor's protection, the debtor's equity, and the necessity of the property to effective reorganization; the merits of claims are not in issue and the procedural setting is not one appropriate for the assertion of counterclaims." *In re ASI Reactivation, Inc.*, 934 F.2d 1315 (4th Cir. 1991), *citing Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir.), *cert. denied,* 474 U.S. 828 (1985) (motion for relief of stay gives rise to summary proceedings not appropriate to adjudication of the merits of the underlying claim).

4. Agspring has admitted the signatures on the instruments supporting the Tubbs Parties claims. Agspring also does not deny that it received the monies and pledged collateral for the loans. Nor does it deny that the note is in default. Thus, the Tubbs Parties have met their *prima*

*facie* burden under both bankruptcy and Louisiana laws. *Am. Bank v. Saxena*, 553 So. 2d 836, 842 (La. 1989) ("Saxena has not denied his signatures on the instruments being sued upon and they are thus admitted. Saxena also does not deny that he made the loans, received the monies, or pledged collateral. Nor does he deny that the notes are in default. Thus, the bank has met its initial burden by producing the signed instruments and is entitled to recover unless Saxena establishes a defense by a preponderance of the evidence."). The Debtors, however, have made no preliminary case that *these* properties are necessary to an effective reorganization.

5.  It is the Debtors' burden to prove that Mer Rouge, Pioneer, and Monticello properties are necessary for an effective reorganization. *In re Dye,* 502 B.R. 47, 54 citing 11 U.S.C. § 362(g) and *Nazareth Nat. Bank v. Trina–Dee, Inc.,* 731 F.2d 170, 171 (3d Cir.1984). (Bankr. M.D. Pa. 2013)("party requesting relief from the stay has the burden of proof on the issue of a debtor's equity in the property, and the party opposing the relief has the burden of proof on all other issues, including whether the property is necessary to an effective reorganization."). While a plan of reorganization can be a liquidating plan, that is not the end of the analysis on whether the Debtors have met this burden.

6.  In a Chapter 11 case, a liquidating plan of reorganization must be more advantageous to creditors to be an "effective reorganization." *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988) citing *Hunter Savings Assoc. v. Padgett (In re Padgett),* 74 B.R. 65 (Bankr.S.D.Ohio 1987); *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, at 371 n. 14 (5th Cir.1987), *aff'd,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *but cf. Terra Mar Development Corp. v. Terra Mar Assoc. (In re Terra Mar Associates),* 3 B.R. 462 (Bankr.D.Conn.1980). This means that the Debtors must show that a liquidating plan would be

more advantageous and could be confirmed. *Id.*, citing *In re Anderson Oaks (Phase I) Ltd. Partnership,* 77 B.R. 108 (Bankr.W.D.Tex.1987).

7. To meet this burden, Debtors must present evidence of a reasonable possibility of a successful going concern liquidation within a reasonable time. As of this filing, the Debtors have not filed a liquidating plan or a sale motion for any of these properties. The Debtors instead proffer a hypothetical "plan" from which it is impossible to determine whether the plan has any prospect of being confirmed in a reasonable period of time, especially considering the adversary proceeding, that the Debtors have made no efforts to obtain a determination by this Court of the value of the Tubbs' Parties claims, and actively oppose any effort to allow the Tubbs Parties to have this determination made outside of this Court.

8. The Debtors have expressed a desire to control the sale of the Collateral, but the Tubbs Parties always expressed an interest in credit bidding for the Collateral, and the Debtors have not shown any basis to conduct a sale that would recover more than the Tubbs Parties' secured claim, or that they have a reasonable expectation that higher price could be obtained through normal commercial marketing efforts rather than through foreclosure. A Louisiana foreclosure is a public judicial auction conducted by the sheriff after Mennonite notice, without the need for a breakup fee or legal fees driving up the potential bidders' costs and down their interest. La. C.C.P. arts. 2331 *et seq.*[3] The Tubbs Parties have propounded discovery upon the Debtors in connection

---

[3] A. Notice of the sale of property under a writ of *fieri facias* shall be published at least once for movable property, and at least twice for immovable property, in the manner provided by law. The court may order additional publications.
    B. Notwithstanding the requirements of Paragraph A of this Article, if a judicial sale of immovable property is cancelled or postponed and rescheduled for a later date, notice of sale of property under a writ of fieri facias shall be published once in the manner provided by law.
    C. The sheriff shall not order the advertisement of the sale of the property seized until three days, exclusive of holidays, have elapsed after service on the judgment debtor of the notice of seizure, as provided in Article 2293.

with the Stay Relief Motion regarding any offers made for any of these properties which, upon information and belief, will show that the value of the properties has decreased in value since September 10, 2021, the Petition date. Likewise, to the extent that the Debtors propose to return any of these properties to the Tubbs Parties in their plan, this is a concession that the properties are not necessary for an effective reorganization. If the Debtors propose to give the properties back as part of a liquidating plan, there is no equity in the property and neither the Debtors nor the unsecured creditors will gain anything by waiting to return them as a part of a plan confirmation process.

9. Cases finding that the properties subject to Stay Relief motions are necessary for an effective reorganization even where there is no equity in the properties still require evidence that retaining the property will result in a benefit for the estate.

> Under a liquidation plan, property may further the interest of the estate or creditors if retaining and liquidating it would benefit the estate. *See Matter of Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1354 n. 19 (5th Cir.1989) (retaining property appropriate if it would bring a greater price through liquidation plan than through foreclosure). *See also in re Conroe Forge & Mfg. Corp.,* 82 B.R. at 785 ("In a liquidating Chapter 11 where Debtor has ceased operations and collateral value is not decreasing, ordinarily all property will be necessary for an effective reorganization."). Where there is no such benefit, on the other hand, retaining property to sell it is not allowed. *See, e.g., In re 6200 Ridge, Inc.,* 69 B.R. 837, 844 n. 12 (Bankr.E.D.Pa.1987) (in granting stay relief, the court held that in an insolvent, single asset real estate case, retaining property and selling it would not benefit estate or any creditors).

*In re Kadlubek Fam. Revocable Living Tr.,* 545 B.R. 660, 666 (Bankr. D.N.M. 2016).

10. To defeat the Stay Relief Motion, the Debtors must present evidence that retaining these properties will result in a benefit to the estate. Failure to do so is fatal to the Debtors' defense. *In re EM Lodgings, LLC,* 580 B.R. 803, 814 (Bankr. C.D. Ill. 2018); *In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D.Pa. 2012); *In re Western Sunset, LLC*, 2010 WL 2710579 (Bankr. S.D.Cal. 2010); *In re Mount Moriah Baptist Church, Inc.*, 2010 WL 1930937

(Bankr. S.D.N.Y. 2010)(where debtors only response to a request for relief from the automatic stay is a speculative future with a sufficiently substantial offer, an effective reorganization is unlikely); *In re Paolino,* 72 B.R. 555, 559 (Bankr. E.D. Pa. 1987)( Where trustee's reasoning for retaining the made sense only if there is equity in the properties, they were not necessary for an effective reorganization).

11. Upon information and belief, these properties are at risk of decreasing in value. The Debtors show no interest in operating the assets. This is not a case like *In re Ripley*, 412 B.R. 690, 700 (Bankr. E.D. Pa. 2008) where these are the only properties the Debtors have, and thus they are presumptively necessary for an effective reorganization. Nor is it the case that these properties are generating any additional income which the Debtors will use in a reorganization. Instead, the Debtors suggest that they properties are necessary essentially to hold the Collateral hostage until they decide to give some or all of it back to them in a contemplated, as yet unfiled plan. The Tubbs Parties respectfully suggest that the Debtors' position is insufficient to defeat the Stay Relief Motion and respectfully request that this Court grant their Stay Relief Motion.

Dated: March 28, 2022                      CROSS & SIMON, LLC

                                                      */s/ Christopher P. Simon*
                                                      Michael L. Vild (No. 3042)
                                                      Christopher P. Simon (No. 3697)
                                                      1105 North Market Street, Suite 901
                                                      Wilmington, Delaware 19801
                                                      (302) 777-4200 (Telephone)
                                                      (302) 777-4224 (Facsimile)
                                                      mvild@crosslaw.com
                                                      csimon@crosslaw.com

                                                      - and -

J. E. Cullens, Jr., Esquire
Andrée M. Cullens, Esquire
WALTERS, PAPILLION, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. 1
Baton Rouge, LA 70810
Telephone: (225) 236-3636
Facsimile: (225) 236-3650
cullens@lawbr.net
acullens@lawbr.net

- and -

Paul M. Sterbcow, Esquire
LEWIS, KULLMAN, STERBCOW & ABRAMSON, LLC
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504)588-1500
sterbcow@lksalaw.com

*Counsel for Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, L.L.C. and Big River Grain, LLC*