## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AGSPRING MISSISSIPPI REGION, LLC, *et al.*,**[1] | Case No. 21-11238 (CTG) |
| Debtors. | (Jointly Administered) |

## PLAN PROPONENTS' COMBINED DISCLOSURE STATEMENT AND JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

| | |
|---|---|
| **DENTONS US LLP**<br>Samuel R. Maizel (*Pro Hac Vice*)<br>Tania M. Moyron (*Pro Hac Vice*)<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Tel: (213) 623-9300<br>Fax: (213) 623-9924<br>Email: samuel.maizel@dentons.com<br>            tania.moyron@dentons.com | **MOORE & VAN ALLEN PLLC**<br>Zachary H. Smith (*Pro Hac Vice*)<br>Gabriel L. Mathless (*Pro Hac Vice*)<br>Stephen E. Gruendel (*Pro Hac Vice*)<br>100 North Tryon Street, Suite 4700<br>Charlotte, NC 28202-4003<br>Tel: (704) 331-1000<br>Fax: (704) 378-1989<br>Email: zacharysmith@mvalaw.com<br>            gabrielmathless@mvalaw.com<br>            stevegruendel@mvalaw.com |
| -and- | -and- |
| **DENTONS US LLP**<br>David F. Cook (DE Bar No. 6352)<br>1900 K Street, NW<br>Washington, DC 20006<br>Tel: (202) 496-7301<br>Email: david.f.cook@dentons.com | **RICHARDS, LAYTON & FINGER, P.A.**<br>Michael J. Merchant (DE Bar No. 3854)<br>Jason M. Madron (DE Bar No. 4431)<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Tel: (302) 651-7700<br>Fax: (302) 651-7701<br>Email: merchant@rlf.com<br>            madron@rlf.com |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring Mississippi Region, LLC (9147); Agspring MS 1, LLC (6456); Agspring MS, LLC (2692); Lake Providence Grain and Rice LLC (1986); and Bayou Grain & Chemical Corporation (7831). The Debtors' mailing address is 5101 College Boulevard, Leawood, KS 66211.

| **PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones (DE Bar No. 2436)<br>Mary F. Caloway (DE Bar No. 3059)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899 (Courier 19801)<br>Tel: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>      mcaloway@pszjlaw.com | |
| *Counsel for Debtors and Debtors in Possession* | *Counsel for Prepetition Secured Parties* |

Dated: March 28, 2022

# TABLE OF CONTENTS

**Page**

DISCLAIMER ................................................................................................................. 1

INTRODUCTION ........................................................................................................... 3

I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ....................................................................................................... 4

    A.    Rules of Interpretation, Computation of Time, and Governing Law ............................. 4

    B.    Defined Terms .................................................................................................... 5

II. BACKGROUND AND DISCLOSURES ..................................................................... 19

    A.    General Background ........................................................................................... 20

    B.    Events Leading to Commencement of the Chapter 11 Cases ..................................... 23

    C.    The Chapter 11 Cases ....................................................................................... 26

III. SUMMARY OF COMBINED DISCLOSURE STATEMENT AND PLAN STRUCTURE 31

    *1.*    *Greenfield Sale* .............................................................................................. 32

    *2.*    *Tubbs Properties* ........................................................................................... 32

IV. SUMMARY OF CLASSIFICATION, TREATMENT, AND ESTIMATED RECOVERY OF CLAIMS AND EQUITY INTERESTS ...................................................................... 33

    A.    Bayou Grain & Chemical Corporation (Bayou) ..................................................... 33

    B.    Lake Providence Grain and Rice LLC (LakeProv) .................................................. 35

    C.    Agspring MS, LLC (AGMS) .............................................................................. 36

    D.    Agspring MS 1, LLC (AGMS1) .......................................................................... 38

    E.    Agspring Mississippi Region, LLC (AMR).......................................................... 39

V. CONFIRMATION AND VOTING PROCEDURES ..................................................... 44

    A.    Confirmation Procedure ..................................................................................... 44

    B.    Voting Procedure .............................................................................................. 48

VI. CERTAIN RISK FACTORS ................................................................................... 50

    A.    Non-Confirmation of the Combined Disclosure Statement and Plan .......................... 50

    B.    Classification Risk ............................................................................................ 50

    C.    Claims Estimations ........................................................................................... 50

    D.    Administrative and Priority Claims ...................................................................... 51

i

E.     Conditions Precedent to Consummation; Timing.................................................. 51

F.     Certain Tax Considerations.................................................................................. 51

VII. UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS.................................................................................................. 51

A.     Introduction ........................................................................................................ 51

B.     Administrative Claims ........................................................................................ 52

C.     Professional Fee Claims...................................................................................... 52

D.     Priority Tax Claims ............................................................................................ 53

VIII. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ...................... 53

A.     Classification of Claims and Equity Interests by Debtor.................................... 53

B.     Treatment of Claims and Equity Interests by Debtor ........................................ 54

       (i)     Bayou Grain & Chemical Corporation (Bayou) ................................ 54

       (ii)    Lake Providence Grain and Rice LLC (LakeProv)............................ 55

       (iii)   Agspring MS, LLC (AGMS) .............................................................. 56

       (iv)   Agspring MS 1, LLC (AGMS1) ......................................................... 58

       (v)    Agspring Mississippi Region, LLC (AMR)........................................ 59

C.     Treatment of Intercompany Claims ................................................................... 63

IX. ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ............................................................................................................................ 63

A.     Holders of Claims and Equity Interests Entitled to Vote.................................... 63

B.     Deemed to Reject ............................................................................................... 64

C.     Classes Deemed to Accept ................................................................................. 64

D.     Acceptance by a Class ........................................................................................ 64

E.     Class Without Voting Claim Holders ................................................................. 65

F.     Nonconsensual Confirmation............................................................................. 65

X. MEANS FOR IMPLEMENTATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ............................................................................................................................ 66

A.     Revesting/Handling of Estate Assets ................................................................. 66

B.     Payment of Combined Disclosure Statement and Plan Expenses ...................... 66

C.     Liquidation and Dissolution of the Debtors....................................................... 67

D.     Power and Authority of Responsible Officer...................................................... 67

E.     Causes of Action ................................................................................................ 68

F.    Full and Final Satisfaction .................................................................................. 68

G.    Resolution of Disputed Claims ............................................................................ 68

H.    Allocation of Distributions .................................................................................. 68

I.    Rounding............................................................................................................... 69

J.    Postpetition Interest on Claims ............................................................................ 69

K.    Insurance .............................................................................................................. 69

L.    Unclaimed Property ............................................................................................. 69

M.    Setoffs .................................................................................................................. 69

N.    No Distributions on Late-Filed Claims ............................................................... 69

O.    Withholding Taxes ............................................................................................... 70

P.    De Minimis Distributions; Charitable Donation.................................................. 70

Q.    U.S. Trustee Fees ................................................................................................. 70

R.    Sole Recourse ....................................................................................................... 70

S.    Reservation of Rights Regarding Claims............................................................. 70

XI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 71

A.    Rejection of Executory Contracts and Unexpired Leases.................................... 71

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases .................. 71

C.    Insurance Policies ................................................................................................ 71

XII. CONDITIONS PRECEDENT TO CONFIRMATION OF THE COMBINED
DISCLOSURE STATEMENT AND PLAN AND TO THE EFFECTIVE DATE .................... 72

A.    Conditions to Confirmation of the Combined Disclosure Statement and Plan ........... 72

B.    Effect of Failure of Conditions to Confirmation.................................................. 72

C.    Conditions to Effective Date................................................................................ 72

D.    Effective Date ...................................................................................................... 73

XIII. EFFECTS OF CONFIRMATION ..................................................................................... 73

A.    Binding Effect of Combined Disclosure Statement and Plan.............................. 73

B.    Liquidating Debtors Hold Assets of the Estate for Distribution.......................... 73

C.    Property Free and Clear ....................................................................................... 73

D.    EXCULPATION................................................................................................... 74

E.    RELEASES ........................................................................................................... 74

F.    INJUNCTION ....................................................................................................... 77

G.    Post-Confirmation Liability of the Responsible Officer...................................... 77

US_Active\120183950

H.      Preservation of Rights of Action..................................................................... 78

I.      No Discharge ................................................................................................... 79

XIV. RETENTION OF JURISDICTION ....................................................................... 79

XV. MISCELLANEOUS .................................................................................................. 81

A.      Revocation of Combined Disclosure Statement and Plan ............................. 81

B.      Request for Expedited Determination of Taxes ............................................. 82

C.      Severability of Combined Disclosure Statement and Plan Provisions ......... 82

D.      Exhibits .......................................................................................................... 82

E.      Courts of Competent Jurisdiction .................................................................. 82

F.      Continuing Effect of Bankruptcy Court Orders............................................. 82

G.      Business Day Transactions ............................................................................. 83

H.      Headings ......................................................................................................... 83

I.      Notices ............................................................................................................ 83

J.      Reservation of Rights..................................................................................... 84

K.      Defects, Omissions, and Amendments .......................................................... 85

L.      Filing of Additional Documents .................................................................... 85

M.      Successors and Assigns................................................................................... 85

N.      Setoffs and Recoupments ............................................................................... 85

O.      Exemption from Transfer Taxes .................................................................... 85

P.      Securities Exemption ..................................................................................... 86

Q.      Implementation ............................................................................................... 86

R.      Certain Actions ............................................................................................... 86

S.      Substantial Consummation ............................................................................. 86

T.      Waiver of Fourteen-Day Stay ........................................................................ 87

iv

## **DISCLAIMER**

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF.  NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS.  CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.  HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.  NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.  ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.  THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.

1

SEE ARTICLE VI OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

2

## **INTRODUCTION**

Agspring Mississippi Region, LLC ("AMR"), Agspring MS 1, LLC ("AGMS1"), Agspring MS, LLC ("AGMS"), Lake Providence Grain and Rice LLC ("LakeProv"), and Bayou Grain & Chemical Corporation ("Bayou," and collectively defined as the "Debtors" below) are the chapter 11 debtors and debtors in possession in the above-referenced pending chapter 11 cases. The Debtors filed voluntary petitions under chapter 11 of 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") on September 10, 2021 (the "Petition Date").

Chapter 11 allows the Debtors, and, under some circumstances, creditors and other parties in interest, to propose a plan of liquidation. This document is the Combined Disclosure Statement and Plan that is being jointly proposed by the Debtors and the Prepetition Term Lenders (together, the "Plan Proponents"), pursuant to §§ 1125 and 1129 of the Bankruptcy Code, and Local Rule 3017-2(b).[2]

The Plan Proponents believe that this Combined Disclosure Statement and Plan represents the optimal outcome for these chapter 11 bankruptcy cases (the "Chapter 11 Cases"). The Combined Disclosure Statement and Plan is a plan of liquidation which, among other things, provides for the disposition of the Estates' remaining assets, a distribution of the Plan Contribution Amount to various creditors, and the appointment of a Responsible Officer of the Liquidating Debtors. The proceeds from the sales of Estate assets constitute the source of funding for, and payments under, the Combined Disclosure Statement and Plan. Thus, the Combined Disclosure Statement and Plan is predicated and dependent on the funding of expenses and reserves from such sale proceeds to the extent required for the Combined Disclosure Statement and Plan to become effective and for the Liquidating Debtors, through the Responsible Officer, to administer and implement the Combined Disclosure Statement and Plan for the benefit of the Liquidating Debtors' economic constituents.

Additionally, the Plan provides for:

- 100% recoveries for all Allowed Claims at Bayou, LakeProv, and AGMS, and 100% recoveries for all Allowed Claims, other than the Claims of the Prepetition Term Secured Parties, at AGMS1;

- Equity Interest Distributions by Bayou, LakeProv, AGMS, and AGMS1 to their respective Equity Interest Holders;

- 98% recoveries paid from the GUC Contribution Amount for Allowed General Unsecured Claims at AMR, subject to the terms of the Combined Disclosure Statement and Plan; and

- Pro rata distribution of the Tubbs' Contribution Amount to each Holder of an Allowed Tubbs Parties' Unsecured Deficiency Claim, subject to the terms of the Combined Disclosure Statement and Plan.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article I of this Combined Disclosure Statement and Plan.

US_Active\120183950

Further information regarding the Combined Disclosure Statement and Plan is below.

With the Combined Disclosure Statement and Plan, Creditors entitled to vote will receive a Ballot for voting on the Combined Disclosure Statement and Plan, and the Combined Disclosure Statement and Plan. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Please take note of the following important dates relating to the Combined Disclosure Statement and Plan:

**Plan Supplement Deadline.** Debtors to provide any supplemental disclosures regarding the Combined Disclosure Statement and Plan by [●], 2022;

**Voting Deadline.** Ballots from voting creditors must be received by [●], at [4:00 p].m. (prevailing Eastern Time);

**Objection Deadline.** Objections to confirmation of the Combined Disclosure Statement and Plan must be filed and served by [●], at [4:00 p].m. (prevailing Eastern Time); and

**Combined Hearing.** Hearing on adequacy of disclosures and confirmation of the Combined Disclosure Statement and Plan: [●], at [_:__ _].m. (prevailing Eastern time).

## I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time, and Governing Law

For purposes of the Combined Disclosure Statement and Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural as applicable, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall include the masculine, feminine, and the neuter gender; (b) any reference in the Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Combined Disclosure Statement and Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Combined Disclosure Statement and Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Combined Disclosure Statement and Plan; (e) the words "herein," "hereof," "hereunder" and "hereto" and similar terms refer to the Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of the

4

Combined Disclosure Statement and Plan; (f) references to a part includes the whole, except where the context clearly requires otherwise; (g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Combined Disclosure Statement and Plan; (i) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Combined Disclosure Statement and Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Combined Disclosure Statement and Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.    <u>Defined Terms</u>

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Combined Disclosure Statement and Plan:

1.      "<u>Adequate Protection Motion</u>" means the *Motion for Entry of an Order (I) Extending Debtors' Authorized Use of Cash Collateral; (II) Granting Additional Adequate Protection to Term Lenders; and (III) Granting Related Relief* [D.I. No. 244].

2.      "<u>Adequate Protection Order</u>" means the *Order (I) Extending The Debtors' Authorized Use of Cash Collateral; (II) Authorizing Payment to Term Lenders; and (III) Granting Related Relief* [D.I. 290], entered by the Bankruptcy Court on March 10, 2022, which, among other things, provides for a payment to the Holders of the Prepetition Term Loan Claim on account of the Prepetition Term Loan Claim in the amount of $8,870,281.20 (the "<u>Post-Petition Payment Amount</u>").

3.      "<u>Administrative Claim</u>" means an expense of administration of the Chapter 11 Cases arising under §§ 364(c)(1), 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date in which the goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. § 1930; and (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

4.      "<u>Administrative Claims Bar Date</u>" means the last date by which an Entity must file a request for payment of an Administrative Claim.  For Administrative Claims arising on

or prior to December 15, 2021, including Claims arising under § 503(b)(9) of the Bankruptcy Code (excluding Professional Fee Claims), the Administrative Claims Bar Date was January 21, 2022, pursuant to the Bar Date Order.  For Administrative Claims arising on or after December 16, 2021 (excluding Professional Fee Claims and Claims arising under § 503(b)(9) of the Bankruptcy Code), the Administrative Claims Bar Date shall be the date that is forty-five (45) after the Effective Date.

5.    "<u>Adversary Proceeding (Tubbs Parties)</u>" means that certain Adversary Proceeding bearing Case No. 22-50235-CTG, filed by the Prepetition Term Lenders against the Tubbs Parties to determine validity, priority, and extent of the Tubbs Parties' Liens on certain property located on the Tubbs Properties.

6.    "<u>AGMS</u>" means Debtor Agspring MS, LLC.

7.    "<u>AGMS1</u>" means Debtor Agspring MS 1, LLC.

8.    "<u>Agspring</u>" means non-debtor Agspring, LLC, parent of AMR and direct subsidiary of Holdco.

9.    "<u>Allocated Value (Greenfield Sale)</u>" means, as to any allocation of value between different assets of the Debtors that were subject to the Greenfield Sale, the Stipulated Plan Value as to such assets, except to the extent such allocation of value is separately determined by the Court, in which case the Allocated Value will be as determined by the Court, unless otherwise agreed by the Plan Proponents and the Tubbs Parties.

10.    "<u>Allocated Value (Tubbs Properties – LT)</u>" means that portion of the Allocated Value (Tubbs Properties) related to the assets located on the Tubbs Properties subject to a first priority Lien in favor of the Tubbs Parties.

11.    "<u>Allocated Value (Tubbs Properties – PSP)</u>" means that portion of the Allocated Value (Tubbs Properties) related to the assets located on the Tubbs Properties subject to a first-priority Lien in favor of the Prepetition Secured Parties, unless otherwise agreed by the Plan Proponents and the Tubbs Parties.

12.    "<u>Allocated Value (Tubbs Properties)</u>" means an allocation of value determined by the Court between the assets located on the Tubbs Properties subject to a first-priority Lien in favor of the Tubbs Parties and the assets located on the Tubbs Properties subject to a first-priority Lien in favor of the Prepetition Secured Parties, unless otherwise agreed by the Plan Proponents and the Tubbs Parties.

13.    "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided herein: (i) any Claim, proof of which was filed, or which has been or hereafter is scheduled by the Debtors on the Schedules as liquidated in amount and not disputed or contingent, and to which no party in interest has filed an objection thereto; (ii) any Administrative Claim, request for payment of which was filed on or before the applicable Administrative Claims Bar Date, which has been determined, in whole or in part, in favor of the Holder of such Administrative Claim by a Final Order of the Bankruptcy Court; or (iii) a Claim (including an Administrative Claim) that is allowed (a) pursuant to any contract, instrument, or other agreement entered into in connection with the Combined Disclosure Statement and Plan, (b) in a Final Order, (c) pursuant to the terms of the

6

Combined Disclosure Statement and Plan, or (d) for purposes of Distributions, by designation of the Debtors with respect to Claims and Administrative Claims as to which the period within which to object has not yet expired, provided, however, that the Debtors or Liquidating Debtors, as applicable, reserve all rights to object to any untimely filed Proof of Claim on any and all available grounds.

14.      "Allowed Claim" or "Allowed [   ] Claim" means a Claim that has been Allowed, pursuant to the Combined Disclosure Statement and Plan, by entry of a Final Order of the Bankruptcy Court, allowing the Claim in a specified amount or a filed or scheduled claim to which the Debtors or Liquidating Debtors, as applicable, have not objected by the applicable Bar Date.

15.      "AMR" means Debtor Agspring Mississippi Region, LLC.

16.      "Available Cash" means all of the Debtors' Cash from whatever source excluding Tubbs Sale Proceeds, but including Greenfield Sale Proceeds, Liquidation Proceeds, and any recovery by the Debtors or Liquidating Debtors on account of a surcharge of the Tubbs Secured Claims.

17.      "Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Combined Disclosure Statement and Plan in accordance with the Combined Disclosure Statement and Plan and the Voting Instructions.

18.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as may be amended) and applicable portions of titles 18 and 28 of the United States Code.

19.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

20.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and Local Rule 1001-1(b).

21.      "Bar Date" means, as applicable, the General Claims Bar Date, the applicable Administrative Claims Bar Date, or any other applicable deadline to file Claims referenced in the Combined Disclosure Statement and Plan.

22.      "Bar Date Order" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner for Filing Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related Relief* [D.I. 199], which established the General Claims Bar Date, the deadline to file Administrative Claims arising on or prior to December 15, 2021, and Administrative Claims arising pursuant to § 503(b)(9) of the Bankruptcy Code, the Bar Date for governmental units, and certain other deadlines and procedures.

23.     "<u>Bayou</u>" means Debtor Bayou Grain and Chemical Corporation.

24.     "<u>Business Day</u>" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

25.     "<u>Cash</u>" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

26.     "<u>Causes of Action</u>" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors (unless the context expressly states that such Causes of Action belong to the another Entity) against Creditors, insiders and/or any other Entities under the Bankruptcy Code, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.  For the avoidance of doubt, Causes of Action does not include claims, challenges or other matters barred or otherwise released in the Final DIP Order.

27.     "<u>CGB</u>" means Consolidated Grain and Barge Co., a wholly owned subsidiary of CGB Enterprises, Inc.

28.     "<u>Chapter 11 Cases</u>" means the Chapter 11 cases commenced when the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date and with the following case numbers: 21-11238 (CTG), 21-11239 (CTG), 21-11240 (CTG), 21-11241 (CTG) and 21-11242 (CTG) (and each, respectively, a "<u>Chapter 11 Case</u>").

29.     "<u>Claim</u>" means a claim (as defined in § 101(5) of the Bankruptcy Code) against any Debtor, including, but not limited to: (a) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

30.     "<u>Claimant</u>" means the Holder of a Claim.

31.     "<u>Claims Objection Deadline</u>" means, with respect to all Claims other than Professional Fee Claims, sixty (60) days after the Effective Date, subject to extension as set forth herein.

32.     "<u>Class</u>" means a category of Holders of Claims or Equity Interests, as summarized in Article IV and set forth in Article VIII of the Combined Disclosure Statement and Plan.

33.    "Collateral" means any property or interest in property of the Estates to a Lien, charge, or other encumbrance to secure the payment of the Lenders' Claims, to the extent granted under and pursuant to the Final DIP Order.

34.    "Combined Disclosure Statement and Plan" means this combined disclosure statement and joint chapter 11 plan of liquidation, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Combined Disclosure Statement and Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

35.    "Combined Hearing" means the combined hearing before the Bankruptcy Court to consider the adequacy of the disclosures in, and confirmation of, the Combined Disclosure Statement and Plan, which is scheduled for [●], 2021 [_:__ a.]m. (prevailing Eastern Time), as such hearing may be continued.

36.    "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Section XII.A of the Combined Disclosure Statement and Plan having been (a) satisfied or (b) waived pursuant to Section XII.A.

37.    "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

38.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to § 1129 of the Bankruptcy Code.

39.    "Consummation" or "Consummate" means the occurrence of the Effective Date.

40.    "Creditor" means any Holder of a Claim against a Debtor as specified in § 101(10) of the Bankruptcy Code.

41.    "Debt" means liability on a Claim.

42.    "Debtors" means AMR, AGMS1, AGMS, LakeProv, and Bayou, collectively (and each, respectively, a "Debtor"). The term "Debtors" shall apply to the applicable Debtor dependent on the given context, or the Debtors collectively, as the case may be. The term "Debtors" includes the Debtors on or after the Effective Date. For the avoidance of doubt, any reference to the Debtors on or after the Effective Date shall be in their capacity as Liquidating Debtors.

43.    "DIP Facility" means the post-petition financing facility extended by the DIP Lenders to the Debtors, pursuant to the Final DIP Order, the Superpriority Secured Debtor-In-Possession Notes, dated as of November 4, 2021, executed by the Debtors in favor of the DIP Lenders, and the other agreements and documents related thereto.

US_Active\120183950

44.    "DIP Lenders" means LVS and HVS in their capacities as postpetition lenders to the Debtors under the DIP Facility.

45.    "DIP Loan Claim" means the claims of the DIP Lenders under the DIP Facility.

46.    "DIP Motion" means the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Back-Up Postpetition Financing to the Extent Necessary; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying The Automatic Stay; and (VI) Granting Related Relief*, filed October 14, 2021 [D.I. 97].

47.    "Disputed Claim" means, with respect to any Claim: (a) any Claim filed after the applicable Bar Date or after any date otherwise ordered by the Bankruptcy Court with respect to the filing of Claims; (b) listed on the Schedules as either unliquidated, disputed, or contingent; (c) as to which the Debtors have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (d) unless otherwise indicated in the Combined Disclosure Statement and Plan, a Claim as to which the period within which to object to such Claim has not yet expired and which is not Allowed.

48.    "Disputed Claims Reserve" means the reserve of cash held by the Debtors in an amount to be determined by the Debtors to be sufficient to provide the relevant Class Treatment as prescribed by the Combined Plan and Disclosure Statement on any Disputed Claim that may become Allowed, as estimated by the Court pursuant to § 502(c) of the Bankruptcy Code on or before the Effective Date.

49.    "Distributed Value" means (if applicable) the amount available for distribution from a subsidiary Debtor to such Debtor's sole Equity Interest Holder after payment of other Classes of Claims against such subsidiary Debtor pursuant to the Combined Disclosure Statement and Plan.

50.    "Distributions" means the distributions of Cash to be made in accordance with the Combined Disclosure Statement and Plan.

51.    "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

52.    "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

53.    "Effective Date" means the date selected by the Debtors which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Section XII.C of the Combined Disclosure Statement and Plan have been satisfied, unless waived by the Debtors.

54.    "Entity" means an entity as defined in § 101(15) of the Bankruptcy Code.

10

55.    "Equity Interest(s)" means any membership interest or other equity security interest in the Debtors, including, but not limited to, any warrants, options, or contract rights to purchase or acquire such interests at any time.

56.    "Estates" means the estates of the Debtors in the Chapter 11 Cases created pursuant to § 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases (and each, respectively, an "Estate").  The term "Estates" shall apply to the applicable Debtor dependent on the given context, or the Debtors collectively, as the case may be.

57.    "Exculpated Parties" means, collectively the Debtors and the Debtors' respective officers, including the Responsible Officer, managers, employees and Court-approved professionals, provided, however that none of the parties shall be entitled to exculpation unless and solely to the extent they are found by a court of competent jurisdiction to have acted in their capacities as fiduciaries of the Estates.

58.    "Final Decree" means the decree closing the Chapter 11 Cases contemplated under § 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 3022-1.

59.    "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Combined Disclosure Statement and Plan.

60.    "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to Obtain Back-up Postpetition Financing to the Extent Necessary; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief*, entered by the Court on November 4, 2021 [D.I. 174].

61.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

62.    "General Claims Bar Date" means January 21, 2022 at 5:00 p.m. (prevailing Eastern Time), which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date.

63.    "General Unsecured Claim" means any Claim against the Debtors or Estates that is not a Lender Claim (except to the extent not satisfied in full), Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, or a Tubbs Claim.

64.    "Governmental Unit" means the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under chapter 11 of the Bankruptcy Code), or a State, a Commonwealth, a District, a Territory, a municipality of a foreign state, or other foreign or domestic government.

11

65.    "<u>Greenfield Purchaser</u>" shall mean Greenfield Grain, LLC, an indirect subsidiary of Greenfield Holdings, LLC.

66.    "<u>Greenfield Sale</u>" means the assets sold to the Greenfield Purchaser and approved pursuant to the Greenfield Sale Order.

67.    "<u>Greenfield Sale Order</u>" means the *Order (A) Approving the Purchase Agreement; (B) Authorizing the Sale of the Debtors' "Big River" Assets Free and Clear of Liens, Claims, and Encumbrances and Interests; (C) Authorizing the Assumption and Assignment* [D.I. 179].

68.    "<u>Greenfield Sale Proceeds</u>" means the proceeds from the Greenfield Sale, inclusive of any proceeds of any escrows released to the Debtors in connection therewith, regardless of when received.

69.    "<u>GUC Contribution Amount</u>" means up to $250,000.00 of the Greenfield Sale Proceeds that the Prepetition Secured Parties agree may be distributed to fund the GUC Contribution Amount (which amounts would otherwise be distributed to the Prepetition Secured Parties on account of the Prepetition Secured Parties' Claims) for Pro Rata distribution to Holders of Allowed General Unsecured Claims in AMR Class 7, not to exceed 98% of the amount of any such Allowed General Unsecured Claim, free and clear of any Liens, claims or encumbrances, *provided* that Holders of General Unsecured Claims in requisite number and amount as to constitute a vote in favor of the Combined Disclosure Statement and Plan by the Class, (x) vote in favor of the Combined Disclosure Statement and Plan, (y) do not opt out of the Combined Disclosure Statement and Plan's Third Party Release, and (z) do not otherwise oppose the Combined Disclosure Statement and Plan or any provision therein, *provided further*, that to the extent that all Holders of Allowed General Unsecured Claims receive distributions in an amount equal to 98% of the amount of their respective Allowed General Unsecured Claims, any and all remaining amounts of the GUC Contribution Amount shall be Distributed to the Prepetition Secured Parties in accordance with the treatment provided in Article VIII of the Combined Disclosure Statement and Plan solely to the extent that the Prepetition Secured Parties' Claims have not been fully satisfied pursuant to the Combined Disclosure Statement and Plan.

70.    "<u>Holdco</u>" means non-debtor Agspring Holdco, LLC, parent of Agspring.

71.    "<u>Holder</u>" means an Entity holding a Claim or Equity Interest.

72.    "<u>HVS</u>" means HVS V LLC.

73.    "<u>Impaired</u>" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of § 1124 of the Bankruptcy Code.

74.    "<u>Indemnified Parties</u>" shall have the meaning ascribed to it in Section XIII.G of the Combined Disclosure Statement and Plan.

75.    "<u>Initial Distribution Date</u>" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Responsible Officer in his reasonable discretion.

US_Active\120183950

76.     "Insider" means an insider of the Debtors, as defined in § 101(31) of the Bankruptcy Code.

77.     "Insurance Policies" means all insurance policies maintained by the Debtors.

78.     "Interim Fee Order" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* [D.I. 112].

79.     "LakeProv" means Debtor Lake Providence Grain and Rice LLC.

80.     "Lenders" means the DIP Lenders and the Prepetition Secured Parties (and each, respectively, a "Lender").  The term "Lenders" shall apply to the applicable Lender dependent on the given context, or the Lenders collectively, as the case may be.

81.     "Lenders' Secured Claims" means the secured portion of the Prepetition Term Loan Claims and the Prepetition Bridge Loan Claims.

82.     "Lenders' Unsecured Deficiency Claims" means the unsecured portion of the Prepetition Term Loan Claims.

83.     "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

84.     "Liquidating Debtors" means the Debtor(s) on or after the Effective Date.

85.     "Liquidation Proceeds" means any Cash or other consideration paid to or assets of the Estate.

86.     "Local Rules" means the Local Rules for the United States Bankruptcy Court for the District of Delaware, as amended from time to time, as applicable to the Chapter 11 Cases.

87.     "LVS" means LVS II SPE XVIII LLC.

88.     "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit or other Entity.

89.     "Petition Date" means September 10, 2021, the date on which the Debtors filed their voluntary petitions for relief commencing the Chapter 11 Cases.

90.     "Plan Contribution Amount" means the contribution made by the Prepetition Secured Parties on the Effective Date from the Greenfield Sale Proceeds in the amount required to: (i) fund (if required, subject to the terms and conditions thereof) the GUC Contribution Amount; (ii) fund (if required, subject to the terms and conditions thereof) the Tubbs Contribution

13

Amount; (iii) fund the Professional Fee Reserve; (iv) pay (or reserve for payment of) Administrative Claims, Non-Priority Tax Claims, and Priority Tax Claims; and (v) make any payment that may be required or contemplated pursuant to the Combined Disclosure Statement and Plan and fund the necessary reserves required under the Combined Disclosure Statement and Plan (including amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930), in each case in the reasonable judgment and estimation of the Debtors, *provided*, *however*, that to the extent the Liquidating Debtors hold any portion of Plan Contribution Amount in excess of the amounts necessary to satisfy the Distributions, payments and expenses provided herein and after the full administration of the Combined Disclosure Statement and Plan by the Liquidating Debtors, any such remaining Plan Contribution Amount shall be Distributed to the Prepetition Term Secured Parties in accordance with the treatment provided in Section I.B (AMR Class 3) of the Combined Disclosure Statement and Plan solely to the extent that the Prepetition Secured Parties' Claims have not been fully satisfied pursuant to the Combined Disclosure Statement and Plan. The Plan Contribution Amount shall be deposited into a segregated account or accounts established to hold the Plan Contribution Amount (the "Plan Contribution Account"), which the Liquidating Debtors, through the Responsible Officer, shall control and which shall be subject to a Lien in favor of the Prepetition Secured Parties to secure the obligations to return such excess.

91.     "Plan Proponents" means the Debtors and the Prepetition Term Lenders.

92.     "Plan Supplement" means a potential supplement to the Combined Disclosure Statement and Plan that the Debtors may file at a future date prior to the Combined Hearing.

93.     "Post-Petition Payment Amount" means $8,870,281.20 in payment to the Holders of the Prepetition Term Loan Claim on account of the Prepetition Term Loan Claim pursuant to the Adequate Protection Order.

94.     "Prepetition Bridge Lenders" means HVS and LVS, in their capacities as lenders to the Debtors under the Prepetition Bridge Notes.

95.     "Prepetition Bridge Loan Claims" means the Claims of the Prepetition Bridge Lenders in respect of the Prepetition Bridge Notes.

96.     "Prepetition Bridge Notes" means those certain secured Promissory Notes dated September 9, 2021, issued jointly and severally by each of the Debtors in the aggregate amount of $1,000,000.00, the Holders of which are the Prepetition Bridge Lenders.

97.     "Prepetition Credit Agreement" means that certain Credit Agreement, dated as of December 11, 2015, as amended restated, supplemented or otherwise modified from time to time by and between Agspring (as Borrower), the lenders party thereto and U.S. Bank National Association, as Administrative Agent, the obligations of which are irrevocably and unconditionally guaranteed, *inter alia*, by AMR and AGMS1 pursuant to that certain Guaranty Agreement, dated as of December 11, 2015 (as amended, supplemented or otherwise modified from time to time, the "Prepetition Term Guaranty").

98.     "Prepetition Lenders' Unsecured Deficiency Claim" means $105,597,653.52 less the Prepetition Term Secured Parties' Secured Claim, all of which is in

14

respect of the Prepetition Term Guaranty.  The Prepetition Lenders' Unsecured Deficiency Claim is an Allowed unsecured Claim.

99.    "<u>Prepetition Secured Parties</u>" means the Prepetition Term Agent, the Prepetition Term Lenders and the Prepetition Bridge Lenders.

100.    "<u>Prepetition Term Guaranty</u>" means that certain guaranty of the Prepetition Credit Agreement referred to in the definition of Prepetition Credit Agreement.

101.    "<u>Prepetition Term Secured Parties</u>" means the Prepetition Term Agent and the Prepetition Term Lenders.

102.    "<u>Prepetition Term Secured Parties' Secured AGMS1 Claim</u>" means an Allowed Secured Claim against AGMS1 in an amount equal to the Distributed Value from AGMS to AGMS1.

103.    "<u>Prepetition Term Secured Parties' Secured AMR Claim</u>" means an Allowed Secured Claim against AMR in an amount equal to the sum of (a) the value of the Greenfield Sale Proceeds allocated to AMR pursuant to the Allocated Value (Greenfield Sale), (b) the Allocated Value (Tubbs Properties – PSP), and (c) the Distributed Value from AGMS1 to AMR on account of (i) AMR's equity membership interests in AGMS1, (ii) the Tubbs Plan Contribution Amount, and/or (iii) the GUC Contribution Amount.

104.    "<u>Prepetition Term Secured Parties' Secured Claim</u>" means the Prepetition Term Secured Parties' Secured AGMS1 Claim and the Prepetition Term Secured Parties' Secured AMR Claim.

105.    "<u>Prepetition Term Agent</u>" means U.S. Bank, National Association, in its capacity as administrative agent for the Prepetition Term Lenders under the Prepetition Credit Agreement.

106.    "<u>Prepetition Term Lenders</u>" means the lenders from time to time party to the Prepetition Credit Agreement, which as of the date hereof are LVS and HVS.

107.    "<u>Priority Non-Tax Claim</u>" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under § 507(a) of the Bankruptcy Code.

108.    "<u>Priority Tax Claim</u>" means a Claim that is entitled to priority under §§ 502(i) and 507(a)(8) of the Bankruptcy Code.

109.    "<u>Pro Rata</u>" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims in such Class as of the date of determination, in their aggregate face amounts or such other amount: (i) as calculated by the Debtors or Liquidating Debtors on or before the date of any such Distribution; (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim; or (iii) as directed by a Final Order of the Bankruptcy Court.

US_Active\120183950

110.  "<u>Professional</u>" means an Entity: (a) employed pursuant to a Final Order in accordance with §§ 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code.

111.  "<u>Professional Fee Claim</u>" means those fees and expenses claimed by Professionals pursuant to §§ 330, 331 or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

112.  "<u>Professional Fee Reserve</u>" means a reserve fund established by the Liquidating Debtors, on or as soon as practicable after the Effective Date, to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; and (b) Professional Fee Claims approved by the Bankruptcy Court.  The amounts deposited into the Professional Fee Reserve shall be free and clear of all Liens, claims and encumbrances of any Persons or Entities, other than the Prepetition Secured Parties, and to the extent that any excess amounts remain in the Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts shall be distributed to the Prepetition Secured Parties in accordance with the Combined Disclosure Statement and Plan.

113.  "<u>Proof of Claim</u>" means a proof of claim filed pursuant to § 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

114.  "<u>Rejection Bar Date</u>" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection unless otherwise ordered by the Court.  The Rejection Bar Date for Claims arising from the rejection of executory contracts and unexpired leases rejected pursuant to the Combined Disclosure Statement and Plan shall be 30 days after the Effective Date of the Combined Disclosure Statement and Plan, unless otherwise provided in the Confirmation Order.  For all other rejected executory contracts and unexpired leases, the Rejection Bar Date shall be the date set forth in the order approving such rejection.

115.  "<u>Released Parties</u>" means, collectively, (a) the Debtors; (b) the Liquidating Debtors; (c) the Lenders; and (d) each of such Entities' respective successors and assigns, and respective current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, including the Responsible Officer, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants and consultants.

116.  "<u>Responsible Officer</u>" means Kyle Sturgeon.

117.  "<u>Schedules</u>" means (a) the schedules of assets and liabilities the Debtors filed with the Bankruptcy Court pursuant to § 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and (b) the statements of financial affairs the Debtors filed with the Bankruptcy Court pursuant to § 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

16

118. "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under §§ 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

119. "Stipulated Plan Value" means, as set forth in the allocation calculated by the Greenfield Purchaser, (a) as to the assets of Bayou subject to the Greenfield Sale, $3,805,562.30, of which $859,655.58 remains in escrow pursuant to the terms of the Greenfield Sale, less any claims against the escrowed amounts under, and pursuant to, the terms of the Greenfield Sale, (b) as to the assets of LakeProv subject to the Greenfield Sale, $1,245,236.50, of which 363,376.92 remains in escrow pursuant to the terms of the Greenfield Sale, less any claims against the escrowed amounts under, and pursuant to, the terms of the Greenfield Sale, and (c) as to the assets of AMR subject to the Greenfield Sale $10,365,098.70, of which $1,494,817.50 remains in escrow pursuant to the terms of the Greenfield Sale, less any claims against the escrowed amounts under, and pursuant to, the terms of the Greenfield Sale.

120. "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Debtors make a Distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

121. "Solicitation Procedures Order" means the Bankruptcy Court's *Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling the Combined Confirmation Hearing and Approving Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief*, entered on [●], 2021 [D.I. [●]].

122. "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

123. "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

124. "Third Party Release" shall have the meaning ascribed to it in Section XIII.E.2 of the Combined Disclosure Statement and Plan.

125. "Tubbs Claims" means the claims asserted by the Tubbs Parties through their proofs of claim filed in the Chapter 11 Cases. For the avoidance of doubt, such proofs of claim are: Claims Nos. 6-9 on the AMR claims register (Case No. 21-11238-CTG); Claim Nos. 1-4 on the AGMS1 claims register (Case No. 21-11239-CTG); Claim Nos. 3-6 on the AGMS claims register (Case No. 21-11240-CTG); Claim Nos. 1-4 on the LakeProv claims register (Case No. 21-11241-CTG); and Claim Nos. 1-4 on the Bayou claims register (Case No. 21-11242-CTG). The Tubbs Claims are partially secured. The Debtors anticipate objecting to the Claims of the Tubbs Parties at Bayou, LakeProv, AGMS and AGMS1, such claims are deemed Disputed Claims for all

17

purposes under this Combined Disclosure Statement and Plan, this Combined Disclosure Statement and Plan presumes that such Claims are disallowed for all purposes.

126.    "Tubbs Contribution Amount" means $750,000.00 of the Greenfield Sale Proceeds that the Prepetition Term Secured Parties agree may be Distributed to fund the Tubbs Contribution Amount (which amounts would otherwise be Distributed to the Prepetition Term Secured Parties on account of the Prepetition Term Secured Parties' Claims) for Pro Rata distribution to Holders of Allowed Tubbs Claims, *provided* that the Holders of the Tubbs Claims unanimously (a) vote in favor of the Combined Disclosure Statement and Plan, (b) do not opt out of the Combined Disclosure Statement and Plan's Third Party Release, (c) do not otherwise oppose the Combined Disclosure Statement and Plan or any provision therein, (d) dismiss with prejudice the Louisiana Litigation, including all claims and causes of action asserted by the Tubbs Parties therein, and, to the extent applicable, the Louisiana Transfer Proceedings, and (e) release any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever that could be asserted by any Tubbs Party against any Released Party as of the Effective Date.

127.    "Tubbs Parties" means the Tubbs Plaintiffs, and all of their direct or indirect parents, subsidiaries, affiliates, successors, assigns and their respective current and former officers, directors, principals, partners, members, management, employees, shareholders, trustees, agents, financial advisors, attorneys, accountants, professionals, advisors and representatives.

128.    "Tubbs Plaintiffs" means Larry Tubbs, Tubbs Rice Dryers, Inc., Chief Ventures, LLC, and Big River Grain, LLC.

129.    "Tubbs Properties" means the real and personal property at AMR's facilities commonly known as the Pioneer Facility, Mer Rouge Facility, and the Monticello Facility.

130.    "Tubbs Properties Liquidation Event" means the occurrence of all of the following: (a) the entry of a final order resolving the Adversary Proceeding (Tubbs Parties) and the expiration of any applicable appeal period; (b) the Debtors' sale of all or a portion of the Tubbs Properties, with the Liens of the Holders of Liens on such assets attaching to the proceeds of such sale in the same order of priority and with the same extent, validity, force, and effect that such Holders had prior to the consummation of such sale; and (c) entry of a non-appealable judicial determination as to the Allocated Value (Tubbs Properties – LT); *provided*, for the avoidance of doubt, a Tubbs Properties Liquidation Event shall only be deemed to have occurred with respect to such portion of the Tubbs Properties sold in connection therewith.

131.    "Tubbs Properties Surrender Event" means: (a) the entry of a final order resolving the Adversary Proceeding (Tubbs Parties) and the expiration of any applicable appeal period; and (b) the Debtors having (i) surrendered to the Prepetition Secured Parties the portion of the Tubbs Properties on which the Prepetition Secured Parties hold first-priority Liens, or (ii) provided the Prepetition Secured Parties a reasonable opportunity to remove or otherwise dispose of the portion of the Tubbs Properties subject to the Prepetition Secured Parties' first-priority Liens.

US_Active\120183950

132.    "Tubbs Sale" means any sale of any Debtor's property that is subject to a first priority perfected prepetition Lien, mortgage, or encumbrance in favor of the Tubbs Parties.

133.    "Tubbs Sale Order" means any Final Order of the Bankruptcy Court entered prior to the Effective Date approving any Tubbs Sale.

134.    "Tubbs Sale Proceeds" means any proceeds from any Tubbs Sale.

135.    "Tubbs Secured Claims" means the Tubbs Parties' Secured Claims against AMR in an aggregate amount equal to the Allocated Value (Tubbs Properties – LT), less any amounts surcharged by the Debtors pursuant to § 506(c) of the Bankruptcy Code as Allowed pursuant to a Final Order of the Bankruptcy Court or otherwise agreed by the Debtors in writing and approved by the Bankruptcy Court at or prior to the Combined Hearing.

136.    "Tubbs Unsecured Deficiency Claims" means the Tubbs Claims less the amount of the Tubbs Secured Claims.

137.    "Unimpaired Claim" means an unimpaired Claim within the meaning of § 1124 of the Bankruptcy Code.

138.    "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

139.    "Voting Deadline" means [●], 2022 at 4:00 p.m. (prevailing Eastern Time).

140.    "Voting Instructions" means the instructions for voting on the Combined Disclosure Statement and Plan contained herein and in the Ballots.

141.    "Voting Record Date" means the date fixed by the Bankruptcy Court as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Combined Disclosure Statement and Plan.

142.    "Wind-Up" means the process of completing the liquidation and dissolution of the Liquidating Debtors by the Responsible Officer pursuant to the Combined Disclosure Statement and Plan and the Confirmation Order.

## II.

## BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code and, since that date, have operated as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

### A. **General Background**[3]

#### 1. Corporate Structure

Debtor AMR, a Delaware limited liability company, is the sole managing member of and wholly owns AGMS1, a Delaware limited liability company, which, in turn, is the sole managing member of and wholly owns MS, a Delaware limited liability company, which in turn is the sole managing member of and wholly owns LakeProv, a Delaware limited liability company, which, in turn, wholly owns Bayou, an Arkansas corporation.

The Debtors other than AMR are indirect subsidiaries of non-debtors Holdco and Agspring, and AMR is an indirect subsidiary of Holdco and a direct subsidiary of Agspring.

#### 2. The Debtors' Businesses

The Debtors, historically a leading grain and oilseed handler in Louisiana and Arkansas, are a family of companies commonly referred to for marketing and management purposes as "Big River Rice and Grain" (referred to for purposes of this Article II as "Big River").

As subsidiaries of Agspring, the Debtors are part of a larger agribusiness and logistics company formed in August 2012 with the express aim of acquiring, consolidating, and operating midstream agricultural commodity firms. Between 2012 and 2015, Agspring's former founders and equity sponsor created four agribusiness units: three business units focused on commodity purchasing and one providing logistics broker services.

From May to August 2013, Agspring spent over $100 million to combine three companies operating in the Big River region (Tubbs Rice Dryers, Raley Brothers, and Bayou Grain and Chemical) to form one of these business units: the Debtors' businesses. The Debtors were headquartered in Pioneer, Louisiana, with facilities in Delhi, Mer Rouge, Monticello, Lake Providence, and Crowville, Louisiana, as well as Eudora and Parkdale, Arkansas.

From their inception in 2012 through 2019, the Debtors provided origination, grain drying, storage and handling, logistics, marketing and distribution, and risk management for the region's crops of soybeans, corn, rice, wheat, and milo. In 2018, the Debtors handled over 42 million bushels of grain and had commercial relationships with major companies including ADM, Cargill, Foster Farms, and Tyson. The eight locations comprising the Debtors' property have the capacity to store over 26 million bushels of grain, and include a barge terminal and loader capable

---

[3] Further information regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in detail in the Declaration of Kyle Sturgeon [D.I. 19], which is incorporated by reference herein. Copies of the First Day Declaration and all other filings in the Chapter 11 Cases can be obtained (and viewed) for a fee at the Court's website at http://www.deb.uscourts.gov. A login identification and password to the Court's Public Access to Court Electronic Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. Copies of the other documents filed in the Chapter 11 Cases also may be examined between the hours of 9:00 a.m. and 4:30 p.m. (prevailing Eastern Time), Monday through Friday, at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

US_Active\120183950

of handling eight barges per day, and a location serviced by Kansas City Southern Railway capable of loading 25 railcar units of grain daily.

      3.    <u>Prepetition Debt Structure</u>

      The following chart sets forth the Debtors' funded debt obligations, including guaranties, as of the Petition Date:[4]

| Debt Obligation | Original Principal Amount | Approximate Principal Amount Outstanding as of Petition Date[5] | Maturity | Collateral |
|---|---|---|---|---|
| Term Loan (defined below), Prepetition Term Agent, as agent, and LVS and HVS as Prepetition Term Lenders | $74,745,480.27 | $101,707,347.48 | 03/31/22 | Liens on all personal property assets of AMR and AGMS1 and on the leasehold interests of AMR in the Lake Providence lease, contractually subordinate to Liens under CGB Documents[6] per Intercreditor Agreement. |

---

[4] The summaries in the following chart are subject in all respects to the terms set forth in the applicable documents governing such obligations.

[5] Principal at the Petition Date includes paid in kind interest.

[6] As defined in the Final DIP Order and as used in this Section II.A.3, "<u>CGB Documents</u>" means, collectively, (a) that certain Promissory Note in the original principal amount of $400,000, issued by the Debtors in favor of CGB and arising from that certain Purchase Agreement, effective as of June 14, 2019, by and between the Debtors and CGB, (b) that certain Security Agreement, dated as of June 14, 2019 between the Debtors and CGB, (c) that certain Facility Lease Agreement, dated as of November 24, 2014 (as amended by that certain First Amendment to Facility Lease Agreement and as further amended, supplemented or otherwise modified from time to time), between CGB, as successor lessor to Farm Credit Leasing Services Corporation ("<u>FCLSC</u>"), and AMR, (d) that certain Interim Funding Agreement (Facility), dated as of November 24, 2014 (as amended, supplemented or otherwise modified from time), between CGB, as successor to FCLSC, and AMR, (e) that certain Mortgage Security Agreement and Pledge of Rents, dated as of June 14, 2019, and (f) that certain Lease Agreement, dated as of February 21, 2008 (as amended by that certain First Amendment to Lease Agreement and as further amended, supplemented or otherwise modified from time to time), between CGB, as successor to Bayou, and AMR.

| New Notes (defined below), LVS and HVS as separate New Note Lenders. | $1,000,000.00 | $1,000,000.00 | 01/1/22 | Liens on all Debtors' personal property assets, senior to Liens of Prepetition Term Agent and junior to Liens under CGB Documents per intercreditor agreements. |
|---|---|---|---|---|
| CGB | $13,438,437.00 | $5,500,000 | 06/14/24 | Mortgage on Lake Providence Real Property[7] and improvements, Liens on all Debtors' personal property, senior to Prepetition Term Agent and New Note Lenders per Intercreditor Agreement. |
| Tubbs Note (defined below) | $22,000,000.00 | 22,000,000.00[8] | 09/01/22 | Mortgages and Liens on personal property related to the Tubbs Properties, obligations are disputed. |

The Debtors' funded debt and guaranties arise principally from (a) the Lake Providence Lease and CGB Note (defined in Section II.B.2 below), (b) the Prepetition Term Guaranty of the Prepetition Credit Agreement by AMR and AGMS1, (c) the New Notes (defined below), (d) the deferred asset purchase price promissory notes and mortgages on the Tubbs Properties issued in

---

[7] "Real Property" has the meaning ascribed to it in that certain Mortgage, Security Agreement and Pledge of Rents dated June 14, 2019 between AMR as Mortgagor and CGB as Mortgagee.
[8] The Debtors' obligations under the Tubbs Note are the subject of dispute and litigation, as described further in Section I.A.7 below.

connection with the Big River asset acquisitions from the Tubbs Parties in 2013, and (e) advances by the Tubbs Parties subsequent to the sale of the Tubbs Properties to the Debtors.

As set forth above, in 2013, Agspring bought three grain handling businesses in the Mississippi River Delta, consolidating them as Big River. Most of Big River's assets as they existed in 2013 were purchased from the Tubbs Parties for $29.5 million. To finance the transaction, AMR obtained a $7 million term loan from Larry Tubbs in the form of a promissory note dated June 26, 2013 (the "Tubbs Note"). Larry Tubbs became CEO of AMR on or about July 1, 2013 and held that position through January 2015. In September 2013 and February 2014, AMR sought two additional loans from Mr. Tubbs while he was CEO of AMR ($10 million and $5 million), each of which were executed through amendments to the Tubbs Note. Mr. Tubbs has filed a UCC-1 financing statement against AMR in August 2019 on the personal property and equipment located on the Tubbs Properties. The Tubbs Note has been in default since October 2018, and the Debtors have not made any payments on the Tubbs Note since that time. Since early 2021, the Debtors have marketed the assets related to the Tubbs Properties through their investment banker, Piper Sandler & Co. ("Piper").

In 2015, Big River entered into the Lake Providence Lease and refinanced certain existing debt for capital improvements through the Term Loan (defined in Section II.B.1 below), for which the Prepetition Term Agent is the Agent and HVS and LVS are both Prepetition Term Lenders. The obligations in respect of the Term Loan include interest under the Term Loan that is paid in kind by adding such interest to the Term Loan principal balance. The Term Loan has been amended and supplemented numerous times and at the Petition Date was the subject of a forbearance agreement whose scheduled termination date was September 30, 2021. More detail regarding the Term Loan is set forth in the Final DIP Order.

On September 9, 2021, LVS and HVS together (the "New Note Lenders") loaned Big River $1 million for purposes of financing bankruptcy planning and filing to permit the orderly sale of the Big River assets (the "New Notes"). The New Notes are secured by all of the Debtors' personal property. Per intercreditor arrangements among the Prepetition Secured Parties and CGB: (i) the Prepetition Secured Parties' Liens on the personal property assets of AMR and AGMS1 are junior to the Liens of the New Note Lenders and CGB on such assets; (ii) the Prepetition Secured Parties' Liens on the (i) property owned by LakeProv and Bayou and (ii) LakeProv subleased/subsubleased premises, each as set forth in the DIP Motion and including improvements and personal property, are junior to the Liens under the CGB Documents on such assets; and (iii) the Liens of the New Note Lenders on the Debtors' personal property assets are junior to the Liens under the CGB Documents on such assets.

## B.    Events Leading to Commencement of the Chapter 11 Cases

### 1.    Pre-Petition Liquidity and Operational Concerns

The Debtors had some early success, including (i) improved operations at the Big River barge loading facility in Lake Providence, resulting in greater delivery efficiencies for producers and improved environmental impact, and (ii) upgrading of platform scales to improve the rate at which grain could be dumped. However, the Debtors' historically high profit margins from 2012 were not sustainable. As operators of elevators and silos, the Debtors were increasingly subject to

23

competition from operators with ties to exporters and lower costs of capital due to their larger scale, and thus subsequently experienced decreasing profit margins.

In 2015, the Debtors' former founders and equity sponsor sold the Debtors and affiliated nondebtors to American Infrastructure MLP Funds for $272 million (the "2015 Sale"). In relation thereto, Agspring incurred $80 million in loans (the "Term Loan"), pursuant to the Prepetition Credit Agreement, which are guaranteed by certain Debtors (AMR and AGMS1) pursuant to the Prepetition Term Guaranty and secured by pledges of their assets, excluding certain real property assets of AMR. Agspring suffered significantly lower EBITDA in 2016 than forecasted during the 2015 Sale process, which resulted in Agspring's inability to service the significant debt load taken on to finance the 2015 Sale. Agspring and Holdco are currently pursuing litigation in Delaware Chancery Court against founders Brad Clark and Randal Linville and former equity owner NGP X US Holdings LP on fraud theories related to the 2015 Sale.

After their 2016 fiscal year, the Debtors' thin profit margins from increased market competition, combined with their level of debt obligations, made the continued successful operation of the Debtors unsustainable. Since this time, the Debtors have engaged in multiple restructurings.

In addition to the issues raised above, during this same timeframe, the Debtors experienced additional financial stress as participants in the agribusiness sector in general and grain sector in particular, which faced continued decline in demand and margins for the Debtors' products. Additionally, the larger Agspring family of companies had anticipated opportunities to exploit certain synergies that ultimately failed to materialize.

2.    CGB Transaction and Transition of Operations in 2018 and Through Present

To address the foregoing issues, in 2018, the Debtors entered into an agreement with CGB to allow CGB to provide managerial and marketing services to the Debtors.

On December 31, 2018, in anticipation of a possible joint venture, AMR entered into a capital contribution agreement that contributed, among other things, AMR's real property interest in the real property facilities commonly known as the Crowville and Dunn facilities and its equity interest in Bayou to LakeProv in exchange for the increased value of the equity of AGMS1, which indirectly owns LakeProv through AGMS. The Prepetition Term Secured Parties held Liens encumbering the Crowville and Dunn properties at the time of the capital contribution agreement, which Liens were released following the contribution transaction in or about February 2019. The joint venture transaction, however, did not come to fruition.

Subsequently, in June 2019, CGB and Big River entered into (a) a purchase agreement whereby Big River sold the operational aspects of the business, including the contracts and inventory, to CGB (the "CGB Purchase Agreement"), (b) two separate five-year leases of land, grain storage facilities, and other real and personal property to CGB (the "CGB Leases"), and (c) a number of agreements ancillary to the CGB Purchase Agreement and the CGB Leases (together with the CGB Purchase Agreement and the CGB Leases, the "CGB Transaction"). Pursuant to the CGB Transaction, CGB took over all operations formerly conducted by the Debtors, and, consequently, the Debtors currently have no employees or operations. In conjunction with the

24

CGB Transaction, CGB loaned the Debtors $400,000 to allow the Debtors to pay farmers from whom the Debtors had purchased product. The Debtors issued CGB a note for this amount in return (the "CGB Note").

Later that same year, in late 2019, the Tubbs Plaintiffs filed suit against AMR and certain nondebtors. The Tubbs Plaintiffs had sold the Tubbs Properties that became part of the Big River assets in 2013 and received a promissory note in return. The litigation with the Tubbs Plaintiffs is ongoing, as described in more detail in Section I.A.7 below.

CGB continues to lease and use the facilities and assets for grain and other crop storage, processing, handling, shipment, and related operations. Pursuant to the CGB Leases, CGB pays the Debtors $750,000 per year in rent. The CGB Leases each have a five-year term, with an early termination option after two years in the event of a sale of a leased property, subject to a right of first refusal in favor of CGB.

3.     Initial Turnaround Activities

a.     Prepetition Marketing Efforts and Sale Process

Prior to the Petition Date, the Debtors engaged in substantial efforts to market and solicit interest in their assets. On January 27, 2021, Holdco, a non-debtor affiliate of the Debtors, engaged Piper as financial advisor and investment banker to assist the Debtors—as well as other non-debtor affiliates—with regard to the sale of their respective assets. Specifically, Holdco engaged Piper to assist in identifying potential purchasers for some or all of Agspring's and its subsidiaries' assets, including the Debtors' assets, and commenced discussions with those potential purchasers.

In connection therewith, Piper prepared a Confidential Investment Memorandum and organized an online data site to share information with potential purchasers and, on February 19, 2021, began contacting strategic and financial purchasers.

In this initial vigorous marketing process, Piper contacted more than 65 potential purchasers to evaluate their interest in exploring a transaction involving some or all of the Debtors' assets.

By March 31, 2021, as a result of its ongoing and broad marketing process, Piper had received four "Indications of Interest" from potential purchasers for some or all of the Debtors' assets.

One bidder, the Greenfield Purchaser, entered into substantive negotiations with the Debtors for the purchase of the Debtors' "Big River" assets, which ultimately resulted in the Purchase Agreement.

b.     Appointment of CRO and Commencement of Chapter 11 Cases

On September 8, 2021, the Debtors appointed Kyle Sturgeon to serve as their Chief Restructuring Officer ("CRO") to assist the Debtors in the sale of their assets, to forecast and manage their liquidity, and to provide advice and recommendations regarding their restructuring.

US_Active\120183950

With the ultimate goals of (a) preserving the going-concern value of the Debtors' businesses for their stakeholders and parties in interest and (b) effectuating an orderly sale process and liquidation, on the Petition Date, the Debtors filed the Chapter 11 Cases.

## C.    **The Chapter 11 Cases**

The following is a brief description of certain material events that have occurred during these Chapter 11 Cases.

### 1.    <u>First Day Motions and Orders</u>

On the Petition Date, in addition to the voluntary petitions for relief filed by the Debtors under chapter 11 of the Bankruptcy Code, the Debtors also filed the following routine motions and seeking certain "first day" relief:

- *Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases*. The Debtors sought entry of an Order directing the joint administration of the Chapter 11 Cases and consolidation thereof for procedural purposes only [D.I. 2]. On September 13, 2021, the Bankruptcy Court entered an Order granting the relief requested in the motion [D.I. 7].

- *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors' Twenty Largest Unsecured Creditors, and (C) Redact Certain Personally Identifiable Information for Individual Creditors and Interest Holders and (II) Granting Related Relief*. The Debtors sought entry of an Order relating to the list of creditors required to be filed at the commencement of the Chapter 11 Cases [D.I. 3]. On September 13, 2021, the Bankruptcy Court entered an Order granting the relief requested in the motion [D.I. 8].

### 2.    <u>Employment and Compensation of Debtors' Professionals and Advisors</u>

On October 12, 2021, the Bankruptcy Court entered Orders authorizing the Debtors to retain Dentons US LLP as bankruptcy counsel [D.I. 89] and Pachulski Stang Ziehl & Jones LLP as bankruptcy co-counsel [D.I. 90]. Additionally, on that same date, the Bankruptcy Court entered an Order authorizing the Debtors to retain Meru, LLC to provide the Debtors with a CRO and additional staff, and designating Kyle Sturgeon as CRO [D.I. 88]. On October 25, 2021, the Bankruptcy Court entered Orders authorizing the Debtors to retain Piper as investment banker [D.I. 128] and Faegre Drinker Biddle & Reath LLP as special corporate, transactional, and litigation counsel [D.I. 129].

On October 15, 2021, overruling a limited objection by the Tubbs Plaintiffs [D.I. 80], the Bankruptcy Court entered an Order establishing procedures for interim compensation and reimbursement of expenses of the Debtors' retained professionals [D.I. 112].

US_Active\120183950

3.      Administrative Matters, Reporting and Disclosures

The Debtors were required to address the various administrative matters attendant to the commencement of these Chapter 11 Cases, which required an extensive amount of work by the Debtors' employees and their professionals. These matters included the preparation of the Schedules for each of the Debtors' five Chapter 11 Cases (*see, e.g.*, D.I. 43-52, 229), and preparation of the materials required by the U.S. Trustee.

The Debtors have made every effort to comply with their duties under §§ 521, 1106 and 1107 and all applicable U.S. Trustee guidelines, including the filing of the Debtors' monthly operating reports. *See* D.I. 121-25, 189-93, 208-12, 233-37, 255-59. The Debtors also attended their initial interview with the U.S. Trustee and the meeting of creditors required under § 341(a).

4.      Post-Petition Financing

On October 14, 2021, the Debtors filed the DIP Motion, and a declaration of the Debtors' CRO in support thereof [D.I. 98]. The DIP Motion requested the Bankruptcy Court to, among other things, authorize the Debtors to use "cash collateral," as such term is defined in the § 363 of the Bankruptcy Code and enter into a back-up financing facility with the Lenders to fund the administrative expenses of the Chapter 11 Cases, including the fees payable to the U.S. Trustee, costs such as property taxes and insurance, plus the fees and expenses of professionals through the conclusion of the sale process of the Debtors' assets. The Bankruptcy Court entered an Order granting the relief requested in the motion on November 4, 2021 [D.I. 174]. On November 15, 2021, the Bankruptcy Court entered a further Order [D.I. 185] approving a related stipulation [D.I. 184] among the Debtors and DIP Lenders for the establishment of a deposit account to receive the proceeds of the facility approved by the Final DIP Order.

The Final DIP Order includes, among other things, certain findings, stipulations, and releases as to the validity of the Term Loan that became binding on all parties in interest on January 19, 2022. These findings, stipulations, and releases include:

- that the Term Loan was an extension of loans and other financial accommodations by the Term Lenders to Agspring which was guaranteed by AMR and AGMS1;

- that the "Prepetition Obligations [including the Term Loan] constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Loan Documents, as applicable";

- that "no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations (or any payment made in respect of any thereof) is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or other applicable law"; and

- a complete release of claims against all Prepetition Secured Parties and their affiliates relating to and/or otherwise in connection with the Prepetition Liens, the

27

Prepetition Obligations, the Prepetition Loan Documents or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of the Debtors, on the other hand, subject only to a 75-day challenge period that expired on January 19, 2022 without any party in interest having filed a challenge.

On February 11, 2022, the Debtors filed the Adequate Protection Motion. Following a hearing, the Court overruled the Tubbs Parties' objection to the Adequate Protection Motion, and on March 2, 2022, entered the Adequate Protection Order.

On March 16, 2022, the Tubbs Parties filed a notice of appeal of the Adequate Protection Order to the U.S. District Court for the District of Delaware, which was docketed as Bankruptcy Court Appeal (BAP) No. 21-26 and, subsequently, District Court Civil Action No. 22-cv-338. The case has been referred to a U.S. Magistrate Judge to determine the appropriateness of mediation. No briefing schedule has been set.

On March 17, 2022, the Prepetition Term Lenders commenced the Adversary Proceeding (Tubbs Parties), Case No. 22-50235-CTG, against the Tubbs Parties by filing a complaint in the Bankruptcy Court [D.I. 310]. The Prepetition Term Lenders seek a declaratory judgment under Bankruptcy Rule 7001(9) seeking a determination as to the validity, priority, and extent of the Tubbs Parties' Liens on certain property of the Debtors.

5.      <u>Claims Process and Bar Date</u>

   a.      *Section 341(a) Meeting of Creditors*

On October 21, 2021, the U.S. Trustee presided over the § 341(a) meeting of creditors in the Chapter 11 Cases [D.I. 120].

No committee of unsecured creditors was appointed in the Chapter 11 Cases [D.I. 41].

   b.      *Schedules and Statements*

The Debtors filed with the Bankruptcy Court their Schedules on September 27, 2021 [D.I. 43-52, 229].

   c.      *Bar Date*

On December 1, 2021, the Debtors filed the *Debtors' Motion For Entry Of An Order (I) Setting Bar Dates For Filing Proofs Of Claim, Including Requests For Payment Under Section 503(B)(9), (II) Setting A Bar Date For the Filing Of Proofs Of Claim By Governmental Units, (III) Setting A Bar Date For the Filing Of Requests For Allowance Of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date And Rejection Damages Bar Date, (V) Approving the Form Of And Manner For Filing Proofs Of Claim, (VI) Approving Notice Of Bar Dates, and (VII) Granting Related Relief* [D.I. 194], seeking entry of an Order establishing the Bar Dates, including the General Claims Bar Date and an initial Administrative Claims Bar Date. The Bankruptcy Court entered the Bar Date Order, which granted the relief requested in the motion, on December 13, 2021 [D.I. 199].

US_Active\120183950

6.    Postpetition Sale Process

a.    *"Big River" Assets (Greenfield Sale)*

On September 30, 2021, the Debtors filed a motion to approve the Greenfield Sale with the Bankruptcy Court [D.I. 61] (the "Greenfield Sale Motion"), and a declaration by their investment banker in support thereof [D.I. 62].  The Greenfield Sale Motion sought (i) approval of the bid procedures in connection with the Greenfield Sale and (ii) approval of the APA with the Greenfield Purchaser, dated September 29, 2021, as the stalking horse bidder for the "Big River" assets for a purchase price of $30,500,000 in cash, subject to certain purchase price adjustments as well as certain bid protections, plus the aggregate fair market value of the assumed liabilities.

No objections were received to the bid procedures portion of the relief requested in the Greenfield Sale Motion, and on October 14, 2021, the Bankruptcy Court entered an Order approving such relief [D.I. 103] (the "Bidding Procedures Order").

Pursuant to such Order, the Debtors were to conduct an Auction by October 25, 2021 if they received any qualified bids other than the bids submitted by the Greenfield Purchaser.  The Debtors solicited but did not receive any additional qualified bids for the Greenfield Sale assets.  On October 26, 2021, the Debtors canceled the Auction [D.I. 131].

On October 27, 2021, the Tubbs Plaintiffs filed a limited objection to the Greenfield Sale [D.I. 135, 143], to which the Debtors filed a reply on November 1, 2021 [D.I. 160].

On November 2, 2022, the Debtors and the Greenfield Purchaser filed declarations in further support of the sale portion of the Greenfield Sale Motion [D.I. 162, 168].

The Bankruptcy Court held a hearing to consider the Greenfield Sale on November 3, 2021, at the conclusion of which the Bankruptcy Court approved the Greenfield Sale to the Greenfield Purchaser, as reflected in its Order entered on November 4, 2021 [D.I. 179].

The Greenfield Sale closed on December 14, 2021.  The Debtors received approximately $18.6 million in Greenfield Sale Proceeds, which constitute the Prepetition Secured Parties' Cash Collateral.

b.    *Other Assets (Tubbs Sale)*

The Debtors continue to evaluate the sale of their remaining assets, including the Tubbs Properties through a Tubbs Sale.  Over the last few months, the Debtors have negotiated an asset purchase agreement with a stalking horse bidder for a sale of the Mer Rouge property.  The Debtors intend to file the related sale motion shortly.

Recently, on March 16, 2022, the Tubbs Parties filed a second motion in the Chapter 11 Cases for relief from the automatic stay, pursuant to § 362(d) of the Bankruptcy Code [D.I. 297] (the "Second Tubbs Stay Relief Motion"), which relates to the Debtors' Mer Rouge, Pioneer, and Monticello properties.  Given the foregoing, the Debtors intend to oppose the Second Tubbs Stay Relief Motion as these properties are essential to a successful reorganization.

7.      Tubbs Litigation and Related Chapter 11 Filings

In addition to their participation in the Chapter 11 Cases through their various objections, the Tubbs Plaintiffs have sought the following relief in and out of the Chapter 11 Cases as follows:

a.      *Louisiana Litigation and the Lift Stay Motions*

On September 30, 2019, the Tubbs Plaintiffs filed suit (the "Louisiana Litigation") in the Sixth Judicial District Court, Parish of Madison, State of Louisiana (the "Louisiana State Court"), Case No. 19-198, against Debtors AMR and LakeProv, Agspring, Pacific Investment Management Company LLC, and other defendants with regard to the Tubbs Note. The Louisiana Litigation was stayed by the filing of the Chapter 11 Cases. On the Petition Date, the Debtors removed the Louisiana Litigation to the U.S. District Court for the Western District of Louisiana (the "Louisiana District Court"), Case No. 3:21-cv-03268-TAD-KDM.

On October 8, 2021, the Tubbs Plaintiffs filed a motion in the Chapter 11 Cases for limited relief from the automatic stay, pursuant to § 362(d) of the Bankruptcy Code, to proceed with the Louisiana Litigation [D.I. 81] (the "First Tubbs Stay Relief Motion"). Both the Debtors [D.I. 136] and Lenders [D.I. 138] opposed the First Tubbs Stay Relief Motion on October 27, 2021. The Tubbs Plaintiffs filed their reply on November 1, 2021 [D.I. 159]. On November 3, 2021, the Bankruptcy Court held a hearing to consider the First Tubbs Stay Relief Motion, which it denied without prejudice, as reflected in its Order entered on November 4, 2021 [D.I. 178].

On October 8, 2021, the Tubbs Plaintiffs filed a motion to remand the Louisiana Litigation to the Louisiana State Court, which motion the Debtors opposed. The Debtors also filed a motion to transfer venue of the Louisiana Litigation from the Louisiana District Court to the Bankruptcy Court (the "Louisiana Transfer Proceedings"), which the Tubbs Plaintiffs opposed. The Louisiana District Court has not yet ruled on either motion.

On March 16, 2022, the Tubbs Plaintiffs filed the Second Stay Relief Motion. Objections to the Second Tubbs Stay Relief Motion are due March 23, 2022, with a hearing scheduled for March 30, 2022. The Debtors intend to oppose the Second Stay Relief Motion for the reasons set forth in Section I.A.6.b above relating to the Tubbs Sale, as well as that the Second Tubbs Stay Relief Motion appears to be an attempted end-run against the Bankruptcy Court's denial of the First Tubbs Stay Relief Motion.

b.      *Request for Adequate Protection*

On October 27, 2021, the Tubbs Plaintiffs filed a motion to prohibit or condition the Debtors' use of cash collateral or for adequate protection pursuant to § 363(e) of the Bankruptcy Code [D.I. 137] (the "Tubbs AP Motion").

On November 4, 2021, the Tubbs Plaintiffs filed a notice of deposition and request for the production of documents [D.I. 177].

On December 6, 2021, the Tubbs Plaintiffs withdrew the Tubbs AP Motion [D.I. 197].

US_Active\120183950

8.    Other Litigation

The Debtors recognize the possibility that they may become aware of additional actions following their review of proofs of claim filed in these Chapter 11 Cases, at which point the Debtors will need to analyze such potential actions to determine whether to remove any such Actions. Accordingly, on December 6, 2021, the Debtors filed a motion to extend their deadline to remove actions [D.I. 196], which the Bankruptcy Court granted on January 5, 2022 [D.I. 222], extending the deadline to March 9, 2022. On March 7, 2022, the Debtors filed a motion to further extend the removal deadline by an additional 90 days [D.I. 288]. Pursuant to Local Rule 9006-2, the previous removal deadline was automatically extended until the Bankruptcy rules on the recent motion.

**III.**

**SUMMARY OF COMBINED DISCLOSURE STATEMENT AND PLAN STRUCTURE**

The Plan provides for, among other things:

- 100% recoveries for all Allowed Claims at Bayou, LakeProv, and AGMS, and 100% recoveries for all Allowed Claims, other than the Claims of the Prepetition Term Secured Parties, at AGMS1;

- Equity Interest Distributions by Bayou, LakeProv, AGMS, and AGMS1 to their respective Equity Interest Holders;

- 98% recoveries paid from the GUC Contribution Amount for Allowed General Unsecured Claims at AMR, subject to the terms of the Combined Disclosure Statement and Plan; and

- Pro rata distribution of the Tubbs' Contribution Amount to each Holder of an Allowed Tubbs Parties' Unsecured Deficiency Claim, subject to the terms of the Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan is a joint plan proposed by the Plan Proponents. Except as specifically set forth herein, nothing in the Combined Disclosure Statement and Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, Claimants holding Claims against multiple Debtors, to the extent such Claims are Allowed in each Debtor's Chapter 11 Case, will be treated as Holders of separate Claims against each applicable Estate for all purposes (including, but not limited to, voting and distributions); *provided*, *however*, that no Holder shall be entitled to receive more than payment in full of its Allowed Claim (plus postpetition interest, if and to the extent provided in the Combined Disclosure Statement and Plan), and such Claims will be administered and treated in the manner provided in the Combined Disclosure Statement and Plan.

Classification, treatment, and estimated recoveries under this Combined Disclosure Statement and Plan structure are summarized in Article IV below and set forth in Article VIII of this Combined Disclosure Statement and Plan.

*1.    Greenfield Sale*

The Combined Disclosure Statement and Plan proposes distributions to holders of Allowed claims from proceeds of the Greenfield Sale in accordance with the Stipulated Plan Value, as defined in Section I.B.119, which is based on the allocation provided by the Greenfield Purchaser. This Stipulated Plan Value maximizes value by avoiding the need for the Debtors to incur the cost of proving the allocation of the Greenfield Sale Proceeds among the sellers to the Greenfield Sale (Bayou, LakeProv and AMR), as the Prepetition Term Secured Parties are entitled to such proceeds under any allocation by virtue of (a) their first-priority Lien on AMR's Greenfield Sale Proceeds, (b) their Prepetition Term Loan Claim against AMR and AGMS1 in respect of the Prepetition Term Guaranty, and (c) the fact that the Combined Disclosure Statement and Plan provides for the payment in full of all other Allowed Claims at Bayou, LakeProv, AGMS, and AGMS1.

To the extent any Greenfield Sale Proceeds are allocated to AMR, the Prepetition Term Secured Parties are entitled to the proceeds thereof by virtue of their first-priority Lien on the assets of AMR sold through the Greenfield Sale.  To the extent Greenfield Sale Proceeds are allocated to Bayou or LakeProv (*i.e.,* the entities furthest down in the Debtors' organizational chart), such proceeds will be used to satisfy all Allowed Claims at Bayou, LakeProv, AGMS and AGMS1 (other than the Prepetition Term Loan Claim at AGMS1).  Any remaining value after satisfying all other Allowed Claims at these Debtors will then be distributed in respect of the Prepetition Term Loan Claim, less any applicable Plan Contribution Amount.

No party-in-interest is prejudiced by the Debtors and Prepetition Term Secured Parties stipulating as to the allocation of the Greenfield Sale Proceeds.  As noted above, if the value is allocated to AMR, the Prepetition Term Secured Parties are entitled to such value by virtue of the Prepetition Term Loan Claim against AMR and first-priority Lien on AMR's Greenfield Sale Proceeds.  If the value is allocated below AMR, such value will first be used to satisfy all Allowed Claims at the Debtors below AMR before being distributed at AGMS1 in respect of the Prepetition Term Loan Claim at AGMS1.

*2.    Tubbs Properties*

The Tubbs Parties assert a first-priority, validly perfected security interest in the land, grain elevator facilities, and their component parts on the Tubbs Properties.  Second Tubbs Stay Relief Motion (as defined in Section I.A.6.b), ¶16, at 6.  The Combined Disclosure Statement and Plan proposes to either sell or surrender the Tubbs Properties to the Tubbs Parties subject to the terms in the Combined Disclosure Statement and Plan.  The Prepetition Secured Parties have asserted through the Adversary Proceeding (Tubbs Parties) that they have a first-priority Lien on the personal property used at the Tubbs Properties, and that, if the Tubbs Parties want to have that collateral surrendered to them, the Tubbs Parties must first pay the Prepetition Secured Parties for the value of the personal property.  However, the Tubbs Parties assert that they have a first-priority Lien on the same personal property. *Id.*, ¶17, at 6.  Thus, the Debtors' surrender of the Tubbs Properties will be contingent on: (a) resolution of the competing Liens on the personal property

US_Active\120183950

either by the Bankruptcy Court or by agreement of the competing parties, or (b) escrow by the Tubbs Parties of funds equal to the Allocated Value (Tubbs Properties – PSP) pending resolution of the competing Liens on the personal property by the Bankruptcy Court or by agreement of the competing parties.

## IV.

## SUMMARY OF CLASSIFICATION, TREATMENT, AND ESTIMATED RECOVERY OF CLAIMS AND EQUITY INTERESTS

The following tables provide a summary of classification, treatment, and an estimate of the recoveries[9] of each Class of Claims and Equity Interests (other than Administrative Claims and Priority Tax Claims) in each of the Debtors for all purposes, including voting, Confirmation and Distribution (if any) pursuant to the Combined Disclosure Statement and Plan and pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code. The treatment provided in these tables is for informational purposes only and is qualified in its entirety by Article VIII of this Combined Disclosure Statement and Plan.

The following tables designate the Classes of Claims against and Equity Interests in each of the Debtors, and specifies which of those Classes are (i) Impaired or Unimpaired by the Combined Disclosure Statement and Plan, (ii) entitled to vote to accept the Combined Disclosure Statement and Plan in accordance with § 1126 of the Bankruptcy Code, (iii) deemed to reject the Combined Disclosure Statement and Plan, or (iv) deemed to accept the Combined Disclosure Statement and Plan.

## A.    Bayou Grain & Chemical Corporation (Bayou)

| Class | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Allowed Claims<br><br>Projected Recovery | Status; Voting Right |
|---|---|---|---|
| Class 1 – Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |

---

[9] These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by Creditors in proofs of claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases and objections to such Claims have not been fully litigated. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

US_Active\120183950

| | | | |
|---|---|---|---|
| Class 2 – Prepetition Bridge Lenders' Secured Claims | The Prepetition Bridge Lenders shall receive their Pro Rata share of all Allocated Value (Greenfield Sale) allocated to Bayou in satisfaction of their Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 3 in order to satisfy the treatment of those Classes, in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims. For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa. | $1,067,750.00[10] 100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 3 – General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim. | $0 100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 4 – Equity Interests | To the extent of any Distributed Value after full and final satisfaction of all Allowed Claims in Bayou's Classes 1-3, such value shall be dividended up to Bayou's sole shareholder, LakeProv. | $3,037,812.30 | Impaired; Entitled to Vote |

---

[10] The Debtors are jointly and severally liable to the Prepetition Bridge Lenders in the amount of $1,067,750.00, and, as such, the Prepetition Bridge Lenders hold Allowed Claims against each Debtor in the amount of $1,067,750.00. To avoid duplicative Distributions by any Debtor, the amount of this Class 2 Allowed Claim is reduced by the amount of Distributions made in respect of any other Debtor's Class 2 Allowed Claims. It is anticipated that all Distributions in respect of the Prepetition Bridge Loan Claims shall be made by Bayou.

US_Active\120183950

B.    **Lake Providence Grain and Rice LLC (LakeProv)**

| Class | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Allowed Claims<br><br>Projected Recovery | Status / Voting Right |
|-------|--------------------------------------------------|-------------------------------------------------------------|------------------------|
| Class 1 – Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 2 – Prepetition Bridge Lenders' Secured Claims | To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou, the Prepetition Bridge Lenders shall receive their Pro Rata share of (a) all Allocated Value (Greenfield Sale) allocated to LakeProv, and (b) all Distributed Value dividended up by Bayou to LakeProv in satisfaction of their Prepetition Bridge Loan Claims (and any adequate protection claims, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 3 in order to satisfy the treatment of those Classes, in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims. For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa. | $0[11]<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |

---

[11] The Debtors are jointly and severally liable to the Prepetition Bridge Lenders in the amount of $1,067,750.00, and, as such, the Prepetition Bridge Lenders hold Allowed Claims against each Debtor in the amount of $1,067,750.00. To avoid duplicative Distributions by any Debtor, the amount of this Class 2 Allowed Claim is reduced by the amount of Distributions made in respect of any other Debtor's Class 2 Allowed Claims. It is anticipated that all Distributions in respect of the Prepetition Bridge Loan Claims shall be made by Bayou.

US_Active\120183950

| Class 3 – General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 4 – Equity Interests | To the extent of any Distributed Value after full and final satisfaction of all Allowed Claims in LakeProv's Classes 1-3, such value shall be dividended up to its sole member, AGMS. | $4,646,425.72 | Impaired; Entitled to Vote |

## C.  **Agspring MS, LLC (AGMS)**

| Class | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Allowed Claims<br><br>Projected Recovery | Status / Voting Right |
|-------|--------------------------------------------------|----------------------------------------|----------------------|
| Class 1 – Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |

US_Active\120183950

| Class 2 – Prepetition Bridge Lenders' Secured Claims | To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou or LakeProv, the Prepetition Bridge Lenders shall receive their Pro Rata share of all Distributed Value dividended up by LakeProv to AGMS in satisfaction of their Prepetition Bridge Loan Claims (and any adequate protection claims, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 3 in order to satisfy the treatment of those Classes, in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims.  For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa. | $0[12]<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 3 – General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 4 – Equity Interests | To the extent of any Distributed Value after full and final satisfaction of all Allowed Claims in AGMS's Classes 1-3, such value shall be dividended up to its sole member, AGMS1. | $4,646,425.72 | Impaired; Entitled to Vote |

---

[12] The Debtors are jointly and severally liable to the Prepetition Bridge Lenders in the amount of $1,067,750.00, and, as such, the Prepetition Bridge Lenders hold Allowed Claims against each Debtor in the amount of $1,067,750.00. To avoid duplicative Distributions by any Debtor, the amount of this Class 2 Allowed Claim is reduced by the amount of Distributions made in respect of any other Debtor's Class 2 Allowed Claims.  It is anticipated that all Distributions in respect of the Prepetition Bridge Loan Claims shall be made by Bayou.

US_Active\120183950

## D.    Agspring MS 1, LLC (AGMS1)

| Class | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Allowed Claims<br><br>Projected Recovery | Status; Voting Right |
|---|---|---|---|
| Class 1 – Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 2 – Prepetition Bridge Lenders' Secured Claims | To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou, LakeProv, or AGMS, the Prepetition Bridge Lenders shall receive their Pro Rata share of all Distributed Value dividended up by AGMS to AGMS1 in satisfaction of their Prepetition Bridge Loan Claims (and any adequate protection claims, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 4 in order to satisfy the treatment of those Classes. | $0[13]<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 3 – Prepetition Term Secured Parties' Secured Claims | The Prepetition Term Secured Parties shall receive on account of their Allowed Prepetition Term Secured Parties' Secured AGMS1 Claim an amount equal to all Distributed Value dividended up by AGMS to AGMS1, less (i) the amount of AGMS1's Distributions to Classes 1, 2, and 4 at AGMS1, and (ii) the Plan Contribution Amount, which shall be separately dividended to AMR and then "gifted" to support the Combined Disclosure Statement and Plan and deducted from the distributions to Class 3 at AMR.[14] | $4,646,425.72<br><br>10-40% | Impaired; Entitled to Vote |

---

[13] The Debtors are jointly and severally liable to the Prepetition Bridge Lenders in the amount of $1,067,750.00, and, as such, the Prepetition Bridge Lenders hold Allowed Claims against each Debtor in the amount of $1,067,750.00. To avoid duplicative Distributions by any Debtor, the amount of this Class 2 Allowed Claim is reduced by the amount of Distributions made in respect of any other Debtor's Class 2 Allowed Claims.  It is anticipated that all Distributions in respect of the Prepetition Bridge Loan Claims shall be made by Bayou.

[14] The Plan Proponents anticipate that all or a substantial portion of the Distributed Value dividended up from AGMS to AGMS1 will be utilized to fund the Plan Contribution Amount.

US_Active\120183950

| Class 4 – General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 5 – Equity Interests | After full and final satisfaction of all Allowed Claims in AGMS1's Classes 1, 2, and 4, and the treatment of all Allowed Claims in AGMS1's Class 3, value equal to the Plan Contribution Amount shall be dividended up to AGMS1's sole member, AMR.[15] | $2,787,855.43 - $4,181,783.15 | Impaired; Entitled to Vote |

## E.    Agspring Mississippi Region, LLC (AMR)

| Class | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Allowed Claims<br><br>Projected Recovery | Status; Voting Right |
|---|---|---|---|
| Class 1 – Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder. | $0<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |

---

[15] *See* note 14.

US_Active\120183950

| Class 2 – Prepetition Bridge Lenders' Secured Claims | To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou, LakeProv, AGMS, or AGMS1, the Prepetition Bridge Lenders shall receive their Pro Rata share of all Allocated Value (Greenfield Sale) allocated to AMR in respect of personal property in satisfaction of their Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims.  For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa. | $0[16]<br><br>100% | Unimpaired; Deemed to Accept; Not Entitled to Vote |
| Class 3 – Prepetition Term Secured Parties' Secured Claims | On account of their Allowed Prepetition Term Secured Parties' Secured AMR Claim, the Prepetition Term Secured Parties shall (x) receive and retain the Post-Petition Payment Amount (and for the avoidance of doubt, such receipt and retention shall reduce the amount of such Allowed Prepetition Term Secured Parties' Secured AMR Claim) and (y) receive the sum of (i) the Allocated Value (Greenfield Sale) allocated to AMR, less any amounts (if any) actually Distributed to AMR's Class 2 out of the Allocated Value (Greenfield Sale) allocated to AMR, (ii) the Allocated Value (Tubbs Properties – PSP), and (iii) the Distributed Value (if any) dividended up from AGMS1 to AMR, less the amount of any applicable Plan Contribution Amount, which shall be "gifted" to support the Combined Disclosure Statement and Plan and deducted from the Distributions to AMR's Class 3. | $8,870,281.20 - $19,086,076.77<br><br>40-87% | Impaired; Entitled to Vote |

---

[16] The Debtors are jointly and severally liable to the Prepetition Bridge Lenders in the amount of $1,067,750.00, and, as such, the Prepetition Bridge Lenders hold Allowed Claims against each Debtor in the amount of $1,067,750.00. To avoid duplicative Distributions by any Debtor, the amount of this Class 2 Allowed Claim is reduced by the amount of Distributions made in respect of any other Debtor's Class 2 Allowed Claims.  It is anticipated that all Distributions in respect of the Prepetition Bridge Loan Claims shall be made by Bayou.

US_Active\120183950

| | | | |
|---|---|---|---|
| | Notwithstanding anything to the contrary, (A) no Distributions shall be made in respect of the funds escrowed in connection with the Greenfield Sale until such time as such funds are released from escrow under the terms of the Greenfield Sale, and (B) no Distributions shall be made in respect of the Allocated Value (Tubbs Properties – PSP) until (x) the occurrence of a Tubbs Properties Liquidation Event *or* (y) following entry of a final order resolving the Adversary Proceeding (Tubbs Parties) and the expiration of any applicable appeal period, the Debtors determine, in their reasonable discretion, to engage in a Tubbs Properties Surrender Event. | | |
| Class 4 – Tubbs Parties' Secured Claims | Each Holder of an Allowed Tubbs Secured Claim shall receive, in full and final satisfaction of and in exchange for such Allowed Tubbs Secured Claim: (i) upon the occurrence of a Tubbs Properties Liquidation Event, their Pro Rata share of the Allocated Value (Tubbs Properties) attributable to the portion of the Tubbs Properties sold in connection with such Tubbs Properties Liquidation Event upon which the Tubbs Parties hold a first-priority Lien (which Liens on such property are expressly preserved hereby); and (ii) upon the occurrence of a Tubbs Properties Surrender Event, surrender of all remaining property of AMR subject to a valid and perfected, first priority Lien of the Tubbs Parties. For the avoidance of doubt, in the event of a Tubbs Properties Liquidation Event, the Tubbs Parties shall be entitled to credit bid for the entirety of the Tubbs Properties subject to such sale so long as they pay cash for the portion of the purchase price allocated to the portion of the Tubbs Properties upon which the Lenders hold first-priority Liens, if any. | $TBD<br><br>100% | Impaired; Entitled to Vote |

41

| Class 5 – Prepetition Term Secured Parties' Unsecured Deficiency Claims | Each Holder of an Allowed Prepetition Lenders' Unsecured Deficiency Claim shall receive, in full and final satisfaction of and in exchange for such Allowed Prepetition Lenders' Unsecured Deficiency Claim, together with the Holders of the General Unsecured Claims and the Tubbs Unsecured Deficiency Claim, such Holder's Pro Rata share of proceeds of unencumbered AMR property (including, to the extent applicable, any unencumbered Causes of Action) liquidated or disposed of on or after the Effective Date; provided, in no event shall any Holder of Lenders' Unsecured Deficiency Claim receive greater than 100% of its Lenders' Unsecured Deficiency Claim. For the avoidance of doubt, all cash Distributions made on account of the Prepetition Term Guaranty shall be made to the Prepetition Term Agent for further distribution to the Prepetition Term Lenders in accordance with the Prepetition Credit Agreement and Prepetition Term Guaranty. | $85,000,000.00 - $95,000,000.00 0-0.1% | Impaired; Entitled to Vote |

42

| Class 6 – Tubbs Parties' Unsecured Deficiency Claims | Each Holder of an Allowed Tubbs Parties' Unsecured Deficiency Claim shall receive, in full and final satisfaction of and in exchange for such Allowed Unsecured Deficiency Claim: (i) Pro Rata Distribution of the Tubbs' Contribution Amount, contingent upon Holders of Tubbs Unsecured Deficiency Claims unanimously (v) voting in favor of the Combined Disclosure Statement and Plan, (w) not opting out of the Third Party Release under the Combined Disclosure Statement and Plan, (x) not otherwise opposing the Combined Disclosure Statement and Plan or any provision therein, (y) dismissing with prejudice the Louisiana Litigation, including all claims and causes of action asserted by the Tubbs Parties therein, and, to the extent applicable, the Louisiana Transfer Proceedings, and (z) releasing any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever that could be asserted by any Tubbs Party against any Released Party as of the Effective Date; and (ii) together with the Holders of the General Unsecured Claims and the Lenders' Unsecured Deficiency Claims, such Holder's Pro Rata share of proceeds of unencumbered Debtor property (including, to the extent applicable, any unencumbered Causes of Action) liquidated or disposed of on or after the Effective Date; provided, in no event shall any Holder of a Tubbs Unsecured Deficiency Claim receive greater than 100% of its Holder of a Tubbs Unsecured Deficiency Claim. Each Holder of an Allowed Tubbs Claim shall receive its Pro Rata share of the Tubbs Contribution Amount, to the extent applicable, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Tubbs Claim becomes an Allowed Claim. | $TBD<br><br>TBD% | Impaired; Entitled to Vote |

US_Active\120183950

| Class 7 – General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of and in exchange for such Allowed General Unsecured Claim: (i) Pro Rata Distribution of the GUC Contribution Amount in an amount not to exceed 98% of such Holder's Allowed General Unsecured Claim, contingent upon Holders of General Unsecured Claims in requisite number and amount as is necessary for Class 7 to accept the Combined Disclosure Statement and Plan, (x) voting in favor of the Combined Disclosure Statement and Plan, (y) not opting out of the Third Party Release provided under the Combined Disclosure Statement and Plan, and (z) not otherwise opposing the Combined Disclosure Statement and Plan or any provision therein, and (ii) together with the Holders of the Lenders' Unsecured Deficiency Claim and the Tubbs Unsecured Deficiency Claim, such Holder's Pro Rata share of proceeds of any remaining unencumbered Debtor property (including, to the extent applicable, any unencumbered Causes of Action) liquidated or disposed of on or after the Effective Date; provided, in no event shall any Holder of an Allowed General Unsecured Claim receive greater than 100% of its Allowed General Unsecured Claim. Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Contribution Amount, to the extent applicable, as soon as practicable following the later of: (a) the Effective Date and (b) the date such General Unsecured Claim becomes an Allowed Claim | $146,214.00<br><br>98% | Impaired; Entitled to Vote |
| Class 8 – Equity Interests | As of the Effective Date, all Equity Interests of any kind shall be deemed void, cancelled and of no further force and effect and the Holders thereof shall not receive or retain any property or interest in property under the Combined Disclosure Statement and Plan on account of such Equity Interests. | $0 | Impaired; Deemed to Reject |

## V.

## CONFIRMATION AND VOTING PROCEDURES

### A.   Confirmation Procedure

1.       Combined Hearing

On [●], 2022, the Bankruptcy Court entered the Solicitation Procedures Order [D.I. [●]]. Among other things, the Solicitation Procedures Order, approved the adequacy of disclosures in the Combined Disclosure Statement and Plan on an interim basis and set certain deadlines for the solicitation of the Combined Disclosure Statement and Plan, voting on the Combined Disclosure Statement and Plan, voting on the Combined Disclosure

44

Statement and Plan, filing objections to the Combined Disclosure Statement and Plan and a hearing to consider approval of the Combined Disclosure Statement and Plan. The Combined Hearing has been scheduled for [●], 2022 at [●].m. (prevailing Eastern Time) at the Bankruptcy Court, 824 North Market Street, 3rd Floor, Courtroom 7, Wilmington, Delaware 19801 to consider (i) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to § 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Disclosure Statement and Plan pursuant to § 1129 of the Bankruptcy Code. The Combined Hearing may be adjourned from time to time by the Plan Proponents without further notice, except for an announcement of the adjourned date made at the Combined Hearing or by Filing a notice with the Bankruptcy Court.

2.        Procedures for Objections

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to § 1125 of the Bankruptcy Code and/or confirmation of the Combined Disclosure Statement and Plan must be made in writing and filed with the Bankruptcy Court and served, by no later than **[●], 2022 at 4:00 p.m. (prevailing Eastern Time)**, on: (i) the Debtors, c/o Meru LLC 1372 Peachtree Road NE, Atlanta, GA 30309, Attn: Kyle Sturgeon (Kyle@wearemeru.com); (ii) counsel for the Debtors, (1) Dentons US LLP, 601 S. Figueroa, Suite 2500, Los Angeles, CA 90017, Attn: Samuel R. Maizel (samuel.maizel@dentons.com), and (2) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones (ljones@pszjlaw.com); (iii) counsel to the Debtors' Prepetition Secured Parties, (1) Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003, Attn: Zachary H. Smith (zacharysmith@mvalaw.com) and Gabriel L. Mathless (gabrielmathless@mvalaw.com), and (2) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Jason M. Madron, Esq. (madron@rlf.com); and (iv) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov). **Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Combined Hearing.**

3.        Requirements for Confirmation

Among the requirements for confirmation of a plan pursuant to section 1129 of the Bankruptcy Code are: (1) the plan is accepted by all impaired classes of claims, or if rejected by an impaired class, the plan (a) is accepted by at least one impaired class and (b) "does not discriminate unfairly" and is "fair and equitable" as to the rejecting impaired class(es); (2) the plan is feasible; and (3) the plan is in the "best interests" of holders of claims or interests.

At the Combined Hearing, the Bankruptcy Court will determine whether the Combined Disclosure Statement and Plan satisfies all of the requirements of § 1129 of the Bankruptcy Code. The Plan Proponents believe that: (1) the Combined Disclosure Statement and Plan satisfies, or will satisfy, all of the necessary statutory requirements of chapter 11 for plan confirmation; (2) the Debtors have complied, or will have complied, with all of the necessary requirements of chapter 11 for plan confirmation; and (3) the Combined Disclosure Statement and Plan has been proposed in good faith.

4.                  Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Combined Disclosure Statement and Plan to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such class. The Combined Disclosure Statement and Plan creates separate Classes to deal respectively with secured Claims, unsecured Claims and Equity Interests. The Plan Proponents believe that the Combined Disclosure Statement and Plan's classifications place substantially similar Claims or Equity Interests in the same Class and thus, meet the requirements of § 1122 of the Bankruptcy Code.

5.                  Impaired Claims or Equity Interests

Pursuant to § 1126 of the Bankruptcy Code, only the Holders of Claims in Classes impaired by the Combined Disclosure Statement and Plan and receiving a payment or Distribution under the Combined Disclosure Statement and Plan may vote on the Combined Disclosure Statement and Plan. Pursuant to § 1124 of the Bankruptcy Code, a Class of Claims may be impaired if the Combined Disclosure Statement and Plan alters the legal, equitable, or contractual rights of the Holders of such Claims or Equity Interests treated in such Class. The Holders of Claims not impaired by the Combined Disclosure Statement and Plan are deemed to accept the Combined Disclosure Statement and Plan and do not have the right to vote on the Combined Disclosure Statement and Plan. The Holders of Claims or Equity Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Disclosure Statement and Plan are deemed to reject the Combined Disclosure Statement and Plan and do not have the right to vote. Finally, the Holders of Claims or Equity Interests whose Claims or Equity Interests are not classified under the Combined Disclosure Statement and Plan are not entitled to vote on the Combined Disclosure Statement and Plan.

6.                  Alternative Plan

If the Combined Disclosure Statement and Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan. However, the additional costs, all of which would constitute Administrative Claims may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to cases under chapter 7. Accordingly, the Plan Proponents believe that the Combined Disclosure Statement and Plan enables creditors to realize the best return under the circumstances.

7.                  Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (a) accept the Combined Disclosure Statement and Plan or (b) receive or retain under the Combined Disclosure Statement and Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. A hypothetical chapter 7 liquidation analysis is attached to this Combined Disclosure Statement and Plan as Exhibit A. The value of any Distributions if the Debtors' Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Combined Disclosure Statement and Plan for a variety of reasons. Conversion of the Chapter 11 Cases to chapter 7 cases would require the

46

appointment of a chapter 7 trustee, who would be entitled to statutory fees relating to the Distributions of the already-monetized assets.  Accordingly, a portion of the Cash currently available, or that would be available upon the Effective Date under the Combined Disclosure Statement and Plan, for Distribution to Holders of Allowed Claims would instead have to be paid to a chapter 7 trustee.  In addition, the chapter 7 trustee would likely retain new professionals.  The "learning curve" that the trustee and new professionals would be faced with comes with potentially additional costs to the Estates and with a delay compared to the time of Distributions under the Combined Disclosure Statement and Plan.

In addition, the Combined Disclosure Statement and Plan contains a number of concessions by certain parties in interest.  Among other things, the Prepetition Secured Parties have agreed to fund the Plan Contribution Amount, which fund provides for a recovery to Holders of Allowed General Unsecured Claims.  Although this consideration was assumed in the chapter 7 liquidation analysis, there are no assurances that these concessions would be available in a hypothetical chapter 7 liquidation.  In any event, the conversion to chapter 7 cases would likely require the chapter 7 trustee to negotiate with the Prepetition Secured Parties, resulting in additional costs and administrative expenses incurred in connection there with, as well as a resulting delay in Distributions.

As a result, the Plan Proponents believe that the Estates would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than they would if the Combined Disclosure Statement and Plan is confirmed.  Moreover, based on the structure of the Combined Disclosure Statement and Plan, and the settlements contained herein, the Holders of Allowed General Unsecured Claims will recover more than in the hypothetical chapter 7 cases.  Accordingly, the Plan Proponents believe that the "best interests" test of Bankruptcy Code § 1129 is satisfied.

        8.                Releases by the Debtors and Third Parties

Under applicable law, a release provided by a debtor is appropriate where: (a) there is an identity of interest between the debtor and the third party, such that a suit against the released non-debtor party is, at core, a suit against the debtor or will deplete assets of the estate; (b) there is a substantial contribution by the non-debtor of assets to the reorganization; (c) the injunction is essential to the reorganization; (d) there is overwhelming creditor support for the injunction; and (e) the chapter 11 plan will pay all or substantially all of the claims affected by the injunction.  *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).  Importantly, these factors are "neither exclusive nor are they a list of conjunctive requirements," but "[i]nstead, they are helpful in weighing the equities of the particular case after a fact-specific review." *Id.*  In addition, exculpation is appropriate where it applies to estate fiduciaries. *Id.* at 306.  Finally, an injunction is appropriate where it is necessary to the reorganization and fair pursuant to section 105(a) of the Bankruptcy Code.  *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012).  In addition, approval of the releases, exculpations, and injunctions for each of the Released Parties and each Exculpated Party as part of confirmation of the Combined Disclosure Statement and Plan will be limited to the extent such releases, exculpations, and injunctions are permitted by applicable law.

The Plan Proponents believe that the releases, exculpations, and injunctions set forth in Section XIII.E of the Combined Disclosure Statement and Plan are appropriate because, among other things, the releases are narrowly tailored to the Debtors' Chapter 11 Cases, and each of the

47

Released Parties has contributed value to the Debtors and aided in the sale process, which facilitated the Debtors' ability to propose and pursue confirmation. The Plan Proponents believe that each of the Released Parties has played an integral role in formulating the Combined Disclosure Statement and Plan and has expended significant time and resources analyzing and negotiating the issues presented by the Debtors' prepetition capital structure. The Debtors further believe that such releases, exculpations, and injunctions are a necessary and integral part of the consideration for the Plan Contribution Amount which formed the basis for this Combined Disclosure Statement and Plan. Absent such releases, the Prepetition Secured Parties would not have agreed to fund the Plan Contribution Amount and the Holders of Allowed Claims would receive a diminished (or, in some cases, no) recovery on account of such Claims. The Debtors will be prepared to meet their burden to establish the basis for the releases, exculpations, and injunctions for each of the Released Parties and each Exculpated Party as part of confirming the Combined Disclosure Statement and Plan.

        9.         <u>Feasibility</u>

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Disclosure Statement and Plan). Because the Combined Disclosure Statement and Plan proposes a liquidation of all of the Debtors' assets, for purposes of this test, the Plan Proponents have analyzed the ability of the Responsible Officer to meet its obligations under the Combined Disclosure Statement and Plan. Based on the Plan Proponents' analysis, the Responsible Officer will have sufficient assets to accomplish its tasks under the Combined Disclosure Statement and Plan. Therefore, the Plan Proponents believe that the liquidation pursuant to the Combined Disclosure Statement and Plan will meet the feasibility requirements of the Bankruptcy Code.

## B.    <u>Voting Procedure</u>

        1.         <u>Eligibility to Vote on the Combined Disclosure Statement and Plan</u>

Unless otherwise Ordered by the Bankruptcy Court, only Holders of Allowed Claims and Equity Interests in AMR Classes 3, 4, 5, 6, and 7, AGMS1 Classes 3 and 5, AGMS Class 4, LakeProv Class 4, and Bayou Class 4 may vote on the Combined Disclosure Statement and Plan. Further, subject to the tabulation procedures that were approved by the Solicitation Procedures Order, in order to vote on the Combined Disclosure Statement and Plan, you must hold an Allowed Claim in the above Classes, or be the Holder of a Claim in any such Class that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

        2.         <u>Solicitation Notice</u>

All Holders of Allowed Claims and Equity Interests in AMR Classes 3, 4, 5, 6, and 7, AGMS1 Classes 3 and 5, AGMS Class 4, LakeProv Class 4, and Bayou Class 4 will receive (i) notice of the Combined Hearing on the Combined Disclosure Statement and Plan (the "<u>Confirmation Notice</u>") and (ii) a form of ballot. All other Creditors, Equity Interest Holders, and

parties in interest not entitled to vote on the Combined Disclosure Statement and Plan will only receive a copy of the Confirmation Notice.

3.        Procedure/Voting Deadlines

In order for your ballot to count, you must complete, date, sign and properly mail, courier or personally deliver a paper ballot to counsel for the Debtors (in this capacity, the "Voting Agent") at the following address: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones and Mary F. Caloway.   BALLOTS SENT BY FACSIMILE TRANSMISSION OR E-MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.

Ballots must be RECEIVED BY THE VOTING AGENT on or before **[●], 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "**Voting Deadline**").  Subject to the tabulation procedures approved by the Solicitation Procedures Order, you may not change your vote once a ballot is submitted electronically or the Claims Agent receives your original paper ballot.

Subject to the tabulation procedures approved by the Solicitation Procedures Order, any ballot that is timely and properly submitted will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Disclosure Statement and Plan.

4.        Acceptance of the Combined Disclosure Statement and Plan

As a Creditor, your acceptance of the Combined Disclosure Statement and Plan is important.  In order for the Combined Disclosure Statement and Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the Combined Disclosure Statement and Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.  The Plan Proponents urge that you vote to accept the Combined Disclosure Statement and Plan.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

5.        Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Combined Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the Combined Disclosure Statement and Plan by such Class under § 1129(a)(8) of the Bankruptcy Code.

US_Active\120183950

# VI.

## CERTAIN RISK FACTORS

The Holders of General Unsecured Claims and Prepetition Lender Claims should read and carefully consider the following factors, as well as the other information set forth in this Article VI, before deciding whether to vote to accept or reject the Combined Disclosure Statement and Plan.  These risk factors should not, however, be regarded as constituting the only risks associated with the Combined Disclosure Statement and Plan and its implementation.

### A.    Non-Confirmation of the Combined Disclosure Statement and Plan

Even if the voting Class votes in favor of the Combined Disclosure Statement and Plan, and even if, with respect to any Impaired Class deemed to have rejected the Combined Disclosure Statement and Plan, the requirements for "cramdown" are met, the Bankruptcy Court, which is a court of equity, may exercise substantial discretion and may choose not to confirm the Combined Disclosure Statement and Plan.  In addition, while the Plan Proponents believe the feasibility test and the best interests test for confirmation are satisfied, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### B.    Classification Risk

The Plan Proponents believe that the Combined Disclosure Statement and Plan has classified all Claims and Equity Interests in compliance with the provisions of Bankruptcy Code § 1122 and applicable case law, but it is possible that a Holder of a Claim may challenge the classification of Claims, and that the Bankruptcy Court may determine that a different classification is required for the Combined Disclosure Statement and Plan to be confirmed.  In that event, the Plan Proponents intend, to the extent permitted by the Bankruptcy Code, the Combined Disclosure Statement and Plan, and the Bankruptcy Court, to make such reasonable modifications of the classifications under the Combined Disclosure Statement and Plan to permit confirmation and to use the Combined Disclosure Statement and Plan acceptances received for purposes of obtaining the approval of the reconstituted Class or Classes of which each accepting holder ultimately is deemed to be a member.  Any such reclassification could adversely affect the Class in which such holder initially was a member, or any other Class under the Combined Disclosure Statement and Plan, by changing the composition of such Class and the vote required of that Class for approval of the Combined Disclosure Statement and Plan.

### C.    Claims Estimations

There can be no assurance that any estimated Claim amounts set forth in this Combined Disclosure Statement and Chapter 11 Plan are correct.  The actual Allowed amount of Claims likely will differ in some respect from the estimates.  The estimated amounts are subject to certain risks, uncertainties, and assumptions.  Should one or more of these risks or uncertainties materialize, or should the underlying assumptions prove incorrect, the actual Allowed amount of Claims may vary from those estimated herein.

US_Active\120183950

**D.**     **Administrative and Priority Claims**

The Debtors have been paying their administrative expenses in the ordinary course and do not anticipate any outstanding Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims following the claims reconciliation process.

Notwithstanding the foregoing, if the actual number and amount of such Claims exceeds the amount of Cash the Debtors have to satisfy all such Claims in full, then  unless the Holders of such Claims consent to less than full payment, then the Bankruptcy Court may deny confirmation of the Combined Disclosure Statement and Plan.

**E.**     **Conditions Precedent to Consummation; Timing**

The Combined Disclosure Statement and Plan provides for certain conditions that must be satisfied (or waived) prior to the Effective Date.  There can be no assurance that any or all of the conditions in the Combined Disclosure Statement and Plan will be satisfied (or waived). Accordingly, even if the Combined Disclosure Statement and Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Combined Disclosure Statement and Plan will be consummated.

**F.**     **Certain Tax Considerations**

There are a number of material income tax considerations, risks and uncertainties associated with the Combined Disclosure Statement and Plan of liquidation of the Debtor described in the Combined Disclosure Statement and Plan.


THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE COMPLEX.  NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.

**VII.**

**UNCLASSIFIED ADMINISTRATIVE CLAIMS,
PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS**

**A.**     **Introduction**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Combined Disclosure Statement and Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code, as set forth below.

## B.   Administrative Claims

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim (other than a Professional Fee Claim) shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Combined Disclosure Statement and Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Notwithstanding any provision in the Combined Disclosure Statement and Plan regarding payment of Administrative Claims to the contrary, all Administrative Claims (other than Professional Fee Claims and the Lenders' Claims which are Allowed) must be filed, or have already been filed, with the Bankruptcy Court and served on the Debtors or Liquidating Debtors, as applicable, no later than the applicable Administrative Claims Bar Date.   Holders of Administrative Claims that do not file/have not filed such requests by the applicable deadlines provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtors or Liquidating Debtors, the Estates, or their successors or assigns, or their property.   In the event that the Debtors, the Liquidating Debtors, or Lenders, as applicable, object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.   Notwithstanding the foregoing: (a) no request for payment need be filed with respect to an undisputed postpetition obligation which was paid or is payable by the Debtors in the ordinary course of business; *provided*, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business; (b) no request need be filed with respect to a cure amount owing under an Executory Agreement if (i) the amount of the cure is fixed or proposed to be fixed by the Confirmation Order or other order of the Bankruptcy Court either pursuant to the Combined Disclosure Statement and Plan or pursuant to a motion to assume and fix the amount of Cure filed by the Debtors, and (ii) a timely objection asserting an increased amount of the cure has been filed by the non-Debtors party to the subject contract or lease; and (c) no request for payment need be filed with respect to fees payable pursuant to 28 U.S.C. § 1930.   No Holder of an Administrative Claim shall have recourse for any deficiency in the payment of its Administrative Claim against any of the Released Parties.

## C.   Professional Fee Claims

Professionals requesting compensation or reimbursement of expenses, pursuant to §§ 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code, or required to file fee applications by order

52

of the Bankruptcy Court for services rendered prior to the Effective Date, must file and serve, pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. Any objection to Professional Fee Claims shall be filed on or before seventy-five (75) days after the Effective Date.

On the Effective Date, or as soon as practicable thereafter, the Liquidating Debtors shall establish the Professional Fee Reserve, to be funded out of the Greenfield Sale Proceeds, and otherwise acceptable to the Pre-Petition Secured Parties, to be utilized for anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service, and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date. Upon approval of the fee applications by the Bankruptcy Court for Professional Fee Claims, the Liquidating Debtors shall pay Professionals all of their respective accrued and Allowed fees and reimburse Allowed expenses arising prior to the Effective Date.

### D.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, the Liquidating Debtors shall pay each Holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing.

### VIII.
### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.    Classification of Claims and Equity Interests by Debtor

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Combined Disclosure Statement and Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section VIII herein. This Combined Disclosure Statement and Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without

limitation, payments by third parties.

In addition, the Debtors have not classified any Claims they may have against any other Debtor, which is described further in Section VIII.C.

**B.**     **Treatment of Claims and Equity Interests by Debtor**

**(i)**     **Bayou Grain & Chemical Corporation (Bayou)**

1.     Class 1 – Priority Non-Tax Class

a.     **Classification:**  Class 1 consists of the Priority Non-Tax Class.

b.     **Treatment:**  Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder.

c.     **Voting:**  Class 1 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

2.     Class 2 – Prepetition Bridge Lenders' Secured Claims

a.     **Classification:**  Class 2 consists of the Prepetition Bridge Lenders' Secured Claims.

b.     **Treatment:**  The Prepetition Bridge Lenders shall receive their Pro Rata share of all Allocated Value (Greenfield Sale) allocated to Bayou in satisfaction of their Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 3 in order to satisfy the treatment of those Classes, in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims.  For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa.

c.     **Voting:**  Class 2 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

3.     Class 3 – General Unsecured Class

a.     **Classification:**  Class 3 consists of the General Unsecured Claims.

US_Active\120183950

b.      **Treatment:**  Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim.

c.      **Voting:**  Class 3 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

4.      Class 4 – Equity Interests

a.      **Classification:**  Class 4 consists of Equity Interests.

b.      **Treatment:**  To the extent of any Distributed Value after full and final satisfaction of all Allowed Claims in Bayou's Classes 1-3, such value shall be dividended up to Bayou's sole shareholder, LakeProv.

c.      **Voting:**  Class 4 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

(ii)    **Lake Providence Grain and Rice LLC (LakeProv)**

1.      Class 1 – Priority Non-Tax Class

a.      **Classification:**  Class 1 consists of the Priority Non-Tax Claims.

b.      **Treatment:**  Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder.

c.      **Voting:**  Class 1 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

2.      Class 2 – Prepetition Bridge Lenders' Secured Claims

a.      **Classification:**  Class 2 consists of the Prepetition Bridge Lenders' Secured Claims.

b.      **Treatment:**  To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou, the Prepetition Bridge Lenders shall receive their Pro Rata share of (a) all Allocated Value (Greenfield Sale) allocated to LakeProv, and (b) all Distributed Value dividended up by Bayou to LakeProv in satisfaction of their Prepetition Bridge Loan Claims (and any adequate protection claims, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 3 in order to satisfy the treatment of those Classes, in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this

55

Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims. For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa.

      c.    **Voting:** Class 2 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

3.    Class 3 – General Unsecured Class

      a.    **Classification:** Class 3 consists of the General Unsecured Claims.

      b.    **Treatment:** Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim.

      c.    **Voting:** Class 3 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

4.    Class 4 – Equity Interests

      a.    **Classification:** Class 4 consists of Equity Interests.

      b.    **Treatment:** To the extent of any Distributed Value after full and final satisfaction of all Allowed Claims in LakeProv's Classes 1-3, such value shall be dividended up to its sole member, AGMS.

      c.    **Voting:** Class 4 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

      **(iii)**    **Agspring MS, LLC (AGMS)**

1.    Class 1 – Priority Non-Tax Class

      a.    **Classification:** Class 1 consists of the Priority Non-Tax Claims.

      b.    **Treatment:** Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder.

      c.    **Voting:** Class 1 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

US_Active\120183950

2.      Class 2 – Prepetition Bridge Lenders' Secured Claims

      a.      **Classification:**  Class 2 consists of the Prepetition Bridge Lenders' Secured Claims.

      b.      **Treatment:**  To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou or LakeProv, the Prepetition Bridge Lenders shall receive their Pro Rata share of all Distributed Value dividended up by LakeProv to AGMS in satisfaction of their Prepetition Bridge Loan Claims (and any adequate protection claims, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 3 in order to satisfy the treatment of those Classes,  in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims.  For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa.

      c.      **Voting:**  Class 2 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

3.      Class 3 – General Unsecured Class

      a.      **Classification:**  Class 3 consists of the General Unsecured Claims.

      b.      **Treatment:**  Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim.

      c.      **Voting:**  Class 3 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

4.      Class 4 – Equity Interests

      a.      **Classification:**  Class 4 consists of Equity Interests.

      b.      **Treatment:**  To the extent of any Distributed Value after full and final satisfaction of all Allowed Claims in AGMS's Classes 1-3, such value shall be dividended up to its sole member, AGMS1.

      c.      **Voting:**  Class 4 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

### (iv)    Agspring MS 1, LLC (AGMS1)

1.    Class 1 – Priority Non-Tax Class

    a.    **Classification:** Class 1 consists of the Priority Non-Tax Claims.

    b.    **Treatment:** Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder.

    c.    **Voting:** Class 1 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

2.    Class 2 – Prepetition Bridge Lenders' Secured Claims

    a.    **Classification:** Class 2 consists of the Prepetition Bridge Lenders' Secured Claims.

    b.    **Treatment:** To the extent the Prepetition Bridge Loan Claims (and any adequate protection claims, if any) are not fully satisfied by Bayou, LakeProv, or AGMS, the Prepetition Bridge Lenders shall receive their Pro Rata share of all Distributed Value dividended up by AGMS to AGMS1 in satisfaction of their Prepetition Bridge Loan Claims (and any adequate protection claims, if any), less any amounts Distributed to the Holders of Allowed Claims in Classes 1 and 4 in order to satisfy the treatment of those Classes.

    c.    **Voting:** Class 2 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

3.    Class 3 – Prepetition Term Secured Parties' Secured Claims.

    a.    **Classification:** Class 3 consists of the Prepetition Term Secured Parties' Secured Claims.

    b.    **Treatment:** The Prepetition Term Secured Parties shall receive on account of their Allowed Prepetition Term Secured Parties' Secured AGMS1 Claim an amount equal to all Distributed Value dividended up by AGMS to AGMS1, less (i) the amount of AGMS1's Distributions to Classes 1, 2, and 4 at AGMS1, and (ii) the Plan Contribution Amount, which shall be separately dividended to AMR and then "gifted" to support the Combined Disclosure Statement and Plan and deducted from the distributions to Class 3 at AMR.

    c.    **Voting:** Class 3 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

4.     Class 4 – General Unsecured Class

     a.     **Classification:**  Class 4 consists of General Unsecured Claims.

     b.     **Treatment:**  Each Holder of an Allowed General Unsecured Claim shall be paid in full and final satisfaction of such Allowed General Unsecured Claim in accordance with the instruments governing the Allowed General Unsecured Claim.

     c.     **Voting:**  Class 4 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

5.     Class 5 – Equity Interests

     a.     **Classification:**  Class 5 consists of Equity Interests.

     b.     **Treatment:**  After full and final satisfaction of all Allowed Claims in AGMS1's Classes 1, 2, and 4, and the treatment of all Allowed Claims in AGMS1's Class 3, value equal to the Plan Contribution Amount shall be dividended up to AGMS1's sole member, AMR.

     c.     **Voting:**  Class 5 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

     **(v)     Agspring Mississippi Region, LLC (AMR)**

1.     Class 1 – Priority Non-Tax Class

     a.     **Classification:**  Class 1 consists of the Priority Non-Tax Claims.

     b.     **Treatment:**  Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Non-Tax Claim: (i) Cash in the amount of such claim, as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed by the Debtors and such Holder.

     c.     **Voting:**  Class 1 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

2.     Class 2 – Prepetition Bridge Lenders' Secured Claims

     a.     **Classification:**  Class 2 consists of the Prepetition Bridge Lenders' Secured Claims.

     b.     **Treatment:**  The Prepetition Bridge Lenders shall receive their Pro Rata share of all Allocated Value (Greenfield Sale) allocated to AMR in respect of personal property in satisfaction of their Prepetition Bridge Loan Claims (and adequate protection

claims of the Prepetition Bridge Lenders, if any) in an amount not to exceed in the aggregate, together with all other distributions to the Prepetition Bridge Lenders under this Combined Disclosure Statement and Plan, the amount of the Prepetition Bridge Loan Claims.  For the avoidance of doubt, amounts paid to the Prepetition Bridge Lenders from other Debtors in respect of the Prepetition Bridge Loan Claims (and adequate protection claims of the Prepetition Bridge Lenders, if any) shall reduce the amounts payable hereunder, and vice versa.

    c.  **Voting:**  Class 2 is an Unimpaired Class, and the Holders of Claims in this Class are deemed to accept the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

3.  Class 3 – Prepetition Term Secured Parties' Secured Claims

    a.  **Classification:**  Class 3 consists of the Prepetition Term Secured Parties' Secured Claims.

    b.  **Treatment:**  On account of their Allowed Prepetition Term Secured Parties' Secured AMR Claim, the Prepetition Term Secured Parties shall (x) receive and retain the Post-Petition Payment Amount (and for the avoidance of doubt, such receipt and retention shall reduce the amount of such Allowed Prepetition Term Secured Parties' Secured AMR Claim) and (y) receive the sum of (i) the Allocated Value (Greenfield Sale) allocated to AMR, less any amounts (if any) actually Distributed to AMR's Class 2 out of the Allocated Value (Greenfield Sale) allocated to AMR, (ii) the Allocated Value (Tubbs Properties – PSP), and (iii) the Distributed Value (if any) dividended up from AGMS1 to AMR, less the amount of any applicable Plan Contribution Amount, which shall be "gifted" to support the Combined Disclosure Statement and Plan and deducted from the Distributions to AMR's Class 3.

    Notwithstanding anything to the contrary, (A) no Distributions shall be made in respect of the funds escrowed in connection with the Greenfield Sale until such time as such funds are released from escrow under the terms of the Greenfield Sale, and (B) no Distributions shall be made in respect of the Allocated Value (Tubbs Properties) until (x) the occurrence of a Tubbs Properties Liquidation Event or (y) following entry of a final order resolving the Adversary Proceeding (Tubbs Parties) and the expiration of any applicable appeal period, the Debtors determine, in their reasonable discretion, to engage in a Tubbs Properties Surrender Event.

    c.  **Voting:**  Class 3 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

4.  Class 4 – Tubbs Parties Secured Claims

    a.  **Classification:**  Class 4 consists of the Tubbs Parties' Secured Claims.

    b.  **Treatment:**  Each Holder of an Allowed Tubbs Secured Claim shall receive, in full and final satisfaction of and in exchange for such Allowed Tubbs Secured Claim: (i) upon the occurrence of a Tubbs Properties Liquidation Event, their Pro Rata

60

share of the Allocated Value (Tubbs Properties) attributable to the portion of the Tubbs Properties sold in connection with such Tubbs Properties Liquidation Event upon which the Tubbs Parties hold a first-priority Lien (which Liens on such property are expressly preserved hereby); and (ii) upon the occurrence of a Tubbs Properties Surrender Event, surrender of all remaining property of AMR subject to a valid and perfected, first priority Lien of the Tubbs Parties. For the avoidance of doubt, in the event of a Tubbs Properties Liquidation Event, the Tubbs Parties shall be entitled to credit bid for the entirety of the Tubbs Properties subject to such sale so long as they pay Cash for the portion of the purchase price allocated by the Debtors, in their reasonable discretion, to the portion of the Tubbs Properties upon which the Prepetition Secured Parties hold first-priority Liens, if any.

      c.    **Voting:**  Class 4 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

5.     <u>Class 5 – Prepetition Term Secured Parties' Unsecured Deficiency Claims</u>

      a.    **Classification:**  Class 5 consists of the Prepetition Term Secured Parties' and Prepetition Bridge Lenders' Unsecured Deficiency Claims.

      b.    **Treatment:**  Each Holder of an Allowed Prepetition Lenders' Unsecured Deficiency Claim shall receive, in full and final satisfaction of and in exchange for such Allowed Prepetition Lenders' Unsecured Deficiency Claim, together with the Holders of the General Unsecured Claims and the Tubbs Unsecured Deficiency Claim, such Holder's Pro Rata share of proceeds of unencumbered AMR property (including, to the extent applicable, any unencumbered Causes of Action) liquidated or disposed of on or after the Effective Date; provided, in no event shall any Holder of Lenders' Unsecured Deficiency Claim receive greater than 100% of its Lenders' Unsecured Deficiency Claim. For the avoidance of doubt, all cash Distributions made on account of the Prepetition Credit Agreement shall be made to the Prepetition Term Agent for further distribution to the Prepetition Term Lenders in accordance with the Prepetition Credit Agreement.

      c.    **Voting:**  Class 5 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

6.     <u>Class 6 – Tubbs Parties' Unsecured Deficiency Claims</u>

      a.    **Classification:**  Class 6 consists of the Tubbs Parties' Unsecured Deficiency Claims.

      b.    **Treatment:**  Each Holder of an Allowed Tubbs Parties' Unsecured Deficiency Claim shall receive, in full and final satisfaction of and in exchange for such Allowed Unsecured Deficiency Claim: (i) Pro Rata Distribution of the Tubbs' Contribution Amount, contingent upon Holders of Tubbs Unsecured Deficiency Claims unanimously (v) voting in favor of the Combined Disclosure Statement and Plan, (w) not opting out of the Third Party Release under the Combined Disclosure Statement and Plan, (x) not otherwise opposing the Combined Disclosure Statement and Plan or any provision therein, (y) dismissing with prejudice the Louisiana Litigation, including all claims and causes of

61

action asserted by the Tubbs Parties therein, and, to the extent applicable, the Louisiana Transfer Proceedings, and (z) releasing any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever that could be asserted by any Tubbs Party against any Released Party as of the Effective Date; and (ii) together with the Holders of the AMR Class 7 General Unsecured Claims and the Lenders' AMR Class 5 Unsecured Deficiency Claims, such Holder's Pro Rata share of proceeds of unencumbered Debtor property (including, to the extent applicable, any unencumbered Causes of Action) liquidated or disposed of on or after the Effective Date; provided, in no event shall any Holder of a Tubbs Unsecured Deficiency Claim receive greater than 100% of its Tubbs Unsecured Deficiency Claim. Each Holder of an Allowed Tubbs Claim shall receive its Pro Rata share of the Tubbs Contribution Amount, to the extent applicable, as soon as practicable following the later of (a) the Effective Date and (b) the date such Tubbs Claim becomes an Allowed Claim.

c.      **Voting:** Class 6 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

7.      Class 7 – General Unsecured Class

a.      **Classification:** Class 7 consists of the General Unsecured Claims.

b.      **Treatment:** Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of and in exchange for such Allowed General Unsecured Claim: (i) Pro Rata Distribution of the GUC Contribution Amount in an amount not to exceed 98% of such Holder's Allowed General Unsecured Claim, contingent upon Holders of General Unsecured Claims, in requisite number and amount as is necessary for Class 7 to accept the Combined Disclosure Statement and Plan, (x) voting in favor of the Combined Disclosure Statement and Plan, (y) not opting out of the Third Party Release provided under the Combined Disclosure Statement and Plan, and (z) not otherwise opposing the Combined Disclosure Statement and Plan or any provision therein; and (ii) together with the Holders of the Lenders' Unsecured Deficiency Claim and the Tubbs Unsecured Deficiency Claim, such Holder's Pro Rata share of proceeds of any remaining unencumbered Debtor property (including, to the extent applicable, any unencumbered Causes of Action) liquidated or disposed of on or after the Effective Date; provided, in no event shall any Holder of an Allowed General Unsecured Claim receive greater than 100% of its Allowed General Unsecured Claim. Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Contribution Amount, to the extent applicable, as soon as practicable following the later of: (a) the Effective Date and (b) the date such General Unsecured Claim becomes an Allowed Claim.

c.      **Voting:** Class 7 is an Impaired Class, and the Holders of Claims in this Class are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

8.      Class 8 – Equity Interests

a.      **Classification:** Class 8 consists of Equity Interests.

b. **Treatment:** As of the Effective Date, all Equity Interests of any kind shall be deemed void, cancelled and of no further force and effect and the Holders thereof shall not receive or retain any property or interest in property under the Combined Disclosure Statement and Plan on account of such Equity Interests.

c. **Voting:** Class 8 is an Impaired Class, and the Holders of Claims in this Class are deemed to reject the Combined Disclosure Statement and Plan and are therefore not entitled to vote.

## C. Treatment of Intercompany Claims

As noted above, the Debtors have not classified any Claims they may have against any other Debtor. Specifically, as of the Petition Date, there were two intercompany claims, both of which were included in the Schedules: (1) a $4,313.15 Claim held by AMR against Bayou that will be paid through the successive dividending of Equity Interest value from Bayou up, through intermediate members, to AMR; and (2) a $169,258 Claim held by LakeProv against AMR on account of AMR's lease of LakeProv property to CGB, and included within AMR's Schedules, which Debt is effectively uncollectable to the extent AMR has no assets to pay any Debt beyond the treatment to nondebtor Creditors provided for below.

## IX.

## ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

## A. Holders of Claims and Equity Interests Entitled to Vote

Pursuant to § 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Combined Disclosure Statement and Plan may vote separately to accept or reject this Combined Disclosure Statement and Plan. Each Holder of an Allowed Claim in such an Impaired Class shall receive a Ballot and may cast a vote to accept or reject this Combined Disclosure Statement and Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation. The following Classes of each of the Debtors are Impaired and entitled to vote:

| Debtor | Impaired Classes Entitled to Vote |
|---|---|
| Agspring Mississippi Region, LLC (AMR) | Class 3, Class 4, Class 5, Class 6, and Class 7 |
| Agspring MS 1, LLC (AGMS1) | Class 3 and Class 5 |
| Agspring MS, LLC (AGMS) | Class 4 |
| Lake Providence Grain and Rice LLC (LakeProv) | Class 4 |

63

| Bayou Grain & Chemical Corporation (Bayou) | Class 4 |

## B.    Deemed to Reject

The following Classes of each of the Debtors are Impaired, are not entitled to a Distribution and are deemed to reject the Combined Disclosure Statement and Plan:

| Debtor | Impaired Classes Deemed to Reject |
| --- | --- |
| Agspring Mississippi Region, LLC (AMR) | Class 8 |

## C.    Classes Deemed to Accept

The following Classes of the Debtors are Unimpaired, not entitled to vote to accept or reject the Combined Disclosure Statement and Plan and are deemed to accept the Combined Disclosure Statement and Plan[17]:

| Debtor | Unimpaired Classes |
| --- | --- |
| Agspring Mississippi Region, LLC (AMR) | Class 1 and Class 2 |
| Agspring MS 1, LLC (AGMS1) | Class 1, Class 2, and Class 4 |
| Agspring MS, LLC (AGMS) | Class 1, Class 2, and Class 3 |
| Lake Providence Grain and Rice LLC (LakeProv) | Class 1, Class 2, and Class 3 |
| Bayou Grain & Chemical Corporation (Bayou) | Class 1, Class 2, and Class 3 |

## D.    Acceptance by a Class

A Class of Claims entitled to vote to accept or reject this Combined Disclosure Statement and Plan accepts this Combined Disclosure Statement and Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that complete and return Ballots in such Class vote to accept this Combined Disclosure Statement and Plan.  A Class of Interests is deemed to accept this Combined Disclosure Statement and Plan if this Combined Disclosure Statement and Plan has been accepted by Holders

---

[17] In the event the Debtors seek confirmation of the Combined Disclosure Statement and Plan under § 1129(b) of the Bankruptcy Code, the Debtors will not seek to propose Term Lenders' Secured Classes or Term Lenders' Unsecured Deficiency Classes as the impaired accepting class required to confirm the Combined Disclosure Statement and Plan provided under § 1129(a)(10) of the Bankruptcy Code.

of at least two-thirds (2/3) of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class.

**E.      Class Without Voting Claim Holders**

If Holders of Claims in a particular Impaired Class of Claims are entitled to vote to accept or reject this Combined Disclosure Statement and Plan, but no Holders of Claims in such Impaired Class of Claims vote to accept or reject this Combined Disclosure Statement and Plan, then such Class of Claims shall be deemed to have accepted this Combined Disclosure Statement and Plan.

**F.      Nonconsensual Confirmation**

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in § 1129(b) of the Bankruptcy Code.  Section 1129(b) requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because Class 8 of Equity Interests in AMR is deemed to reject the Combined Disclosure Statement and Plan by operation of law, the Plan Proponents will seek confirmation of the Combined Disclosure Statement and Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in § 1129(b) of the Bankruptcy Code.  The Plan Proponents believe that such requirements are satisfied by the proposed structure of the Combined Disclosure Statement and Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests.  The Plan Proponents believe that, under the Combined Disclosure Statement and Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  Accordingly, the Plan Proponents believe that the Combined Disclosure Statement and Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors, and equity holders, as follows:

      a.      Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and

65

clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b.    <u>Unsecured Creditors</u>.    Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.    <u>Equity Interests</u>.    Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

As discussed above, the Plan Proponents believe that the Distributions provided under the Combined Disclosure Statement and Plan satisfy the absolute priority rule, where required.

## X.

## MEANS FOR IMPLEMENTATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

### A.    Revesting/Handling of Estate Assets

The assets of the Estates shall revert to the Liquidating Debtors under the Combined Disclosure Statement and Plan and shall be distributed only in accordance with this Combined Disclosure Statement and Plan.  Except as otherwise provided in this Combined Disclosure Statement and Plan and the Confirmation Order, such assets shall be free and clear of all Claims and Liens.  The Liquidating Debtors shall promptly pay the Holders of (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims, and (d) Allowed Priority Non-Tax Claims, as provided for under the Combined Disclosure Statement and Plan. The Liquidating Debtors shall make the Cash payments to the Holders of Allowed Claims: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Liquidating Debtors in their sole discretion, or by wire transfer from a domestic bank, at the Liquidating Debtors' option, and (b) by first-class mail (or by other equivalent or superior means as determined by the Liquidating Debtors).  Any excess funds shall be available to pay any unpaid Allowed Professional Fees, to the extent Allowed Professional Fees have not been completely satisfied, and following delivery of a report of such outstanding fees to the Lenders in form and detail reasonably acceptable to them.  Thereafter, any excess funds shall be distributed as set forth in the Combined Disclosure Statement and Plan.

### B.    Payment of Combined Disclosure Statement and Plan Expenses

All expenses of administering the Combined Disclosure Statement and Plan may be paid by the Liquidating Debtors without further notice to Creditors or approval of the Bankruptcy Court. Any disputes concerning the payment of Combined Disclosure Statement and Plan expenses shall be submitted to the Bankruptcy Court for resolution.

**C.**     **Liquidation and Dissolution of the Debtors**

The Liquidating Debtors shall conduct no business following the Effective Date other than winding up their affairs in accordance with applicable law and the provisions of this Combined Disclosure Statement and Plan.  Without limiting the generality or effect of the foregoing, following the Effective Date the Liquidating Debtors shall: (i) undertake those transactions that are necessary, advantageous or practicable to obtain the maximum value from Estates' assets; and (ii) exercise their best efforts and endeavor in good faith and without undue delay to liquidate all Claims as set forth herein.  Except as otherwise provided in this Combined Disclosure Statement and Plan or the Confirmation Order, pursuant to applicable bankruptcy and non-bankruptcy law, the Liquidating Debtors shall be authorized to (i) wind up their affairs and dissolve and (ii) put into effect and carry out the terms of the Combined Disclosure Statement and Plan and any orders of the Bankruptcy Court entered in the Chapter 11 Cases, without further action by their boards of directors or Equity Interest Holders.

**D.**     **Power and Authority of Responsible Officer**

From and after the Effective Date, the Liquidating Debtors will be managed and governed by the Responsible Officer who shall act as the representative of the Liquidating Debtors. Activities of the Liquidating Debtors as permitted and limited under this Combined Disclosure Statement and Plan will be managed by the Responsible Officer.  To the extent applicable, the Responsible Officer may use lower priced employees of his firm as he deems appropriate. Compensation and reimbursement of the Responsible Officer, and any lower priced employees from his or her firm (if any), shall be considered expenses of the Combined Disclosure Statement and Plan.  Confirmation of the Combined Disclosure Statement and Plan shall constitute the appointment of the Responsible Officer by the Bankruptcy Court as the representative of the Liquidating Debtors to (a) exercise the rights, power and authority of the Liquidating Debtors under applicable provisions of the Combined Disclosure Statement and Plan and bankruptcy and non-bankruptcy law, (b) retain professionals to represent the Liquidating Debtors in performing and implementing the Combined Disclosure Statement and Plan, (c) marshal and liquidate the Estates' assets and to collect the proceeds of the Combined Disclosure Statement and Plan for the benefit of Creditors, (d) resolve Disputed Claims and effectuate Distributions to Holders of Allowed Claims as set forth in the Combined Disclosure Statement and Plan, (e) make all Distributions contemplated hereby and (f) otherwise implement the Combined Disclosure Statement and Plan, wind up the affairs of the Liquidating Debtors and close the Chapter 11 Cases. The compensation arrangements with the Responsible Officer shall be subject to approval by the Bankruptcy Court prior to the Effective Date.  On the Effective Date, the Responsible Officer will be deemed to have retained the Debtors' Professionals under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court.  Except as otherwise provided in this Combined Disclosure Statement and Plan or the Confirmation Order, the Responsible Officer shall (i) be authorized to execute a certificate of dissolution for the Liquidating Debtors pursuant to applicable non-bankruptcy law, or otherwise take any necessary steps required to wind up the Liquidating Debtors under applicable law, at such time as the Liquidating Debtors have fully wound up their affairs in accordance with applicable law pursuant to the provisions of the Combined Disclosure Statement and Plan, (ii) serve until the Liquidating Debtors are dissolved and a final decree is entered closing their Chapter 11 Cases, unless earlier removed by the Bankruptcy Court for cause shown, after notice and a hearing, (iii)

67

ensure that the Liquidating Debtors comply with their obligations to pay statutory fees under 28 U.S.C. § 1930(a)(6), and (iv) file all post-Confirmation reports required by the Bankruptcy Rules, the Bankruptcy Court, the Local Bankruptcy Rules, or any applicable Guidelines of the U.S. Trustee.  Upon the removal of the Responsible Officer for cause, or if the sitting Responsible Officer becomes unable, unavailable, or unwilling to continue to serve, the Bankruptcy Court will appoint a replacement upon the request of any party in interest.

### E.    Causes of Action

Except as otherwise provided in this Combined Disclosure Statement and Plan, all Causes of Action are retained by and vested in the Liquidating Debtors pursuant to § 1123(b) of the Bankruptcy Code.

### F.    Full and Final Satisfaction

Commencing upon the Effective Date, the Liquidating Debtors shall be authorized and directed to Distribute the amounts required under the Combined Disclosure Statement and Plan to the Holders of Allowed Claims according to the provisions of the Combined Disclosure Statement and Plan.  Upon the Effective Date, all Debts shall be deemed fixed and adjusted pursuant to this Combined Disclosure Statement and Plan, and the Debtors and Liquidating Debtors[18] shall have no liability on account of any Claims or Interests except as set forth in this Combined Disclosure Statement and Plan.  All payments and all Distributions made by the Liquidating Debtors under the Combined Disclosure Statement and Plan shall be in full and final satisfaction, settlement and release of all Claims filed against the Estates; *provided*, *however*, that nothing contained herein shall be deemed to constitute or result in a discharge of the Debtors under § 1141(d) of the Bankruptcy Code.

### G.    Resolution of Disputed Claims

All objections to Claims shall be filed and served not later than the Claims Objection Deadline; *provided*, *however*, such date may be extended by the Bankruptcy Court upon motion (the "Extension Motion") filed by the Debtors or the Liquidating Debtors.  If an objection is not timely filed or if no Extension Motion is pending by such deadline, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of this Combined Disclosure Statement and Plan.  Unless otherwise provided in the Confirmation Order, the Liquidating Debtors are authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Combined Disclosure Statement and Plan.  Under no circumstances will any Distributions be made on account of Disallowed Claims.

### H.    Allocation of Distributions

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to

---

[18] For the avoidance of doubt, this section does not apply to or affect nondebtor entities Agspring or Holdco, or release Liens on those entities' property.

the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**I.    Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual Distribution shall reflect a rounding of such fraction down to the nearest cent.

**J.    Postpetition Interest on Claims**

Except as required by applicable bankruptcy law, postpetition interest shall not accrue or be payable on account of any Claim.

**K.    Insurance**

Notwithstanding anything to the contrary herein, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from the proceeds of such Insurance Policy, with the balance, if any, treated in accordance with the provisions of this Combined Disclosure Statement and Plan governing the Class applicable to such Claim.

**L.    Unclaimed Property**

Any Entity that fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such Entity shall forfeit all rights to any Distribution under the Combined Disclosure Statement and Plan. Upon forfeiture, such Cash (including interest thereon) shall be returned to the Liquidating Debtors for redistribution as set forth in this Combined Disclosure Statement and Plan. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors, the Liquidating Debtors, or the Responsible Officer.

**M.    Setoffs**

Nothing contained in this Combined Disclosure Statement and Plan shall constitute a waiver or release by the Debtors or the Liquidating Debtors of any right of setoff or recoupment the Debtors or the Liquidating Debtors may have against any Creditor.

**N.    No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable Bar Date shall be a Disallowed Claim, and the Liquidating Debtors shall not make any Distribution to a Holder of such a Claim; *provided*, *however*, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Liquidating Debtors shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

US_Active\120183950

**O.**     **Withholding Taxes**

Pursuant to § 346(f) of the Bankruptcy Code, the Liquidating Debtors shall be entitled to deduct any federal, state, or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  From and as of the Effective Date, the Liquidating Debtors shall comply with all reporting obligations imposed on them by any Governmental Unit in accordance with applicable law with respect to such withholding taxes.  As a condition to making any Distribution under this Combined Disclosure Statement and Plan, the Liquidating Debtors may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Liquidating Debtors to comply with applicable tax reporting and withholding laws.

**P.**     **De Minimis Distributions; Charitable Donation**

The Liquidating Debtors shall not be required to make any Distribution of Cash less than $100.00 to any Holder of an Allowed Claim.

**Q.**     **U.S. Trustee Fees**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors or the Liquidating Debtors, as applicable, on or before the Effective Date. Thereafter, the Liquidating Debtors shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) based upon actual Distributions, and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the case.

**R.**     **Sole Recourse**

Except as otherwise set forth in this Combined Disclosure Statement and Plan or other Final Orders of the Bankruptcy Court, Holders of Allowed Claims against any Debtor will have recourse solely to the assets of the Liquidating Debtors on or after the Effective Date for the payment of their Allowed Claims in accordance with the terms of this Combined Disclosure Statement and Plan.

**S.**     **Reservation of Rights Regarding Claims**

Except as otherwise provided in this Combined Disclosure Statement and Plan or in other Final Orders of the Bankruptcy Court, nothing shall affect the Debtors' or the Liquidating Debtors' respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

US_Active\120183950

**XI.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that: (i) were previously assumed, assumed and assigned or rejected by order of the Bankruptcy Court (including, without limitation, the Greenfield Sale Order) and (ii) are the subject of a pending motion to assume or reject, pursuant to § 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to § 365 of the Bankruptcy Code; *provided*, *however*, that nothing in this Section XI.A shall cause the rejection, breach or termination of any contract of insurance benefiting the Debtors and the Estates or the Debtors' officers, directors and/or managers. Nothing in this Article XI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. For avoidance of doubt, nothing in the Combined Disclosure Statement and Plan or the Confirmation Order shall impair or otherwise affect any rights or obligations of the Successful Bidder (as defined in the Greenfield Sale Order).

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to § 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and the Debtors and the Liquidating Debtors shall bear no liability for costs associated with respect to the forgoing. For avoidance of doubt, any counterparty to an executory contract or unexpired lease rejected pursuant to this Combined Disclosure Statement and Plan may file a claim for damages pursuant to Section XI.B of this Combined Disclosure Statement and Plan, *provided*, *however*, that the Debtors reserve all rights of the Debtors and the Liquidating Debtors to object to any such claims on any and all available grounds.

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Combined Disclosure Statement and Plan, if any, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Combined Disclosure Statement and Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article VIII of the Combined Disclosure Statement and Plan.

**C.**     **Insurance Policies**

Notwithstanding anything to the contrary contained herein, Confirmation of the Combined Disclosure Statement and Plan shall not discharge, impair, or otherwise modify any obligations of

71

the Insurance Policies.  To the extent one or more of the Insurance Policies provides potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, all net proceeds thereof (including, for the avoidance of doubt, net of any deductibles or retentions) shall be treated as proceeds of such Causes of Action for all purposes under the Combined Disclosure Statement and Plan.  Neither the Debtors nor the Liquidating Debtors shall take any action to impair the Insurance Policies.  Nothing in this Combined Disclosure Statement and Plan shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

**XII.**

**CONDITIONS PRECEDENT TO CONFIRMATION
OF THE COMBINED DISCLOSURE STATEMENT AND PLAN AND TO THE
EFFECTIVE DATE**

**A.**      **Conditions to Confirmation of the Combined Disclosure Statement and Plan**

Confirmation of this Combined Disclosure Statement and Plan is conditioned upon the satisfaction of each of the following conditions precedent, unless waived in writing by the relevant party: (i) the Bankruptcy Court shall have approved the Combined Disclosure Statement and Plan in form and substance reasonably acceptable to the Plan Proponents in all reasonable respects; (ii) the Debtors shall have determined that they will have sufficient Cash on the Effective Date to: (A) pay Allowed Administrative Claims, Non-Tax Priority Claims and Priority Tax Claims in full (or in such amount as may be agreed by the applicable Claimant); (B) fund Plan Contribution Amount; and (C) adequately fund the Disputed Claims Reserve; and (iii) the Confirmation Order to be presented to the Bankruptcy Court at the Combined Hearing shall be reasonably acceptable to the Plan Proponents in form and substance in all reasonable respects.

**B.**      **Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in Section XII.A is not met, the Plan Proponents may withdraw this Combined Disclosure Statement and Plan and, if withdrawn, this Combined Disclosure Statement and Plan shall be of no further force or effect.

**C.**      **Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent: (i) a Confirmation Order in form and substance reasonably acceptable to the Plan Proponents, in all reasonable respects, shall have been entered by the Bankruptcy Court; (ii) the Plan Contribution Amount shall have been funded; (iii) the Bankruptcy Court shall have entered an order disallowing the Tubbs Claims against any Debtor other than AMR; and (iv) unless otherwise waived in writing by the Debtors, all other actions and documents determined by the Debtors to be necessary to implement the Combined Disclosure Statement and Plan shall have been effected and executed.

US_Active\120183950

## D.    Effective Date

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied or waived, this Combined Disclosure Statement and Plan shall become effective on the Effective Date.  If any one or more of the conditions in Section XII.C is not met, the Debtors may withdraw this Combined Disclosure Statement and Plan and, if withdrawn, this Combined Disclosure Statement and Plan shall be of no further force or effect.

## XIII.

## EFFECTS OF CONFIRMATION

## A.    Binding Effect of Combined Disclosure Statement and Plan

The provisions of the confirmed Combined Disclosure Statement and Plan shall bind the Debtors, any Entity acquiring property under the Combined Disclosure Statement and Plan, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Combined Disclosure Statement and Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Combined Disclosure Statement and Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Combined Disclosure Statement and Plan.  This Combined Disclosure Statement and Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Combined Disclosure Statement and Plan or related to any transaction contemplated under this Combined Disclosure Statement and Plan is to be recorded with respect to any taxes of the kind specified in § 1146(a) of the Bankruptcy Code.

## B.    Liquidating Debtors Hold Assets of the Estate for Distribution

Upon the Effective Date, title to all assets of the Estates, including all Causes of Action the Debtors may hold against any Entity and any recoveries therefrom, shall be held by the Liquidating Debtors for the purposes contemplated under this Combined Disclosure Statement and Plan.

## C.    Property Free and Clear

Except as otherwise provided in this Combined Disclosure Statement and Plan or the Confirmation Order, all property that shall be held by the Liquidating Debtors shall be free and clear of all Claims, Equity Interests, Liens, interests, charges or other encumbrances of Creditors or Equity Interest Holders, other than as set forth herein, in the Final DIP Order and in relevant documents, agreements and instruments contained in any Plan Supplement.  For the avoidance of doubt, the Liens of the Prepetition Secured Parties on the Tubbs Properties remain preserved until resolution of the Adversary Proceeding (Tubbs Parties) (and thereafter, subject to other terms of this Combined Disclosure Statement and Plan).  Following the Effective Date, the Liquidating Debtors may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Combined Disclosure Statement and Plan or the Confirmation Order.

73

D.    <u>**EXCULPATION**</u>

**THE EXCULPATED PARTIES WILL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACTION IN GOOD FAITH TAKEN OR OMITTED TO BE TAKEN AFTER THE PETITION DATE THROUGH AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH OR RELATED TO THE CHAPTER 11 CASES, THE SALE OF THE DEBTORS' ASSETS (INCLUDING, WITHOUT LIMITATION THE SALE OF THE ASSETS PURSUANT TO THE GREENFIELD SALE ORDER OR ANY TUBBS SALE ORDER) OR THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, CONFIRMATION OR CONSUMMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY AGREEMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN; *PROVIDED, HOWEVER*, THAT THIS LIMITATION WILL NOT AFFECT OR MODIFY THE OBLIGATIONS CREATED UNDER THIS COMBINED DISCLOSURE STATEMENT AND PLAN, OR THE RIGHTS OF ANY HOLDER OF AN ALLOWED CLAIM TO ENFORCE ITS RIGHTS UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN, AND SHALL NOT RELEASE ANY ACTION (OR INACTION) CONSTITUTING WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE (IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION). WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH EXCULPATED PARTY SHALL BE ENTITLED TO AND GRANTED THE PROTECTIONS OF § 1125(E) OF THE BANKRUPTCY CODE. EXCEPT AS SPECIFICALLY SET FORTH IN SECTION XIII.E BELOW, NO PROVISION OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL BE DEEMED TO ACT TO OR RELEASE ANY CLAIMS, CAUSES OF ACTION, RIGHTS OR LIABILITIES THAT THE DEBTORS OR THE ESTATES MAY HAVE AGAINST ANY ENTITY OR PERSON FOR ANY ACT, OMISSION OR FAILURE TO ACT THAT OCCURRED PRIOR TO THE PETITION DATE, NOR SHALL ANY PROVISION OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN BE DEEMED TO ACT TO RELEASE ANY CAUSES OF ACTION AND LITIGATION CLAIMS.**

E.    <u>**RELEASES**</u>

    1.    <u>**DEBTOR RELEASE**</u>.

**PURSUANT TO § 1123(b) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, THE DEBTORS, THE LIQUIDATING DEBTORS, AND THE ESTATES SHALL RELEASE EACH RELEASED PARTY, AND EACH RELEASED PARTY IS DEEMED RELEASED BY THE DEBTORS, THE LIQUIDATING DEBTORS, AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE**

74

**DEBTORS, THE LIQUIDATING DEBTORS, OR THE ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, MATURED OR UNMATURED, DETERMINED OR DETERMINABLE, DISPUTED OR UNDISPUTED, LIQUIDATED OR UNLIQUIDATED, OR DUE OR TO BECOME DUE, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE LIQUIDATING DEBTORS, OR THE ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT, OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' LIQUIDATION, THE CHAPTER 11 CASES, THE PURCHASE, SALE, TRANSFER OF ANY SECURITY, ASSET, RIGHT, OR INTEREST OF THE DEBTORS, THE TRANSACTIONS MADE BY OR CONTEMPLATION UNDER THE GREENFIELD SALE ORDER OR ANY TUBBS SALE ORDER, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE TREATMENT OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON AND BEFORE THE PETITION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; PROVIDED, THAT THE FOREGOING DEBTOR RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY OBLIGATIONS OF ANY PARTY UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN OR ANY OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (C) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO ANY OF THE DEBTORS, THE LIQUIDATING DEBTORS OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

US_Active\120183950

2.    **THIRD PARTY RELEASE**.

ON, AND AS OF, THE EFFECTIVE DATE AND FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE ACKNOWLEDGED, THE RELEASED PARTIES SHALL BE FOREVER RELEASED (THE "THIRD PARTY RELEASE") FROM ANY AND ALL CLAIMS, OBLIGATIONS, ACTIONS, SUITS, RIGHTS, DEBTS, ACCOUNTS, CAUSES OF ACTION, REMEDIES, AVOIDANCE ACTIONS, AGREEMENTS, PROMISES, DAMAGES, JUDGMENTS, DEMANDS, DEFENSES AND LIABILITIES THROUGHOUT THE WORLD UNDER ANY LAW OR COURT RULING THROUGH THE EFFECTIVE DATE (INCLUDING ALL CLAIMS BASED ON OR ARISING OUT OF FACTORS OR CIRCUMSTANCES THAT EXISTED AS OF OR PRIOR TO THE EFFECTIVE DATE, INCLUDING CLAIMS BASED ON NEGLIGENCE OR STRICT LIABILITY, AND FURTHER INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE) WHICH THE DEBTORS, THE LIQUIDATING DEBTORS, THE ESTATES, CREDITORS, OR OTHER PERSONS RECEIVING OR WHO ARE ENTITLED TO RECEIVE DISTRIBUTIONS UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN MAY HAVE AGAINST ANY OF THEM IN ANY WAY RELATED TO THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON AND BEFORE THE PETITION DATE, AND RELATED TO THE DEBTORS (OR THEIR PREDECESSORS), THEIR BUSINESS AND/OR THEIR ASSETS; *PROVIDED, HOWEVER* THAT THE FOREGOING RELEASES ARE GRANTED ONLY BY (A) CREDITORS WHO ARE CONCLUSIVELY DEEMED TO HAVE ACCEPTED THE COMBINED DISCLOSURE STATEMENT AND PLAN; (B) CREDITORS WHO RETURNED A BALLOT AND DID NOT CHECK THE OPT-OUT BOX ON THE BALLOT; AND (C) CREDITORS WHO WERE SENT A SOLICITATION PACKAGE, BUT EITHER (I) DID NOT VOTE; OR (II) DID NOT RETURN A BALLOT WITH THE OPT-OUT BOX CHECKED; *PROVIDED, HOWEVER,* THAT THE RELEASE PROVIDED IN THIS SECTION SHALL NOT APPLY TO A CREDITOR'S CLAIMS AGAINST THE TUBBS PARTIES SOLELY BASED UPON SUCH CREDITOR'S DIRECT CONTRACTUAL RIGHTS, IF ANY, AGAINST THE TUBBS PARTIES, PROVIDED FURTHER THAT NOTHING IN THIS SECTION SHALL RELEASE ANY RELEASED PARTY FROM ACTS THAT ARE JUDICIALLY DETERMINED TO CONSTITUTE FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR AVOIDANCE OF DOUBT, THE LENDERS SHALL BE DEEMED TO HAVE GRANTED THE THIRD PARTY RELEASE; *PROVIDED, HOWEVER* THAT THE THIRD PARTY RELEASE DOES NOT RELEASE ANY OBLIGATIONS, ACTIONS, SUITS, RIGHTS, DEBTS, ACCOUNTS, CAUSES OF ACTION, REMEDIES, AVOIDANCE ACTIONS, AGREEMENTS, PROMISES, DAMAGES, JUDGMENTS, DEMANDS, DEFENSES AND LIABILITIES BETWEEN OR AMONG THE PREPETITION TERM AGENT, ON THE ONE HAND, AND THE PREPETITION TERM LENDERS, ON THE OTHER HAND.

US_Active\120183950

F.    **INJUNCTION**

IN IMPLEMENTATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE CONFIRMATION ORDER OR THE COMBINED DISCLOSURE STATEMENT AND PLAN, AND EXCEPT IN CONNECTION WITH THE ENFORCEMENT OF THE TERMS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OR ANY DOCUMENTS PROVIDED FOR OR CONTEMPLATED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS OR THE ESTATES THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE PERMANENTLY ENJOINED FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING DEBTORS, OR THE ESTATES WITH RESPECT TO ANY SUCH CLAIM OR INTEREST; (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS, DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING DEBTORS, OR THE ESTATES WITH RESPECT TO ANY SUCH CLAIM OR INTEREST; (C) CREATING, PERFECTING, OR ENFORCING, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING DEBTORS, OR THE ESTATES WITH RESPECT TO ANY SUCH CLAIM OR INTEREST; (D) ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN WITH RESPECT TO SUCH CLAIM OR INTEREST, INCLUDING WITHOUT LIMITATION, ANY ACT TAKEN IN VIOLATION OF SECTION XIII.E.2 AGAINST ANY OF THE RELEASED PARTIES WITH RESPECT TO ANY MATTERS RELEASED UNDER THIS COMBINED DISCLOSURE STATEMENT AND PLAN IN FAVOR OF SUCH RELEASED PARTIES.  NOTHING CONTAINED IN THIS SECTION SHALL PROHIBIT THE HOLDER OF A TIMELY FILED PROOF OF CLAIM FROM LITIGATING ITS RIGHT TO SEEK TO HAVE SUCH CLAIM DECLARED AN ALLOWED CLAIM AND PAID IN ACCORDANCE WITH THE DISTRIBUTION PROVISIONS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, OR OTHERWISE ENJOIN OR PROHIBIT THE INTERPRETATION OR ENFORCEMENT BY THE CLAIMANT OF ANY OF THE OBLIGATIONS OF THE DEBTORS OR LIQUIDATING DEBTORS UNDER THIS COMBINED DISCLOSURE STATEMENT AND PLAN.

G.    **Post-Confirmation Liability of the Responsible Officer**

The Responsible Officer, together with his respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of his duties under this Combined Disclosure

Statement and Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by Final Order of the Bankruptcy Court). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud, or willful misconduct. In addition, the Liquidating Debtors shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Debtors or the implementation or administration of the Combined Disclosure Statement and Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Debtors. To the extent the Liquidating Debtors indemnify and hold harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Debtors in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Combined Disclosure Statement and Plan. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Combined Disclosure Statement and Plan.

## H.    **Preservation of Rights of Action**

1.    Causes of Action.

(a)    Except as otherwise provided in the Combined Disclosure Statement and Plan, Confirmation Order or Final DIP Order, in accordance with § 1123(b)(3) of the Bankruptcy Code, any Cause of Action that the Debtors hold or may hold against any Entity shall be held by the Liquidating Debtors pursuant to this Combined Disclosure Statement and Plan.

(b)    Except as otherwise provided in the Combined Disclosure Statement and Plan or Confirmation Order, after the Effective Date, the Liquidating Debtors shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action the Debtors hold or may hold against any Entity without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

(c)    Causes of Action and recoveries therefrom shall be the sole property of the Liquidating Debtors, and Holders of Claims shall have no direct right or interest in to any such Causes of Action or recovery except as provided in this Combined Disclosure Statement and Plan.

2.    Preservation of All Causes of Action Not Expressly Settled or Released.

(a)    Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised or settled in the Combined Disclosure Statement and Plan or any Final Order (including the Confirmation Order and the Final DIP Order), the Debtors expressly reserve such retained Cause of Action for later adjudication by the Liquidating Debtors (including, without limitation, Causes of Action not specifically identified or described in any Plan Supplement or elsewhere, or of which the Debtors may be presently unaware,

78

or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Combined Disclosure Statement and Plan or Confirmation Order based on the Combined Disclosure Statement and Plan or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtors expressly reserve the right for the Liquidating Debtors to pursue or adopt claims alleged in any lawsuit in which any Debtor is a defendant or an interested party against any Entity, including, without limitation the plaintiffs or co-defendants in such lawsuits.

(b)    Subject to the immediately preceding paragraph, any Entity to which a Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from a Debtor or a transfer of money or property of a Debtor, or that has received services from a Debtor or a transfer or money or property of a Debtor, or that has transacted business with a Debtor, or that has leased equipment or property from a Debtor, should assume and is hereby advised that any such obligation, transfer or transaction may be reviewed by the Liquidating Debtors subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against a Debtor in the Chapter 11 Cases; (ii) the Debtors have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein.

## I.    <u>No Discharge</u>

Nothing contained in this Combined Disclosure Statement and Plan shall be deemed to constitute a discharge of the Debtors under § 1141(d)(3) of the Bankruptcy Code.

**XIV.**

**<u>RETENTION OF JURISDICTION</u>**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.    To allow, disallow determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim or Professional Claim and the resolution of any objections to the allowance or priority of Claims, and the resolution of any claim objections brought by the Liquidating Debtors;

2.    To administer the Combined Disclosure Statement and Plan and ensure that Distributions to Holders of Allowed Claims are accomplished in accordance with the Combined Disclosure Statement and Plan;

US_Active\120183950

3.      To resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Agreement to which a Debtor(s) is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;

4.      To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Effective Date, including, without limitation, the Adversary Proceeding (Tubbs Properties) and any and all Causes of Action preserved under the Combined Disclosure Statement and Plan commenced prior to, on, or after the Effective Date;

5.      To hear and determine any and all matters relating to the Louisiana Litigation, as an adversary proceeding or otherwise, ultimately transferred to the Bankruptcy Court pursuant to the Louisiana Transfer Proceedings;

6.      To hear and determine any and all disputes relating to the res judicata and collateral estoppel effects of the Final DIP Order and any other order entered by the Bankruptcy Court;

7.      To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

8.      To hear and determine any and all applications by Professionals for an award of Professional Fees;

9.      To hear and determine matters relating to the Insurance Policies;

10.     To enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

11.     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Combined Disclosure Statement and Plan, the Confirmation Order or any other order of the Bankruptcy Court;

12.     To resolve a dispute with respect to and/or otherwise appoint a replacement of the Responsible Officer;

13.     To hear and determine any application to modify the Combined Disclosure Statement and Plan in accordance with § 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Combined Disclosure Statement and Plan, any contract, instrument, release, or other agreement or document created in connection therewith, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

14.     To hear and determine disputes arising in connection with the interpretation, implementation, obligation or enforcement of this Combined Disclosure Statement and Plan, the

Confirmation Order, any transactions or payments contemplated in the Combined Disclosure Statement and Plan, or any agreement, instrument, or other document governing or relating to any of the foregoing;

15.     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Combined Disclosure Statement and Plan, including all contracts, instruments, releases, and other agreements or documents created in connection therewith, or to maintain the integrity of this Combined Disclosure Statement and Plan following Consummation;

16.     To determine such other matters and for such other purposes as may be provided in the Combined Disclosure Statement and Plan and/or Confirmation Order;

17.     To hear and determine matters concerning state, local and federal taxes including without limitation, any requests for expedited determinations under § 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the date of Final Distribution;

18.     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

19.     To authorize recovery of all assets of any Debtor and property of the applicable Estate, wherever located;

20.     To hear and resolve any disputes regarding the reserves required hereunder, including without limitation, disputes regarding the amounts of such reserves or the amount, allocation, and timing of any releases of such reserved funds;

21.     To enable the Liquidating Debtors to commence and prosecute any Causes of Action which may be brought after the Effective Date;

22.     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

23.     To enter Final Decrees closing the Chapter 11 Cases.

## XV.

## MISCELLANEOUS

### A.    Revocation of Combined Disclosure Statement and Plan

The Debtors reserve the right to revoke and withdraw the Combined Disclosure Statement and Plan at any time on or before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Disclosure Statement and Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Combined Disclosure Statement and Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver

or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

**B.**      **Request for Expedited Determination of Taxes**

The Debtors or Liquidating Debtors, as applicable, shall have the right to request an expedited determination under § 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through and including the date of the Final Distribution.

**C.**      **Severability of Combined Disclosure Statement and Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of this Combined Disclosure Statement and Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.**      **Exhibits**

All exhibits attached to this Combined Disclosure Statement and Plan or any Plan Supplement are, by this reference, hereby incorporated into the Combined Disclosure Statement and Plan. The final version of all Exhibits to the Combined Disclosure Statement and Plan and any Plan Supplement will be substantially in the forms attached hereto or thereto. The Debtors reserve the right to make non-substantive changes and corrections to such Exhibits in advance of the Combined Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Combined Hearing.

**E.**      **Courts of Competent Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Combined Disclosure Statement and Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**F.**      **Continuing Effect of Bankruptcy Court Orders**

Unless otherwise set forth in the Combined Disclosure Statement and Plan or the Confirmation Order or otherwise ordered by the Bankruptcy Court, the orders of the Bankruptcy

Court shall not be modified, limited or amended by the Combined Disclosure Statement and Plan and shall remain in full force and effect.

**G.     Business Day Transactions**

In the event that any payment or act under this Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the initial due date.

**H.     Headings**

Headings are used in this Combined Disclosure Statement and Plan for convenience and reference only and shall not constitute a part of this Combined Disclosure Statement and Plan for any other purpose.

**I.     Notices**

All notices required or permitted to be made in accordance with the Combined Disclosure Statement and Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

| *To the Debtors:* | *To the Prepetition Term Lenders:* |
| --- | --- |
| Dentons US LLP<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Attn: Samuel R. Maizel<br>    Tania M. Moyron<br>Tel: (213) 623-9300<br>Fax: (213) 623-9924<br>Email: samuel.maizel@dentons.com<br>    tania.moyron@dentons.com | Moore & Van Allen PLLC<br>100 North Tryon Street, Suite 4700<br>Charlotte, NC 28202-4003<br>Attn: Zachary H. Smith<br>    Gabriel L. Mathless<br>    Stephen E. Gruendel<br>Tel: (704) 331-1000<br>Fax: (704) 378-1989<br>Email: zacharysmith@mvalaw.com<br>    gabrielmathless@mvalaw.com<br>    stevegruendel@mvalaw.com |
| -and-<br><br>Dentons US LLP<br>1900 K Street, NW<br>Washington, DC 20006<br>Attn: David F. Cook<br>Tel: (202) 496-7301<br>Email: david.f.cook@dentons.com | -and- |

|  | Richards, Layton & Finger, P.A. |
|  | One Rodney Square |
|  | 920 North King Street |
|  | Wilmington, DE 19801 |
|  | Attn: Michael J. Merchant |
|  | Jason M. Madron |
|  | Tel: (302) 651-7700 |
|  | Fax: (302) 651-7701 |
|  | Email: merchant@rlf.com |
|  | madron@rlf.com |
| -and-<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899 (Courier 19801)<br>Attn: Laura Davis Jones<br>Mary F. Caloway<br>Tel: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>mcaloway@pszjlaw.com |  |
| -and-<br><br>MERU, LLC<br>1175 Peachtree Street NE, Suite 1000<br>Atlanta, GA 30361<br>Attn: Kyle Sturgeon<br>Tel: (404) 452-5802<br>Email: kyle@wearemeru.com |  |

## J.   <u>Reservation of Rights</u>

Neither the filing of the Combined Disclosure Statement and Plan nor any statement or provision contained in the Combined Disclosure Statement and Plan, nor the taking by any party in interest of any action with respect to the Combined Disclosure Statement and Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Combined Disclosure Statement and Plan is not confirmed or fails to become effective, neither the Combined Disclosure Statement and Plan nor any statement contained in the Combined Disclosure Statement and Plan may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Combined Disclosure Statement and Plan.

K.    **Defects, Omissions, and Amendments**

The Debtors may, with the approval of the Lenders and the Bankruptcy Court and without notice to all Holders of Claims or Equity Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Combined Disclosure Statement and Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Combined Disclosure Statement and Plan.  The Combined Disclosure Statement and Plan may be altered or amended before or after Confirmation as provided in § 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Combined Disclosure Statement and Plan, as modified, complies with §§ 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with § 1125 of the Bankruptcy Code.  The Combined Disclosure Statement and Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Combined Disclosure Statement and Plan complies with §§ 1122 and 1123 of the Bankruptcy Code, the Debtors have complied with § 1125 of the Bankruptcy Code and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

L.    **Filing of Additional Documents**

The Debtors and the Liquidating Debtors, as applicable, shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

M.    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entity.

N.    **Setoffs and Recoupments**

The Liquidating Debtors may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Combined Disclosure Statement and Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors or the Estates may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Liquidating Debtors or the Estates, against such Holder.

O.    **Exemption from Transfer Taxes**

Pursuant to § 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Combined Disclosure Statement and Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this

US_Active\120183950

Combined Disclosure Statement and Plan, whether real or personal property, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**P.    Securities Exemption**

To the extent any Interest herein is deemed or asserted to constitute a security, the such Interest and the issuance and distribution thereof shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, § 1145 of the Bankruptcy Code.

**Q.    Implementation**

Upon Confirmation, the Liquidating Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Combined Disclosure Statement and Plan.

**R.    Certain Actions**

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Combined Disclosure Statement and Plan that would otherwise require approval of directors, officers, employees, managers or members of the Debtors under the Combined Disclosure Statement and Plan, including, without limitation, (i) the Distribution of Cash pursuant to the Combined Disclosure Statement and Plan; (ii) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents related to the Combined Disclosure Statement and Plan; and (iii) the adoption, execution and implementation of other matters provided for under the Combined Disclosure Statement and Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation law of the state in which the applicable Debtor is chartered, organized or incorporated, without any requirement of further action by the directors and stockholders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

Effective upon the Effective Date, each Debtor's formation documents shall each be deemed amended to prohibit the issuance by each Debtor of nonvoting securities to the extent required under § 1123(a)(6) of the Bankruptcy Code.

On or as soon as practicable following the Effective Date, the Liquidating Debtors shall be authorized to cancel, annul, and extinguish all Equity Interests.

**S.    Substantial Consummation**

On the Effective Date, the Combined Disclosure Statement and Plan shall be deemed substantially consummated under §§ 1101 and 1127(b) of the Bankruptcy Code.

US_Active\120183950

**T.**     **Waiver of Fourteen-Day Stay**

      The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

Dated: ___, __ 2022

                                         _____
                                         Kyle Sturgeon
                                         Managing Partner, MERU, LLC

                                         *Chief Restructuring Officer of the Debtors*

Dated: ___, __ 2022

                                         _____
                                         [●]

87

## **EXHIBIT A**

## **LIQUIDATION ANALYSIS**

**Agspring Mississippi Region, LLC, et. al.**
Liquidation Analysis

| | Notes | Balance | % | Chapter 11 | % | Chapter 7 |
|---|---|---|---|---|---|---|
| **Sources of Proceeds** | | | | | | |
| Cash | 1 | $ 7,018,943 | 100% | $ 7,018,943 | 100% | $ 7,018,943 |
| Cash Paid to Prepetition Term Lenders | 2 | 8,870,281 | 100% | 8,870,281 | 100% | 8,870,281 |
| Return of Greenfield Escrowed Proceeds | 3 | 2,717,850 | 100% | 2,717,850 | 100% | 2,717,850 |
| Cobank Recovery | 4 | 99,765 | 100% | 99,765 | 100% | 99,765 |
| Property: Pioneer | 5 | 4,500,000 | 93% | 4,185,000 | 56% | 2,511,000 |
| Property: Mer Rouge | 5 | 10,400,000 | 93% | 9,672,000 | 56% | 5,803,200 |
| Property: Monticello | 5 | 900,000 | 93% | 837,000 | 56% | 502,200 |
| Less: Accrued Professional Fees | 6 | (2,697,600) | 100% | (2,697,600) | 100% | (2,697,600) |
| Intercompany | | - | | - | 100% | - |
| **Gross Liquidation Proceeds** | | | | $ 30,703,240 | 81% | $ 24,825,640 |
| | | | | | | |
| **Wind Down Expenses** | | | | | | |
| Chapter 7 Trustee Fees | 7 | | | - | | (349,020) |
| Chapter 7 Trustee Professional Fees | 8 | | | - | | (500,000) |
| Chapter 11 US Trustee Fees | 9 | | | (256,643) | | (130,243) |
| **Total Liquidation Expenses** | | | | $ (256,643) | | $ (979,263) |
| | | | | | | |
| **Proceeds Available for Distribution** | | | | $ 30,446,597 | | $ 23,846,376 |
| | | | | | | |
| **Other Secured / Admin / Priority Claims** | | | | | | |
| Other Secured Claims | | | | - | | - |
| Admin Claims | | | | - | | - |
| Priority Claims | | | | - | | - |
| **Total Admin and Priority Claims** | | | | - | | - |
| | | | | | | |
| **Proceeds Available for Distribution** | | | | $ 30,446,597 | | $ 23,846,376 |
| | | | | | | |
| **Secured Claims** | | | | | | |
| Bridge Loan | 10 | 1,067,750 | 100% | 1,067,750 | 100% | 1,067,750 |
| Tubbs Secured Loan | 11 | 16,985,000 | 87% | 14,694,000 | 50% | 8,551,908 |
| Prepetition Secured Term Loan | 12 | 105,597,653 | 13% | $ 13,791,557 | 13% | $ 14,226,718 |
| **Total Secured Claims** | | | | 29,553,307 | | 23,846,376 |
| | | | | | | |
| **Remaining Proceeds Available** | | | | $ 893,290 | | $ - |
| | | | | | | |
| **Unsecured Claims** | | | | | | |
| Prepetition Secured Term Lender Deficiency Claim | 13 | 91,806,096 | 0% | - | 0% | - |
| Tubbs Deficiency Claim | 14 | 12,908,182 | 6% | 750,000 | 0% | - |
| GUC Claims | 15 | 146,214 | 98% | 143,290 | 0% | - |
| Intercompany Claim - Agspring LLC | 16 | 200,501 | 0% | - | 0% | - |
| | | | | | | |
| **Remaining Amount Available for Distribution to Equity** | | | | $ - | | $ - |

**Notes**

**1** Represents cash in AMR accounts as of 3/28/2022.

**2** Reflects amount paid to the Prepetition Secured Term Lenders in March 2022 pursuant to a Court order.

**3** Assumes recovery of all escrowed proceeds from the Greenfield Sale.

**4** Dividend from Bayou, Inc. ownership of cooperative interests of CoBank ACB.

**5** Ch. 11 recovery assumes sale at Tubbs' appraised values, less 7% selling costs.  Ch. 7 recovery assumes sale at 40% discount to appraised values, less 7% selling costs.

**6** Reflects the Debtors' current estimate for accrued and unpaid professional fees expected through end of May, 2022.

**7** Assume 3% of recoveries, excluding cash at time of conversion.

**8** Assumption based on size and complexity of the case.

**9** Based on Q1 2022 disbursements along with accrued professional fees.

**10** Balance includes accrued interest and fees. Fully secured based on the Debtors' analysis.

**11** Secured Balance is based on Tubbs' filed claim, to which the Debtors intend to object as set forth in the Combined Disclosure Statement and Plan. The Prepetition Secured Term Lenders filed an adversary proceeding asserting a security interest in certain of these assets, which is not reflected here. Recovery is based on assumptions above.

**12** Secured balance is estimated as of 3/31/2022. Chapter 11 recovery is based on remaining value available less amounts reserved for unsecured claims. Chapter 7 recovery absorbs all value remaining to be distributed. Note that the Prepetition Term Lenders' Secured Claim is increased if value at Pioneer, Mer Rouge and Monticello is allocated to the personal property (which is being litigated through the Adversary Proceeding (Tubbs Parties)).

**13** Represents the unsecured portion of the Term Debt. Balance is Deficiency Claim based on Chapter 11 scenario. Recovery assumed to be waived under the Chapter 11 scenario.

**14** Represents the unsecured portion of Tubbs debt. Recovery of $750k is being gifted by the Prepetition Term Lenders subject to the conditions of the Plan.

**15** Includes full value of both filed and scheduled unsecured claims. The GUC's recovery is being gifted by the Prepetition Term Lenders subject to the conditions of the Plan.

**16** Amount owed to Agspring, LLC. Assumed to be waived per the Plan in Chapter 11 scenario.